UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|   |   |
|---|---|
| SOSCIA HOLDINGS, LLC et al., Plaintiffs, | ) ) ) ) |
| v. | ) C.A. No. 25-cv-274-MRD-AEM ) |
| TOWN OF COVENTRY, et al., Defendants. | ) ) ) ) |

MEMORANDUM AND ORDER

Before this Court is Defendants' Motion to Seal and for a Protective Order (ECF No. 28) for exhibits and paragraphs in the Amended Complaint that relate to the executive session minutes from a December 13, 2023 Coventry Town Council meeting that were mistakenly published on the Town's website in March 2024. ECF No. 28 at 1–2. The executive session minutes discuss a local hot-button issue surrounding Johnson's Pond in Coventry, Rhode Island, which the Town took from Plaintiffs in 2024 by eminent domain. ECF No. 34 at 2. The Plaintiffs vigorously oppose this Motion on the grounds that any claim of privilege as to the executive session minutes has been waived. ECF No. 30 at 2.

Relying in part on the minutes, Plaintiffs now assert the following constitutional violations against the Defendants: Count I, 42 U.S.C. § 1983 violating the Takings Clause of the Fifth and Fourteenth Amendments of the United States Constitution; Count II, directly violating the Takings Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution; and Counts III and IV, 42 U.S.C.

§ 1983 violating Procedural and Substantive Due Process clauses of the Fifth and Fourteen Amendments of the U.S. Constitution. The December 13, 2023 executive session minutes in question are attached as an exhibit to the Complaint and Amended Complaint and referred to throughout the allegations.

The question presented by the motion pending before this Court is whether the Minutes are covered by attorney-client privilege and whether the inadvertent disclosure resulted in a waiver of that privilege? For the reasons explained below, the Court concludes the Defendants waived the privilege and DENIES Defendants' Motion to Seal and for a Protective Order.

## I. BACKGROUND

This dispute originates from the actions of a Coventry Town Clerk who, on March 8, 2024, inadvertently attached the December 13 Town Council Executive Session Minutes ("the Minutes") to a March 12, 2024 Town Council meeting agenda posted on the Town's website. ECF No. 28 at 4. The Minutes posted by the Town Clerk relate to the Town's discussion about a plan to take control of a property known as Johnson's Pond. ECF No. 34 ¶¶ 138–57. The Clerk, having realized their mistake some nineteen minutes later, removed the attachment from the agenda posted online. ECF No. 28 at 13; ECF No. 34 ¶¶ 128-30. Unbeknownst to the Clerk, the Minutes were also saved in another location of the Town's website that was publicly accessible. ECF No. 34 ¶ 130. The Town became aware that the Minutes were posted to its publicly accessible website on June 13, 2025 when Plaintiffs filed their Complaint (ECF No. 1) in this Court. ECF No. 28 at 3. Curiously, the Town did not remove the

Minutes until June 26, 2025.  ECF No. 34 ¶¶ 130.  By then, multiple media outlets including the Hummel Report, The Providence Journal, and NBC 10 News, included a copy of the Minutes in their respective news coverage of the dispute between the parties over Johnson's Pond.  ECF No. 30-1 at 1–24.

On August 11, 2025, Defendants filed this Motion to Seal and for a Protective Order, asserting that the Minutes were privileged because they recounted information discussed while the Town Council was in Executive Session.  ECF No. 28 at 5–7.  Plaintiffs filed an Objection and Motion to Expedite Decision on Motion to Seal and for Protective Order (ECF Nos. 30, 31).  Defendants filed a Reply and Objection to the expedited decision request (ECF Nos. 32, 33) on August 26, 2025, wherein they asked this Court for the first time to "enter an order temporarily sealing [the] documents until the Court has an opportunity to hear and decide the Motion to Seal and for a Protective Order in the proper course."  ECF No. 33 at 3.

While this activity happened here in Federal Court, the Defendants filed a Motion for Entry of Judgment or alternatively, Assignment for Trial on July 28, 2025 in a related State Court condemnation action—KM-2024-0578.[1]  That case involves the legal process the Town of Coventry initiated to take Johnson's Pond from Soscia Holdings.  The Plaintiffs in this case—as an interested party in the State Court condemnation action—objected to the July 28 motion, attached the Minutes, and referred to them in an August 8 filing.  Defendants—petitioners in the State Court

---

[1] The Town Defendants in this action are the Petitioners in the State Court case.

3

condemnation action—filed a motion to seal and for protective order in the State Court on August 18. According to the parties, that motion to seal is currently pending before the State Court while it resolves a jurisdictional issue.

## II. LEGAL STANDARD

"The attorney-client privilege is well-established and its rationale is straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and present legitimate claims and defenses if litigation ensues." *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003). This privilege "is not limitless" and "must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id.* (citing *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001)).

A party claiming privilege "bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D. Mass. 2000). The First Circuit has stated that "[attorney-client privilege] ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party" because "disclosure 'destroys the confidentiality upon which the privilege is premised.'" *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (first quoting *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997) then *In re Keeper of Records*, 348 F.3d at 22). "[T]hat inadvertent disclosures may work a waiver of the attorney-client privilege" has long been the

Circuit's position. *Texaco P.R., Inc. v. Dept. of Consumer Affs.*, 60 F.3d 867, 883 (1st Cir. 1995) (stating that it was a "fairly obvious conclusion" that the district court judge made the correct decision in finding attorney-client privilege had been waived after documents were inadvertently shown to opposing counsel).

When it comes to assessing waiver and inadvertent disclosures, district courts within the Circuit use the "middle test" "to consider a number of circumstances relating to the inadvertent production, including (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." *Amgen*, 190 F.R.D. at 291–92; *Indus. Commc'ns and Wireless, Inc. v. Town of Alton, N.H.*, Civil No. 07-82-JL, 2008 WL 3498652, at *2 (D.N.H. Aug. 7, 2008); *see also Turner v. Brave River Sols., Inc.*, No. Civ. 02-148-D, 2003 WL 21418540, at *1 (D.N.H. June 18, 2003).

### III. DISCUSSION

The parties agree that the attorney-client privilege applies to the Minutes and instead focus their dispute on whether that privilege has been waived. ECF No. 30 at 15; ECF No. 32 at 2. Before applying the middle test, each side has proffered a threshold argument for the Court to consider. The Defendants contend that the Town Clerk did not have the ability to waive the privilege since the Town Council, not the Town Clerk, is the privilege holder. ECF No. 28 at 13–17. Plaintiffs disagree, asserting the Town Clerk indeed had the authority to waive the privilege, and instead

5

suggest the Court apply "a strict construction of privileges." ECF No. 30 at 15 (relying principally on *Lluberes*, 663 F.3d at 22 and *Texaco P.R., Inc.*, 60 F.3d at 883. Should this Court disagree with these initial arguments, both parties agree that the Court should consider the middle-test factors. *See* ECF No. 28 at 17; ECF No. 30 at 23-24.

### A. Ability to waive the attorney-client privilege?

Deciding whether the Town Clerk had the ability to waive the privilege in these circumstances is a difficult question to answer. The parties have not cited—and the Court is unaware of—any binding cases on this precise issue. Various district courts have grappled with aspects of the issue before the Court but not in the same way or under the same circumstances. For example, in *Amgen* the court applied the middle test but never analyzed whether the inadvertent disclosure was made by the holder of the privilege. 190 F.R.D. at 292–93; *see also Figueras v. P.R. Elec. Power. Auth.*, 250 F.R.D. 94, 97–99 (D.P.R. 2008) (analyzing the middle test in an inadvertent disclosure case, but not discussing authority to waive the privilege). Defendants claim that "[t]he Town Clerk, who serves a clerical function, ha[d] no authority to waive the attorney-client privilege on behalf of the municipality." ECF No. 28 at 13. The cases they cite to support this proposition are all out-of-district and differ in one significant way from the case at bar: they deal with intentional waivers of the attorney-client privilege, not inadvertent waivers. *See e.g.*, *Guidiville Rancheria of Cal. v. United States*, CV 12-01326-YGR (KAW), 2013 WL 5303748, at *1 (N.D. Cal. Sept. 20, 2013) (describing a city council member who sent a letter to a deputy attorney general that he knew "quoted the contents of certain legal memoranda

6

prepared by the City's in-house and outside counsel."); *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 479 (E.D. Pa. 2008) (alleging the "[p]resident of the [b]oard of [s]chool directors . . . provided her with a copy of the [privileged material]"). These cases more appropriately relate to a scenario where, for example, the Town Clerk intentionally disclosed the Minutes because they did not agree with the content of the Executive Session meeting. That is not the case here.

This case is more like the scenarios where there were inadvertent disclosures of privileged material. For example, in one case, "attorneys with the United States Department of Justice filed on the public docket an 11-page single-spaced letter [] they had sent to the Department of Transportation" that immediately became the subject of widespread media attention. *Metro. Transp. Auth. v. Duffy*, 782 F. Supp. 3d 193, 197-98 (S.D.N.Y. May 14, 2025). In another, privileged documents were disclosed to opposing counsel after a copy vendor, due to the mistake of a paralegal, took and delivered to opposing counsel boxes containing privileged material. *Amgen*, 190 F.R.D. at 288–89. Neither of those cases discussed whether the person alleged to have inadvertently waived privilege had the authority to do so, and instead focused on the circumstances surrounding the inadvertent disclosure.

Defendants point to a case out of the District of Vermont where a junior analyst working for a law firm inadvertently disclosed material protected by attorney-client privilege. *United States v. Warburg Pincus LLC*, No. 2:21-mc-000178, 2022 WL 2128669, at *1–2 (D. Vt. Jun. 14, 2022). That Court said "[t]he attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to

7

disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship. A party who seeks to uphold the privilege must take affirmative measures to maintain the confidentiality of attorney-client privilege." *Id.* at \*4 (quoting *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 563 (S.D.N.Y. 2008) (cleaned up)). While that Court noted that "the holder of the privilege did not consent to [the junior analyst's] inadvertent disclosure," it focused most of the discussion on the analyst's post-disclosure actions to claw back the disclosed material. *Id.* at \*5.

In this mix, the Court adds the precise circumstances of the public disclosure of the minutes and the various stakeholders' actions following disclosure and discovery of the disclosure. Here, while it is true that the Town Clerk inadvertently posted the privileged material and recognized the mistake after nineteen minutes, the Town Council failed to notice this mistake for 462 days (March 8, 2024–June 13, 2025)—the date of the inadvertent disclosure through the date the instant Complaint was filed— and the attorneys did not act to remove the material for 32 days (July 10, 2025–August 11, 2025)—the date the attorneys entered their appearances to the date this Motion was filed and the first request to seal was made. And even after being made aware that the Minutes were posted on their public Town website, no action was taken by the Town Council to remove them for 13 days (June 13, 2025–June 26, 2025)—the day the Complaint was filed through the date the Town removed the Minutes from their website—bringing the total days the Minutes were posted on the Town's website to 475 days. *See* ECF No. 28-2 ¶ 17 (explaining that "the Executive

8

Session minutes were removed from the iCompass portal . . . on June 26, 2025" after the IT director completed a forensic analysis). This contradicts the declaration of (now former) Town Council President Hilary Lima, who stated "[f]ollowing discovery that the minutes . . . were inadvertently, accidentally, and erroneous posted publicly on the Town's website in March 2024, the minutes were *promptly removed* from the Town's website." ECF No. 28-1 ¶ 14 (emphasis added). Thirteen days is far from a prompt response to learning of the disclosure of these highly sensitive and privileged Minutes. There was no emergency Town Council meeting to deal with the inadvertent disclosure, and the Town Council and their attorneys took no action for 59 days (June 13, 2025–August 11, 2025)—the day they filed the instant motion.

Based on *Metropolitan Transportation Authority*, *Amgen*, *Warburg Pincus*, the facts of this case, and the dearth of case law in the First Circuit on the issue, this Court finds that it need not answer the question of whether the Town Clerk had the authority to inadvertently waive the attorney-client privilege because the Town Council and its attorneys did have that authority. Not only does the case law support this approach, but the actions and inaction of the Town Council and their attorneys upon learning of the disclosure requires it. The caselaw dictates that the Court should apply the middle-test factors to analyze an inadvertent waiver, and that analysis does not require the Court to answer whether the person responsible for the inadvertent disclosure was able to waive the privilege. *See, e.g.*, *Metro. Transp. Auth*, 782 F. Supp. 3d at 201 (stating "[t]o determine whether an inadvertent disclosure was so careless as to waive the privilege, courts in the Second Circuit balance four

9

factors"); *Amgen* 190 F.R.D. at 292 (stating that "the Court joins the many jurisdictions throughout the federal and state systems that have adopted the flexible 'middle test.'"). Based on these circumstances, the Court will move on to discuss the middle test without needing to definitively resolve whether the Town Clerk had the ability or authority to inadvertently waive the attorney-client privilege.

### B. The middle-test factors

The Court will now examine the five factors.

#### 1. The reasonableness of the precautions taken to prevent inadvertent disclosure.

To this factor, the Defendants argue that the Town Council took several precautions: It voted to enter a closed executive session, voted to seal the Minutes, labeled the minutes "EXECUTIVE SESSION," and the Town Council never voted to unseal the minutes. ECF No. 32 at 14–15. Plaintiffs, for their part, contend that "the Town's and Solicitor Angell's blind reliance on the iCompass system for safeguarding its most sensitive materials speaks for itself. [They] should not have merely assumed or 'expected' that the iCompass system would adequately protect against the disclosure of the Executive Session Minutes, which they deemed confidential." ECF No. 30 at 26. While the Court agrees that the Town took reasonable steps to ensure the privilege attached to the Minutes, the actions after the Town Council meeting tilt this factor in favor of Plaintiffs because the Town "should have ensured that the Town Clerk used secured processes when handling Executive Session Minutes, rather than merely relying upon iCompass (or the Town Clerk operating the system)." *Id.* What

10

is unclear is how the Town Clerk mistakenly uploaded the Minutes, especially considering they appear to have been clearly labeled in all capital letters. This Court agrees that "[i]f parties opt to use technological resources to store privilege information, they should also provide the necessary protection for precisely that information." *Id.* at 27 (citing *Marrero Hernandez v. Esso Standard Oil Co.*, Civil No. 03-1485 (JAG/GAG), 2006 WL 1967364, at *4 (D.P.R. July 11, 2006)). Here, the Minutes were somehow uploaded as an attachment to an agenda, and neither the file name nor the Town's process for uploading documents to their public website caused the Town Clerk to catch the mistake, indicating that the Minutes had not been handled diligently.

While the Court acknowledges Defendants took prudent steps to ensure the privilege attached, the way the Minutes were handled after the meeting leads the Court to conclude that this factor tilts in Plaintiffs' favor.

> 2. **The amount of time it took the producing party to recognize its error.**

The second factor does not require much grappling because whichever way this Court views the sequence of events related to the Minutes, the amount of time it took for the Defendants to recognize the extent of the inadvertent disclosure weighs against them. As Plaintiffs point out, "the Minutes were publicly available on the Town's website for over 15 months, or 475 days" and the Town did not assert privilege before this Court until almost two months after the Complaint was filed wherein the minutes were cited throughout and attached as an exhibit. ECF No. 30 at

11

28. Defendants argue that, "upon discovering the error, [the Town] promptly removed the publicly accessible minutes from its website" and "conducted a forensic examination of the iCompass portal to determine how the disclosure occurred and reconfigured the portal to prevent future occurrences." ECF No. 28 at 19. But the thirteen day timeline from learning about the publicly accessible minutes to removal from the Town website and the two months it took the Town to request that this Court seal the Minutes weigh against Defendants. While the Town Clerk may have recognized the error after nineteen minutes, the availability of the privileged material persisted for fifteen months despite earlier opportunities to resolve access to it.

Compare this to the timeline in *Metropolitan Transportation Authority* where the court found the attorney-client privilege was not waived after a private letter was posted on a publicly accessible site and became the subject of widespread media attention. 782 F. Supp. 3d at 197–98, 202–03. Within minutes of that filing, "[d]efendants emailed all counsel of record requesting that they not download the letter . . . or delete it," and "telephonically contacted the Clerk of Court . . . to request that the Letter be sealed on an emergency basis." *Id.* at 201. The court remarked that "the speed with which the attorneys acted to seal the Letter and prevent others from viewing it is inconsistent with an intent to publicize the document." *Id.* The timeline in *Pincus Warburg* also separates that case from this disclosure. There, the analyst "realized his mistake within minutes" which included "attempt[ing] to recall the Subject Email" and contacting the party to whom the disclosure was made. 2022

WL 2128669, at *2. The analyst also notified other employees of the error. *Id.* That court noted the analyst "did everything in his power to rectify his error as soon as possible." *Id.* Here, there is no evidence that the Town Clerk ever notified other employees, including the Town IT Department, of the inadvertent disclosure, or took any other steps to confirm the Minutes were, in fact, fully removed from the Town's website. Further, after the disclosure was discovered fifteen months later, the Town waited an additional thirteen days to remove the Minutes from the website, and no request was brought to the Court to seal the docketed material until August 11, 2025. The time it took to recognize and react to the Minutes being disclosed causes the Court to conclude that this factor heavily leans in favor of waiver.

### 3. The scope of the production.

This third factor does not contribute much to the analysis because at issue is "a single document produced, which was inadvertent and not in response to a document request in litigation." ECF No. 30 at 29. *See Santiago v. Lafferty*, C.A. Nos. 13-cv-12172-IT, 13-cv-12302-IT, 13-cv-12303-IT, 2015 WL 717945, at *7-8 (D. Mass. Feb. 19, 2015) (stating, while discussing this factor, that "[i]n a typical inadvertent disclosure case, the court may assess whether the size of the wrongful disclosure, as compared against the size of production, suggests that the disclosure was a reasonable mistake"). The Court declines to weigh this factor in favor of either party.

### 4. The extent of the inadvertent disclosure.

As to the fourth factor, the Defendants argue the disclosure "here is limited to a single document" and that the subsequent widespread media coverage should be of little to no consideration in determining the extent of the disclosure. ECF No. 32 at 17–19. Plaintiffs, on the other hand, discuss that "the inadvertent disclosure was to the general public, and the Minutes have been circulated among newspapers and the internet." ECF No. 30 at 29. This is not an inadvertent disclosure to an opposing party or an inadvertent filing that was acted on immediately. *Cf. Metro. Transp. Auth.*, 782 F. Supp. at 202 ("explaining how "[c]ounsel acted swiftly to rectify the disclosure"); *Warburg Pincus*, 2022 WL 2128669, at *6 (stating "[a]s soon as Warburg was aware that it had produced the Subject Email to the government, it took steps to rectify the error"). While the fact that the media published the documents is not dispositive, as Plaintiffs essentially argue, ECF No. 30 at 29–30, the sheer length of time that the Minutes were in the public domain must factor into the *extent* of the inadvertent disclosure.

Since the Minutes were (and still are) out in the public and "[a]nybody interested in the Executive Session Minutes is free to read them," ECF No. 30 at 30, this factor weighs in favor of the Plaintiffs.

### 5. The overriding interest of fairness and justice.

Defendants suggest that a finding of implied waiver would prejudice the Town and "[i]t would undermine the attorney-client relationship and the confidentiality it is meant to protect" because "[t]he minutes contained confidential communications

14

between members of the Town Council and the Town solicitor, regarding ongoing litigation" and that "[t]hese discussions were conducted in executive session convened under [the Open Meetings Act] to ensure confidentiality." ECF No. 28 at 19–20. Plaintiffs respond that they have brought claims "under 42 U.S.C. § 1983 against all of the Defendants—officially and individually—including claims for punitive damages based upon their reckless violations of Plaintiffs' federal constitutional rights" and that "[f]or an award of punitive damages under § 1983, one of the criteria for liability includes establishing the Defendants' 'evil motive or intent.'" ECF No. 30 at 30-31 (quoting *Powell v. Alexander*, 391 F.3d 1, 15–20 (1st Cir. 2004)). Defendants suggest that the "Executive Session minutes are likely the only piece of evidence in existence that the Plaintiffs will be able to rely upon to establish the Defendants' requisite 'state of mind' and 'perceived risk' that their 'actions [would violate federal law].'" ECF No. 30 at 31. The Defendants state that "[t]he minutes utilize the exact language which is required for an award of punitive damages under § 1983, and they are the clearest window that the Plaintiffs will have into the subjective intent of the Town Solicitor and the members of the Town Council in conducting the Taking." *Id.* The First Circuit has recognized "th[e] hefty burden" of proving a defamation claim and concluded that restricting production of the documents "would be incompatible with the 'search for truth.'" *Lluberes*, 663 F.3d at 26 (citing *U.S. v. Nixon*, 418 U.S. 683, 710 (1974)). Here, Plaintiffs have a similar "hefty burden" in their claim for punitive damages which requires proof of the Defendants' state of mind. *See Romano v. U-Haul Int'l*, 233 F.3d 655, 669 (1st Cir. 2000) (explaining the Court's inquiry for

15

punitive damages should focus on the acting party's state of mind). Since the Minutes may bear directly on that important question and in a "search for the truth," the Court finds this factor weighs in favor of Plaintiffs.[2]

All in all, after employing the middle test to analyze the circumstances of the disclosure of the Minutes, the Court finds that the middle-test factors weigh in favor of concluding the Plaintiffs have waived the privilege.

### C. State Constitution arguments

Defendants' last argument in support of its motion is that the Minutes are protected by the Rhode Island Constitution's Speech in Debate Clause, which "makes inadmissible statements state and municipal officials made while carrying out their legislative duties." R.I. Const. art. VI, § 5; ECF No. 28 at 21–23. They acknowledge this Court is not bound by the Rhode Island constitutional provision but suggest the Court consider this provision and statutory law on privileges under principles of comity. ECF No. 32 at 21–22. Plaintiffs contend the Speech in Debate Clause does not apply, and that even if it does, that waiver of the privilege is still the required outcome. ECF No. 30 at 34–39.

"The speech in debate clause contained in Rhode Island's Constitution confers a privilege on legislators from inquiry into their legislative acts or into the motivation for actual performance of legislative acts that are clearly part of the legislative process." *Cranston Police Retirees Action Comm. v. City of Cranston by and through*

---

[2] This ruling in no way represents the Court's decision on the evidentiary value or admissibility of the Minutes in later proceedings of this case.

*Strom*, 208 A.3d 557, 588 (R.I. 2019) (quoting *Holmes v. Farmer*, 475 A.2d 976, 983 (R.I. 1984)). The R.I. Supreme Court has extended the privilege to municipal officials. *Maynard v. Beck*, 741 A.2d 866, 872 (R.I. 1999). While "[q]uestions of privilege in federal question cases are governed by federal law . . . [a]s a principle of comity, federal courts will recognize state evidentiary privileges as a matter of federal common law where this can be accomplished at not substantial cost to federal procedural and substantive policy." *Huffman v. City of Boston*, No. 21-10986-ADB, 2023 WL 8720082, at *3 (D. Mass 2023) (citations omitted). As that court remarked, "[t]he use of federal privileges is especially relevant in civil rights cases against state actors because state authorities could insulate themselves by developing privileges if state law controlled." *Id.*

This Court looks to the First Circuit's discussion on the deliberative process privilege in *Texaco P.R.* for guidance since, like the Speech in Debate Clause, "[t]he [deliberative process] privilege rests on a policy of affording reasonable security to the decision-making process within a government agency." 60 F.3d at 884–85. As the Circuit has stated, "where the documents sought may shed light on alleged government malfeasance, the privilege is routinely denied." *Id.* at 885 (internal quotations omitted). In *Texaco*, the Circuit affirmed a district court's decision to deny applying the deliberative process privilege after it found that one party's interest in due process and fairness outweighed the other's interest in shielding its deliberations from public view. *Id.* This Court similarly finds that Plaintiffs' interest in due process

17

and fairness outweighs the Defendants' interest in shielding the executive session Minutes wherein Town officials discussed the taking of the Johnson's Pond property.

Additionally, the State Court has been presented with the same issue of whether the Minutes should be sealed and subject to a protective order. Since the State Court may determine—after first determining a jurisdictional question—whether the Rhode Island Constitution's Speech in Debate Clause privilege applies to the Minutes, this Court will refrain from being the first Court to consider this argument. If, however, the State Court rules on whether the Minutes are protected by this state constitutional principle, this Court may, consistent with principles of comity, revisit this issue.

## IV.  CONCLUSION

For all of these reasons, the Court DENIES Defendants' Motion to Seal and for a Protective Order.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

11/04/2025