# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

SOSCIA HOLDINGS, LLC; STRUCTURES AT JOHNSON'S POND, LLC; BOATING AT JOHNSON'S POND, LLC; WATERFRONT AT JOHNSON'S POND, LLC; COMMON AREA AT JOHNSON'S POND, LLC; and LAND AT JOHNSON'S POND, LLC,

    Plaintiffs,

  v.

TOWN OF COVENTRY; TOWN OF COVENTRY, by and through its Finance Director Robert J. Civetti, in his Official Capacity; HILLARY V. LIMA, in her Official Capacity as Council President and Individually; JAMES E. LEBLANC, in his Official Capacity as Council Vice President and Individually; JONATHAN J. PASCUA, in his Official Capacity as Councilmember and Individually; ALISA M. CAPALDI, in her Official Capacity as Councilmember and Individually; KIMBERLY A. SHOCKLEY, in her Official Capacity Councilmember and Individually; JENNIFER M. LUDWIG, in her Official Capacity as Councilmember and Individually; DANIEL O. PARILLO, JR., in his Official Capacity as Town Manager and Individually; STEPHEN J. ANGELL, ESQ., in his Official Capacity as Town Solicitor and Individually,

    Defendants.

:
:
:
:
:
: Case: 1:25-cv-00274-MRD-AEM
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR INJUNCTIVE AND DECLARATORY RELIEF

Defendants the Town of Coventry (the "Town") and the Town of Coventry, by and through

its Finance Director Robert J. Civetti, in his Official Capacity, Hillary V. Lima, in her official

capacity as Council President and individually, James E. LeBlanc, in his official capacity as

Council Vice President and individually, Jonathan J. Pascua, in his official capacity as Councilmember and individually, Alisa M. Capaldi, in her official capacity as Councilmember and individually, Kimberly A. Shockley, in her official capacity as Councilmember and individually, Jennifer M. Ludwig, in her official capacity as Councilmember and individually, Daniel O. Parillo, Jr., in his official capacity as Town Manager and individually, and Stephen J. Angell, Esq., in his official capacity as Town Solicitor and individually (collectively, "Defendants") hereby object to Plaintiffs' Motion for Injunctive and Declaratory Relief (the "Motion"), ECF No. 45.[1]

## INTRODUCTION

The Former Property Owners' operative complaint seeks a single species of relief:  money damages in the form of "just compensation" under 42 U.S.C. § 1983 for an alleged unconstitutional taking of their property.  *See generally* Pls.' First Am. Compl.,  ECF No. 34.  The Former Property Owners deliberately reframed their federal court complaint in this way in an effort to overcome the Town's abstention arguments.  The Former Property Owners now ask this Court to ignore their own reframing and to afford them extraordinary equitable relief—an injunction and a declaratory judgment—to restrain a pending condemnation action in Rhode Island Superior Court.  Their request attempts to convert a straightforward federal damages action into a vehicle to supervise, interfere with, and effectively stay a constitutionally valid state court condemnation proceeding.

At bottom, the Former Property Owners' Motion for Injunctive and Declaratory Relief, ECF No. 45, represents a transparent attempt to circumvent Rhode Island's condemnation process and to manipulate this Court's jurisdiction to prevent the Town from obtaining a final determination of just compensation in a proper forum.  The Superior Court has already determined

---

[1]    Plaintiffs are the former owners of the property subject to condemnation.  In the Superior Court Action, they are referred to as the Former Property Owners.  For the sake of clarity, Defendants also refer to them as the Former Property Owners herein.  The Former Property Owners have sought expedited treatment of their Motion but, as set forth herein, there is no need for expedited relief here.

that it has jurisdiction to entertain the Town's pending Motion for Entry of Final Judgment or, Alternatively, Assignment for Trial. The Former Property Owners cannot relitigate that ruling in this Court or to seek to enjoin Defendants from participating in proceedings over which the Superior Court has already determined it has jurisdiction to conduct.

The Former Property Owners' motion should be denied for the following reasons.

*First*, the Former Property Owners do not seek declaratory or injunctive relief in their operative complaint.

*Second*, the All Writs Act is expressly limited by the Anti-Injunction Act, and the Anti-Injunction Act prohibits this Court from enjoining the State Court Action.

*Third*, even if there were not a prohibition on issuing such an injunction, principles of abstention and comity clearly militate against issuance of such an injunction here.

*Fourth*, the Former Property Owners' motion is premised entirely on a misunderstanding or misreading of the United States Supreme Court's decision in *Knick v. Township of Scott, Pennsylvania,* 588 U.S. 180 (2019). *Knick* does not forbid, as the Former Property Owners suggest, the state court from adjudicating the Former Property Owners' rights pursuant to the state condemnation statute at issue.

## BACKGROUND

Last year, the Town began the process of acquiring property then owned by the Former Property Owners by eminent domain pursuant to R.I. Gen. Laws § 24-1-1, et seq. After the Town passed a series of resolutions authorizing the condemnation of the property, the Town filed a miscellaneous petition in Rhode Island Superior Court captioned *In re Town of Coventry*, KM-2024-0578 (the "State Court Action"), instituting an *in rem* proceeding pursuant to R.I. Gen. Laws

3

§ 24-1-3, for purposes of depositing into the Court's registry a sum of estimated just compensation for the condemned Property.

On June 28, 2024, the Superior Court (Licht, J.) held a hearing on the miscellaneous petition, received and reviewed an affidavit and report from the Town's appraiser, approved a condemnation order, and accepted a deposit of $157,000 into the Court's registry, as the estimated just compensation for the Property. That same day, the Superior Court entered a Condemnation Order that provided, *inter alia:*

> By exercise of eminent domain, the Town of Coventry acquired in fee simple absolute all right, title, and interest in property in the Town of Coventry commonly known as Johnson's Pond, the dam at Johnson's Pond, and a parcel of open space land immediately downstream of the pond and dam.

**Ex. 1**, Condemnation Order ¶ 1. The Condemnation Order further provided:

> Based on Petitioner's Statement, including its exhibits, and on evidence submitted to the Court in support thereof, in particular the Affidavit of Thomas S. Andolfo, MAI, SRA, AI-GRS, the Court finds for purposes of the deposit of compensation for property taken in the Court's registry in accordance with R.I. Gen. Laws §§ 32-4-8 and 24-1-3 that Petitioner's sum of estimated just compensation of $157,000 is sufficient.

*Id.* ¶ 3.

The Condemnation Order ordered that the Town deposit the sum of $157,000 into the Court's registry and provided that

> whereupon, without further order, and by operation of law in accordance with R.I. Gen. Laws §§ 32-4-8 and 24-1-3, title to the Acquired Property in fee simple absolute shall vest in the Town of Coventry, and the Acquired Property shall be deemed to be condemned and taken for the use of the Town of Coventry, and the right to just compensation for the Acquired Property shall vest in the persons entitled thereto.

*Id.* ¶ 4. In accordance with the Condemnation Order, the Town deposited the sum of $157,000 into the Court's registry.

By statute, the Superior Court is required to keep the State Court Action open for a period of at least one year so that:

> Any owner of, or person entitled to any estate or right in, or interested in any part of the real property so taken, . . . may, within one year from the time the sum of money estimated to be just compensation is deposited in the superior court to the use of the persons entitled thereto, apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury.

R.I. Gen. Laws § 24-1-8.

Days before the clear statutory deadline for petitioning the Superior Court for an assessment of damages, the Former Property Owners chose to ignore it, raced to this courthouse, and filed this federal action.

In their original Complaint, the Former Property Owners sought, *inter alia,* declaratory and injunctive relief. Pls.' Compl. ¶ 19, ECF No. 1 (invoking this Court's jurisdiction under the Declaratory Judgment Act); *id.* ¶¶ 397-400 (setting forth a cause of action under the Declaratory Judgment Act); *id.* at 48 (seeking injunctive relief). In response, the Town filed a Motion to Dismiss or Abstain. Defs.' Mot. Dismiss or Abstain, ECF No. 23. The Town argued, *inter alia,* that Plaintiffs' equitable claims and their claims for injunctive and declaratory relief should be dismissed. *Id.* at 3-4.

Before this Court's September 5, 2025 status conference (apparently in an effort to convince this Court not to abstain), the Former Property Owners filed a First Amended Complaint, ECF No. 34, that expressly and purposefully withdrew their claims for injunctive and declaratory

relief.[2]  At the conference, their counsel confirmed that the amendment "removed all allegations related to the state court proceeding."  The Former Property Owners' First Amended Complaint deleted the Declaratory Judgment Act as a basis for the Court's jurisdiction, eliminated their cause of action under the Declaratory Judgment Act, and abandoned their request for injunctive relief.

Having made that choice at the pleading stage, the Former Property Owners now attempt to resurrect and reclaim injunctive and declaratory remedies by motion rather than by requesting to once again amend their complaint so they may seek relief they deliberately abandoned when faced with Defendants' Motion to Dismiss or Abstain.

The State Court Action that the Former Property Owners seek to enjoin remains pending. On July 28, 2025, the Town filed a Motion for Entry of Judgment or, Alternatively, Assignment for Trial in the State Court Action.  The Former Property Owners purported to file a special appearance in the State Court Action and submitted an Objection to the Town's Motion for Entry of Judgment or, Alternatively, Assignment for Trial, and a Rule 11 Motion for Sanctions.

After extensive briefing and argument on November 7, 2025, the Superior Court issued a written decision concluding that it had jurisdiction to hear the Town's Motion for Entry of Judgment or, Alternatively, Assignment for Trial.  More specifically, the Superior Court found that (1) the Town's reliance on R.I. Gen. Laws § 32-4-8 and the procedures set forth in R.I. Gen. Laws § 24-1-1, *et seq*., was proper because the Town acquired the property by eminent domain for public conservation and recreation purposes, **Ex. 2**, Nov. 7, 2025 Decision at 9-12; (2) the Court validly exercised jurisdiction and ordered the deposit of funds into the Court's registry, *id*. at 13; (3) the Superior Court Action remains open and the Superior Court continues to have jurisdiction,

---

[2]  During the September 5, 2025 status conference, the Court directed Defendants that there was no need to file a response to the Amended Complaint now and advised the parties that the Court would schedule a status conference to set a briefing schedule.  *See* Defs.' Obj. to App. for Entry of Default at 1-3, ECF No. 43.

*id*. at 13-14; (4) under R.I. Gen. Laws § 24-1-9, "the [Superior] Court has jurisdiction to hear the Town's motion for entry of judgment," *id*. at 13; and (5) under R.I. Gen. Laws § 24-1-9, the Superior Court has jurisdiction to hear the Town's alternative motion for an order assigning the case to trial. *Id*. at 15.

The parties have submitted extensive briefing on that motion in the Superior Court, and a hearing on that motion is scheduled for Wednesday, December 17, 2025. The Former Property Owners' motion seeks to do something remarkable: enjoin that hearing and any other attempt by the Superior Court to adjudicate their rights in the ongoing condemnation proceedings.

## ARGUMENT

### I. The Former Property Owners' requests for declaratory and injunctive relief are not properly before the Court.

The Former Property Owners' motion demands expedited declaratory and injunctive relief, but the Former Property Owners seek no such relief in their operative complaint. The Former Property Owners not only omitted any claim for such relief from their First Amended Complaint, they affirmatively amended their complaint for the specific purpose of withdrawing those claims in an attempt to sidestep Defendants' abstention arguments. Now having made the strategic choice to strip their operative pleading of any request for declaratory or injunctive relief, they cannot circumvent that decision by asking this Court to adjudicate equitable claims when they are raised only by motion and abandoned in the operative complaint.

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, "any court of the United States, upon the filing of an *appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201 (emphasis added). A request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. *SEC v. Novinger*, 96 F.4th 774, 780-81 (5th Cir. 2024); *Arizona v. City of*

7

*Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014); *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc*., 560 F.3d 935, 943 (9th Cir. 2009).

Conversely, it is well settled that requests for declaratory judgment are not properly before the Court if raised only by motion.  *Novinger*, 96 F.4th at 780 n.15 (cataloging the "legions of district and magistrate judges" who have so held); *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia*, 560 F.3d at 943 (denying "motion for declaratory judgment" because such a motion is "inconsistent with the Federal Rules" (quoting *Int'l Broth. Of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995))).

In so holding, courts have recognized that a motion is not a "pleading" within the meaning of the Declaratory Judgment Act.  *Novinger*, 96 F.4th at 780-81.  Pleadings are defined by Fed. R. Civ. P. 7 and "[n]o other paper will be considered a pleading except those specifically named in Rule 7(a).  A motion in any other form cannot stand as a pleading." *Id*. at 781 (quoting 2 James W. Moore et al., Moore's Federal Practice § 7.02[1][b], at 7-5 (3d ed. 2023)).

The Former Property Owners cannot seek an injunction by motion for similar reasons. Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions upon notice.

Under the claims-not-pled doctrine, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pacific Radiation Oncology, LLC v. The Queen's Medical Center*, 810 F.3d 631, 633 (9th Cir. 2015).  Numerous district courts in this Circuit have followed the well-settled principle laid down by the Ninth Circuit in *Pacific Radiation Oncology, LLC*.  *See, e.g.*, *Beers v. N.H. State Prison Warden*, No. 20-cv-968-LM, 2025 U.S. Dist. LEXIS 194633, at *4-5 (D.N.H. Aug. 25, 2025); *P.R. Soccer League NFP v. Futbol*, No. 23-1203 (RAM), 2024 U.S. Dist. LEXIS 8656, at *5

8

(D.P.R. Jan. 12, 2024); *Kosilek v. Misi*, 630 F. Supp. 3d 328, 334 (D. Mass. 2022). As have numerous courts of appeal. *See, e.g., Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed *through the illegality alleged in the complaint*." (emphasis added)); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) ("[The plaintiff] had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his [operative] complaint.")).

The Former Property Owners did not omit injunctive or declaratory relief from the operative complaint by oversight; they affirmatively amended their complaint to withdraw those claims in an attempt to avoid abstention arguments and in an attempt to cabin this case to damages (just compensation). In doing so, they not only implicitly represented to the Court and to Defendants that their operative lawsuit is a damages-only action and that no equitable relief against the State Court Action is being sought in this Court, they expressly made those representations to this Court in conference and to the Superior Court on the record. **Ex. 3**, Hearing Tr. (Sept. 30, 2025) at 5:22-25 ("We filed an amended complaint in the federal court. There are no claims in that complaint, the amended complaint, other than seeking just compensation under the 5th and 14th Amendment.").

Having intentionally amended their complaint to withdraw all requests for declaratory and injunctive relief, the Former Property Owners cannot circumvent that strategic decision by asking

9

this Court to adjudicate unpled equitable claims raised only by motion.  The Rules require that any such relief be grounded in the operative pleadings, not a belated effort to have it both ways.

**II.      The Former Property Owners' reliance on the All Writs Act is misplaced.**

The Former Property Owners premise their request for expedited declaratory and injunctive relief on the All Writs Act.

The All Writs Act authorizes district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Importantly, the power vested in federal courts by the All Writs Act to enter injunctive relief is limited by the Anti-Injunction Act and various equitable conditions, including abstention principles. *See In Re G.S.F. Corp.,* 938 F.2d 1467, 1475 n.6 (1st Cir. 1991)*, abrogated in part on other grounds, Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992).

Here, the Anti-Injunction Act bars the Former Property Owners' requested relief and no exception to that prohibition applies.

**A.  The Anti-Injunction Act bars the Former Property Owners' requested relief.**

The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits this Court from providing the relief the Former Property Owners seek.

The statute provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  The Anti-Injunction Act is considered a "historical mechanism . . . for achieving harmony in one phase of our complicated federalism by avoiding needless friction between two systems of courts having potential jurisdiction over the same subject-matter."  *Casa Marie, Inc. v. Superior Ct. of P.R.*, 988 F.2d 252, 261 (1st Cir. 1993) (quoting *Hale* v. *Bimco Trading, Inc.*, 306 U.S. 375, 378 (1939)). The statute "is a necessary concomitant of the [decision of the Framers of the Constitution] to

10

authorize, and Congress' decision to implement, a dual system of federal and state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)).  The Anti-Injunction Act's "core message is one of respect for state courts," and it "commands that those tribunals 'shall remain free from interference by federal courts.'"  *Id.* (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'r's*, 398 U.S. 281, 282 (1970)).

Boiled down to its essence, the Anti-Injunction Act "says that federal courts cannot by injunction govern the conduct of state litigation," and that "federal courts must abstain from disrupting ongoing state litigation in all but the most extraordinary situations." *Mannix v. Machnik*, 244 F. App'x 37, 39 (7th Cir. 2007).  In doing so, the Act creates a presumption in favor of permitting parallel actions in state and federal court.  *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002), *as amended on denial of reh'g* (May 15, 2002).  Any doubts as to the appropriateness of an injunction should be "resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (plurality opinion) (quoting *Atl. Coast Line R. Co.*, 398 U.S. at 297); *accord Casa Marie, Inc.*, 988 F.2d at 261.

The Anti-Injunction Act bars not only requests for injunctive relief, but also requests for declaratory relief that "would have essentially the same effect as an injunction."  *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988) (quoting 17 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 4222 at 316 (2d ed. 1987)); *see also Martingale LLC v. City of Louisville*, 361 F.3d 297, 303 (6th Cir. 2004) ("[W]here, as here, declaratory relief would have the same practical effect as an injunction, the Anti–Injunction Act precludes the court from granting a declaratory judgment."); *Texas Emps' Ins. Ass'n. v. Jackson*, 862 F.2d 491, 506 (5th Cir. 1988) ("Accordingly, we follow the weight of authority in

11

holding that '[i]f an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction.'" (quoting Charles Alan Wright, Arthur Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4419 at 177)).

It is further well settled that the Anti-Injunction Act "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."  *Atl. Coast Line R. Co.*, 398 U.S. at 287; *accord Gloucester Marine Rys. Corp.*, 848 F.2d at 15.

Here, the Former Property Owners' requested relief falls squarely within the judicial action prohibited by the Anti-Injunction Act.  The Former Property Owners ask this Court to accomplish indirectly what the Anti-Injunction Act squarely forbids directly: to halt the ongoing state-court proceedings.  Their effort to recast the requested relief as an injunction against the Defendants, rather than against the state court itself, does not change the analysis.  Courts look to the practical effect of the order, and where, as here, the effect would be to stay or restrain a state-court action, the Anti-Injunction Act applies and bars the injunction.  The Supreme Court has made clear that the Act cannot be circumvented by such creative framing.  The Anti-Injunction Act prohibits such intrusion into the state court proceedings.

### B.  No exception to the Anti-Injunction Act applies.

The Anti-Injunction Act enumerates three exceptions, each of which must be narrowly construed.  Federal intervention in state proceedings under anti-injunction statute is limited to three sets of circumstances:  (1) "as expressly authorized by Act of Congress," (2) "where necessary in aid of [the court's] jurisdiction," and (3) "to protect or effectuate [the court's] judgments."  *Wulp v. Corcoran*, 454 F.2d 826, 831 n.5 (1st Cir. 1972) (quoting 28 U.S.C. § 2283).  Because "the statutory prohibition against such injunctions in part rests on the fundamental

12

constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Atl. Coast Line R. Co*, 398 U.S. at 287.

### 1. The "expressly authorized" exception does not apply here.

The Former Property Owners' Motion for Declaratory and Injunctive Relief argues that the "expressly authorized" exception to the Anti-Injunction Act applies because they have asserted a claim under 42 U.S.C. § 1983. But the assertion of a claim under 42 U.S.C. § 1983, in itself, is insufficient to trigger the expressly authorized exception. Rather, the claim under 42 U.S.C. § 1983 must seek equitable relief, which the Former Property Owners' claim does not.

In *Mitchum v. Foster*, 407 U.S. 225 (1972), the Supreme Court recognized that Congress, in enacting 42 U.S.C. § 1983, expressly "authorize[d] a 'suit in equity' to redress 'the deprivation,' under color of state law, 'of any rights, privileges, or immunities secured by the Constitution.'" *Id.* at 226 (quoting 42 U.S.C. § 1983). In that case, the plaintiff, relying on 42 U.S.C. § 1983, filed a federal court complaint seeking injunctive and declaratory relief against the state court proceedings, on the ground that Florida laws were being unconstitutionally applied by the state court so as to cause him great and irreparable harm. *Id.* at 227. Because § 1983 authorizes, in appropriate circumstances, a suit in equity, the Supreme Court concluded that the Plaintiff's § 1983 claim, which sought injunctive and declaratory relief, was sufficient to overcome the Anti-Injunction Act. *Id.* at 242-43.

However, unlike the plaintiff in *Mitchum*, the Former Property Owners here cannot invoke 42 U.S.C. § 1983 as an "expressly authorized" vehicle to bypass the Anti-Injunction Act because they are no longer pursuing any § 1983 claim in equity. Having deliberately amended their pleading to strip out all requests for injunctive or declaratory relief to avoid the Town's abstention arguments, the Former Property Owners have now confined their § 1983 cause of action to a

13

demand for "just compensation" under the Fifth and Fourteenth Amendments. Their counsel confirmed this reading of their operative complaint in state court. **Ex. 3**, Hearing Tr. (Sept. 30, 2025) at 5:22-25 ("We filed an amended complaint in the federal court. There are no claims in that complaint, the amended complaint, other than seeking just compensation under the 5th and 14th Amendment."). Having made the strategic choice to forego equitable relief, the Former Property Owners cannot now recharacterize their damages-only § 1983 claim as a basis for enjoining either the Defendants or the state proceedings; they cannot have it both ways.

### 2. The "necessary in aid of jurisdiction" exception does not apply.

The "necessary in aid of jurisdiction" exception is typically applied either *in rem* proceedings, or in cases where a state-court proceeding would interfere with ongoing federal oversight of a case. *See, e.g., Vendo Corp.*, 433 U.S. at 641-42; *James v. Bellotti*, 733 F.2d 989, 993 (1st Cir. 1984).

With respect to *in rem* proceedings, the First Circuit has explained that the "necessary in aid of" language in the Anti-Injunction Act has been read as incorporating a "historical exception for cases in which a federal court obtains *in rem* jurisdiction prior to a state-court suit." *James*, 733 F.2d at 993 (1st Cir. 1984) (citing *Vendo Co.*, 433 U.S. at 641). Here, the opposite is true. The state court obtained *in rem* jurisdiction more than a year ago when the Town initiated the condemnation proceedings.

There is nothing here that would support the conclusion that the state condemnation proceedings threaten to interfere with this Court's ability to resolve the claims properly before it. The Superior Court condemnation proceeding does not seek to adjudicate the Former Property Owners' § 1983 claims. Rather, the state court condemnation proceeding seeks to determine just

14

compensation under a state statute over which the Superior Court has already concluded it has jurisdiction.

Where, as here, state and federal courts have concurrent jurisdiction, abstention and comity are appropriate, not injunctions.

### 3.    The "relitigation exception" is, at best, premature.

The Anti-Injunction Act's third exception, known as the "relitigation exception," is designed to protect final federal judgments against undermining by subsequent state litigation. *Smith*, 564 U.S. at 306 (the relitigation exception "is designed to implement 'well-recognized concepts' of claim and issue preclusion" (quoting *Chick Kam Choo*, 486 U.S. at 147)).    The exception "authorizes an injunction to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'"  *Id*. at 306-07 (quoting *Chick Kam Choo*, 486 U.S. at 147).

In applying this exception, the federal courts "have taken special care to keep it 'strict and narrow.'"  *Id*. (quoting *Chick Kam Choo*, 486 U.S. at 148).    That is because "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.'"  *Id*. at 307 (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002)).    "Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court."  *Id*.    The Supreme Court has cautioned that "issuing an injunction under the relitigation exception is resorting to heavy artillery."  *Id*.

Here, the relitigation exception to the Anti-Injunction Act has no application because this Court has not entered any final judgment on Plaintiffs' takings claim or on the amount of just compensation.    The "relitigation" exception to the Anti-Injunction Act is, by definition, an exception that protects a federal court's adjudications from being undermined in state court; it does

15

not authorize a federal court to freeze state proceedings before the federal court has decided the merits.

This Court has not issued any merits determination on the issue of just compensation. Nor has this Court ruled on Defendants' abstention motion or motion to dismiss.[3] Thus, there is nothing for the federal court to "protect or effectuate," so the relitigation exception by its own terms cannot apply. The Former Property Owners' complaint about the Town "snatching the apple" is simply a complaint about concurrent or subsequent state litigation. *See* Pls.' Mot. at 25. But the Supreme Court has made clear that the relitigation exception is "strict and narrow," and is triggered only when a federal judgment exists and the state proceeding threatens to relitigate an issue or claim actually decided by that judgment. *Smith*, 564 U.S. at 306-07. A federal court cannot use the exception to pre-clear its own jurisdiction or to lock in a federal forum before it has reached any merits decision at all. Plaintiffs may want to "take their first bite" on just compensation in federal court, but § 2283 does not guarantee them that opportunity.

The only ruling this Court has rendered thus far is its November 4, 2025 Memorandum and Order, ECF No. 40, which concerned questions concerning the attorney-client privilege *under federal common law* and whether to afford comity to any state court application of the Speech-in-Debate clause of the Rhode Island Constitution. The Town does not seek to relitigate those issues in the state condemnation proceeding. Rather, in the state condemnation proceeding, the state court will need to determine whether the attorney-client privilege, *under state law*, and the Speech-in-Debate clause of the Rhode Island Constitution protects the Executive Session Minutes. This Court did not address either of those questions in its November 4, 2025 Memorandum and Order.

---

[3]     The Court instructed the parties that it will hold a status conference at the appropriate time and set a briefing schedule on the Motion to Dismiss or Abstain and set a date to otherwise respond or answer the First Amended Complaint.

In fact, recognizing that the issue concerning the application of the Speech-in-Debate clause of the Rhode Island Constitution is one of first impression, this Court expressly "refrain[ed] from being the first Court to consider this argument." Mem. & Order at 18, ECF No. 40. Far from deciding the issue, this Court wrote that if "the State Court rules on whether the Minutes are protected by this state constitutional principle, this Court may, consistent with principles of comity, revisit this issue." *Id.*[4]

Accordingly, at this stage, there is nothing for the state court to "relitigate." The Former Property Owners' Motion makes clear that they are not seeking to overturn the Superior Court's condemnation order. Pls.' Mot. at 27. Rather, they seek declaratory and injunctive relief so that they can "exercise their right to obtain 'just compensation' under *Knick* and § 1983 and an adjudication on the rest of the claims in the First Amended Complaint in this Court. *Id.* In other words, the Former Property Owners ask this Court to decide now whether to give preclusive effect to a later ruling by the Superior Court. If the Town were to later ask this Court to recognize the preclusive effect of some future Superior Court judgment, the Former Property Owners will have a full opportunity to litigate that issue at that time. Their fear that some future Superior Court judgment might be given preclusive effect does not give them any right to a preemptive anti-suit injunction.

---

[4]    The Former Property Owners inaccurately summarize the status of the Town's Motion to Seal and for a Protective Order in the State Court Action. *See* Pls.' Mot. at 43. The Former Property Owners suggest that the Superior Court decided not to rule on that motion and that the Defendants, in turn, commenced a separate declaratory judgment action in Superior Court seeking a ruling on the application of the Speech-in-Debate clause of the Rhode Island Constitution to the facts here. *Id.* That is not fully accurate. In conference, the Superior Court acknowledged that regardless of its ruling on the Speech-in-Debate clause issue, the losing party will likely to raise that issue on appeal to the Rhode Island Supreme Court. Recognizing that an adjudication of the Speech-in-Debate clause issue by the Supreme Court is necessary here, the Superior Court informed the parties that it wanted the issue presented in a manner where principles of constitutional avoidance would not result in an adjudication leaving open that important question. It was then that the Defendants suggested proceeding with a declaratory judgment action; the Superior Court indicated its willingness to entertain the question in that posture. The Complaint for Declaratory Judgment was then filed.

### C. *Younger* abstention and comity counsel against interference.

Even if the Former Property Owners had not withdrawn their claims for equitable relief under 42 U.S.C. § 1983, *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny would require this Court to refrain from interests the ongoing state condemnation proceeding, which involves important state interests. The Former Property Owners sought to avoid that result by withdrawing their claims for equitable relief but if they were to resurrect those claims, *Younger* would require this Court to abstain.

It is well settled that "the fact that an injunction may issue . . . does not mean that it must issue." *Chick Kam Choo*, 486 U.S. at 151 (emphases omitted). Even when an exception to the Anti-Injunction Act applies, the federal court may abstain from issuing the requested injunction. *Casa Marie, Inc.*, 988 F.2d at 267 n.17 (citing *Younger*, 401 U.S. at 54).

The Supreme Court recognized in *Younger* that "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43. Under *Younger*, federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism.

In *Younger*, the Supreme Court held that a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54. In later cases, the Supreme Court has held that the *Younger* doctrine is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

### 1. *Younger* abstention is appropriately applied in takings cases.

*Younger* abstention is appropriately applied in takings cases and remains available in those cases.  As Justice Breyer, writing then for the First Circuit, recognized "[t]he lower courts have held unanimously, since 1975, that this category includes eminent domain proceedings."  *Duty Free Shop, Inc. v. Administracion de Terrenos*, 889 F.2d 1181, 1182 (1st Cir. 1989); *accord Stockler v. Detroit*, No. 90-1793, 1991 U.S. App. LEXIS 15502, at *10 (6th Cir. July 8, 1991); *Brandywine Estates LP v. Lucas Cnty*., No. 3:15-cv-00884, 2015 U.S. Dist. LEXIS 119993, at *10 (N.D. Ohio Sep. 9, 2015); *M&A Gabaee v. Cmty. Redevelopment Agency of L.A*., 419 F.3d 1036, 1039 n.2 (9th Cir. 2005); *Calhoun Realty Inc. v. City of Cincinnati*, 311 F. Supp. 2d 640, 641-42 (S.D. Ohio 2003).   And, as the First Circuit further recognized, "the Supreme Court seems to have ratified this lower court view, at least by negative inference."  *Duty Free Shop, Inc.,* 889 F.2d at 1182 (citing *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237-39 (1984) (holding that *Younger* abstention was not appropriate because eminent domain proceeding had not yet begun when plaintiffs commenced their federal court action)).

Courts have continued to apply *Younger* abstention in takings cases even after the Supreme Court decided *Knick.  See, e.g., Serna v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, C.A. No. 22-cv-02998-DDD-MDB, 2024 U.S. Dist. LEXIS 73712, at *12-14 (D. Colo. Feb. 28, 2024) (abstaining, under *Younger*, from exercising jurisdiction over plaintiff's Section 1983 claims where state condemnation proceedings were ongoing and finding that *Knick* was "inconsequential to this case"), *report and recommendation adopted*, No. 22-CV-02998-DDD-MDB, 2024 U.S. Dist. LEXIS 73714 (D. Colo. Mar. 29, 2024).

19

### 2.  The requirements for *Younger* abstention are met here.

When noncriminal judicial proceedings involve important state interests, *Younger* abstention is warranted so long as the so-called *Middlesex* factors weigh in favor of abstention and no exceptions to *Younger* apply.  *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191 (1st Cir. 2015).  In *Middlesex*, the Supreme Court identified several factors that should lead to abstention under *Younger*:  (1) the existence of an ongoing state judicial proceeding; (2) which implicates important state interests; and (3) which provides an adequate opportunity to raise constitutional challenges.  457 U.S. at 432.  Notable exceptions, however, are if bad faith, harassment or some extraordinary circumstances would make abstention inappropriate.  *Id.* at 435.

In *Aaron v. Target Corp.*, the Eighth Circuit, applying these same standards, held that the district court's decision not to abstain in an eminent domain action under *Younger* was an abuse of discretion.  357 F.3d 768, 779 (8th Cir. 2004).  In that case, the City of St. Louis's Redevelopment Authority exercised its power of eminent domain to condemn property on which a Target store was located.  *Id.* at 772.  The Redevelopment Authority filed a condemnation action against the property owners and Target in state court.  *Id.*  While that proceeding was ongoing, the property owners sought a temporary restraining order in federal court.  *Id.*  The Redevelopment Authority opposed that motion and argued that the court should abstain.  *Id.* at 772-73.  The district court declined to abstain and issued an order restraining the Redevelopment Authority from proceeding with the condemnation.  *Id.* at 773.

On appeal, the Eighth Circuit held that the district court abused its discretion by declining to abstain and instead proceeding to enjoin the parties from proceeding with the condemnation.  *Id.* at 779.

In evaluating the *Middlesex* factors, the Eighth Circuit concluded that there was an ongoing state judicial proceeding. There, the Redevelopment Authority had exercised a condemnation proceeding against the property and made a good faith offer to purchase the property. *Id.* at 775. By statute, the property owners had until April 10, 2003 to accept that offer but approximately a week before the expiration of the offer, the property owners filed the federal suit. *Id.* at 775-76. The Eighth Circuit found that the second *Middlesex* requirement—that the state proceeding involve an important state interest—was readily satisfied, given that eminent domain proceedings have long been recognized as an important state interest. *Id.* at 777. The Eighth Circuit further found that the third *Middlesex* requirement—that the state proceedings are adequate—was satisfied, particularly where the property owners had an opportunity to raise their constitutional challenge in state court. *Id.* The Eighth Circuit further reasoned:

> Federal abstention in this case would permit Missouri's condemnation procedures to run their course. Eminent domain is an appropriate tool to help neighborhoods remain economically viable, attract industry, and encourage future growth. . . . Missouri has adequate judicial procedures for consideration of the parties' competing interests. Land use policy is an area in which federalism principles are particularly strong.

*Id.* at 778.

Turning to the exceptions to *Younger*, the Eighth Circuit concluded there was insufficient evidence to demonstrate any bad faith or extraordinary circumstances that would make abstention inappropriate. *Id.* at 779. Accordingly, the circuit court concluded that the district court erred in declining to abstain under *Younger*. Other courts, following *Aaron*, have also found abstention proper in eminent domain cases for similar reasons. *See, e.g., M&A Gabaee*, 419 F.3d at 1041; *Osher v. Land Clearance for Redevelopment Auth. of the City of St. Louis*, No. 4:16CV1674HEA, 2016 U.S. Dist. LEXIS 179530, at *5-6 (E.D. Mo. Dec. 29, 2016), *aff'd sub nom. Osher v. City of*

*St. Louis, Missouri*, 903 F.3d 698 (8th Cir. 2018); *Franco v. District of Columbia*, 422 F. Supp. 2d 216, 222-23 (D.D.C. 2006).

Here, if the Former Property Owners' First Amended Complaint were construed as seeking to enjoin the state court proceedings, *Younger* abstention would apply. *See Pelfresne v. Vill. of Rosemont*, 952 F. Supp. 589, 592-93 (N.D. Ill. 1997) (reaching the same conclusion in another eminent domain case and therefore abstaining under *Younger*). What the Former Property Owners seek to obtain by injunction or declaration is equally barred by *Younger*. As in *Aaron*, each of the *Middlesex* factors are met here. The State Court Action was pending for nearly a year when the Former Property Owners filed this federal suit. The State Court Action undeniably concerns an important state interest, particularly given a long line of decisions, including those from the First Circuit, which have concluded that eminent domain proceedings implicate an important state interest. And finally, the Rhode Island Superior Court is an adequate forum where constitutional challenges may be brought. When proceedings begin in Superior Court, constitutional claims may be raised and decided, and adverse decisions may be appealed to the Rhode Island Supreme Court. As in *Aaron*, there is no evidence to demonstrate any bad faith or extraordinary circumstances that would make abstention inappropriate here.

For all of these reasons, if the Former Property Owners' First Amendment Complaint were construed as seeking to enjoin the State Court Action or if the Court were to consider the requests for injunctive and declaratory relief in the motion, the Court should also abstain under *Younger*.

### D. *Wilton/Brillhart* abstention is warranted here.

The Former Property Owners have also withdrawn all of their claims for declaratory relief but if they were permitted to seek such relief in the absence of any such request in their First Amended Complaint, *Wilton/Brillhart* abstention would also be warranted here.

"Under what is known as the *Wilton/Brillhart* abstention doctrine, district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n ex rel. Shine*, 687 F. Supp. 2d 12, 19 (D.R.I. 2010) (quoting *R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

Here, in the State Court Action, the Superior Court will need to make a determination on the assessment of just compensation damages. That determination necessarily implicates the questions for which the Former Property Owners now purport to seek declaratory relief. If this Court were to preempt the Superior Court and make those declarations, it would necessarily interfere with the Superior Court's determination of those same questions for which the Superior Court has jurisdiction. In these circumstances, as the Supreme Court has cautioned, interference with the orderly and comprehensive disposition of state court litigation should be avoided and *Wilton/Brillhart* abstention is warranted.

Plaintiffs contend that the Town's resolutions have caused the taking of their property under the Fifth and Fourteenth Amendments of the United States Constitution and violated their rights to procedural and substantive due process. Plaintiffs also challenge the taking itself under

23

the Fifth and Fourteenth Amendment.  Plaintiffs purport to state a claim for an assessment of damages under Rhode Island statutory law and assert several state common law causes of action. Plaintiffs seek, *inter alia*, injunctive relief, declaratory relief, just compensation and damages.

This Court should not rule on Plaintiffs' motion-driven equitable requests for injunctive and declaratory relief and should further abstain from hearing any other aspects of this case until after the Town's condemnation action is completed.  Federal courts frequently abstain where parallel federal and state suits involve a state or municipality's effort to acquire property by condemnation.  In fact, just days before Plaintiffs filed this suit, another district court in this Circuit issued an order of abstention in a case involving similar parallel federal and state suits concerning a municipality's exercise of eminent domain.

### III.  The Former Property Owners' arguments premised on *Knick* are misplaced.

The Former Property Owners' central contention, underlying both its request for injunctive and declaratory relief, is that the Supreme Court's decision in *Knick* and its lineage "require swift action from this Court."  Pls.' Mot. at 19.  The Former Property Owners contend that *Knick* forecloses the Superior Court from adjudicating their rights in the pending constitutionally authorized state condemnation action.  This is a fundamental misunderstanding of *Knick*.

*Knick* held that property owners may bring Fifth Amendment takings claims directly in federal court without first exhausting state remedies—it did not hold that property owners have a right to federal injunctive relief or that they may use federal court to block ongoing state condemnation proceedings.  588 U.S. at 184-85.  *Knick* does not give the Former Property Owners any right to ignore or sidestep the ongoing state condemnation proceeding or to demand that just compensation be adjudicated exclusively in federal court.

*Knick* involved an inverse condemnation claim—where the government allegedly takes property without following eminent domain procedures and the owner must sue for compensation. 588 U.S. at 186. Here, by contrast, the Town initiated a direct condemnation proceeding in Superior Court under R.I. Gen. Laws § 24-1-1, et seq., by recording its resolution and plat, depositing the estimated just compensation, and invoking this Court's statutory jurisdiction. The Former Property Owners have it backwards: they are the ones seeking to avoid the state proceeding that the Town properly initiated.

Post-*Knick* decisions confirm that property owners in the Former Property Owners' position do not have a unilateral right to avoid a direct condemnation action by choosing a federal forum in which to assert their claims. For example, in *Providence City v. Thompson*, No. 1:19-CV-88, 2019 U.S. Dist. LEXIS 174536 (D. Utah Oct. 7, 2019), when Providence City initiated an eminent domain action advancing claims for condemnation and to quiet title, the property owner attempted to remove a state court eminent domain action to federal court based on *Knick*. *Id.* at *4-5. The property owner argued—as the Former Property Owners argue here—that by removing the state-exhaustion requirements for takings claims, *Knick* permits him to convert the municipality's eminent domain action into his own Fifth Amendment takings claim and remove that claim to federal court. *Id.* at *4. In addressing the municipality's motion to remand, the federal district court disagreed. *Id.* at *5.

In remanding the case to state court, the court distinguished the direct condemnation claim in that case from the inverse condemnation claim at issue in *Knick*. *Id.* at *5-7. The court explained that "*Knick* opens federal courts to 'takings claims that otherwise would have been brought as inverse condemnation suits in state court,' but *Knick* does not open federal courts to direct condemnation actions initiated by governments." *Id.* at *6 (quoting *Knick*, 588 U.S. at 205).

25

Other courts are in accord. *See, e.g., Fore Stars, Ltd. v. City of Las Vegas*, 488 F. Supp. 3d 982, 988 (D. Nev. 2020) ("*Knick* neither granted defendants in pending state eminent-domain actions the power to remove to federal court nor converted all state eminent-domain actions into federal claims."); *City of Jamaica Beach v. Williams*, No. 3:20-CV-00241, 2020 U.S. Dist. LEXIS 190985, at *6-7 (S.D. Tex. Sep. 29, 2020) (distinguishing *Knick* and underscoring that *Knick* does "not expose governments to new liability; it . . . simply allow[s] into federal court takings claims that otherwise would have been brought as *inverse condemnation suits* in state court" (emphasis in original) (quoting *Knick*, 588 U.S. at 205)).

These decisions track a well-recognized distinction in the law: inverse condemnation is a cause of action against the government to recover the value of property already taken without formal proceedings, and under *Knick*, and owner may now choose to file such a claim in state or federal court. *City of Jamaica Beach*, 2020 U.S. Dist. LEXIS 190985, at *5-8. Direct condemnation is different: it is a statutory proceeding the government itself initiates to acquire title under its eminent domain authority. *Id*. In that setting, the former property owners' rights and remedies are defined by, and often confined to, the statutory scheme and forum the legislature has prescribed. The Former Property Owner's argument—that *Knick* entitles them to refuse to participate in the State Court Action and insist on a federal court adjudication of just compensation—finds no support in *Knick* and has been expressly rejected by courts applying it.

The Former Property Owners' reliance on *FEDEQ DV004, LLC v. City of Portland*, 597 F. Supp. 3d 463 (D. Me. 2022) is misplaced. *See* Pls.' Mot. at 33-35. That decision does not undermine, but rather, reinforces the Town's position.

In *FEDEQ DV004, LLC*, the court recognized that access to a federal forum in the eminent domain context turns on how the relevant state statute structures condemnation proceedings—

specifically, who initiates the action and in what posture. The court explained that "[i]n states where the government exercises eminent domain via a complaint effectuating a taking under state law, a property owner may be forced to litigate his federal takings claim as a counterclaim in that same lawsuit or face preclusion when attempting to assert the federal claim in a later suit." *FEDEQ DV004, LLC*, 597 F. Supp. 3d at 471. In that circumstance, under *San Remo Hotel, L.P. v. City & County of San Francisco*, the federal court is required to give preclusive effects to state-court judgment concerning takings claims. 545 U.S. 323, 338 (2005). By contrast, "where state law makes the property owner the plaintiff in any legal proceedings concerning eminent domain, there is no reason to require the property owner to litigate in state court." *FEDEQ DV004, LLC*, 597 F. Supp. 3d at 471.

The Former Property Owners' attempt to shoehorn what happened here into the latter category by asserting that Rhode Island law makes the property owner the plaintiff in any legal proceedings concerning eminent domain. Pls.' Mot. at 34. This is not so. Under R.I. Gen. Laws § 24-1-1, et seq., it is the *municipality* that initiates the condemnation by filing in the Superior Court a statement of the sum of money estimated to be just compensation for the property taken. R.I. Gen. Laws § 24-1-3. It is not until that statement is filed and a deposit of the estimated compensation is made that title to the property in fee simple vests in the municipality. *Id.* R.I. Gen. Laws § 24-1-4. The proceeding is *in rem* and is commenced by the Town's statutorily required filing, not by any action of the former property owner.

Nor do the statutes transform the Former Property Owners into "plaintiffs" simply because they have an optional petition mechanism. R.I. Gen. Laws § 24-1-8 gives the former property owner the option to file a petition for an assessment of damages; it does not recast the former property owner as the one who "initiates" eminent domain litigation. Where, as here, the Former

27

Property Owners elect not to exercise that option, the condemnation proceeding remains exactly what the statute made it at the outset: a direct condemnation action initiated and controlled by the Town, in which this Court may proceed to trial on value either on its own initiative or at the Town's request after proper notice has been served. R.I. Gen. Laws § 24-1-9.

Under *FEDEQ DV004, LLC*'s framework, Rhode Island falls squarely in the first category—states where the government initiates the condemnation under state law—so the decision supports, rather than undermines, the Town's position that just compensation can and should be adjudicated here, with any resulting judgment entitled to preclusive effect in later federal proceedings.

*Knick* does not in any way alter the Superior Court's jurisdiction over the pending state condemnation proceeding. Once the Superior Court makes a final adjudication of just compensation for the taking, it will be for this Court to address the preclusive effect of that judgment. *San Remo Hotel, L.P.*, 545 U.S. at 338. In *San Remo Hotel*, the Supreme Court held that when a state court has first decided the issue of just compensation, federal courts are barred from relitigating those claims. *Id*. In that case, the petitioner argued what the Former Property Owners suggest here, that federal courts should disregard the state court decision on just compensation and review that issue *de novo* to ensure that federal takings claims can be considered on the merits in federal court. *Id*. The Supreme Court rejected that argument. *Id*. So should this Court.

As the Former Property Owners concede, *San Remo Hotel* remains good law after *Knick*. *Warner v. City of Marathon*, No. 24-10901, 2025 U.S. App. LEXIS 12731, at *15-16 (11th Cir. May 27, 2025) ("When faced with a perceived conflict between *Williamson County* and *San Remo*, the Court chose to preserve *San Remo*."); *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, No.

28

23-765, 2024 U.S. App. LEXIS 11421, at *6 (2d Cir. May 10, 2024) (recognizing that "the district court is 'required by federal law to apply collateral estoppel' - and *res judicata* - 'to issues decided in [state court condemnation] proceedings,' notwithstanding *Knick*" (quoting *Morabito v. New York*, 803 F. App'x 463, 468 (2d Cir. 2020))); *Tejas Motel, L.L.C. v. City of Mesquite*, 63 F.4th 323, 334 (5th Cir. 2023) ("*Knick* did not purport to overrule *San Remo*, which held that state adjudications of federal takings claims have res judicata effect.").

In sum, the Former Property Owners' reading of *Knick* is incorrect and misguided and nothing in that decision compels this Court to enjoin the Defendants from proceeding in the state condemnation action to render the declarations sought.[5]

**IV.     This Court should award Defendants fees and costs under 28 U.S.C. § 1927.**

This Court should not only deny the Former Property Owners' Motion for Injunctive and Declaratory Relief, it should also award Defendants their fees and costs under 28 U.S.C. § 1927. The Former Property Owners' latest tactical gambit is legally unsupported, transparently opportunistic, and has needlessly multiplied the proceedings in a manner that § 1927 was designed to deter.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court
> of the United States or any Territory thereof who so multiplies the

---

[5]     Defendants have focused their Objection on the principal reasons this Court should not entertain the Former Property Owners' Motion for Injunctive and Declaratory Relief. In so responding, Defendants do not waive their arguments in response to certain other issues briefed by the Former Property Owners but not directly relevant to the question presented by their motion. For example, the Former Property Owners make arguments concerning whether this Court has supplemental jurisdiction over their claim for an assessment of damages pursuant to R.I. Gen. Laws § 24-1-8. Pls' Mot. at 32-38. Defendants will address that argument at the appropriate time and will demonstrate that R.I. Gen. Laws § 24-1-8 does not create a private cause of action or any claim that may be asserted in this Court. The Former Property Owners also advance arguments concerning the effect of a dismissal of their purported claim under R.I. Gen. Laws § 24-1-8. Pls' Mot. at 38-42. Those arguments are not ripe as this Court has not (at least yet) dismissed that claim. Should the Court dismiss that claim, as it should, Defendants will address the effect of that dismissal in the appropriate forum at that time.

> proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Former Property Owners' conduct in this case easily meets that standard. Defendants previously declined to seek sanctions after the Former Property Owners filed a baseless Application for Entry of Default, despite knowing full well that the Defendants were clearly defending this case and that this Court had excused Defendants from responding to the First Amended Complaint until after a briefing schedule was set at the next status conference. Defendants kept their powder dry and chose not to burden the Court with a fee petition at that time. The Former Property Owners' latest maneuver, however, goes too far and crosses the line.

Although this case has been pending since June, and the December 17, 2025 hearing in the State Court Action has been scheduled for weeks, the Former Property Owners waited until the eve of that hearing to file their Motion for Injunctive and Declaratory Relief and then demanded expedited treatment. That tactic forced Defendants to drop everything to oppose the motion simply to preserve the Superior Court's scheduled hearing before its holiday recess.[6] Worse still, the motion seeks relief the Former Property Owners affirmatively abandoned from their operative complaint to sidestep Defendants' abstention arguments; asks this Court to enter an injunction that federal law plainly prohibits; attempts to repurpose declaratory relief as an end-run around the Anti-Injunction Act; and rests on a distorted reading of *Knick* that cannot withstand scrutiny.

Based on this transparent pattern of forum-shopping, gamesmanship, and eleventh-hour "emergency" motion practice designed to derail the state-court proceeding and to impose unnecessary burden on both the Court and Defendants, § 1927 sanctions are warranted.

---

[6]   The Former Property Owners also asked the Superior Court not to go forward with the hearing and asked for a conference and the Superior Court declined saying it would hear any motion to continue by the Former Property Owners on December 17, 2025 before the pending motions.

30

Accordingly, the Court should deny the Motion for Injunctive and Declaratory Relief and entertain a petition for Defendants' fees and costs under 28 U.S.C. § 1927.  Defendants expressly reserve and do not waive their right to further brief the basis for and the amount and scope of such sanctions should the Court entertain their request.

## CONCLUSION

For the foregoing reasons, this Court should deny the Former Property Owners' Motion for Injunctive and Declaratory Relief and entertain Defendants' request for fees and costs under 28 U.S.C. § 1927 and invite supplemental briefing on that request (on a non-expedited basis).

<div style="margin-left: 40%;">

Defendants,
Town of Coventry and Jonathan J. Pascua in his individual capacity,

By their attorneys,

*/s/ John A. Tarantino*
*/s/ Nicole J. Benjamin*
John A. Tarantino, Esq. (#2586)
Nicole J. Benjamin, Esq. (#7540)
Lucas G. Spremulli (#10418)
ADLER POLLOCK & SHEEHAN, P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
(401) 427-6262
jtarantino@apslaw.com
nbenjamin@apslaw.com
lspremulli@apslaw.com

</div>

Defendants,
Town of Coventry and, in their official capacities, the following elected or appointed officials: Robert J. Civetti as Finance Director; Hillary V. Lima as Council President; James E. Leblanc as Council Vice President; Jonathan J. Pascua as Councilmember; Alisa Capaldi as Councilmember; Kimberly A. Shockley as Councilmember; Jennifer M. Ludwig as Councilmember; Daniel O. Parrillo as Town Manager; and Stephen J. Angell as Town Solicitor

By their Attorneys,

*/s/ Marc DeSisto*
*/s/ Kathleen M. Daniels*
Marc DeSisto (#2757)
Kathleen M. Daniels (#4766)
DeSisto Law LLC
4 Richmond Square, Suite 500
Providence, RI 02906
(401) 272-4442
marc@desistolaw.com


Defendants,
Town of Coventry and, in their official capacities, the following elected or appointed officials: Robert J. Civetti as Finance Director; Hillary V. Lima as Council President; James E. Leblanc as Council Vice President; Jonathan J. Pascua as Councilmember; Alisa Capaldi as Councilmember; Kimberly A. Shockley as Councilmember; Jennifer M. Ludwig as Councilmember; Daniel O. Parrillo as Town Manager; and Stephen J. Angell as Town Solicitor; and in their individual capacities: Hillary V. Lima; James E. Leblanc; Alisa Capaldi; Kimberly A. Shockley; Jennifer M. Ludwig; and Daniel O. Parrillo

By their Attorneys,

*/s/ Michael T. Eskey*
Michael T. Eskey, Esq. (#3035)
Moses Ryan Ltd.

32

40 Westminster Street, 9th Floor
Providence, RI 02903
(401) 453-3600
teskey@marlawri.com

Defendant,
Stephen J. Angell, in his individual capacity,

By his Attorneys,

/s/ J. Richard Ratcliffe
J. Richard Ratcliffe, Esq. (# 2603)
Ratcliffe Harten Galamaga LLP
40 Westminster Street, 7th Floor
Providence, RI 02903
(401) 490-4651
rratcliffe@rhgllp.com

December 16, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December 2025, I sent a true copy of the within by electronic means (ECF) to all counsel of record in C.A. No. 1:25-cv-00274-MRD-AEM.

/s/  Nicole J. Benjamin

33