# Exhibit 2

**STATE OF RHODE ISLAND**

KENT, SC.                                                SUPERIOR COURT

(FILED: November 7, 2025)

In Re: Town of Coventry                :        C.A. No. KM-2024-0578
    *Petitioner,*              :

**DECISION**

**LICHT, J.** On July 28, 2025, the Town of Coventry ("Town") moved for entry of judgment or, in the alternative, for assignment for trial in connection with its Miscellaneous Petition ("Town's Pet.") filed on June 21, 2024 that resulted in a June 28, 2024 Condemnation Order ("Condemnation Order") (*See* Town's Mot. for Entry of Judgment or, Alternatively, Assignment for Trial ("Town's Mot.").) In response, the former property owners of the taken property, Soscia Holdings, LLC ("Soscia"), filed its objection to the Town's Motion and a Rule 11 Motion for Sanctions. (*See* Soscia's Obj. to Town's Mot. for Entry of Judgment or, Alternatively, Assignment for Trial, and the Property Owners' Rule 11 Motion for Sanctions ("Soscia's Obj.").) Soscia has challenged the jurisdiction of the Court to hear the Town's motions.

**I**

**Facts and Travel**

In 1846, industrial leaders running their factories along the Pawtuxet River and its branches came together with the blessing of the General Assembly to create the Quidnick Reservoir Company ("Quidnick").[1] (Soscia's Obj., Ex. F, ("Resolution No. 2024-37"), at ¶¶ 1-2.) Quidnick constructed the Flat River Reservoir Dam on the south branch of the Pawtuxet River in Coventry. *Id.* The dam constructed by Quidnick created a pond commonly known as "Johnson's

---

[1] P.L. 1846, ch. An Act to Incorporate the Quidnick Reservoir Company, §§ 1-11.

Pond." *Id.* ¶¶ 1, 3. By controlling the water through the dam, Quidnick generated power for its industrial members. Quidnick followed through on this mission for many years with the blessing of the General Assembly.[2] As the industrial revolution came to an end and the need for waterpower dried up, a residential area along Johnson's Pond grew and Johnson's Pond found new life as a place of recreation.[3] The Town of Coventry leased Johnson's Pond "and a vacant 80-acre parcel of land for public recreational use through March 31, 2024" ("the Lease") from Quidnick. *Id.* ¶ 7. The Lease was the last of "a series of agreements concerning the repair and maintenance of the Dam and the maintenance of the water levels in [Johnson's] Pond to maximize [Johnson's] Pond's recreational use during the months of May through September of each year[.]" *Id.* ¶ 5. March of 2020 saw many changes to the world, and one such change was that Soscia "acquired Quidnick's interests in the Dam and [Johnson's] Pond and Quidnick assigned its rights and interests in the Lease with the Town to Soscia." *Id.* ¶ 12. The relationship between Soscia and the Town proved to be contentious, particularly over the maintenance of water levels in Johnson's Pond in the summer months and the maintenance of the Dam. This matter is not the first legal battle between the parties.[4]

---

[2] *See Soscia Holdings, LLC v. State of Rhode Island,* 677 F. Supp. 3d 55, 62 (D.R.I. 2023) ("The Rhode Island General Assembly amended the 1846 Act in 1867, 1975, and 1982. As part of the 1982 amendment, the stated purposes of the Quidnick Reservoir Company were: 'to erect and establish dams and reservoirs for the rentention [*sic*] and preservation of the waters of the Pawtuxet River and its branches for the benefit of its members; for establishment and operation of hydro power sites for its members' uses and resale of power generated therefrom; and any other legal purposes.'") (internal citation omitted).

[3] *See* Kendra Gravelle, *Residents Concerned Over Future of Johnson's Pond Amid New Ownership,* (Feb. 25, 2021), https://www.ricentral.com/kent_county_daily_times/residents-concerned-over-future-of-johnsons-pond-amid-new-ownership/article_caad7ad2-77bc-11eb-971a-7f27e8acb605.html (last visited Nov. 5, 2025).

[4] *See Soscia Holdings, LLC v. Town of Coventry,* No. KC-2020-0769; *Town of Coventry et al. v. Soscia Holdings, LLC,* No. KC-2024-0219.

As the Lease term was to expire in March 2024, the Coventry Town Council ("Town Council") passed a series of Ordinances and Resolutions summarized as follows:

**1. Resolution No. 2024-4:**

On January 23, 2024, the Town Council passed Resolution No. 2024-4 reaffirming the need for a Coventry Redevelopment Agency. (Soscia's Obj., Ex. D, ("Resolution No. 2024-4") ¶ 11.) Resolution 2024-4 explains that "[o]n or about September 10, 2007, the Coventry Town Council passed and adopted Resolution No. 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 declaring the need for a Coventry Redevelopment Agency[.]" *Id.* ¶ 3. "The Coventry Town Council declares and affirms that there is a current and continuing need for a Coventry Redevelopment Agency pursuant to R.I. Gen. Laws § 45-31-10[.]" *Id.* ¶ 4. Resolution 2024-4 also explains that the terms of office of the Coventry Redevelopment Agency's five members appointed on October 22, 2007 have expired. *Id.* ¶¶ 3-6. The resolution further stated "[t]he Town of Coventry expects to undertake redevelopment projects pursuant to chapters 31 through 33, inclusive, of Title 45 of the Rhode Island General Laws, which requires appointment of new members to a redevelopment agency[.]" *Id.* ¶ 10.

**2. Resolution No. 2024-07:**

On February 15, 2024, the Town Council passed Resolution No. 2024-07 approving the appointment by Town Council President of five resident electors as members of the Coventry Redevelopment Agency. *See* Soscia's Obj., Ex. E, ("Resolution No. 2024-07") ¶ 11.

**3. Resolution No. 2024-37:**

On May 2, 2024, the Town Council passed and adopted Resolution No. 2024-37 which discussed "the approval and adoption of an Ordinance to acquire, for public use, by purchase or condemnation" Johnson's Pond. (Resolution No. 2024-37, ¶ 22.) Resolution No. 2024-37

explains the history of Johnson's Pond—how its original purpose "was to create a reservoir of water for reliable power generation and downstream use by Quidnick's industrial members[.]" *Id.* ¶ 2. And that purpose, now obsolete due to the "mills of Quidnick's members having been shuttered long ago" has shifted to "recreational purposes and the impoundment and the release of its waters support wetlands as well as wetland-dependent plant and animal species." *Id.* ¶ 4. The Town Council summarizes the contentious nature of the Town's relationship with Soscia:

> "Since Soscia's acquisition of the Dam and Pond in March 2020, the Town, RIDEM, and the public have been involved in numerous disputes with Soscia, some of which resulted in litigation in state and federal courts, over Soscia's operation and management of the Dam and Pond as well as numerous legal disputes over the laws and regulations applicable to Dam safety and the maintenance of the Pond's water levels and streamflows; Soscia's conduct, action, and positions on its interests and rights in connection with the ownership of the Dam and Pond (1) have departed from the historical operation and management of the Dam and Pond (2) have no relationship to conscientious environmental stewardship; (3) bear no relationship to best practices dam and dam structure management; and (4) have resulted in or threatened public interests protected by laws and regulations concerning dam safety, dam and pond regulation, wetlands and environmental protection, and local ordinances[.]" *Id.* ¶¶ 13-14.

The Town Council continued, finding that

> "Soscia's conduct, action, and positions on its interests and rights in connection with the ownership of the Dam and Pond have departed from the historical operation and management of the Dam and Pond and have caused or threatened to limit or deprive the public of access to and use of the Pond[.]" *Id.* ¶ 15.

The Town Council concluded by expressing its intent to "acquire by purchase or condemnation" Johnson's Pond, for the purpose "including, but not limited to public access, boat ramps, parking, facilities, and the like for public recreation and use." *Id.* ¶ 21.

**4. Ordinance No. 2024-03:**

On May 14, 2024, the Town Council passed Ordinance No. 2024-03 which made a series of findings regarding Johnson's Pond. *See* Soscia's Obj., Ex. A, ("Resolution No. 2024-42"); Coventry Code of Ordinances, Part II, General Legislation, Ch. 187-Ponds, Dams, Dam Structures, and Recreational Use, Art. I Flat River Reservoir, aka Johnson's Pond, § 187-1, ("the Coventry Code"). First, the Town Council found "that private ownership of the dam and pond at Flat River Reservoir (collectively, 'Johnson's Pond' or 'Pond') is untenable." *Id.* Second, the Town Council explained "[r]ecent events . . . demonstrated that such ownership is inconsistent with and does not promote the preservation of public use, peace, health, safety and welfare." *Id.* Third, the Town Council found "that such private ownership has been detrimental to the best interests of the environment, public safety, and public use of and benefit from recreational access to the Pond and the quality of life in the Town of Coventry." *Id.* The stated purpose of Ordinance No. 2024-03 "is to acquire, maintain and redevelop Johnson's Pond, its dam, dam structures and associated property to protect the environment, ensure public safety, and provide recreational facilities for and access to and public use of the Pond." *Id.* The Town Council authorized the Town to "acquire by purchase or condemnation" Johnson's Pond and if the Town is unable to purchase it "then the Solicitor is directed to take all necessary action to make the acquisition by a condemnation of [Johnson's Pond] . . . in order to put the Pond and its associated property in the public domain for public use and redevelopment." (The Coventry Code § 187-2.). "Section 187-4 Redevelopment" of Ordinance No. 2024-03, states "[t]he Town shall create a public benefit for Town residents by redeveloping the Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation and use." (The Coventry Code § 187-4.) "Section 187-5 Transfer" of the Ordinance provides "[t]he

5

Town may transfer any or all of its rights to own, operate, maintain and redevelop the Pond, property, dam and dam structures to any agency of the Town whose membership is appointed by the Town Council." (The Coventry Code § 187-5.)

5. **Resolution No. 2024-42:**

On June 20, 2024, the Town Council approved Resolution No. 2024-42 which recounts that the Town's efforts to purchase the dam, pond, and associated property at Johnson's Pond were rejected by Soscia. (Resolution No. 2024-42 ¶ 6.) The Town Council in Resolution No. 2024-42 declared:

> "In furtherance of the findings, purpose, and intent of Ordinance No. 2024-03 and Resolution No. 2024-37, the Town Council considers and concludes that, while, in order to protect and conserve the environment, to ensure public safety, and to provide recreational access to the public, it is necessary or advantageous for the Town to acquire by exercise of eminent domain and condemnation all Parcel II property, rights, and interests deeded by Quidnick Reservoir Company to Soscia Holdings, LLC, but that it is not necessary or advantageous for the Town to acquire by exercise of eminent domain and condemnation the entirety of the Parcel I property, rights, and interests deeded by Quidnick Reservoir Company to Soscia Holdings, LLC[.]" (*Id.* ¶ 9.)

The Town Council stated that "[p]ublic interest and convenience make necessary or advantageous for environmental protection and conservation, public safety, and public access to and recreational use of Johnson's Pond, for the Town to acquire . . . by exercise of eminent domain and condemnation . . . right." (*Id.* ¶ 13.)

6. **Resolution No. 2024-98:**

On November 12, 2024, the Town Council passed Resolution No. 2024-98 which states:

> "In order to fulfill Section 187-4 (Redevelopment) of the Ordinance requiring the Town of Coventry to create a public benefit for Town residents by redeveloping Johnson's Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public

recreation, the Town Council transfers the redevelopment rights related to Johnson's Pond, its property, dam and dam structures to the Agency ("Agency") to evaluate, develop, commission and oversee a redevelopment plan." (Soscia's Obj., Ex. N ("Resolution No. 2024-98"), ¶ 7.)

On June 21, 2024, the Town recorded Resolution No. 2024-42, passed by the Town Council, in the Coventry Land Evidence Records and it filed its Petition in the Superior Court pursuant to G.L. 1956 chapter 1 of title 24. (*See* Town's Pet.; Town's Pet., Attachment A.) After the June 28, 2024 hearing, the Court then entered the Condemnation Order, which ordered the Town to "deposit the Petitioner's sum of estimated just compensation of $157,000 in the Court's registry[.]" (Soscia's Obj., Ex. M ("Condemnation Order").) The Town deposited the $157,000 in the Court's registry where it remains to this day. (Town's Suppl. Mem. in Supp. of the Court's Jurisdiction ("Town's Suppl. Mem."), at 3.)

## II

## Standard of Review

Under Rule 81(a)(1) of the Superior Court Rules of Civil Procedure, "[t]hese rules do not apply during the process and pleading stages to the following proceedings . . . (B) Proceedings in condemnation[.]" Super. R. Civ. P. 81(a)(1). A challenge to subject-matter jurisdiction "'may not be waived by any party and may be raised at any time in the proceedings.'" *Boyer v. Bedrosian*, 57 A.3d 259, 270 (R.I. 2012) (quoting *Pine v. Clark*, 636 A.2d 1319, 1321 (R.I. 1994)). "[S]ubject-matter jurisdiction is 'an indispensable ingredient of any judicial proceeding[.]'" *Rogers v. Rogers*, 18 A.3d 491, 493 (R.I. 2011) (quoting *Paolino v. Paolino*, 420 A.2d 830, 833 (R.I. 1980)).

The Rhode Island Supreme Court "has drawn a distinction between subject-matter jurisdiction and the authority of the court to proceed." *Gallop v. Adult Correctional Institutions,*

7

182 A.3d 1137, 1142 (R.I. 2018) (citing *Chase v. Bouchard,* 671 A.2d 794, 795-96 (R.I. 1996);

*Hartt v. Hartt,* 121 R.I. 220, 226, 397 A.2d 518, 522 (1979)).

> "'But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences (would be) entirely wanting in the court. . . . But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by law made an offence, and proceed to the arrest and trial of a party charged with such act, . . . those acts would be in excess of his jurisdiction . . . (and) these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.'" *Hartt,* 121 R.I. at 228–29, 397 A.2d at 522–23 (quoting *Bradley v. Fisher,* 80 U.S. 335, 351-52 (1871)).

## III

## Analysis

## A

## Suitability of Chapter 1 Title 24

In the memorandum originally submitted, Soscia contended that the Town proceeded under the wrong statute.[5]  In the Court's view, it was challenging the validity of the

---

[5] *See* Soscia's Mem. in Supp. of Obj., at 22 ("In doing so, the Court must conclude that it cannot afford the Town any of the relief it is requesting under R.I. Gen. Laws §§ 24-1-1 *et seq.* (by way of an alleged "conservation and recreation" use subject to § 32-4-8), where the Town's actions with respect to the Condemned Property reveal a "redevelopment" use that—if at all prescribed by State law—would be subject to R.I. Gen. Laws §§ 45-32-1 *et seq.*."); Soscia's Suppl. Mem. in Supp. of Obj. (Soscia's Suppl. Mem.), at 3 ("The Property Owners' point is that the Town either

condemnation. In its opposition memorandum to the Town's Motion, Soscia referred to and attached a copy of its federal complaint. *See* Soscia's Mem. in Supp. of Obj., at 12-13. In Count V of its original federal complaint, Soscia alleged "[t]hat the Defendants unlawfully used a quick take procedure to obtain the Condemned Property under R.I. Gen. Laws § 24-1-1 *et seq.* and R.I. Gen. Laws § 32-4-1 *et seq.*, and that the Condemnation Order and all rights flowing therefrom are *ultra vires* and invalid[.]" (Soscia's Mem. in Supp. of Obj., Ex. R ("First Federal Complaint"), at 52). Subsequent to that submission, Soscia amended its federal complaint, in which it withdrew Count V, Declaratory Judgment Act.[6] At oral argument, Soscia withdrew that argument and indicated that they were not challenging the validity of the taking.[7] Nevertheless, the Court believes it should address the argument at this time so that it can review Soscia's challenge to its jurisdiction pursuant to chapter 1 of title 24.

The Town's condemnation was one for conservation and recreation purposes pursuant to G.L. 1956 chapter 32 of title 45. General Laws 1956 § 32-4-8 authorizes a condemnation for recreation and conservation purposes to follow the procedures in chapter 1 of title 24. Soscia argued that "the Executive Session Minutes, the Town's Ordinances and Resolutions, and the Town taking concrete steps such as transferring the 'redevelopment rights to Johnson's Pond' to

---

cannot request the Court to act further under R.I. Gen. Laws §§ 24-1-1 *et seq.*, as these provisions are inapplicable, or that if applicable, the Town has exhausted all of its moves under the plain text of R.I. Gen. Laws §§ 24-1-1 *et seq.*").)

[6] Soscia filed its memorandum in support of its opposition to the Town's motions on August 8, 2025. *See* Soscia's Mem. in Supp. of Obj. at 38. In Soscia's original complaint filed in federal court, "Plaintiffs respectfully request a declaratory judgment as follows . . . That the Defendants unlawfully used a quick take procedure to obtain the Condemned Property under R.I. Gen. Laws § 24-1-1 *et seq.* and R.I. Gen. Laws § 32-4-1 *et seq.*, and that the Condemnation Order and all rights flowing therefrom are *ultra vires* and invalid[.]" (First Federal Complaint at 52.) In its amended federal complaint filed on August 29, 2025, Soscia withdrew Count V. *See Soscia Holdings, LLC v. Town of Coventry* (1:25-cv-00274), docket no. 34, Soscia's Amended Complaint.

[7] Hearing Tr. at 5:5-22, Sep. 30, 2025.

the Coventry Redevelopment Agency and creating a website for the 'Johnson's Pond Redevelopment Project,' [meant] the Town is clearly utilizing Johnson's Pond for redevelopment purposes." (Soscia's Mem. in Supp. of Obj., at 20.)  Thus, Soscia contended that the Town should have proceeded under the redevelopment condemnation statutes, namely chapter 32 of title 45. (*Id.* at 21.) The Court rejects this argument.

Soscia emphasizes the use of the word "redevelop" in Resolution No. 2024-37 and Ordinance No. 2024-03. *See* Soscia's Mem. in Supp. of Obj., at 6-7.  The stated purpose of Ordinance No. 2024-03 "is to acquire, maintain and redevelop Johnson's Pond, its dam, dam structures and associated property to protect the environment, ensure public safety, and provide recreational facilities for and access to and public use of the Pond."  Similar language appears in Resolution No. 2024-37. (The Coventry Code, § 187-1.) Soscia argues that the Town's Petition should have been brought under the redevelopment statutes. *See* Soscia's Mem. in Supp. of Obj., at 21-22.  General Laws 1956 § 45-31-7 "declare[s] that the purposes of chapters 31-33 of this title are the elimination and prevention of *blighted and substandard areas and their replacement through redevelopment* by well-planned, integrated, stable, safe, and healthful neighborhoods in the manner and by the means provided in these chapters[.]" Section 45-31-7 (emphasis added). Redevelopment is defined as "the elimination and prevention of the spread of blighted and substandard areas." Section 45-31-8(14).  A blighted and substandard area "includes a 'slum blighted area,' a 'deteriorated blighted area,' or an 'arrested blighted area,' or any combination of these areas." Section 45-31-8(3).  There are no findings in the relevant Town's Resolutions and the Ordinance cited by Soscia that Johnson's Pond is a blighted and substandard area and that anything was to be replaced. *See* Resolution 2024-42; Resolution 2024-4; Resolution No. 2024-07; Resolution No. 2024-37; the Coventry Code, ch. 187, Resolution No. 2024-98.

Redevelopment to preserve and enhance the public's use of and access to Johnson's Pond does not mean that the Town had a "redevelopment" purpose as set forth in chapter 31 of title 45.

Soscia argued that the transfer of the "'redevelopment rights to Johnson's Pond' to the Coventry Redevelopment Agency . . . is clearly utilizing Johnson's Pond for redevelopment purposes." (Soscia's Mem. in Supp. of Obj. 20.)  In Resolution No. 2024-98, the Town Council explains that

> "[i]n order to fulfill Section 187-4 (Redevelopment) of the Ordinance requiring the Town of Coventry to create a public benefit for Town residents by redeveloping Johnson's Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation, the Town Council transfers the redevelopment rights related to Johnson's Pond, its property, dam and dam structures to the Agency ("Agency") to evaluate, develop, commission and oversee a redevelopment plan." (Resolution No. 2024-98, ¶ 7.)

Again, the Town Council transferred the redevelopment rights for the purpose of public use—not to redevelop a blighted area.  Whether a redevelopment agency can redevelop and manage a property that has not been found to be blighted is not a question before the Court.

The Town utilized the process in chapter 1 of title 24 through § 32-4-8 because it was acquiring the "property by eminent domain for public conservation and recreation purposes[.]" (Town's Pet. ¶ 5.) Section 32-4-8 states:

> "Local units are hereby authorized and empowered to acquire lands for the conservation and recreation purposes of this chapter . . . if the acquisition is by eminent domain, it shall conform with the provisions of chapter 1 of title 24, insofar as they are consistent with the provisions of this chapter." Section 32-4-8.

Section 32-4-3(4) defines conservation and recreation as "use of lands for agriculture, parks, natural areas, forests, camping, fishing, wetlands and marsh lands preservation, wildlife habitat, hunting, golfing, boating, winter sports, scenic preservation, and similar uses for public outdoor

11

recreation and conservation of natural resources." Section 32-4-3(4). In *Reitsma v. Pascoag Reservoir & Dam, LLC*, 774 A.2d 826, 829 (R.I. 2001), the Rhode Island Supreme Court addressed the State's acquisition of property for public recreational use. The Court held that the State acquired a portion of a lake bottom by adverse possession and a prescriptive easement for public access to a boat ramp. *Id.* at 834. The Court emphasized that the State's actions, including the construction and maintenance of the boat ramp, provided the public with access to the lake for activities such as boating, fishing, and swimming. *Id.* at 836. This case highlights the recognition of public recreational uses as a legitimate public purpose under Rhode Island law. The Town's intended public use "shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation and use." *See* the Coventry Code, §187-4. This intended use fits squarely within the definition of conservation and recreation. *See* § 32-4-3(4).

## B

## Jurisdiction on the Pending Motions

Having concluded that the Town properly proceeded under chapter 1 of title 24, the Court can address Soscia's challenge to the Court's jurisdiction to hear the Town's motions.

## 1

## Entry of Judgment

The Town moved pursuant to Rule 58(a)(2) of the Superior Court Rules of Civil Procedure for an entry of judgment "determining that the value of the condemned property is $157,000 and discharging the Town from all liability in connection with the taking." (Town's Mot. 2.)

12

Soscia argues that the Court's issuance of the Condemnation Order exhausted the Court's jurisdiction "[b]ecause the Town's Petition requested no other relief" which was filed pursuant to § 24-1-3. (Soscia's Resp. to Town's Suppl. Mem. in Supp. of Court's Jurisdiction ("Soscia's Resp."), at 1-2.) The Town argues that this Court continues to have jurisdiction over this matter because the case is an open, active case on the court's docket, and the Court took jurisdiction and ordered the deposit of funds in the Court's registry. *See* Town's Suppl. Mem., at 1-3. The Court agrees that the case remains open and, as previously discussed, the Court validly took jurisdiction and ordered the deposit of funds in the Court's registry.[8] The Court does not agree with Soscia that the lack of request for further relief in the Town's Petition divests the Court of its jurisdiction to hear the Town's Motions.

The Town argues that the Superior Court's jurisdiction does not end with the Court's deposit of funds in the Court's registry. *See* Town's Suppl. Mem., at 3-9. The Town argues that the "entry of an order approving the deposit of funds does not constitute a final judgment[.]" *Id.* at 3. The Town argues, and the Court agrees, that a final judgment has not yet been rendered in this case. *Id.* at 4. A final judgment is "one that finally adjudicates the rights of the parties[.]" *Travelers Property & Casualty Corp. v. Old Republic Insurance Co.*, 847 A.2d 303, 307 (R.I. 2004). Section 24-1-9 states "[u]pon the entry of judgment in the proceedings, execution shall be issued against the money deposited in court and in default thereof against any other property of the city or town." Upon the statute's own words, the Court has jurisdiction to hear the Town's motion for entry of judgment. The Condemnation Order is not an entry of judgment in the proceedings. In *Rhode Island Economic Development Corp. v. The Parking Co., L.P.*, 892 A.2d

---

[8] This Court has exclusive jurisdiction over the funds in its court registry. *Allen v. Gerard*, 21 R.I. 467, 44 A. 592, 593 (1899) ("Money in the registry of a court is wholly under the control of that court, unless there is some supervisory jurisdiction over the same, and cannot be paid out until an order is duly made for that purpose.").

13

87, 95, 102 (R.I. 2006), the Rhode Island Supreme Court found that condemnation actions require a final judgment. Taking into consideration both the operative statutory requirements and the Rhode Island Supreme Court precedent, the rights of the parties have not been finally adjudicated. Therefore, a final judgment could be entered.

Soscia argues that "[d]espite the Town's argument of 'continuing jurisdiction' based on the Condemnation Order or presence of funds in the Court's registry, Town's Suppl. Mem., at 1-6, the Court has never had jurisdiction over the non-party Property Owners' claim for 'just compensation.'" (Soscia's Resp., at 2.) Soscia argues that "the mere *in rem* jurisdiction over funds in the Court's registry for the benefit of the non-party Property Owners . . . does nothing to confer a right upon the Town to force the non-party Property Owners to litigate *in personam* 'just compensation' claims in this Court."[9] *Id.* at 4. However, the question is whether the Court has jurisdiction to hear the *Town's* Motions for Entry of Judgment, or in the alternative, assignment for trial.

Whether the Town is entitled to entry of judgment is not before the Court at this time. The Court has only concluded that it has jurisdiction to hear the motion and will address those arguments raised that go toward the merits of the motion at the time it hears the motion.

---

[9] Soscia cites to *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 197 (1959) using the quote "[t]he 'damage' proceeding is simply an in personam suit to determine what the State must pay for property it appropriates; it does not require or contemplate control of the res by the Board of Viewers" to support their position. However, *Allegheny County* dealt with the question as to "whether the District Court had discretion to abstain from the exercise of jurisdiction in the circumstances of this case" not whether the State Superior Court had jurisdiction to hear a party's entry of judgment or, in the alternative, assignment for trial. *Id.* at 188. This Court has been advised that there is a motion to abstain pending in the United States District Court for the District of Rhode Island. The federal court's decision of whether to abstain is a decision solely within its purview. This Court does not intend for anything in this Decision to comment on the matters before the federal court.

14

2

## Assignment for Trial

In the alternative, the Town moved for an order assigning the case for trial pursuant to Rule 40(2) of the Superior Court Rules of Civil Procedure and § 24-1-9. (Town's Mot., at 1.) The Court has jurisdiction to hear this Motion as the Town properly invoked the Court's jurisdiction under § 24-1-9.

Soscia argues that the Court does not have jurisdiction to hear the Town's Motion because the Town's analysis of the statute is inaccurate. (Soscia's Resp., at 5-24.) The Town argues that the Court has jurisdiction to hear its Motion for an order assigning the case to trial because §§ 24-1-7 to 24-1-9 allows it to do so. (Town's Suppl. Mem., at 7-9.)  The Court agrees with the Town. "'If the language of a statute or ordinance is clear and unambiguous, it is given its plain and ordinary meaning.'" *Freepoint Solar LLC v. Richmond Zoning Board of Review*, 274 A.3d 1, 6 (R.I. 2022) (quoting *City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 500 (R.I. 2021)).  In the plain reading of the statute, the Court has jurisdiction to hear the Town's Motion for an order assigning the case to trial.  Section 24-1-9 states that "[a]fter the service of a notice of condemnation the court may proceed to a trial."  The statute does not state that only if the condemnee files a petition the court may proceed to trial.

The only issue before the Court on this question is whether the Court has jurisdiction to hear the motion for a trial.  The Court concludes that it does.  This Motion was made in the alternative which means that if the Court enters judgment on its other motion, then the Town is not asking for a trial.  Therefore, just as with the motion for entry of judgment, the merits of the motion are not before the Court.

15

**IV**

**Conclusion**

Consequently, this Court has jurisdiction to hear the Town's Motion for Entry of Judgment, or in the Alternative, Assignment for Trial. Counsel shall submit the appropriate order for entry and shall confer and submit a scheduling order for briefing these motions.