**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

SOSCIA HOLDINGS, LLC; STRUCTURES AT         :
JOHNSON'S POND, LLC; BOATING AT             :
JOHNSON'S POND, LLC; WATERFRONT AT          :
JOHNSON'S POND, LLC; COMMON AREA AT         :
JOHNSON'S POND, LLC; and LAND AT            :  Case: 1:25-cv-00274-MRD-AEM
JOHNSON'S POND, LLC,                        :
                                            :
          Plaintiffs,                       :
                                            :
     v.                                     :
                                            :
TOWN OF COVENTRY; TOWN OF COVENTRY,         :
by and through its Finance Director Robert J. Civetti, :
in his Official Capacity; HILLARY V. LIMA, in her :
Official Capacity as Council President and  :
Individually; JAMES E. LEBLANC, in his Official :
Capacity as Council Vice President and Individually; :
JONATHAN J. PASCUA, in his Official Capacity as :
Councilmember and Individually; ALISA M.    :
CAPALDI, in her Official Capacity as         :
Councilmember and Individually; KIMBERLY A. :
SHOCKLEY, in her Official Capacity          :
Councilmember and Individually; JENNIFER M. :
LUDWIG, in her Official Capacity as         :
Councilmember and Individually; DANIEL O.   :
PARILLO, JR., in his Official Capacity as Town :
Manager and Individually; STEPHEN J. ANGELL, :
ESQ., in his Official Capacity as Town Solicitor and :
Individually,                               :
                                            :
          Defendants.                       :

**DEFENDANTS' MOTION TO DISMISS OR ABSTAIN**

Pursuant to Rule 12(b)(1) and/or Rule 12(b)(6) of the Federal Rules of Civil Procedure,

Defendants the Town of Coventry (the "Town") and the Town of Coventry, by and through its

Finance Director Robert J. Civetti, in his Official Capacity, Hillary V. Lima, in her official capacity

as Council President and individually, James E. LeBlanc, in his official capacity as Council Vice President and individually, Jonathan J. Pascua, in his official capacity as Councilmember and individually, Alisa M. Capaldi, in her official capacity as Councilmember and individually, Kimberly A. Shockley, in her official capacity as Councilmember and individually, Jennifer M. Ludwig, in her official capacity as Councilmember and individually, Daniel O. Parillo, Jr., in his official capacity as Town Manager and individually, and Stephen J. Angell, Esq., in his official capacity as Town Solicitor and individually (collectively, "Defendants") hereby move to dismiss Plaintiffs'[1] equitable claims to the extent any remain and to stay their remaining claims on grounds of abstention until the parallel state court proceeding reaches its conclusion.

## **INTRODUCTION**

Federal courts frequently abstain where parallel federal and state suits involve a state's or municipality's effort to acquire property by condemnation. In fact, just days before the Former Property Owners filed this suit, another district court in this Circuit issued an order of abstention in a case involving similar parallel federal and state suits concerning a municipality's exercise of eminent domain.

Abstention here will conserve the resources of the parties and the Court and will cause the Former Property Owners no prejudice. The Town has acquired the Former Property Owners' property by eminent domain. The question remaining in the State Court Action is the assessment of just compensation for that taking. That question is squarely presented in the Town's Motion for Entry of Final Judgment or Alternatively for Trial, which is pending in the State Court Action, the Superior Court has already determined that it has jurisdiction to entertain that motion, and the

---

[1]     For clarity, the Plaintiffs in this case are referred to herein as the "Former Property Owners."

Superior Court has requested that it be contacted in two business days—on February 9, 2026—to schedule a hearing on that motion.

Proceeding with this action would require this Court to disregard the Superior Court's express determination that it possesses jurisdiction over the very issues raised in the Town's Motion for Entry of Final Judgment or, Alternatively, for Trial. The Superior Court proceedings—initiated nearly a year before this action—are likely to resolve or eliminate entirely the questions Plaintiffs present here. At a minimum, they will substantially narrow them. Continuing in parallel would invite unnecessary duplication, forcing two courts to adjudicate the same alleged taking: while this Court considers whether a taking occurred without just compensation, the Superior Court is already determining what compensation is just for that very taking.

Accordingly, this Court should stay this action, allowing the state court process to reach its conclusion. If there are any issues requiring resolution after the state court proceedings conclude, this Court can address them at the appropriate time.

## BACKGROUND

### I. The pending State Court Action.

In 2024, the Town began the process of acquiring property then owned by the Former Property Owners by eminent domain pursuant to R.I. Gen. Laws § 24-1-1, *et seq*. After the Town passed a series of resolutions authorizing the condemnation of the property, the Town filed a miscellaneous petition in Rhode Island Superior Court captioned *In re Town of Coventry*, KM-2024-0578 (the "State Court Action"), instituting an *in rem* proceeding pursuant to R.I. Gen. Laws § 24-1-3, for purposes of depositing into the Court's registry a sum of estimated just compensation for the condemned Property.

On June 28, 2024, the Superior Court (Licht, J.) held a hearing on the miscellaneous petition, received and reviewed an affidavit and report from the Town's appraiser, approved a condemnation order, and accepted a deposit of $157,000 into the Court's registry, as the estimated just compensation for the Property. The Former Property Owners not only had notice of that hearing, their counsel was also present during the hearing, albeit purportedly for a different matter. That same day, the Superior Court entered a Condemnation Order that provided, *inter alia:*

> By exercise of eminent domain, the Town of Coventry acquired in fee simple absolute all right, title, and interest in property in the Town of Coventry commonly known as Johnson's Pond, the dam at Johnson's Pond, and a parcel of open space land immediately downstream of the pond and dam.

**Ex. 1**, Condemnation Order ¶ 1. The Condemnation Order further provided:

> Based on Petitioner's Statement, including its exhibits, and on evidence submitted to the Court in support thereof, in particular the Affidavit of Thomas S. Andolfo, MAI, SRA, AI-GRS, the Court finds for purposes of the deposit of compensation for property taken in the Court's registry in accordance with R.I. Gen. Laws §§ 32-4-8 and 24-1-3 that Petitioner's sum of estimated just compensation of $157,000 is sufficient.

*Id.* ¶ 3.

The Condemnation Order ordered that the Town deposit the sum of $157,000 into the Court's registry and provided:

> [W]hereupon, without further order, and by operation of law in accordance with R.I. Gen. Laws §§ 32-4-8 and 24-1-3, title to the Acquired Property in fee simple absolute shall vest in the Town of Coventry, and the Acquired Property shall be deemed to be condemned and taken for the use of the Town of Coventry, and the right to just compensation for the Acquired Property shall vest in the persons entitled thereto.

*Id.* ¶ 4. In accordance with the Condemnation Order, the Town deposited the sum of $157,000 into the Court's registry.

By statute, the Superior Court is required to keep the State Court Action open for a period of at least one year so that:

> Any owner of, or person entitled to any estate or right in, or interested in any part of the real property so taken, . . . may, within one year from the time the sum of money estimated to be just compensation is deposited in the superior court to the use of the persons entitled thereto, apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury.

R.I. Gen. Laws § 24-1-8.

Days before the statutory deadline for petitioning the Superior Court for an assessment of damages, the Former Property Owners raced to this courthouse and filed this federal action, which is addressed more fully herein.

After the statutory deadline for petitioning the Superior Court for an assessment of damages had run, on July 28, 2025, the Town filed a Motion for Entry of Judgment or, Alternatively, Assignment for Trial in the State Court Action.  The Former Property Owners purported to file a special appearance in the State Court Action and submitted an Objection to the Town's Motion for Entry of Judgment or, Alternatively, Assignment for Trial, and a Rule 11 Motion for Sanctions.[2]

After extensive briefing and argument on November 7, 2025, the Superior Court issued a written decision concluding that it had jurisdiction to hear the Town's Motion for Entry of Judgment or, Alternatively, Assignment for Trial.  More specifically, the Superior Court found that (1) the Town's reliance on R.I. Gen. Laws § 32-4-8 and the procedures set forth in R.I. Gen. Laws § 24-1-1, *et seq*., was proper because the Town acquired the property by eminent domain for public conservation and recreation purposes, **Ex. 2**, Nov. 7, 2025 Decision at 9-12; (2) the Court validly exercised jurisdiction and ordered the deposit of funds into the Court's registry, *id*. at 13;

---

[2]    The Former Property Owners later withdrew their Rule 11 Motion for Sanctions.

5

(3) the State Court Action remains open and the Superior Court continues to have jurisdiction, *id*. at 13-14; (4) under R.I. Gen. Laws § 24-1-9, "the [Superior] Court has jurisdiction to hear the Town's motion for entry of judgment," *id*. at 13; and (5) under R.I. Gen. Laws § 24-1-9, the Superior Court has jurisdiction to hear the Town's alternative motion for an order assigning the case to trial. *Id*. at 15.

The parties submitted extensive briefing on the Town's Motion for Entry of Judgment or, Alternatively, for Trial and a hearing on that motion was scheduled for Wednesday, December 17, 2025 at 9:30 a.m., before the Superior Court.

At approximately 9 a.m. that day, the Superior Court and counsel for the Town received an email from counsel for the Former Property Owners attaching a Notice of Withdrawal of Special Entry of Appearance by Counsel purporting to withdraw their special appearance in this case and informing the Superior Court that they would be ceasing their limited participation in these proceedings. **Ex. 3**, December 17, 2025 Email. At the same time, the Former Property Owners' counsel sent a letter to the Superior Court advising that, as a result of the notice of withdrawal, "we will not be attending the hearing this morning." *Id.* at 11.

Upon receipt of the December 17, 2025 Email, the Superior Court contacted the Former Property Owners' counsel and requested that they appear in court. With counsel for both the Town and the Former Property Owners' present, the Superior Court expressed reservation as to whether Rule 1.5 of the Superior Court Rules of Practice permitted counsel to withdraw without court approval.

Without deciding that question of whether the Former Property Owners had submitted to the jurisdiction of the Court by taking actions that went beyond their counsel's special appearance, the Superior Court continued the hearing on the motion and raised with the parties its consideration

of a joint proceeding which would include the State Court Action and this action.  The Superior Court requested that the parties report back in writing with their respective positions on a joint state and federal court proceeding in these circumstances.

In response, on January 8, 2026, the Former Property Owners' counsel wrote to the Superior Court to "reaffirm their position that permission to withdraw under the circumstances was not required." **Ex. 4**, January 8, 2026 Letter.[3]

In response to the Court's request for comment on its consideration of joint state and federal court proceedings, the Former Property Owners' January 8, 2026 Letter stated:  "Counsel on behalf of the non-party Property Owners, who have withdrawn from the proceeding, have no comment on the Court's proposal."  *Id*. at 2.  However, the Former Property Owners called to the Court's attention their filing before this Court addressing their position on joint trial.  *Id*.  In that filing, the Former Property Owners reiterated their position, stating:  "The Property Owners repeatedly made clear to the Superior Court that they would not be adjudicating their claims in that forum."  Pls.' Mot. for a Pre-Trial Conference and Issuance of a Scheduling Order at 4 n.1, ECF No. 48.

On January 27, 2026, the Town filed in the State Court Action its comment on the Superior Court's consideration of joint state and federal court proceedings.  **Ex. 5**, Town's Comment on Court's Consideration of Joint State and Federal Proceedings.  The Town's submission argued that it is abundantly clear from the Former Property Owners' communications the Superior Court and their filings in this action that they have no intention of participating in any proceeding before the Superior Court.  *Id*. at 3.  Thus, the Town argued that the Former Property Owners' position

---

3    In the January 8, 2026 Letter, the Former Property Owners' counsel suggested that the Superior Court had "acknowledged, off-the-record, during the hearing" that the Former Property Owners' counsel did not need permission to withdraw.  **Ex. 4**, January 8, 2026 Letter at 1.  The Town disputes that the Superior Court made any such acknowledgement.

eliminated any basis for the Town to comment on the Court's proposal since a joint state–federal proceeding cannot proceed without the Former Property Owners. *Id.* The Town expressed its appreciation for the effort to identify a path forward that would avoid the legal questions presented in the Superior Court Action and in this action, but maintained that because the Former Property Owners steadfastly refuse to participate in proceedings before the Superior Court, a joint state and federal court proceeding is not possible. *Id.*[4] Accordingly, the Town requested that the Superior Court proceed with hearing its Motion for Entry of Judgment or, Alternatively for Trial and enter final judgment as requested therein.

By email later that day, the Superior Court (Licht, J.) wrote to the parties and requested that they contact the Court after February 9, 2026, to schedule a date and time for a hearing on the Town's Motion for Entry of Judgment or, Alternatively for Trial. **Ex. 6**, Judge Licht Email.

Accordingly, the issue of just compensation is now pending in the State Court Action and by hearing (*in short order*) the Town's Motion for Entry of Judgment, or Alternatively for Trial, the Superior Court is moving forward in deciding whether the sum of money estimated to be just compensation and deposited in the Court registry is just compensation for the Property, or, alternatively, whether to conduct trial proceedings.

## II. The Federal Court Action.

---

[4] The Town also informed the Superior Court that it expressly reserves—and does not waive—its right to comment further on any proposed joint federal and state court proceeding. Even assuming such a proceeding were procedurally feasible, the Town has significant concerns regarding the overlapping relief sought in the Superior Court Action and that pursued by the Former Property Owners in this Court, particularly where there are established abstention doctrines governing the proper allocation of jurisdiction between federal and state courts in cases presenting overlapping claims for relief. The Town further questions the procedural integrity and appellate recourse that would attend any such joint proceeding, among other substantial issues. Those concerns, however, are not ripe when the Former Property Owners refuse to participate at all. **Ex. 5**, Town's Comment on Court's Consideration of Joint State and Federal Proceedings at 4.

As noted above, days before the statutory deadline for petitioning the Superior Court for an assessment of damages, the Former Property Owners raced to this courthouse and filed this federal action.

The Former Property Owners' initial Complaint asserted that the Town's resolutions have caused the taking of their property under the Fifth and Fourteenth Amendments of the United States Constitution and violated their rights to procedural and substantive due process. The Former Property Owners also challenged the taking itself under the Fifth and Fourteenth Amendments. The Former Property Owners purported to state a claim for an assessment of damages under Rhode Island statutory law and asserted several state common law causes of action. The Former Property Owners sought, *inter alia*, injunctive relief, declaratory relief, just compensation and damages. *See generally* Compl., ECF No. 1.

Defendants filed an Answer to the Former Property Owners' Complaint and a Motion to Dismiss or Abstain. *See* Defs.' Mot. to Dismiss or Abstain, ECF No. 23; Defs.' Answer, ECF No. 26. Among other things, Defendants' Motion to Dismiss or Abstain argued that the Court should dismiss the Former Property Owners' equitable claims and their claims for injunctive and declaratory relief and should further abstain from hearing any other aspects of this case until after the Town's condemnation action is completed.

Before this Court's September 5, 2025 status conference (apparently in an effort to convince this Court not to abstain), the Former Property Owners filed a First Amended Complaint, ECF No. 34, which the Town read as withdrawing their claims for injunctive and declaratory relief, and which the Former Property Owners confirmed was their intent. At the conference, the Former Property Owners' counsel informed this Court that their amendment "removed all allegations related to the state court proceeding." The Former Property Owners' First Amended Complaint

9

deleted the Declaratory Judgment Act as a basis for the Court's jurisdiction, eliminated their cause of action under the Declaratory Judgment Act, and appeared to abandon their request for injunctive relief.

However, the Former Property Owners thereafter filed a Motion for Injunctive and Declaratory Relief, ECF No. 45, which attempted to resurrect and reclaim injunctive and declaratory remedies by motion (rather than by requesting to once again amend their complaint). After the Town objected to that motion, the Former Property Owners reversed course, claiming that their First Amended Complaint continues to seek equitable relief, which may include injunctive or declaratory relief. In support of that newly minted position, the Former Property Owners relied on the First Amended Complaint's request for "[a]ny other relief that the Court deems fair, equitable, and just" in connection with each Count in the First Amended Complaint. Reply Mem. in Supp. Pl.'s Mot. for Injunctive and Declaratory Relief at 4, ECF No. 47 (citing First Am. Compl. ¶ 368). The Former Property Owners argued in reply that this particular request for relief allows them to seek declaratory or injunctive relief. *Id.*

Thus, as with their original Complaint, the Former Property Owners' First Amended Complaint asserts that the Town's resolutions or its condemnation of the Property has caused the taking of their property under the Fifth and Fourteenth Amendments of the United States Constitution and violated their rights to procedural and substantive due process. The Former Property Owners also challenge the taking itself under the Fifth and Fourteenth Amendments. The Former Property Owners purport to state a claim for an assessment of damages under Rhode Island statutory law and asserted several state common law causes of action. And, depending on whether this Court credits the Former Property Owners' arguments raised in their Motion for Injunctive or

Declaratory Relief, the Former Property Owners' First Amended Complaint may be read as also seeking equitable relief, including declaratory and injunctive relief.

### III. The Pending State Court Declaratory Judgment Action.

On November 26, 2025, certain current and former Town councilpersons and Town officials commenced a declaratory judgment action in Kent County Superior Court captioned *Lima, et al. v. Soscia Holdings, LLC*, *et al.*, No. KC-2025-1352 (the "State Court Declaratory Judgment Action"). The Complaint in the State Court Declaratory Judgment Action alleges a single cause of action under the Rhode Island Uniform Declaratory Judgment Act, R.I. Gen. Laws § 9-1-30, *et seq.* and seeks a declaration concerning the Plaintiffs' privileges and immunities under the Rhode Island Constitution's Speech in Debate clause.

On December 19, 2025, the Former Property Owners purported to remove the State Court Declaratory Judgment Action to this Court by filing a Notice of Removal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446. Notice of Removal, *Lima et al. v. Socia Holdings, et al.*, No. 1:25-cv-00676-MRD-AEM (D.R.I. Dec. 19, 2025), ECF No. 1. On January 16, 2026, the former and current Town councilpersons and Town officials filed a Motion to Remand the case to the state court pursuant to 28 U.S.C. § 28 U.S.C. § 1447(c). Motion to Remand, *Lima et al. v. Socia Holdings, et al.*, No. 1:25-cv-00676-MRD-AEM (D.R.I. Jan. 16, 2026), ECF No. 5.

### ARGUMENT

#### I.   Legal Standard

Although federal courts are generally obliged to exercise the jurisdiction granted to them, "Supreme Court precedent has carved out a discrete set of 'exceptional circumstances' in which

the exercise of jurisdiction may be declined." *Chico Serv. Station, Inc. v. SOL P.R. Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011). "As a general proposition, these 'exceptional circumstances' lie 'where denying a federal forum would clearly serve an important countervailing interest,' such as 'regard for federal-state relations' or 'wise judicial administration.'" *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)) (internal quotation marks omitted).

The Supreme Court recognizes various forms of abstention: *Pullman* abstention, *see R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 500 (1941); *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37 (1971); *Rooker/Feldman* abstention, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Burford* abstention, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Colorado River* abstention, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Wilton/Brillhart* abstention, *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). *See Sevigny v. Emplrs. Ins. of Wausau*, 411 F.3d 24, 26 n.2 (1st Cir. 2005) (identifying the various court-made abstention doctrines). Through these doctrines, the United States Supreme Court has "increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law." *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 27 (1959). "The unifying feature of the Supreme Court's abstention cases is that 'they all implicate (in one way or another and to different degrees) underlying principles of equity, comity, and federalism foundational to our federal constitutional structure.'" *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 993 (7th Cir. 2024) (quoting *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021)).

12

The First Circuit has not resolved whether motions to dismiss based on abstention are properly considered under the Fed. R. Civ. P. 12(b)(1) standard or 12(b)(6) standard, and district courts within the First Circuit have taken different approaches. *See Laura v. City of Worcester*, No. 4:23-CV-40129-MRG, 2024 U.S. Dist. LEXIS 221092, at *4 (D. Mass. Dec. 6, 2024); *see also Aui Partners LLC v. State Energy Partners LLC*, 742 F. Supp. 3d 28, 39 (D. Mass. 2024). Here, the Court need not weigh any evidence or make any factual determinations to decide whether it ought to abstain its jurisdiction. It can make that determination based on the allegations in the Former Property Owners' First Amended Complaint and publicly available documents (including documents and dockets from the state court proceeding), therefore, it need not decide whether Defendants' Motion is appropriately raised under a Rule 12(b)(1) or Rule 12(b)(6) standard. *See Aui Partners LLC*, 742 F. Supp. 3d at 39-40.

Regardless of the standard applied, it is well settled that when a federal court abstains on claims for equitable relief, it may decline to exercise jurisdiction altogether by dismissing those claims. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 707 (1996). By contrast, however, when a court abstains on a damages claim, it must stay claims for monetary relief that cannot be addressed in state court proceedings. *See id.*

## II.    *Pullman* abstention is warranted here.

In the State Court Action, the Town has exercised its "sovereign prerogative" to acquire the Property by eminent domain, *Thibodaux*, 360 U.S. at 28, and it should be permitted to complete that process before this Court considers any remaining claims the Former Property Owners may have. Because the Town is pursuing a remedy in the State Court Action that substantially overlaps with the relief the Former Property Owners seek in this action, this Court should abstain to avoid

13

interfering with the ongoing State Court Action, permit the state court to address unsettled issues of state law, and avoid premature adjudication of the constitutional questions raised here.[5]

In *Pullman*, the United States Supreme Court directed that "in certain circumstances, a federal court should abstain from reaching a federal constitutional issue where it is likely that the dispute could be resolved (or narrowed) in state court under state law." *29 Greenwood, LLC v. City of Newton*, 128 F.4th 1, 4 (1st Cir. 2025) (Breyer, J.) (construing *Pullman*).

"The purpose of *Pullman* abstention is to enable courts 'to avoid resolving . . . federal question[s] by encouraging a state-law determination that may moot the federal controversy.'" *Id*. (quoting *San Remo Hotel, L.P. v. City & Cnty. of S.F.*, 545 U.S. 323, 339 (2005)). Abstention also "serves to 'avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues.'" *Batterman v. Leahy*, 544 F.3d 370, 373 (1st Cir. 2008) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 76 (1997)). "It is thus often appropriate for a federal court to abstain from reaching a constitutional issue '[w]here there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim.'" *29 Greenwood, LLC*, 128 F.4th at 4 (quoting *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975)). "This is particularly true when a constitutional question implicates issues of land-use planning—a 'sensitive area of social policy into which the federal courts should not lightly intrude.'" *Id*. (quoting *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001)).

Under *Pullman*, a federal court appropriately declines to exercise jurisdiction where: "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional

---

[5]    Importantly, the Former Property Owners do not challenge the constitutionality of the state condemnation statute under either the Rhode Island Constitution or the United States Constitution.

question." *Batterman*, 544 F.3d at 373 (citing *Ford Motor Co. v. Meredith Motor Co.*, 257 F.3d 67, 71 (1st Cir. 2001)).

Here, *Pullman* abstention is warranted because there are at least four state law questions that should be resolved by the state courts and resolution of those state law questions will or may obviate the need to resolve the federal constitutional questions presented here.

First, the state court should resolve, as a matter of first impression, whether Rhode Island law precludes the Former Property Owners from challenging the taking and seeking an assessment of damages due to their failure to comply with an explicit statutory condition precedent.

Second, the state court's determination, as a matter of first impression and one of statutory interpretation, that the Town proceeded under the correct statute in exercising its power of eminent domain should be reduced to a final judgment in the State Court Action.

Third, the state court should resolve, as a matter of first impression, whether the Speech in Debate clause of the Rhode Island Constitution, R.I. Const. art. VI, sec. 5, bars the former Property Owners from basing their claims on the statements of individual council members purportedly made during executive session and recorded in minutes that were erroneously and inadvertently made public.

Fourth, as part of the state court eminent domain proceedings, the Rhode Island Superior Court must determine the fair market value calculation, and any additional compensation that may be granted, which necessarily will affect the issues the Former Property Owners raise in this Court.

### A. *Pullman* abstention is appropriately applied in takings cases.

As a threshold matter, *Pullman* abstention is appropriately applied in takings cases and remains firmly available in those cases.

In *Thibodaux*, the Supreme Court recognized that a state's exercise of eminent domain is of a "special and peculiar nature" because it is "intimately involved with sovereign prerogative." 360 U.S. at 28.  The Court affirmed abstention in a state eminent domain proceeding removed to federal court based on diversity.  *Id.* at 26, 30.  Citing *Pullman*, the Court found abstention proper to avoid the "hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities" because the eminent domain issues "turn on legislation with much local variation interpreted in local settings."  *Id*. at 28.

Since then, courts have abstained under *Pullman* when state eminent domain proceedings are involved.  *See, e.g.*, *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1150-51 (9th Cir. 2022); *Concilio de Salud Integral de Loiza, Inc. v. Municipality of Rio Grande*, No. 21-01510, 2025 U.S. Dist. LEXIS 108217, at *10-12 (D.P.R. June 6, 2025) ("*Concilio*"); *CKC Properties, LLC v. Town of Mt. Pleasant, S.C.*, No. 2:23-cv-04489, 2024 U.S. Dist. LEXIS 1070, at *18-23 (D.S.C. Jan. 3, 2024); *see also 29 Greenwood, LLC*, 128 F.4th at 4 (noting that land use planning is an area of social policy that satisfies the first *Pullman* requirement).

The Supreme Court's decisions in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019) and *Pakdel v. City & County of San Francisco*, 594 U.S. 474 (2021) do not disturb or abrogate *Pullman* abstention in takings cases.

In the introduction to their Complaint, the Former Property Owners state that they have brought this action in reliance on the Supreme Court's decision in *Knick*, presumably to justify their invocation of the federal forum.  First Am. Compl. at 4-5.  The Former Property Owners' reliance on *Knick* to justify federal jurisdiction is misplaced.  *Knick*, an inverse condemnation case, abolished the state-forum exhaustion requirement previously imposed by *Williamson County Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), as a prerequisite

to bringing federal takings claims under 42 U.S.C. § 1983, but *Knick* spoke solely to ripeness, not abstention. *Knick*, 588 U.S. at 188-89; *see Thinh Tran v. Dep't of Plan. for Cnty. of Maui*, No. CV 19-00654 JAO-RT, 2020 WL 3146584, at *7 (D. Haw. June 12, 2020). *Pakdel* similarly clarified that exhaustion of state administrative remedies is not a prerequisite to a takings claim where a final governmental decision has been rendered. 594 U.S. at 479-81. *Pakdel*, however, did not address abstention doctrines. *See generally id*.

Federal courts have affirmatively recognized that *Pullman* abstention is conceptually and doctrinally distinct from the ripeness requirements addressed in *Knick* and *Pakdel*. *See, e.g., Consilio*, 2025 U.S. Dist. LEXIS 108217, at *8-9; *Gearing*, 54 F.4th at 1148. *Pullman* abstention allows a federal court to stay a ripe federal constitutional claim where resolution of an uncertain and potentially dispositive state-law issue would obviate or reshape the federal question. *Gearing*, 54 F.4th at 1148-49. This doctrine is rooted in considerations of federalism and comity, not exhaustion. There is no indication that the Supreme Court intended to silently abrogate more than 80 years of well-established abstention principles in the takings context.

Thus, federal courts have confirmed—post *Knick*—that *Pullman* abstention continues to apply in eminent domain cases. *See Consilio*, 2025 U.S. Dist. LEXIS 108217, at *8-9; *Gearing*, 54 F.4th at 1148; *see also CKC Props.*, 2024 U.S. Dist. LEXIS 1070, at *18-19.

For example, in *Gearing*, the Ninth Circuit explicitly rejected the argument that *Knick* or *Pakdel* precluded *Pullman* abstention. 54 F.4th at 1147-50. The court explained that neither decision "explicitly limit abstention in takings litigation," and that the doctrines of ripeness and abstention serve different purposes. *Id*. at 1148. Ripeness determines when a claim accrues, while abstention governs whether a federal court ought to defer to state proceedings on a parallel state law issue. *Id*. Thus, in *Gearing*, the Court affirmed the district court's order granting abstention

17

in an action brought pursuant to 42 U.S.C. 1983, asserting a regulatory taking and related claims, pending resolution of an eminent domain action in state court.  *Id.* at 1151.

In that case, the City informed the plaintiffs that it intended to acquire their properties by eminent domain and made a purchase offer based on the properties' appraised values.  *Id*. at 1147. The plaintiffs rejected the offer and filed suit in federal district court claiming, *inter alia*, that the City effected a regulatory taking in violation of the Fifth and Fourteenth Amendments.  *Id.*  The City, in turn, filed an eminent domain action in state court and a motion asking the federal court to abstain pending resolution of the case.  *Id.*

The plaintiff argued that *Knick* and *Pakdel*, which rejected state-forum exhaustion requirements for takings claims, precluded *Pullman* abstention because abstention would force plaintiffs to litigate their federal claims in state court.  The district court and the Ninth Circuit disagreed.  *Id*. at 1148-50.

Likewise, in *Concilio*—a decision issued by a district court in this Circuit days before the Former Property Owners filed this suit—the court determined that *Pullman* abstention was warranted in a federal takings suit while a related state condemnation case was pending.  2025 U.S. Dist. LEXIS 108217, at *10-11.  In doing so, the court recognized that *Knick* and its progeny removed federal barriers to asserting ripe takings claims but do not prevent federal courts from abstaining in deference to unresolved, determinative questions of state law.

In *Concilio*, on October 21, 2020, the municipality of Rio Grande passed an ordinance stating that it would take the property owner's property by eminent domain for purposes of establishing new administrative offices for the municipality and the Commonwealth of Puerto Rico.  *Id*. at *3.  On October 19, 2021, the property owner filed a federal court complaint against the municipality, its mayor, and municipal legislators for damages under Section 1983, the Takings

18

Clause of the Fifth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, unjust enrichment and general tort damages. It also sought injunctive relief to remedy the alleged physical and regulatory takings. *Id.* at *2.

Thereafter, on July 6, 2022, the municipality filed a petition for eminent domain with the Puerto Rico Superior Court of Rio Grande in which it asked the Court to grant title of the property to the municipality. State Supreme Court Decision (Certified Translation), *Concilio*, No. 21-cv-01510-GMM (D.P.R.), ECF No. 149-1 ("*Concilio* Supreme Court Decision"). At that time, the municipality estimated that the just and reasonable compensation for the property was $3,600,000, which it deposited in the state court's escrow account as just compensation in favor of the property owner. *Id.* at 2. On July 13, 2022, the Rio Grande Court of First Instance issued a decision by which it vested the municipality with the fee simple title over the property. *Id.*

On August 26, 2022, the property owner filed an answer to the petition for eminent domain, arguing that the municipality did not have the authority to take the property in question because the United States government also had an interest in it. *Id.* at 3. On March 13, 2023, the Court of First Instance issued a series of orders in which it, *inter alia*, determined that title to the property had vested in the municipality and that joinder of the federal government was unnecessary. *Id.* at 6.

The property owner appealed to the Puerto Rico Court of Appeals where, among other things, it sought revocation of the resolution vesting title in the municipality. *Id.* at 7. On January 10, 2024, the Puerto Rico Court of Appeals issued a judgment validating the municipality's ownership and title to the property. *Id.* at 9. In doing so, the Court of Appeals recognized that the property owner would have the right to demonstrate its appraiser's expert opinion in an evidentiary

19

hearing before the Court of First Instance. Mem. Opp. Pl.'s Mot. Summ. J., *Concilio*, No. 21-cv-01510-GMM (D.P.R.), ECF No. 132 ("In order words, [the property owner's] claim for compensation in an additional amount to the $3,600,000.00 already tendered by the Municipality as just compensation will be heard in the condemnation claim filed in [state court].").

The property owner then filed a petition for writ of certiorari with the Puerto Rico Supreme Court. The Puerto Rico Supreme Court granted the petition and, on April 4, 2025, issued its decision in which it concluded that the Court of First Instance had erred in addressing the threshold question of jurisdiction and when it assumed jurisdiction without requesting the appearance of the federal government. *Concilio* Supreme Court Decision at 22. As such, the Puerto Rico Supreme Court overruled the Puerto Rico Court of First Instance and the Court of Appeals' decisions and remanded the case to the lower court for further proceedings. *Id.* at 22-23.

Back before the federal district court, the municipality objected to federal adjudication of the property owner's claims since there were pending condemnation claims in state court. *Consilio*, 2025 U.S. Dist. LEXIS 108217, at *8. In these circumstances, the court determined that *Pullman* abstention was warranted. *Id.* at *10-11.

Thus, as both the *Gearing* and *Concilio* courts concluded, the Supreme Court's decisions in *Knick* and *Pakdel* do not abrogate *Pullman* abstention. Federal courts remain empowered to abstain under *Pullman* where appropriate, even in takings litigation. As set forth more fully herein, abstention under *Pullman* is appropriate here.

**B. The requirements for *Pullman* abstention are met here.**

*Pullman* abstention is warranted here because there is a related action pending in state court, substantial uncertainty exists over at least three state law questions, and settling the

questions of state law will or may well obviate the need to resolve a significant federal constitutional question.

### 1.   There is a related action pending in state court.

The procedural posture of this case is much like that in *Concilio*.  As in *Concilio*, a state court condemnation proceeding preceded the commencement of this federal court suit and remains pending.

Pursuant R.I. Gen. Laws § 24-1-1, *et seq.*, the Town passed a series of resolutions authorizing the condemnation of the Property.  First Am. Compl. ¶¶ 168-96.  Immediately thereafter, on June 21, 2024, the Town filed the State Court Action, instituting an *in rem* proceeding pursuant to R.I. Gen. Laws § 24-1-3, for purposes of depositing into the Court's registry a sum of estimated just compensation for the condemned Property.  *See id.* ¶¶ 198-99; **Ex. 7**, Miscellaneous Petition.  On June 28, 2024, the Superior Court (Licht, J.) held a hearing on the miscellaneous petition, received an affidavit and report from the Town's appraiser, approved a condemnation order, and accepted a deposit of $157,000 into the Court's registry, as the estimated just compensation for the Property.  First Am. Compl. ¶¶ 198, 206-211.

Critically, and as in *Concilio*, when the Former Property Owners commenced this action in federal court, the State Court Action was still pending.  The Superior Court had not yet made a final determination concerning whether the sum of money estimated to be just compensation and deposited in the Court registry was fair compensation for the Property, nor had it entered a final judgment.  **Ex. 8**, State Court Action Docket.[6]  In fact, by statute, the Superior Court is required to keep the State Court Action open for a period of at least one year so that:

> Any owner of, or person entitled to any estate or right in, or interested in any part of the real property so taken, . . . may, within

---

[6]   The State Court Action docket is a matter of public record, which the Court may consider in deciding whether to abstain.  *See Aui Partners LLC,* 742 F. Supp. 3d at 39-40.

> one year from the time the sum of money estimated to be just compensation is deposited in the superior court to the use of the persons entitled thereto, apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury.

R.I. Gen. Laws § 24-1-8.

After the one-year period had passed (and after Plaintiff had filed this suit purporting to invoke R.I. Gen. Laws § 24-1-8 in this Court), the Town filed in the State Court Action a Motion for Entry of Judgment or, Alternatively, Assignment for Trial, *see* **Ex. 9**.  That motion, pending in the State Court Action, argued that "[n]otwithstanding service of the notice of condemnation and actual notice thereof, the owners and those having interest . . . in the condemned dam and pond property that is the subject of this action failed timely to file a petition for an assessment of damages as required by R.I. Gen. Laws § 24-1-8." *Id.* at 1.  The Town further argued that the Former Property Owners "attempted an end-run around [the Superior Court] by attacking the condemnation in the Rhode Island federal district court." *Id.*  The Town maintained that the Former Property Owners' "failure to petition for an assessment of damages in this Court likely forfeits and forever forecloses any right, claim, or action that Soscia had to file a petition challenging the taking and the compensation paid by the Town." *Id.*

The Superior Court has considered and determined that it has jurisdiction over that motion. **Ex. 2**, Nov. 7, 2025 Decision at 13.  And, the Superior Court has requested that the parties communicate with the Court on February 9, 2026, to set a date for a hearing on that motion.  **Ex. 6**, Judge Licht Email.

### 2. Uncertainty exists over at least four questions of state law.

There are at least four distinct questions of state law implicated here, and each should be first determined by the state court.

22

> **i.** **The state court should determine whether, under Rhode Island law, the Former Property Owners are foreclosed from challenging the taking and the assessment of damages.**

The state court must determine, as a matter of first impression, whether Rhode Island law precludes the Former Property Owners from challenging the taking and seeking an assessment of damages due to their deliberate and purposeful failure to comply with a statutory condition precedent. When an uncertain issue of state law turns on the interpretation of a state statute, the state courts should be afforded the first opportunity to interpret and apply the statute.

In its pending motion in the State Court Action, the Town has argued that the Former Property Owners failed to timely "apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury," as required by R.I. Gen. Laws § 24-1-8. Instead of following this statutory process, the Former Property Owners purported to bring a cause of action in this Court. The Town contends that this attempt is an improper circumvention of the process required by Rhode Island law. **Ex. 9**, Motion for Entry of Judgment or, Alternatively, Assignment for Trial at 1.

The question presented both by the Town's pending motion in the State Court Action and by the Former Property Owners' federal Complaint is the same: whether a property owner may timely seek assessment of damages for an alleged taking not by petitioning the superior court for the county in which the real property is situated, but by initiating a federal lawsuit. Because this is an open question under state law, it is appropriate for the state court to resolve this issue first. *See Barr v. Galvin*, 626 F.3d 99, 108 (1st Cir. 2010) (concluding that when an uncertain issue of

23

state law turns on the interpretation of a state statute, the state courts should be afforded the opportunity to address, in the first instance, the statute's application).

The statute lays out a clear procedure:  a property owner must, within one year, "apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury." R.I. Gen. Laws § 24-1-8.  Both the Town and the Superior Court anticipated that the Former Property Owners would invoke their rights in that forum.  When the Town sought approval to make its deposit into the Court Registry, as required by statute, the Court expressly noted that any dispute over valuation for the alleged taking would be resolved through the statutory assessment process, if the Former Property Owners chose to pursue it.  The Court stated:

> Okay.  The Court has reviewed the papers that have been submitted and the Court is prepared to enter the order that has been proposed and the Court accepts for purposes only of this hearing and this procedure, the estimated value given by Mr. Andolfo.
>
> It was subject to the statutory right of the condemnee to petition for an assessment of damages.  And after hearing, at some point, if they choose to do that, I would be very surprised if they didn't, but that's for another day.  If they choose to do that, the Court will ultimately make a decision on the value based upon, I assume Mr. Andolfo's testimony where he's subject to, I think it was cross-examination and the experts that the condemee will undoubtedly present to the Court and that person or persons will be subject to vigorous cross-examination.

**Ex. 10**, June 28, 2024 Tr. at 8:4-21 (Licht, J.).

Consistent with the Town's pending motion in the State Court Action, Defendants maintain that the Former Property Owners' failure to petition for an assessment of damages within this statutory framework forever bars them from challenging the taking or the compensation provided. Anticipating this position, the Former Property Owners' First Amended Complaint claims that "[a]ny applicable period of limitations under R.I. Gen. Laws § 24-1-8 remains tolled under 28

24

U.S.C. § 1367." First Am. Compl. ¶ 479.[7] Whether the time period set forth in the state statute is a procedural statute of limitations subject to tolling or a substantive condition precedent is a question for the Superior Court in the first instance.

At the appropriate time, Defendants will demonstrate in the State Court Action that the one-year period for petitioning for an assessment of damages is a substantive condition precedent, not a procedural limitations period subject to tolling.

Under Rhode Island law, when a statute both creates a liability and provides a remedy unknown at common law, and imposes a time period for asserting rights, compliance with those terms is a condition precedent to recovery. *Ochoa v. Union Camp Corp.*, 391 A.2d 123, 127 (1978); *see also Krupinski v. Deyesso*, No. PB 07-3484, 2012 R.I. Super. LEXIS 59, at *14 (R.I. Super. Ct. Apr. 12, 2012) (Silverstein, J.) (relying on 54 C.J.S. Limitations of Actions § 31 (2010) for the proposition that "[w]hen a statute creates a cause of action unknown to the common law, a time limit for bringing suit prescribed by the statute is a condition precedent to maintaining the action").

Here, R.I. Gen. Laws § 24-1-1 *et seq.* sets forth such a condition because a municipality's right of eminent domain did not exist at common law. *See City of Marseilles v. Radke*, 679 N.E.2d 125, 129 (Ill. App. Ct. 1997) ("The right of eminent domain by a municipality did not exist at common law; a municipality can only exercise the power of eminent domain when it has been

---

[7] In the State Court Action, the Town argued that the deadline set by R.I. Gen. Laws § 21-4-8 is a condition precedent, not a statute of limitations subject to tolling. **Ex. 11**, Pet'r's Mem. Supp. Mot. Entry of Judgment at 2. Although the Former Property Owners' original Complaint alleged that "the statute of limitations" under R.I. Gen. Laws § 21-4-8 was subject to tolling, perhaps now recognizing that the deadline set under that statute is not actually a statute of limitations, their First Amended Complaint alleges that "the period of limitations" under R.I. Gen. Laws § 31-4-8 is subject to tolling. *Compare* Compl. ¶ 408, *with* First Am. Compl. ¶ 479. Regardless of any artful pleading, a condition precedent is not subject to tolling.

25

specifically conferred by legislative enactment."). As such, the time period in R.I. Gen. Laws § 24-1-1 *et seq*. is a condition precedent, not a statute of limitations, and thus is not subject to tolling.

Relatedly, whether R.I. Gen. Laws § 24-1-8 creates a private cause of action such that a cause of action for damages may be asserted in this Court is also a question of first impression that should be adjudicated by the state court in the first instance.[8] *See Ohata v. Vill. of Morton Grove*, No. 92 C 8480, 1994 U.S. Dist. LEXIS 9288, at *11-12 (N.D. Ill. July 6, 1994) (concluding that resolution of whether a statute implies a private right of action "is more appropriately left to the state courts, which are better suited to determine the underlying purpose of the statute and the remedies necessary to achieve that purpose"). The state court will apply its own principles of statutory construction when deciding that question, including the principle that "when a statute establishes rights not cognizable at common law, that statute is 'subject to strict construction.'" *Bandoni v. State*, 715 A.2d 580, 584 (R.I. 1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). The Rhode Island Supreme Court has held that other similar statutes that authorize certain proceedings in state court are not "ordinary civil action[s]." *Pratt v. Woolley*, 117 R.I. 154, 157, 365 A.2d 424, 426 (1976) (construing a statute authorizing tax sale foreclosure proceedings). Whether to construe R.I. Gen. Laws § 24-1-1 *et seq*. similarly is a matter for the state court to decide.

> **ii.      The state court has determined that the Town properly exercised its power of eminent domain pursuant to R.I. Gen. Laws § 24-1-1 *et seq*. and that determination should be reduced to a final judgment.**

In their original Complaint, the Former Property Owners claimed that the Town proceeded under the wrong statute, arguing that "Rhode Island's economic redevelopment taking procedures

---

[8]      Here, Count V of the Former Property Owners' First Amended Complaint purports to maintain a cause of action for "Assessment of Damages – R.I. Gen. Laws § 24-1-8" and seeks requests "judgment to enter against the Defendants for damages." Compl. ¶¶ 472-79.

set forth in R.I. Gen. Laws § 45-32-1 *et seq*. and § 45-64.12-1 *et seq*. limit economic redevelopment takings, provide procedural safeguards for such, and mandate greater compensation (150% of fair market value) for property that is taken for economic redevelopment." Compl. ¶ 319.  The Former Property Owners made the same argument in the State Court Action.  *See* **Ex. 12**, Property Owners' Mem. in Support of Objection to Petitioners' Motion for Entry of Judgment at 1, 3-4, 15-22.[9]

Since then, the Superior Court has decided this issue and ruled that the Town properly proceeded with the condemnation under Chapter 32 of Title 45 of the Rhode Island General Laws. **Ex. 2**, Nov. 7, 2025 Decision at 9-12.

However, the Former Property Owners' First Amended Complaint still maintains that "[u]nder *Kelo* and Rhode Island law implementing this decision, the economic development purpose renders the award of just compensation subject to a 150% multiplier."  First Am. Compl. at 3.  As support therefor, the Former Property Owners cite R.I. Gen. Laws §§ 42-64.12, 42-64.12-2(5), and 42-64.12-8.  The Former Property Owners further allege that the Defendants have violated the Takings Clause by, *inter alia*, failing to pay the Former Property Owners certain compensatory damages "subject to a 150% multiplier because the Taking was for economic development purposes."  First Am. Compl. ¶¶ 355, 379, 476.

The Superior Court's determination that the Town's actions were proper under R.I. Gen. Laws § 24-1-1 *et seq*. bars the Former Property Owners from advancing the opposition position in this action.  The Superior Court should be afforded the opportunity to enter final judgment thereby giving preclusive effect to its determination.

This is especially so where the issue decided by the Superior Court is a matter of state law that precedes the federal constitutional issues presented in this case.  *See Valls v. Allstate Ins. Co*.,

---

[9]    The Town has redacted from Exhibit 12 references to the executive session minutes and their contents.

919 F.3d 739, 743 (2d Cir. 2019) (explaining that *Pullman* abstention is warranted when a case involves a question of state statutory interpretation antecedent to a federal constitutional issue). Moreover, this question implicates issues of local land use, a "sensitive area of social policy into which the federal courts should not lightly intrude." *29 Greenwood, LLC*, 128 F.4th at 4 (quoting *Columbia Basin Apartment Ass'n*, 268 F.3d at 802). As the First Circuit has recognized, *Pullman* abstention is particularly warranted when such issues are implicated. *Id.*; *see also Concilio,* 2025 U.S. Dist. LEXIS 108217, at *10-12 (finding that *Pullman* abstention was warranted where plaintiff challenged an ordinance that designated certain property for public use).

> **iii.**     **The state court should determine whether the Speech in Debate clause of the Rhode Island Constitution makes inadmissible statements of municipal legislators in executive session.**

This case presents a question of first impression under the Rhode Island Constitution that should be adjudicated by the state courts in the first instance. The Former Property Owners' claim that the executive session minutes establish that certain of the Defendants "knew, or at the very least, acted in the face of a perceived risk, that their actions would violate federal law." First Am. Compl. ¶¶ 422, 449; *see also id.* ¶ 424.

Initially, the Former Property Owners invoked the executive session minutes in the State Court Action. Then, on November 20, 2025, they purported to withdraw their reliance on the executive session minutes by filing a Notice of Withdrawal of Rule 11 Motion Without Prejudice and Notice of Non-Reliance on Exhibit C (the executive session minutes). That withdrawal was expressly without prejudice, leaving open the possibility that the Former Property Owners would later return in the State Court Action and put the executive session minutes at issue again.

Accordingly, after a conference with the Superior Court on these issues, on November 26, 2025, certain current and former Town councilpersons and Town officials commenced the State

28

Court Declaratory Judgment Action. The Complaint in the State Court Declaratory Judgment Action alleges a single cause of action under the Rhode Island Uniform Declaratory Judgment Act, R.I. Gen. Laws § 9-1-30, *et seq*. and seeks a declaration concerning the Plaintiffs' privileges and immunities under the Rhode Island Constitution's Speech in Debate clause.

On December 19, 2025, the Defendants in the Superior Court Declaratory Judgment Action, who are former property owners (the "Former Property Owners"), purported to remove the State Court Action to this Court by filing a Notice of Removal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446. Notice of Removal, *Lima et al. v. Socia Holdings, et al.*, No. 1:25-cv-00676-MRD-AEM (D.R.I. Dec. 19, 2025), ECF No. 1. On January 16, 2026, the current and former Town Councilpersons and other Town officials filed a Motion to Remand the case to the state court pursuant to 28 U.S.C. § 28 U.S.C. § 1447(c). Motion to Remand, *Lima et al. v. Socia Holdings, et al.*, No. 1:25-cv-00676-MRD-AEM (D.R.I. Jan. 16, 2026), ECF No. 5.

The Speech in Debate clause of the Rhode Island Constitution makes inadmissible statements of state and municipal officials made while carrying out their legislative duties. R.I. Const. art. VI, sec. 5.[10] Here, the statements on which the Former Property Owners premise their claim of pretext were purportedly made by municipal officials while carrying out their legislative duties. First Am. Compl. ¶¶ 125-67.

Article VI, Section 5, of the Rhode Island Constitution states, in relevant part, "For any speech in debate in either house, no member shall be questioned in any other place." R.I. Const. art. VI, sec. 5. "The plain and unequivocal language of the clause 'confers a privilege on legislators from inquiry into their legislative acts or into the motivation for actual performance of legislative

---

[10]  The federal common law recognizes an immunity substantially similar to that embodied in the Speech in Debate clause. *See Miles-UN-Ltd. v. Town of New Shoreham*, 917 F. Supp. 91, 98 (D.N.H. 1996). Federal common law legislative immunity not only protects state and local legislators from civil liability, it also functions as an evidentiary and testimonial privilege. *Id*.

acts that are clearly part of the legislative process.'" *Irons v. R.I. Ethics Comm'n*, 973 A.2d 1124, 1129 (R.I. 2009) (quoting *Holmes v. Farmer,* 475 A.2d 976, 983 (R.I. 1984)). In other words, the privilege, which extends to municipal officials, confers on state legislators and municipal councilmembers immunity from suit, as well as a testimonial privilege. *See Cranston Police Retirees Comm. v. City of Cransto*n, 208 A.3d 557, 588 (R.I. 2019); *see also Maynard v. Beck*, 741 A.2d 866, 868, 872 (R.I. 1999) (recognizing that the Speech in Debate clause extends to municipal officials).

Thus, evidence concerning the actions and motivations of legislators, the General Assembly, and here, councilmembers and the Town Council, must be excluded under the Speech in Debate clause of the Rhode Island Constitution. *See Holmes*, 475 A.2d at 984 (affirming the exclusion of testimony of legislators concerning the actions and motivations of the legislators and the General Assembly in proposing and passing the reapportionment plan). That privilege is absolute and may not be waived. *Holmes*, 475 A.2d at 985.

The complaint in the State Court Declaratory Judgment Action seeks a declaration that the Executive Session Minutes are protected by the Speech in Debate clause of the Rhode Island Constitution. Compl. for Declaratory J. ¶ 81(a)(1), *Lima et al. v. Socia Holdings, et al.*, No. 1:25-cv-00676-MRD-AEM (D.R.I. Dec. 19, 2025), ECF No. 1-1 (hereinafter "Compl. for Declaratory J."). That is squarely a question of state law. *See Ragland v. Gregory*, No. 5:22-CV-00443-BO-RJ, 2023 U.S. Dist. LEXIS 83374, at *5 (E.D.N.C. May 11, 2023) (recognizing that a violation of the North Carolina state constitution "is a question of state law, not federal law"). The complaint also seeks a declaration that the protections afforded by the Speech in Debate clause of the Rhode Island Constitution have not been and cannot be waived. Compl. for Declaratory J. ¶ 81(a)(2). That too is squarely a question of state law. The complaint further seeks a declaration that the

Speech in Debate clause of the Rhode Island Constitution constitutes an immunity and, as an immunity, it immunizes Plaintiffs for their legislative activities, including those described in the Executive Session Minutes. *Id.* ¶ 81(a)(3). That also is squarely a question of state law. The complaint also seeks a declaration that the Rhode Island Constitution prohibits Plaintiffs from being questioned in any forum other than the Ethics Commission regarding their legislative activities, including in this Court and the state court. *Id.* ¶ 81(a)(4). That question is also squarely one of state constitutional law. Further, the complaint seeks a declaration that the Rhode Island Constitution prohibits any use of the Executive Session Minutes. *Id.* ¶ 81(a)(5). Again, that question is one of state constitutional law. Finally, the complaint asks that the state court enjoin the Former Property Owners from using the Executive Session Minutes for any purpose and/or in any proceeding or trial of which that court has jurisdiction. *Id.* ¶ 81(a)(6).

As set forth in the Motion to Remand pending in the State Court Declaratory Judgment Action, these are all issues that should be decided by the Superior Court, not this Court, as this Court lacks original jurisdiction over them.

In this Court's prior memorandum and order, it expressly refrained from "being the first Court to consider" whether the Speech in Debate clause applies to the Executive Session Minutes. Mem. & Order at 18, ECF No. 40. In doing so, it stated: "If, however, the State Court rules on whether the Minutes are protected by this state constitutional principle, this Court may, consistent with principles of comity, revisit this issue." *Id.*

The declarations sought in the State Court Declaratory Judgment Action concerning the application and scope of the Rhode Island Constitution's Speech in Debate clause may and should help inform this Court's decision on whether to afford comity to the privilege and immunity created by that constitutional provision. Accordingly, this Court should abstain until the State

31

Court Declaratory Judgment Action is remanded to the Superior Court and the Superior Court has an opportunity to issue the declarations sought.

> **iv.      The state court should determine the fair market value and any additional compensation that may be granted for the alleged taking.**

As part of the State Court Action, the Superior Court must determine the fair market value calculation, and any additional compensation that may be granted, which would affect the issues the Former Property Owners raise in this Court.  As such, that determination "may reduce the contours of the federal litigation."  *Gearing*, 54 F.4th at 1150-51 (internal citations omitted) (finding that the state court's determination of fair market value in an eminent domain action would likely narrow the issues for determination by the federal court).  The state court should make that determination in the first instance.  *See id*.

Accordingly, there are at least four uncertain questions of state law at issue in this case.

> **3.   The State Court Action will or may well obviate the need to resolve the federal constitutional questions presented.**

*Pullman* abstention is also warranted because the pending State Court Action may moot or narrow the federal constitutional question presented.  *Pullman* instructs that a federal court should abstain from reaching a federal constitutional issue where it is likely that the dispute could be resolved (or narrowed) in state court under state law.  *29 Greenwood, LLC*, 128 F.4th at 4; *see also San Remo Hotel, L.P.*, 545 U.S. at 339 (recognizing that *Pullman* abstention enables courts "to avoid resolving . . . federal question[s] by encouraging a state-law determination that may moot the federal controversy").

Here, the State Court Action will likely moot or at least narrow the claims advanced in this Court for several reasons.

First, regardless of whether the state court determines that the Former Property Owners have timely and appropriately exercised their right to an assessment of damages pursuant to R.I. Gen. Laws § 24-1-8, the State Court Action will likely moot or significantly narrow the claims advanced in this Court.  If the state court concludes that the Former Property Owners did not timely and appropriately "apply by petition to the superior court for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury," such a conclusion would foreclose any right the Former Property Owners have to an assessment of damages pursuant to R.I. Gen. Laws § 24-1-8 or to claim a taking without just compensation.  But if the state court concludes that the Former Property Owners' right to an assessment of damages is not foreclosed and proceeds to determine the issue of just compensation, that determination will necessarily narrow the claims advanced in this Court.

The court in *Concilio* concluded, in similar circumstances, that the constitutional question presented could be narrowed by a state-law ruling.  2025 U.S. Dist. LEXIS 108217, at *10-11.  The court there recognized that "[t]he primary question raised . . . is whether the Municipality violated the Takings Clause since October of 2020 by issuing an Ordinance establishing that it would exercise eminent domain over the Property."  *Id.* at *10.  In that circumstance, "the ruling in the state eminent domain action will likely narrow the federal litigation, as it will require the State Court to interpret the Ordinance in question, along with the applicable state law on eminent domain and inverse condemnation."  *Id.*  According to the court, "[t]he proper interpretation of these state regulations and laws is also relevant to the federal claims."  *Id.*  Additionally, as part of the state court eminent domain proceedings, the state court must determine the fair market value calculation, and any additional compensation that may be granted, which would affect the issues

before the federal court. *Id*. at *11. Thus, the district court concluded that "[g]iven the overlapping legal issues between the pending state-court case (concerning state law, not federal constitutional law) and the case [before the district court] (concerning a federal constitutional issue), the best course is for the State Court to analyze this dispute before the federal court weighs in further." *Id*. The same is true here.

The Town's pending Motion for Entry of Judgment or, Alternatively, Assignment for Trial in the Superior Court requires the Superior Court to make a final determination on value and enter judgment in that amount. Similarly, the Former Property Owners' Complaint in this case specifically requests that this Court determine just compensation for the Property. First Am. Compl. ¶ 248 ("The Plaintiffs have engaged an expert appraiser to conduct a valuation of the Property to assist the Court with determining the amount of just compensation due to Plaintiffs."). The Superior Court's determination in the State Court Action of just compensation will plainly affect the issues before this Court and, unless this Court abstains while the State Court Action proceeds, it risks inconsistent determinations of fair market value.

Second, if the state court concludes that the Speech in Debate clause of the Rhode Island Constitution bars introduction of the executive session minutes or any testimony concerning the contents thereof, this Court should have the opportunity to then decide whether to afford that ruling comity, so that it would not be "the first Court to consider" whether the Speech in Debate clause applies to the Executive Session Minutes. Mem. & Order at 18, ECF No. 40.

For all of these reasons, this Court should abstain pursuant to *Pullman*.

## III.    *Younger* abstention is warranted here.

The next form of abstention, known as *Younger* abstention, requires the Court to abstain from exercising its jurisdiction in certain circumstances, invoking principles of equity and comity

34

between federal and state courts. Whether the *Younger* abstention doctrine applies here will turn on whether the Court credits the Former Property Owners' arguments raised in their Motion for Injunctive or Declaratory Relief and reads the Former Property Owners' First Amended Complaint also seeking equitable relief, including declaratory and injunctive relief.

The Supreme Court recognized in *Younger* that "[s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43. Under *Younger*, federal courts should abstain from exercising jurisdiction in cases where equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism.

In *Younger*, the Supreme Court held that a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54. In later cases, the Supreme Court has held that the *Younger* doctrine is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

### A. *Younger* abstention is appropriately applied in takings cases.

*Younger* abstention is appropriately applied in takings cases and remains available in those cases. As Justice Breyer, writing then for the First Circuit, recognized "[t]he lower courts have held unanimously, since 1975, that this category includes eminent domain proceedings." *Duty Free Shop, Inc. v. Administracion de Terrenos*, 889 F.2d 1181, 1182 (1st Cir. 1989); *accord Stockler v. Detroit*, No. 90-1793, 1991 U.S. App. LEXIS 15502, at *10 (6th Cir. July 8, 1991); *Brandywine Estates LP v. Lucas Cty.*, No. 3:15-cv-00884, 2015 U.S. Dist. LEXIS 119993, at *10 (N.D. Ohio Sep. 9, 2015); *M&A Gabaee v. Cmty. Redevelopment Agency of L.A.*, 419 F.3d 1036,

35

1039 n.2 (9th Cir. 2005); *Calhoun Realty Inc. v. City of Cincinnati*, 311 F. Supp. 2d 640, 642 (S.D. Ohio 2003).    And, as the First Circuit further recognized, "the Supreme Court seems to have ratified this lower court view, at least by negative inference." *Duty Free Shop, Inc.,* 889 F.2d at 1182 (citing *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237-39 (1984) (holding that *Younger* abstention was not appropriate because eminent domain proceeding had not yet begun when plaintiffs commenced their federal court action)).

Courts have continued to apply *Younger* abstention in takings cases even after *Knick. See, e.g., Serna v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, C.A. No. 22-cv-02998-DDD-MDB, 2024 U.S. Dist. LEXIS 73712, at \*12-14 (D. Colo. Feb. 28, 2024) (abstaining, under *Younger*, from exercising jurisdiction over plaintiff's Section 1983 claims where state condemnation proceedings were ongoing and finding that *Knick* was "inconsequential to this case"), *report and recommendation adopted*, No. 22-CV-02998-DDD-MDB, 2024 U.S. Dist. LEXIS 73714 (D. Colo. Mar. 29, 2024).

### B. If the First Amended Complaint is read as seeking equitable relief, the requirements for *Younger* abstention are met here.

When noncriminal judicial proceedings involve important state interests, *Younger* abstention is warranted so long as the so-called *Middlesex* factors weigh in favor of abstention and no exceptions to *Younger* apply. *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 191 (1st Cir. 2015). In *Middlesex*, the Supreme Court identified several factors that should lead to abstention under *Younger*:  (1) the existence of an ongoing state judicial proceeding; (2) which implicates important state interests; and (3) which provides an adequate opportunity to raise constitutional challenges.  457 U.S. at 432.  Notable exceptions, however, are if bad faith, harassment or some extraordinary circumstances would make abstention inappropriate. *Id.* at 435.

In *Aaron v. Target Corp.*, the Eighth Circuit, applying these same standards, held that the district court's decision not to abstain in an eminent domain action under *Younger* was an abuse of discretion.   357 F.3d 768, 779 (8th Cir. 2004).   In that case, the City of St. Louis's Redevelopment Authority exercised its power of eminent domain to condemn property on which a Target store was located. *Id.* at 772.  The Redevelopment Authority filed a condemnation action against the property owners and Target in state court. *Id.*  While that proceeding was ongoing, the property owners sought a temporary restraining order in federal court. *Id.*  The Redevelopment Authority opposed that motion and argued that the court should abstain. *Id.* at 772-73.  The district court declined to abstain and issued an order restraining the Redevelopment Authority from proceeding with the condemnation. *Id.* at 773.

On appeal, the Eighth Circuit held that the district court abused its discretion by declining to abstain and instead proceeding to enjoin the parties from proceeding with the condemnation. *Id.* at 779.

In evaluating the *Middlesex* factors, the Eighth Circuit concluded that there was an ongoing state judicial proceeding.  There, the Redevelopment Authority had exercised a condemnation proceeding against the property and made a good faith offer to purchase the property. *Id.* at 775. By statute, the property owners had until April 10, 2003 to accept that offer but approximately a week before the expiration of the offer, the property owners filed the federal suit. *Id.* at 775-76. The Eighth Circuit found that the second *Middlesex* requirement—that the state proceeding involve an important state interest—was readily satisfied, given that eminent domain proceedings have long been recognized as an important state interest. *Id.* at 777.  The Eighth Circuit further found that the third *Middlesex* requirement—that the state proceedings are adequate—was

satisfied, particularly where the property owners had an opportunity to raise their constitutional challenge in state court. *Id.* The Eighth Circuit further reasoned:

> Federal abstention in this case would permit Missouri's condemnation procedures to run their course. Eminent domain is an appropriate tool to help neighborhoods remain economically viable, attract industry, and encourage future growth. . . . Missouri has adequate judicial procedures for consideration of the parties' competing interests. Land use policy is an area in which federalism principles are particularly strong.

*Id.* at 778.

Turning to the exceptions to *Younger*, the Eighth Circuit concluded there was insufficient evidence to demonstrate any bad faith or extraordinary circumstances that would make abstention inappropriate. *Id.* at 779. Accordingly, the circuit court concluded that the district court erred in declining to abstain under *Younger*. Other courts, following *Aaron*, have found abstention proper in eminent domain cases for similar reasons. *See, e.g., M&A Gabaee v. Cmty. Redevelopment Agency of L.A.*, 419 F.3d 1036, 1041 (9th Cir. 2005); *Osher v. Land Clearance for Redevelopment Auth. of the City of St. Louis*, No. 4:16CV1674HEA, 2016 U.S. Dist. LEXIS 179530, at *4-6 (E.D. Mo. Dec. 29, 2016), *aff'd sub nom. Osher v. City of St. Louis, Missouri*, 903 F.3d 698 (8th Cir. 2018); *Franco v. District of Columbia*, 422 F. Supp. 2d 216, 223 (D.D.C. 2006).

Here, if this Court credits the Former Property Owners' arguments raised in their Motion for Injunctive or Declaratory Relief and reads the Former Property Owners' First Amended Complaint as also seeking equitable relief, including declaratory and injunctive relief, the requirements of the *Younger* abstention doctrine are met. As Defendants argued in their Opposition to the Former Property Owners' Motion for Injunctive or Declaratory Relief, that motion represents a transparent attempt to circumvent Rhode Island's condemnation process and to manipulate this Court's jurisdiction to prevent the Town from obtaining a final determination

of just compensation in a proper forum. *See* Defs.' Obj. to Pls.' Mot. for Injunctive and Declaratory Relief at 2, ECF No. 46. The Superior Court has already determined that it has jurisdiction to entertain the Town's pending Motion for Entry of Final Judgment or, Alternatively, Assignment for Trial. **Ex. 2**, Nov. 7, 2025 Decision at 13. The Former Property Owners cannot relitigate that ruling in this Court or to seek to enjoin Defendants from participating in proceedings over which the Superior Court has already determined it has jurisdiction to conduct. *See id.*

If the Court were to grant the Former Property Owners the injunctive relief they seek in that motion, the Court would, in effect, be enjoining the eminent domain proceeding in state court. *See Pelfresne v. Vill. of Rosemont*, 952 F. Supp. 589, 592-93 (N.D. Ill. 1997) (reaching the same conclusion in another eminent domain case and therefore abstaining under *Younger*). As in *Aaron*, each of the *Middlesex* factors are met here. The State Court Action was pending for nearly a year when the Former Property Owners filed this federal suit. The State Court Action undeniably concerns an important state interest, particularly given a long line of decisions, including those from the First Circuit, which have concluded that eminent domain proceedings implicate an important state interest. And finally, the Rhode Island Superior Court is an adequate forum where constitutional challenges may be brought. When proceedings begin in Superior Court, constitutional claims may be raised and decided, and adverse decisions may be appealed to the Rhode Island Supreme Court. As in *Aaron*, there is no evidence to demonstrate any bad faith or extraordinary circumstances that would make abstention inappropriate here.

For all of these reasons, if this Court credits the Former Property Owners' arguments raised in their Motion for Injunctive or Declaratory Relief and reads the Former Property Owners' First Amended Complaint as also seeking equitable relief, including declaratory and injunctive relief, the Court should also abstain under *Younger*.

IV.     ***Rooker-Feldman* abstention is warranted here.**

Abstention, at least as to the question of whether the Town holds title to the Property, under *Rooker-Feldman* is also warranted here.

As this Court has recently recognized, "[t]he *Rooker-Feldman* doctrine implicates this Court's subject matter jurisdiction." *Thompson v. Lakeview Loan Servicing, LLC*, No. 24-cv-365-MRD-LDA, 2025 U.S. Dist. LEXIS 65031, at *4 (D.R.I. Apr. 2, 2025) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).   Under *Rooker-Feldman*, this Court "lack[s] jurisdiction to consider 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Efreom v. McKee*, 46 F.4th 9, 17 (1st Cir. 2022) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

"The doctrine prevents losing litigants 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights,' as only the Supreme Court has jurisdiction to review the decision of a state court in civil litigation." *Id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 287); *see also* 28 U.S.C. § 1257(a) (providing that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari," rather than by inferior courts).

A.   ***Rooker-Feldman* is appropriately applied in takings cases.**

Both before and after *Knick*, the *Rooker-Feldman* doctrine has been applied in takings cases. *See, e.g., Dorce v. City of New York*, 2 F.4th 82, 97 n.17 (2d Cir. 2021)*; see also Amana Global Co. v. King Cnty. Flood Control Zone Dist.*, No. C22-1626JLR, 2023 U.S. Dist. LEXIS 72145, at *8-14 (W.D. Wash. Apr. 25, 2023); *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th

40

380, 388 (6th Cir. 2021); *Daw v. Consol. City of Indianapolis*, 734 F. App'x 357, 358-59 (7th Cir. 2018).

The Second Circuit has expressly held that *Knick* did not alter the availability of *Rooker-Feldman* abstention in takings cases. *See Dorce*, 2 F.4th at 97 n.17. In *Dorce*, the Second Circuit rejected the plaintiff's contention that *Rooker-Feldman* abstention could not apply because *Knick* "guarantees a takings plaintiff access to federal court notwithstanding potential state court remedies." *Id*. (internal quotation omitted). The court was "wholly unpersuaded by that argument." *Id*. According to the court, "[a]lthough *Knick* removed one obstacle to federal court litigation, it does not 'guarantee' a federal forum, and, . . . it is not directly relevant in this case because . . . [i]t did not address the issues of *Rooker-Feldman*." *Id*. (internal quotation omitted).

## B.    The requirements for *Rooker-Feldman* abstention are met here.

"For the *Rooker-Feldman* doctrine to apply the case must: (l) be brought by a state-court losing party, (2) who is 'complaining of injuries caused by state-court judgments,' (3) that is 'rendered before the district court proceedings commenced,' and (4) 'inviting district court review and rejection of those judgments.'" *Thompson*, 2025 U.S. Dist. LEXIS 65031, at *5 (quoting *Silva v. Massachusetts*, 351 F. App'x. 450, 454 (1st Cir. 2009)). Each of those elements is met here.

### 1.    The Former Property Owners lost on the State Court Action on the issue of the condemnation itself.

In the State Court Action, following a hearing, on June 28, 2024, the Superior Court entered an order that "title to the Acquired Property in fee simple absolute shall vest in the Town of Coventry." **Ex. 1**, Condemnation Order ¶ 4. In accordance with that order, the Town deposited $157,000 in the Court registry.

The Superior Court's condemnation order is final for purposes of *Rooker-Feldman*. Even the Former Property Owners agree that the Superior Court's condemnation order constitutes a

41

judgment on that issue. *See* **Ex. 12**, Property Owners' Mem. in Support of Objection to Petitioners' Motion for Entry of Judgment at 22 (arguing that the condemnation order is already in the form of a judgment, even though the issue of just compensation is to be separately decided).

This is because Superior Court's order of condemnation carries with it a sufficient degree of finality. *See Rhode Island Economic Development Corp. v. The Parking Co., L.P.,* 892 A.2d 87, 95 (R.I. 2006) (holding that the "Superior Court's order of condemnation . . . contained sufficient elements of finality."); *see also McAuslan v. McAuslan*, 83 A. 837, 840 (R.I. 1912). As a result of the Superior Court's order, the Property has been condemned and title to the Property has fully vested in the Town. The only question that remains is one of compensation but that open question does not strip the condemnation order of its finality.

The parties part ways in their position on the effect of the condemnation order's finality. The Former Property Owners claim that even though the condemnation order is final, *Rooker-Feldman* abstention does not apply because they were not a party to the proceedings that resulted in the condemnation order. *See* **Ex. 12,** Property Owners' Mem. in Support of Objection to Petitioners' Motion for Entry of Judgment at 23-24. The Former Property Owners' position is not supported by the law.

The Former Property Owners need not have been parties to the State Court Action to be treated as losing parties for purposes of *Rooker-Feldman*. Both circuit and district courts have held that a non-party to an *in rem* proceeding is a "loser" for *Rooker-Feldman* purposes if their property interest is lost in state court. *Dorce*, 2 F.4th at 102; *see also Merritts v. Richards*, 62 F.4th 764, 775 (3d Cir. 2023); *Phx. of Albany, LLC v. Cty. of Albany*, No. 1:23-cv-311, 2025 U.S. Dist. LEXIS 78812, at *8 n.3 (N.D.N.Y. Apr. 25, 2025); *Adon v. City of N.Y.*, No. 23-CV-9616-LTS, 2025 U.S. Dist. LEXIS 61504, at *15 (S.D.N.Y. Mar. 31, 2025); *Golrick v. Nationstar Mortg.,*

42

*LLC*, No. 2:23-cv-80, 2023 U.S. Dist. LEXIS 229132, at *13 (D. Vt. Dec. 26, 2023); *Long Point Energy, LLC v. Gulfport Energy Corp.*, No. 2:20-CV-4644, 2023 WL 2652378, at *7-8 (S.D. Ohio Mar. 27, 2023), *rev'd and remanded on other grounds*, No. 23-3680, 2025 WL 76249 (6th Cir. Jan. 10, 2025); *Tasaka v. Bayview Loan Servicing, LLC*, No. 17-CV-07235 (LDH)(ST), 2022 U.S. Dist. LEXIS 60895, at *8 (E.D.N.Y. Mar. 31, 2022).

In *Dorce*, the Second Circuit rejected the contention that the plaintiffs were not parties to a prior *in rem* foreclosure action, holding that "[s]omeone who loses an ownership interest in property through a state in rem foreclosure proceeding against the property has lost in state court." *Dorce*, 2 F.4th at 102. The court further observed that "[w]ere we to conclude otherwise, state courts would be unable to exercise in rem jurisdiction without the risk of federal courts undoing their work, because parties with an interest in property who lost in state court could always proceed to federal court for a do-over." *Id.* Courts have applied the holding in *Dorce* in finding that *Rooker-Feldman* applies to those who "lose[] an ownership interest in property through a state in rem foreclosure proceeding." *Phx. of Albany, LLC*, 2025 U.S. Dist. LEXIS 78812, at *8 n.3; *see also Merritts*, 62 F.4th at 775 (finding that this element of *Rooker-Feldman* was satisfied because "[a]lthough that was an *in rem* action to which Merritts was not a party, it still determined the status of his property with respect to all possible interest holders, including him as owner.").

The Former Property Owners also need not have participated in the State Court Action to be treated as state-court losers under *Rooker-Feldman*. *See id.* at 103. As the Second Circuit observed in *Dorce*, "[i]f the participation of the property owner were critical, then property owners would be able to choose whether to contest the proceeding in state court, or hang back in order to preserve their right to proceed in federal court." *Id.*

43

### 2.    The Former Property Owners complain of state court injuries.

Moving to the next factor, the Former Property Owners' First Amended Complaint involves injuries caused by a state-court judgment.  *See Thompson*, 2025 U.S. Dist. LEXIS 65031, at \*6 (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

The Former Property Owners' First Amended Complaint implicitly seeks review of the Superior Court's determination that the condemnation was proper, claiming, for example, that certain of the Defendants "knew they had no legal basis to take the Condemned Property."  First Am. Compl. ¶ 451.  For the Former Property Owners to prove that allegation, they would have to first convince this Court to review the Superior Court's determination that the condemnation was legal and proper and "overrule" the Superior Court.  "That is the type of claim that *Rooker-Feldman* squarely forecloses, both because it addresses an injury caused by the state court judgment, and because it would require the district court to review that judgment."  *Dorce*, 2 F.4th at 104 (concluding the same with respect to plaintiffs' effort to void a state court foreclosure decision).  By asking this federal court to declare a state-court condemnation order invalid and prevent its enforcement, the Former Property Owners have impermissibly appealed the state court's order to this court.  *See RLR Invs., LLC*, 4 F.4th at 388.

If this Court were to grant the Former Property Owners' requested relief, it would not only disturb the state court's order, it also would deprive the Rhode Island Supreme Court of the right to review any claimed error by the Superior Court.  Accordingly, the Former Property Owners' claims related to the condemnation itself are clearly directly related to the injury caused by the Superior Court's order.

### 3.   The Superior Court's Order predates this suit.

The next *Rooker-Feldman* requirement is readily satisfied.  The Superior Court entered its order nearly a year before the Former Property Owners filed this federal suit.

### 4.   The relief the Former Property Owners seek invites this Cout to review and reject the state court order.

As noted above, the Former Property Owners' Complaint implicitly seeks review of the Superior Court's determination that the condemnation was proper, claiming, for example, that certain of the Defendants "knew they had no legal basis to take the Condemned Property."  First Am. Compl. ¶ 451.  This is a direct invitation for this Court to "review and reject" the state court's order approving the condemnation and vesting title in the Town and its further order determining that the Town had a legal basis for the condemnation.  *See Thompson*, 2025 U.S. Dist. LEXIS 65031, at *8 (quoting *Silva*, 351 F. App'x. at 454).

For all of these reasons, the Court should abstain under *Rooker-Feldman*.

## V.   *Burford* abstention is warranted here.

Abstention in this case is also warranted under the *Burford* abstention doctrine.  *Burford* abstention takes its name from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  The doctrine empowers district courts to decline or postpone jurisdiction when a case poses "difficult questions" of state law or federal intervention risks disrupting state administrative policy.  *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*").  "The purpose of *Burford* [abstention] is to avoid federal intrusion into matters of local concern and which are within the special competence of local courts."  *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 693 (3d Cir. 2011).

45

## A. *Burford* abstention is appropriately applied in takings cases.

"*Burford* abstention is usually applied to . . . state eminent domain procedures." *Rucci v. Cranberry Twp.*, 130 F. App'x 572, 578 (3d Cir. 2005) (citing *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993)); *accord Accent Fuels, Inc. v. Trimarchi*, No. 2:20-CV-00281-CCW, 2021 U.S. Dist. LEXIS 24309, at *10 (W.D. Pa. Feb. 9, 2021); *In re Condemnation by the Commonwealth of Pa., DOT, Of Right-Of-Way for State Route 0022, Section 034*, No. 3:18-cv-57, 2018 U.S. Dist. LEXIS 145734, at *11 (W.D. Pa. Aug. 28, 2018).

As with *Pullman* abstention, *Burford* abstention remains available in takings cases even after *Knick*. *See, e.g., TLC Props. v. Pa. DOT*, No. 1:21-cv-950, 2022 U.S. Dist. LEXIS 123173, at *17 (M.D. Pa. July 12, 2022) (dismissing plaintiff's complaint after finding *Burford* abstention was warranted in a post-*Knick* eminent domain case); *Accent Fuels*, 2021 U.S. Dist. LEXIS 24309, at *10-11 (dismissing plaintiff's complaint without prejudice to re-file after the conclusion of the state court proceedings, finding that *Burford* abstention was warranted in a post-*Knick* eminent domain case).

In *TLC Props.*, the Pennsylvania Department of Transportation ("PennDOT") filed a declaration of taking in Pennsylvania state court against an easement it had previously granted to Lamar Advertising Company for the display of a billboard. 2022 U.S. Dist. LEXIS 123173, at *2. When it did so, PennDOT offered Lamar $10,000 in compensation for the easement and an additional amount for the billboard. *Id*. at *2-3. Pursuant to the declaration of taking, PennDOT took possession of both the easement and the billboard. *Id*. at *3.

While the state court proceeding was ongoing, Lamar filed a Section 1983 suit in federal court seeking compensation for PennDOT's taking of the easement and billboard. *Id.* at *3, *5.

46

PennDOT moved to dismiss and, *inter alia,* argued that the federal court should decline to exercise jurisdiction over the takings claims under the *Burford* abstention doctrine. *Id.* at *5. The federal court agreed, finding that *Burford* abstention was warranted, and dismissed Lamar's complaint. *Id.* at *10-18. The same result is warranted here.

### B. The requirements for *Burford* abstention are met here.

In evaluating abstention under *Burford*, courts consider three factors: (1) the availability of timely and adequate state-court review, (2) the potential that federal court jurisdiction over the suit will interfere with state administrative policymaking, and (3) whether conflict with state proceedings can be avoided by careful management of the federal case. *Chico Serv. Station*, 633 F.3d at 32.

### 1. Timely and adequate state review is available.

It is well settled that, "[u]nder the modern formulation of the *Burford* doctrine, a court weighing abstention must first determine whether 'timely and adequate state-court review is available.'" *Id.* (quoting *NOPSI,* 491 U.S. at 361).

As the court in *TLC Props.* concluded, the availability of a state court eminent domain proceeding is sufficient to protect the rights of the property owner and to guarantee him the constitutional safeguards to which he is entitled, including appropriate appellate review. 2022 U.S. Dist. LEXIS 123173, at *13; *see also Accent Fuels, Inc.*, 2021 U.S. Dist. LEXIS 24309, at *10-11. The same is true here.

By statute, the General Assembly has established an exclusive procedure governing the condemnation of property for public purposes and the assessment of damages, complete with rights to appellate review. *See* R.I. Gen. Laws § 24-1-1*, et seq*. Under that statute, a property owner may apply by petition to the Superior Court for the county in which the real property is situated,

47

setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by a court or a jury. *Id.* R.I. Gen. Laws § 24-1-8. The statute is explicit in its safeguards, providing that "[t]he trial shall be conducted as other civil actions at law are tried." *Id.* R.I. Gen. Laws § 24-1-9. Moreover, by statute, "the trial and decision or verdict of the jury shall be subject to all rights to except to rulings, to move for new trial, and to appeal, as are provided by law." *Id.*

There is nothing to suggest that timely and adequate state-court review is unavailable here, and the Superior Court's prompt scheduling of a hearing on the Town's Motion for Entry of Judgment or, Alternatively, Assignment for Trial—slated for hearing on September 2, 2025— further supports the availability of timely state-court review.

### 2. Exercising federal court jurisdiction over the suit will interfere with state and municipal eminent domain policies.

Addressing the merits of the Former Property Owners' claims would inherently interfere with state and municipal eminent domain policies. *See NOPSI*, 491 U.S. at 361.

Eminent domain is distinctly a matter of local policy. *See Thibodaux*, 360 U.S. at 28-29. The power of eminent domain is intimately involved with the sovereign prerogative and when "a city's power to condemn is challenged, a further aspect of sovereignty is introduced." *Id.* at 28.

In *TLC Props.* the court construed the plaintiff's federal suit as impliedly asking the court to "preempt the ongoing state-level eminent domain proceeding before . . . a Pennsylvania court has had an opportunity to determine a final valuation for plaintiffs' property or address plaintiffs' statutory and constitutional claims." 2022 U.S. Dist. LEXIS 123173, at *16. The court further noted that "should other courts follow [its] lead and usurp the prerogative of Commonwealth institutions to decide 'just compensation' for takings, the Commonwealth could lose control over this 'distinctly state law matter.'" *Id.* (internal citations omitted). The same is true here.

48

The state-regulated nature of a municipality's power of eminent domain in Rhode Island is illustrated by the state statute vesting municipalities with such power. *See* R.I. Gen. Laws § 24-1-1, *et seq*. The State's statutory authorization of municipalities' exercise of the power of eminent domain and the Town's availment of its powers under that statutory authorization are matters of substantial public concern.

Moreover, although the state court eminent domain proceeding is ongoing, by filing suit in this Court, the Former Property Owners' Complaint effectively asks this Court to preempt that proceeding before the Rhode Island Superior Court has an opportunity to determine a final valuation for the Property or address any challenges the Former Property Owners may raise to the taking. As the court in *TLC Props.* concluded, exercising federal court jurisdiction over such a suit necessarily interferes with state and municipal eminent domain policies.

### 3. Conflict with state proceedings cannot be avoided by careful management of the federal case.

The First Circuit has cautioned that with respect to *Burford* abstention, "a federal court may abstain only where conflict with state administrative processes cannot be avoided through careful conduct of the federal case." *Chico Serv. Station*, 633 F.3d at 33. Here, conflict with state proceedings cannot be avoided through careful conduct of the federal case.

In *TLC Props.* the court noted that "[a]ny decision our court might arrive at on the proper valuation of billboards would risk inconsistency with how the Commonwealth's courts might resolve the same legal questions." 2022 U.S. Dist. LEXIS 123173, at *16. The same is also true here. Any decision this Court may arrive at on the proper valuation of the Property would risk inconsistency with how the Rhode Island Superior Court might resolve the same legal question. That risk cannot be avoided through careful management of the federal case.

For all of these reasons, this Court should abstain under *Burford*.

### VI.    *Colorado River* abstention is warranted here.

Abstention in this case is also warranted under *Colorado River*.  Under the *Colorado River* abstention doctrine, a federal court may defer to a concurrent state court case in exceptional circumstances where abstention would promote "wise judicial administration."  424 U.S. at 818. To abstain under *Colorado River*, a court must determine, as a threshold matter, whether there is parallel litigation in both state and federal court.  *OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n ex rel. Shine*, 687 F. Supp. 2d 12, 17-18 (D.R.I. 2010).  If there is parallel litigation, the court must then determine whether exceptional circumstances warranting abstention exist.  *Id*.

Several prudential but not exclusive principles animate this doctrine, including:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the  vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005).  "No one factor is meant to be determinative, but rather courts must make a 'carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise.'"  *Id*. at 72 (quoting *Colorado River*, 424 U.S. at 818).

### A.  There is parallel litigation in state and federal court.

As a threshold matter, there exists parallel litigation in state and federal court.  The *in rem* proceeding in State Court Action has been pending before the Superior Court since June 21, 2024.

The  existence  of  an  *in rem*  proceeding  in  state  court  fulfills  the  parallel  litigation requirement for purposes of *Colorado River* abstention.  In an *in rem* proceeding, although the

50

property itself is technically the subject of the litigation, the real party in interest is the property owner. *See Pennoyer v. Neff,* 95 U.S. 714, 727 (1877) ("The law assumes that property is always in the possession of its owner . . . ."); *see also Dorce*, 2 F.4th at 102; *Merritts*, 62 F.4th at 775; *Phx. of Albany, LLC*, 2025 U.S. Dist. LEXIS 78812, at *8 n.3; *Adon*, 2025 U.S. Dist. LEXIS 61504, at *15; *Golrick*, 2023 U.S. Dist. LEXIS 229132, at *13; *Long Point Energy, LLC*, 2023 U.S. Dist. LEXIS 52440, at *22; *Tasaka*, 2022 U.S. Dist. LEXIS 60895, at *8 (addressing *Rooker-Feldman* abstention).

Here, the real party in interest, the property owner, was served with notice of the State Court Action when it was commenced and representatives of the property owner appeared at the hearing where the Superior Court received an affidavit and report from the Town's appraiser, approved a condemnation order, and accepted a deposit of $157,000 into the Court's registry, as the estimated just compensation for the Property. First Am. Compl. ¶¶ 198, 206-211; **Ex. 13**, Aff. of Thomas S. Andolfo, MAI, SRA, AI-GRS; **Ex. 14**, Service of Notice of Condemnation. Additionally, when the Town filed its Motion for Entry of Judgment or, Alternatively, Assignment for Trial, it served the property owner with the same. **Ex. 15**, Notice of Filings to Registered Agent. The property owner is also a party to this action. *See generally* First Am. Compl.

### B.  The state court has assumed jurisdiction over the *res*.

It is undisputed that the State Court Action is an *in rem* proceeding. In an *in rem* proceeding, the court exercises jurisdiction over a *res* found within the territorial jurisdiction of the court. *See FleetBoston Fin. Corp. v. FleetBostonFinancial.com*, 138 F. Supp. 2d 121, 135 (D. Mass. 2001). Thus, the state court in the *in rem* condemnation proceeding has assumed jurisdiction over the *res*.

### C.  The state court obtained jurisdiction first.

It is also undisputed that the state court obtained jurisdiction before the Former Property Owners filed their Complaint in this Court.  *See* First Am. Compl. ¶ 184.  In fact, the State Court Action had been pending for nearly a year when the Former Property Owners brought this action.  *See id.*

### D.  The desirability of avoiding piecemeal litigation, the adequacy of the state forum to protect the parties' interests and the nature of the federal claim all favor abstention.

Although the *Colorado River* abstention factors are nonexclusive and not strictly determinative, three of the most significant considerations—the desirability of avoiding piecemeal litigation, the adequacy of the state forum to protect the parties' interests, and the nature of the federal claim—all weigh decisively in favor of abstention here.

The Seventh Circuit's decision in *Antosh* is illustrative of the application of the *Colorado River* considerations to an eminent domain case.  99 F.4th at 993.  There, the Village of Mount Pleasant exercised its eminent domain power to acquire plaintiffs' property.  *Id.* at 991-92.  In state court, the plaintiffs contested the amount of compensation they were owed, not the propriety of the taking itself.  *Id.* at 992.  They later filed suit in federal court alleging that the taking was improper because it served a private purpose, not a public one.  *Id.* at 992-93.  The district court "saw this federal suit as a strategic effort to circumvent an unfavorable state-court ruling without taking the necessary steps to appeal."  *Id.* at 991.  Accordingly, it dismissed the action without prejudice under *Colorado River*.  *Id.*

On appeal, the Seventh Circuit affirmed.  The Seventh Circuit found that the state and federal actions bore obvious similarities, both involving the same operative facts and both arising out of the Village's exercise of its eminent-domain powers.  *Id.* at 994.  The court further concluded

that the fact that the federal and state litigation presented different issues was not fatal to a finding that the actions are parallel. *Id.* The court's conclusion that abstention was warranted was also based on its recognition that the plaintiff's federal court suit was a litigation tactical that signaled "a lack of respect for the state's ability to resolve [the issues] properly before its courts" and its refusal to endorse those tactics. *Id.* at 995 (quoting *SKS & Associates, Inc. v. Dart*, 619 F.3d 674, 679 (7th Cir. 2010)).

It is also significant that the Seventh Circuit found dismissal under *Colorado River* appropriate even though it was "probably too late for [plaintiffs] to bring a public-use takings claim in state court." *Id.* at 996. According to the Court, plaintiffs "have only themselves to blame for that." *Id.* ("Since 'state courts are co-equal partners when it comes to protecting federal rights[,]' it is enough to know that [plaintiffs] could have sought to vindicate their federal rights in Wisconsin courts." (quoting *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (7th Cir. 2020))).

The parallels here are striking and, if anything, even more compelling. The Former Property Owners sat on their hands for nearly a year after the Town initiated condemnation proceedings, declining to petition to contest the taking or seek damages in state court. Only on the eve of losing their window to invoke the state court review did they attempt an end-run by rushing into federal court with a litany of federal and state claims. This is precisely the kind of procedural maneuvering *Colorado River* is designed to discourage. As in *Antosh*, the timing and substance of the Former Property Owners' federal suit manifest a deliberate lack of respect for the state court's ability to resolve the issues properly before it.

The Former Property Owners' litigation tactics go even further than in *Antosh*. In their opposition to the Town's Motion for Entry of Judgment in state court, the Former Property Owners

53

have outright challenged the state court's jurisdiction and demanded sanctions against counsel for even seeking relief there.  **Ex. 12**, Property Owners' Mem. in Support of Objection to Petitioners' Motion for Entry of Judgment at 1-2.  Their 38-page opposition memorandum leaves no doubt that their primary objective is to evade state court adjudication entirely.  This Court, like the Seventh Circuit in *Antosh*, should not endorse this maneuvering.  The *Colorado River* abstention doctrine exists to prevent precisely this kind of forum shopping and to safeguard the integrity and authority of state tribunals.

For all of these reasons, this Court should abstain under *Colorado River*.

## VII.    *Wilton/Brillhart* **abstention is warranted here.**

A lesser-known doctrine of abstention, labeled as *Wilton/Brillhart* abstention, is also appropriate here with respect to the Former Property Owners' claim for declaratory relief.

"'Under what is known as the *Wilton/Brillhart* abstention doctrine, district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims.'"  *OHI Asset (CT) Lender, LLC*, 687 F. Supp. 2d at 19 (quoting *R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009)); *see also Wilton*, 515 U.S. at 282 ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."); *Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same  issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

Here, if this Court credits the Former Property Owners' arguments raised in their Motion for Injunctive or Declaratory Relief and reads the First Amended Complaint as also seeking equitable relief, including declaratory and injunctive relief, *Wilton/Brillhart* abstention should apply to avoid interference with the orderly and comprehensive disposition of the State Court Action.

## **CONCLUSION**

This case exemplifies the circumstances in which courts abstain, especially because it involves the Town's exercise of its sovereign prerogative over eminent domain, an area where courts have found abstention particularly appropriate. For the foregoing reasons, abstention is appropriate under one or more of the abstention doctrines addressed above, including *Pullman*, *Younger*, *Rooker, Burford*, *Colorado River*, and *Wilton/Brillhart* but even then, none of these doctrines are "rigid pigeonholes into which federal courts must try to fit cases." *Rio Grande Cmty. Health Ctr., Inc.*, 397 F.3d at 68 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n.9 (1987)). Based on all of the foregoing, there are ample grounds for this Court to exercise its discretion and abstain in this case. Accordingly, this Court should dismiss any equitable, injunctive and declaratory claims that it determines remain pled in the Former Property Owners' First Amended Complaint and stay all remaining aspects of this case until the State Court Action has concluded and just compensation has been paid to the Former Property Owners. At that point, this Court may address any remaining federal claims, if necessary.

55

Defendants,
Town of Coventry and Jonathan J. Pascua in his individual capacity,

By their attorneys,

*/s/ John A. Tarantino*
*/s/ Nicole J. Benjamin*
John A. Tarantino, Esq. (#2586)
Nicole J. Benjamin, Esq. (#7540)
Lucas G. Spremulli (#10418)
ADLER POLLOCK & SHEEHAN, P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
(401) 427-6262
jtarantino@apslaw.com
nbenjamin@apslaw.com
lspremulli@apslaw.com

Defendants,
Town of Coventry and, in their official capacities, the following elected or appointed officials: Robert J. Civetti as Finance Director; Hillary V. Lima as Council President; James E. Leblanc as Council Vice President; Jonathan J. Pascua as Councilmember; Alisa Capaldi as Councilmember; Kimberly A. Shockley as Councilmember; Jennifer M. Ludwig as Councilmember; Daniel O. Parrillo as Town Manager; and Stephen J. Angell as Town Solicitor

By their Attorneys,

*/s/ Marc DeSisto*
*/s/ Kathleen M. Daniels*
Marc DeSisto (#2757)
Kathleen M. Daniels (#4766)
DeSisto Law LLC
4 Richmond Square, Suite 500
Providence, RI 02906
(401) 272-4442
marc@desistolaw.com

56

Defendants,
Town of Coventry and, in their official capacities, the following elected or appointed officials: Robert J. Civetti as Finance Director; Hillary V. Lima as Council President; James E. Leblanc as Council Vice President; Jonathan J. Pascua as Councilmember; Alisa Capaldi as Councilmember; Kimberly A. Shockley as Councilmember; Jennifer M. Ludwig as Councilmember; Daniel O. Parrillo as Town Manager; and Stephen J. Angell as Town Solicitor; and in their individual capacities: Hillary V. Lima; James E. Leblanc; Alisa Capaldi; Kimberly A. Shockley; Jennifer M. Ludwig; and Daniel O. Parrillo

By their Attorneys,

*/s/ Michael T. Eskey*
Michael T. Eskey, Esq. (#3035)
Moses Ryan Ltd.
40 Westminster Street, 9th Floor
Providence, RI 02903
(401) 453-3600
teskey@marlawri.com

Defendant,
Stephen J. Angell, in his individual capacity,

By his Attorneys,

*/s/ J. Richard Ratcliffe*
J. Richard Ratcliffe, Esq. (# 2603)
Ratcliffe Harten Galamaga LLP
40 Westminster Street, 7th Floor
Providence, RI 02903
(401) 490-4651
rratcliffe@rhgllp.com

February 5, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February 2026, I sent a true copy of the within by electronic means (ECF) to all counsel of record in C.A. No. 1:25-cv-00274-MRD-AEM.

*/s/  Nicole J. Benjamin*

57