# Exhibit 12

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 2 of 210 PageID
#: 2391

**STATE OF RHODE ISLAND**                                        **SUPERIOR COURT**
**KENT, SC.**

| | |
|---|---|
| IN RE TOWN OF COVENTRY, | : |
| *Petitioner* | :      **C.A. No. KM-2024-0578** |
| | : |

<u>**THE PROPERTY OWNERS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR OBJECTION TO PETITIONER'S MOTION FOR ENTRY OF
JUDGMENT OR, ALTERNATIVELY, ASSIGNMENT FOR TRIAL, AND
THE PROPERTY OWNERS' RULE 11 MOTION FOR SANCTIONS**</u>

**I.        <u>Introduction</u>**

The Town of Coventry has filed its Motion into a jurisdictional vacuum. Legally speaking, C.A. No. KM-2024-0578 is barren of any relief to be granted for the Town. Due to no fault of its own, because it acted upon *ex parte* filings and representations made by the Town, the Court lacks the power to act in this proceeding, which was filed under an inapplicable statute. Even if, *arguendo*, this case has any life, the Town is not entitled to any "judgment," and it has exhausted its moves under the limited scheme it selected to cloak its taking of Johnson's Pond with the color of law. Moreover, if the Property Owners have a statutory remedy under R.I. Gen Laws §§ 24-1-1 *et seq*., that remedy is currently in the hands of the United States District Court for the District of Rhode Island by way of supplemental jurisdiction. Finally, any concept of exclusive jurisdiction alluded to by the Town has been rejected by the United States Supreme Court.

The Town's motive behind its Motion is transparent. It seeks to create an illusion of controversy in this Court to trigger federal abstention, perhaps under the *Younger*, *Colorado River*, or *Rooker-Feldman* doctrines. Brazenly, the Town requests a "judgment" with preclusive effect, hoping to use it to skirt the impending liability that it faces in Federal Court. Thus, not only is the Motion not well grounded in fact or warranted by existing law, it is interposed for an improper purpose. Super. R. Civ. P. 11.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Subject to their Special Entry of Appearance by Counsel filed herewith, Soscia Holdings, LLC, Structures at Johnson's Pond, LLC, Boating at Johnson's Pond, LLC, Waterfront at Johnson's Pond, LLC, Common Area at Johnson's Pond, LLC, and Land at Johnson's Pond, LLC (collectively, "the Property Owners") hereby submit this Memorandum of Law in Support of their Objection and Rule 11 Motion for Sanctions. For the reasons stated herein, the Court must not take any action on the Town's Motion or issue any order thereon, and the Town and/or the Town's attorneys of record should be sanctioned accordingly for filing this baseless Motion.

## II.    Relevant Facts and Travel

While this dispute between the Town of Coventry (the "Town") and the Property Owners is accompanied by a rich factual history, the Property Owners will limit its statement of the facts to only what the Court needs to decide the instant Motions.

Centrally, on June 21, 2024, the Town recorded Resolution No. 2024-42 in the Coventry Land Evidence Records. *See* **Exhibit A** (Resolution No. 2024-42).[1] Resolution No. 2024-42 purported to authorize the Town to acquire rights and title to Johnson's Pond, its integrated water system, and adjacent property including 47.75 acres of upland property, as purchased by Soscia

---

[1] Recognizing that this is a closed (or legally null) case, and with no intent of presenting "evidence" causing this case to be reopened on evidentiary or authenticity issues, all Exhibits utilized by the Property Owners in this Memorandum are publicly available documents that are subject to judicial notice. *See Colonial Plumbing & Heating Supply Co. v. Contemporary Const. Co., Inc*., 464 A.2d 741, 742 (R.I. 1983) (holding that a court may take judicial notice "of facts capable of accurate and ready determination by resort to sources of indisputable accuracy"); R.I. R. Evid. 201 (same and providing that "a court shall take judicial notice if requested by a party and supplied with the necessary information"); *see also* 2 McCormick on Evid. § 330 (8th ed.) ("Information obtained from online sources is becoming a frequently used basis for judicial notice. To this point, government and corporate websites and well-recognized mapping services are among the most commonly relied upon sources."). These Exhibits—a majority of which have been obtained from the Town's own website—will aid the Court in resolving the jurisdictional issues raised by the Property Owners. *See Boyer v. Bedrosian*, 57 A.3d 259, 270 (R.I. 2012) (citations omitted) (holding that "[a] court may consider any evidence it deems necessary to settle the jurisdictional question").

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 4 of 210 PageID #: 2393

Holdings, LLC from Quidnick Reservoir Company in 2020, and as described in the Quitclaim

Deed recorded in the Coventry Land Evidence Records at Book 2155, Page 847 (the "Condemned

Property").[2]

The same day, the Town filed its "Statement of Sum of Estimated Just Compensation for

Property Taken and Request for an Order Approving Deposit in the Court's Registry" (the

"Town's Petition" or the "Petition") in this Court. *See* Docket (Town's Petition) (filed June 21,

2024). The Town's Petition was filed under R.I. Gen. Laws § 24-1-3, which is a narrow statutory

procedure used in connection with highway condemnations. *See* Town's Petition ¶ 2 ("The within

statement of estimated just compensation for property taken is submitted in accordance with **R.I.**

**Gen. Laws § 24-1-3** following the Town of Coventry's acquisition by eminent domain of the

property, rights, and interests commonly known as Johnson's Pond, its dam structures, and a parcel

of undeveloped land immediately downstream of the Pond and dam.") (emphasis added).

The only relief requested by the Town in the Petition—and, as explained *infra* Section IV,

**the only relief conceivably available to the Town under R.I. Gen. Laws §§ 24-1-1** *et seq.*—

**was a request for "the Court [to] issue an Order in accordance with R.I. Gen. Laws § 24-1-3**

**approving the deposit by the Town of $157,000 into the Court's registry as the sum of**

---

[2] While technically outside the purview of these Motions, there are a litany of issues relating to the inadequacy of the description of the Condemned Property, including the fact that Resolution No. 2024-42 describes the Condemned Property as Soscia Holdings, LLC purchased it in 2020—not based upon its legal status in 2024—despite various rights and interests in the Condemned Property having been conveyed to other entities. *See, e.g.*, *Ronci Manufacturing Co., Inc. v. State*, 403 A.2d 1094, 1097 (R.I. 1979) (acknowledging that the "central question we must address in this case concerns exactly what was taken by the state in its exercise of the power of eminent domain," and holding that "the extent of a taking is determined as of the date of condemnation"); *see also, e.g.*, **Exhibit B** (Easement Bargain and Sale Deed) (recorded in Book 2293, Page 160 on January 1, 2024) (1 of 5 subsequent deeds from Soscia Holdings, LLC showing that Soscia Holdings, LLC conveyed certain rights to other entities in January of 2024). There are other complex issues with the condemnation, involving riparian rights and easements (including whether they were even included in the taking) that cannot be adequately summarized in a footnote.

3

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**estimated just compensation for the property taken**." *Id.* at 6 (emphasis added). As analyzed below, the Town's Petition relied upon the Town's Home Rule Charter and R.I. Gen. Laws § 32-4-8 as the basis for invoking R.I. Gen. Laws § 24-1-3. *Id.* ¶¶ 4-5.

However, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. The Town disclosed this in Executive Session Minutes—which the Town posted on its own website—from an Executive Session that was held on December 19, 2023, approximately 7 months before the Town's Petition was filed. *See* **Exhibit C** (Executive Session Minutes).[3] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████.

---

[3] These Minutes from December 19, 2023 were publicly accessible on the Town's website, at least until after the Property Owners filed their Federal Complaint in 1:25-cv-00274 on June 13, 2025 and attached the Executive Session Minutes to that Complaint. As of writing this Memorandum, it appears the link to those Minutes now requires a password to view them. *See* **Ex. R** (Federal Complaint) ¶ 122 (citing to Executive Session Minutes found on Town's website at https://coventryri.civicweb.net/filepro/document/177077/12-19-23%20ES%20Minutes.docx).

Considering the fact that these Minutes were publicly available for approximately 18 months, it is beyond serious dispute that any privilege that may have been claimed by the Town with respect to this document has been waived. *See, e.g. State v. von Bulow*, 475 A.2d 995, 1005-07 (R.I. 1984) (noting that because the "attorney-client privilege limits the full disclosure of the truth, it must be narrowly construed," that "[t]he privilege may be waived, however, when there has been disclosure of a confidential communication to a third party," and that "[a]n intent to waive one's privilege is not necessary for such a waiver to occur").

With that said, and although the Executive Session Minutes are attached to the Federal Complaint in 1:25-cv-00274, the Property Owners herein make clear that they reserve any and all rights to litigating privilege or confidentiality issues raised by the Town in Federal Court, which applies its own body of common law to attorney-client privilege. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.*, 348 F.3d 16, 22 (1st Cir. 2003) (citing *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998)) (holding that "the question [of] whether XYZ has waived the attorney-client privilege is governed by federal common law"). This includes the right to seek additional documents within the scope of the privilege waiver. *See Texaco Puerto Rico, Inc. v.*

4

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 6 of 210 PageID #: 2395

The Executive Session Minutes show

. *Id.* at 2. At the Executive Session meeting,

[4] stated that

---

*Department of Consumer Affairs*, 60 F.3d 867, 883-84 (1st Cir. 1995) ("It is apodictic that inadvertent disclosures may work a waiver of the attorney-client privilege. . . . In general, a waiver premised on inadvertent disclosure will be deemed to encompass all other such communications on the same subject.").

[4] Of note, Solicitor Angell has signed the present Motion on behalf of the Town as counsel. *See* Town's Motion at 3. The Property Owners submit that Solicitor Angell has an inherent conflict of interest in this matter, as he has been sued individually in the Federal Complaint. *See* **Ex. R** (Federal Complaint) ¶ 17.

Solicitor Angell's continued representation of the Town presents a concurrent conflict of interest under Rhode Island Rule of Professional Conduct 1.7. *See* R.I. R. Prof. Cond. 1.7(a)(2) (prohibiting representation, subject to exceptions which are not satisfied, where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer"). That is, it is in the Town's best interest for liability to attach to Solicitor Angell—not itself—and it is in Solicitor's Angell's best interest for liability to attach to the Town—not himself. *Id.*

As a municipal attorney, continued representation of the Town by Solicitor Angell is also likely a prohibited activity under R.I. Gen. Laws § 36-14-5(a), considering the potential for individual liability. *See* R.I. Gen. Laws § 36-14-5(a) ("No person subject to this code of ethics shall have any interest, financial or otherwise, direct or indirect, or engage in any business, employment, transaction, or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest and of his or her responsibilities as prescribed in the laws of this state, as defined in § 36-14-7."). For somewhat different reasons, Attorney Eskey could also said to have an ethical conflict because he will be a fact witness in the case filed in Federal Court.

5

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Additionally, "Solicitor Angell talked about the TIFT [sic] District being an absolute critical piece so the 36,000 people of the Town are not obligated to pay for Johnson's Pond and only those who are indirect and direct abutters would pay." *Id.* at 3. "**Solicitor Angell said based on the economic analysis done that list of indirect and direct abutters won't be able to support more than [$3,000,000] on a rolling basis**." *Id.* **He explained the redevelopment agency would collect this money, which would be used to pay for the taking and "seeding a fund to rehab some of these structures [around Johnson's Pond]**." *Id.*

In response to a question from Vice President LeBlanc asking "if councilmembers can be held liable," Solicitor Angell warned the Council that if they engaged in "**reckless action**" and said, "**the hell with it . . . let's just take the place by eminent domain and then we will fight about the price**," they may be liable. *Id.* at 3 (emphasis added). As detailed below, that is exactly what the Town did.

The Town's actions after the Executive Session totally confirm the redevelopment purpose of the taking. ███████████████████████, on January 23, 2024, the Town Council adopted Resolution No. 2024-4, which affirmed the "need for a Coventry Redevelopment Agency and Appointing Members to the Coventry Redevelopment Agency." *See* **Exhibit D** (Resolution No. 2024-4). Members of the Redevelopment Agency were appointed on February 15, 2024 through Resolution No. 2024-7. *See* **Exhibit E** (Resolution No. 2024-7).

On May 2, 2024, the Town Council adopted Resolution No. 2024-37, "[m]aking plain the Town Council's intentions and commitment to acquire, maintain, and **redevelop** Flat River Reservoir ("Johnson's Pond"), its Dam, dam structures, and land to protect the environment, to ensure public safety, and to provide recreational access to the public." *See* **Exhibit F** (Resolution No. 2024-37) (emphasis added).

6

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 8 of 210 PageID #: 2397

Then, on May 9, 2024, the Town Council performed the first reading of Ordinance No. 2024-03, which again stated its purpose for the condemnation was to "redevelop Johnson's Pond." *See* **Exhibit G** (Ordinance No. 2024-03).

Pivotal to the Town's Petition, on June 20, 2024—the day before the Petition was filed with this Court—the Town Council held a meeting and purported to adopt Resolution No. 2024-42, authorizing the condemnation of Johnson's Pond "to ensure public safety, and to provide recreational access to the public." *See* **Ex. A** (Resolution No. 2024-42). **All references to "redevelopment" were removed from this Resolution, which was then used to form the basis of the Petition**. *See* Petition, <u>Attachment A</u> (Resolution No. 2024-42).

Also, of significance, **Resolution No. 2024-42 was "passed" without a quorum present**, and the Town voted "3-0" to give the Town Solicitor the authority to proceed—consistent with Resolution No. 2024-37 and Ordinance No. 2024-03—to acquire Johnson's Pond. *See* **Exhibit H** (Meeting Minutes) (from June 20, 2024 Town Council Meeting) (showing only Council President Lima, Vice President LeBlanc, and Councilmember Shockley present); *see also* **Ex. A** (Resolution No. 2024-42) (signed by Council President Lima, and "**approved to as to form and substance" by Solicitor Angell**, indicating Resolution No. 2024-42 was passed 3-0) (emphasis added).

Speaking to quorums, § 3.11 of the Town's Charter provides that "[n]o action of the Town Council, . . . shall be valid or binding unless adopted by the affirmative vote of four (4) or more members of the Town Council." *See* Town of Coventry, Home Rule Charter § 3.11. Therefore, Resolution No. 2024-42—which is relied upon by the Town as the authorization for the Petition, was invalid on its face, despite Solicitor Angell approving it "as to form and substance." *See* Home Rule Charter § 3.11; **Ex. A** (Resolution No. 2024-42) (bearing Solicitor Angell's signature at bottom).

7

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM   Document 51-12   Filed 02/05/26   Page 9 of 210 PageID
#: 2398

During that June 20, 2024 meeting on Resolution 2024-42—Solicitor Angell remarked that the taking "only nets [Soscia Holdings, LLC] about $157,000," and that "they should have taken the 1.5" million dollars that the Town offered Soscia Holdings, LLC previously. *See* **Exhibit I** (Recording of Town Council Meeting on June 20, 2024) (available at https://www.youtube.com/watch?v=60rMkGocZps&list=PLyqD7ZZ7yy3k49iJKceeTHEJ0ICzMMVzV&index=33), at 01:13:30-01:13:50 (last accessed August 8, 2025).

At the same June 20, 2024 meeting, Solicitor Angell also admitted that:

a. The Town's taking of the Condemned Property was "**unprecedented**;"

b. That there "**is no state statute that allows the Town to do this**," so the taking would have to be conducted under the Town's Home Rule Charter, although they were also following "a state framework that does exist for other matters that are similar but not identical;" and

c. That the Town was in "**uncharted territory**." *Id.* at 01:18:20-01:18:50.

Despite these acknowledgments by Solicitor Angell, the Town "approved" Resolution No. 2024-42 with a 3-0 vote and filed the Petition the next day. *See* Petition. Nowhere in the Town's Petition was the redevelopment purpose for the condemnation mentioned, because this would have rendered the taking legally disqualified for a "quick take." *Id.*; *see infra* Section IV.A (analyzing this issue); *see also* R.I. Gen. Laws §§ 45-32-1 *et seq.* and §§ 42-64.12-1 *et seq.* (statutory schemes containing robust procedural safeguards including noticing, public hearings, and following a redevelopment plan for redevelopment takings, and also providing for compensation of 150% fair market value due to the condemnee).

Nonetheless, an *ex parte* hearing on the Petition for a "quick take" was held on June 28, 2024 before this Court. *See* Docket. In the Memorandum filed by the Town's attorneys supporting

8

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 10 of 210
PageID #: 2399

the Town's present Motion, when referencing this hearing on the Petition, Attorney Angell and

Attorney Eskey claim that the "former owners of and persons interested in the Acquired Property

(Soscia Holdings, LLC, Boating at Johnson's Pond, LLC, Structures at Johnson's Pond, LLC, and

Land at Johnson's Pond, LLC—collectively, "Soscia") were duly served with statutory notice of

the condemnation and their attorneys, who were present at the hearing preceding the Court's entry

of the Condemnation Order, were provided with—but declined—an opportunity to be heard." *See*

Town's Mem. at 1.

But this statement is absolutely false because: (1) the Property Owners are not parties to

this statutory proceeding, as reflected on the Docket and in face of the Petition; (2) the Property

Owners were not served with the Petition or with formal notice of the hearing prior to June 28,

2024, as evidenced by the lack of a Proof of Service being filed with the Court; and (3) while the

Property Owners' representatives were present in Courtroom 4D on June 28, 2024, they were

present for a hearing on a motion to dismiss in KC-2024-0408—a separate case involving Soscia

Holdings, LLC—as evidenced by the Court Calendar and Docket in KC-2024-0408. *See* **Exhibit**

**J** (Courtroom 4D Calendar for June 28, 2024) (showing hearings for both KM-2024-0578 and KC-

2024-0408 scheduled for hearings on June 28, 2024 in Courtroom 4D before Associate Justice

Licht); **Exhibit K** (Docket for KC-2024-0408) (showing attorney Patrick J. Dougherty, Esq.

entered on behalf of Soscia Holdings, LLC). There was no basis for requiring the Property Owners

to participate in the proceeding that they were not a party to, were not served with formal notice

of, and had no interest in because the Petition lacked a legal basis (as explained *infra* Section IV).

Brushing that point aside, during the June 28, 2024 hearing, Solicitor Angell represented

the Town, and he baldly claimed that the taking was "**for broader public recreational use and**

**to provide that benefit to the public as a whole**[.]" **Exhibit L** (Hearing Transcript), at 4:4-5.

9

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Solicitor Angell also stated that the condemnation was to allow others to use Johnson's Pond "on a fee basis for those who may not live in Coventry as a nonresident." *Id.* at 4:7-8. ████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████

**Solicitor Angell's statements to this Court on behalf of the Town were untruthful**. At best, they constitute material omissions of fact; at worst, they constitute outright fraud on the Court.[5] The Town's public actions and statements unequivocally show that Solicitor Angell misled the Court into believing the taking was actually for conservation and recreational purposes subject to R.I. Gen. Laws § 32-4-8, while it was actually a redevelopment taking subject to R.I. Gen. Laws §§ 45-32-1 *et seq.* and 42-64.12-1 *et seq.* (and therefore, not subject to "quick take" procedures). **Solicitor Angell claiming that § 32-4-8 authorized the taking in the Petition is irreconcilable with his statement to the Town Council—just 8 days prior—admitting that there was "no state statute that allows the Town to do this**." *See* **Ex. I** (Recording of Town Council Meeting on June 20, 2024), at 01:18:20-01:18:50.

---

[5] Albeit, perhaps beyond the jurisdiction of this Court to discipline the Town's attorneys under the Rules of Professional Conduct, their representations to the Court constitute clear violations of Rule 3.3 of the Rules of Professional Conduct. *See* R.I. R. Prof. Cond. 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . ."); R.I. R. Prof. Cond. 3.3(a)(3) ("A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false.").

**This is particularly true because of the *ex parte* nature of the Petition and hearing thereon**. *See* R.I. R. Prof. Cond. 3.3(d) ("In an *ex parte* proceeding, a lawyer **shall** inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.") (emphasis added). The Court should consider this misconduct in ruling on the Rule 11 Motion for Sanctions.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 12 of 210
PageID #: 2401

Lacking any reason to doubt the representations made by Solicitor Angell and in the Town's Petition, the Court issued the Condemnation Order after the hearing, which the Town recorded in the Land Evidence Records on June 28, 2024. *See* **Exhibit M** (Condemnation Order) (recorded at Book 2303, Page 506).

The Condemnation Order states that the $157,000 estimated just compensation for the Condemned Property was sufficient under R.I. Gen. Laws §§ 32-4-8 and 24-1-3 based upon an appraisal from Thomas S. Andolfo, and it declared "without further order, and by operation of law in accordance with R.I. Gen. Laws §§ 32-4-8 and 24-1-3, title to the [Condemned] Property in fee simple absolute shall vest in the Town of Coventry[.]"[6] *Id.* ¶¶ 3-4.

Next, on November 12, 2024, the Town Council adopted Resolution No. 2024-98, "transferring to the Coventry Redevelopment Agency **the redevelopment rights** to the Pond[.]" *See* **Exhibit N** (Resolution No. 2024-98).

On April 3, 2025, the Coventry Redevelopment Agency held a joint workshop with the Town Council. *See* **Exhibit O** (Agenda for April 3, 2025 Town Council Meeting). The stated goal of the meeting was "**to discuss the particulars of GZA engagement by the Agency for purpose of composing a redevelopment plan for the Johnson's Pond property**." *Id.*

---

[6] While not appropriate to litigate in this forum, if necessary, the Property Owners will rebut this appraisal in Federal Court because it is inaccurate. It comes nowhere close to evaluating the fair market value of the Condemned Property. The appraisal is even refuted through the Town's own offer of $1.5 million for the property owned by Soscia Holdings, LLC. *See* **Ex. I** (Recording of Town Council Meeting on June 20, 2024), at 01:13:30-01:13:50 (where Solicitor Angell noted Soscia Holdings, LLC should have taken the $1.5 million the Town offered it before the condemnation). ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████ This explains why the appraiser did not value the easement or flowage rights to Johnson's Pond—which are of significant value—in his appraisal.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 13 of 210
PageID #: 2402

During this workshop, Councilman Pascua, who lives on Johnson's Pond, described the ability for the Town to establish a marina on the Pond and make profit off of renting boat slips. *See* **Exhibit P** (Recording of Town Workshop on April 3, 2025) (available at https://www.youtube.com/live/0DhZWFAojbs?t=2390s), at 39:50-40:55 (last accessed August 8, 2025). **Importantly, Pascua stated that because of the taking, the Town could now turn Johnson's Pond into a "profit machine"** for itself, putting the Town "in a positive financial position." *Id.*

This statement by Councilman Pascua about converting Johnson's Pond into a "profit machine" for the Town appropriately summarizes the Town's intent in the condemnation of Johnson's Pond—which was at all times was for redevelopment purposes. *Id.* The only time when this true intent was not obvious was at the end of June in 2024 when the Town filed its Petition with the Court and secured the Condemnation Order using a pretextual public purpose. *Compare id.*, *with* Petition and **Ex. L** (Hearing Transcript).

To date, the Town has charged forward with its redevelopment of Johnson's Pond, even recently launching the website for the "Johnson's Pond Redevelopment Project" in July of 2025. *See* **Exhibit Q** (Website for Johnson's Pond Redevelopment Project) (available at https://www.johnsonpondrp.org/) (last accessed August 8, 2025). As part of its mission statement, the website states that the Project is designed to "**promote tourism**" and "**restore the use and quality of residential waterfront homes abutting the reservoir**." *Id.* It also offers a definition for "redevelopment plan," explaining to the user that "[a] Redevelopment Plan in Rhode Island is a strategy for improving a specific area" to "**promote economic development**." *Id.*

The Property Owners have filed suit in Federal Court against the Town and the involved municipal employees to vindicate their rights under the United States Constitution and federal

12

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

statutes including 28 U.S.C. § 1983. *See* **Exhibit R** (Federal Complaint).[7] The Property Owners

also alleged supplemental jurisdiction over the State law claims set forth in the Federal Complaint

under 28 U.S.C. § 1367, including Count VI as a request for an assessment of damages under R.I.

Gen. Laws § 24-1-8. *Id.* ¶¶ 401-408. Count VI may be invoked by the Property Owners in the

event that the condemnation procedures used by the Town are deemed to be lawful and effective

by the Federal Court. As explained *infra* Section IV.D, the filing of the Federal Complaint tolled

any applicable limitations period under R.I. Gen. Laws § 24-1-8, pursuant to 28 U.S.C. § 1367(d).

By Stipulation, the Town and the other Defendants named in the Federal Complaint

currently have a deadline of August 11, 2025 to file an Answer or otherwise respond to the Federal

Complaint, which it still has not done. *See* **Exhibit S** (Stipulation). Thus, instead of timely

answering the Federal Complaint, it appears the Town only asked for additional time to prepare

and file this Motion in an attempt to avoid the jurisdiction of the Federal Court.

### III.    Standards of Review

#### a.    Motion for Entry of Judgment

Under Rule 54(c), "every final judgment shall grant the relief to which the party in whose

favor it is rendered is entitled even if the party has not demanded such relief in the party's

pleadings." Super. R. Civ. P. 54(c). "However, Rule 54(c) does not permit a plaintiff to "obtain

relief not demanded where, although he may be entitled to it, the propriety of such relief has not

been litigated." *North Farm Home Owners Association, Inc. v. Bristol County Water Authority*,

---

[7] With its exhibits, the Federal Complaint in 1:25-cv-00274 is 429 pages. To avoid overburdening the Court, the Property Owners have included a copy of the Federal Complaint without exhibits, and instead have only included as Exhibits herein those necessary for the Court to evaluate the instant Motions.

13

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 15 of 210
PageID #: 2404

315 A.3d 933, 946 (R.I. 2024) (citing Robert B. Kent et al., *Rhode Island Civil Procedure* § 54:4 (February 2024 Update)).

Relatedly, "[a]fter trial or hearing," the Court shall enter judgment "[u]pon a decision by the court granting other relief, . . . [and] the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it." Super. R. Civ. P. 58(a)(2); *see also* Kent, *Rhode Island Civil Procedure with Commentaries* § 54:2 (April 2025 Update) ("Rules 54 to 62, all pertaining to judgments, must be viewed as a package.").

### b.  Motion for Assignment for Trial

Under Rule 40(a)(2), "cases may be assigned for trial or other disposition to the appropriate calendar . . . [b]y motion upon notice to the adverse parties." Super. R. Civ. P. 40(a)(2). Under Rule 40(a), the "compliance with the requirements of the statute or rule of court concerning an assignment for trial are jurisdictional in character and must be had before a case can properly be tried on its merits." *See Carroll v. Chartier Real Estate Co., Inc.*, No. C.A. 80-317, 1987 WL 859769, at \*2 (R.I. Super. Jan. 16, 1987) (citing *Union Trust Co. v. National Coal Co.*, 65 R.I. 255, 14 A.2d 506 (1940) (considering whether moving party complied with Rule 40(a)).

### c.  Motion for Sanctions

Where a party files a pleading, motion, or other paper in Court through its attorney that is not "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," the party and/or its attorney are subject to sanctions under Rule 11. *See* Super. R. Civ. P. 11. Sanctions may also be imposed where a party or their attorney files pleadings, motions, or papers that are "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.*

14

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 16 of 210
PageID #: 2405

The sanctioned party may be ordered to pay reasonable attorney's fees to the party forced to defend a pleading, motion, or other paper that lacks a legal or factual basis. *Id.*

As our Supreme Court has stated, "[u]nder Rule 11, trial courts have 'broad authority to impose sanctions . . . for advancing claims without proper foundation[.]'" *Smith v. Smith*, 207 A.3d 447, 451 (R.I. 2019) (quoting *Michalopoulos v. C & D Restaurant, Inc.*, 847 A.2d 294, 300 (R.I. 2004)). "As such, 'a trial justice has discretionary authority to formulate what he or she considers to be an appropriate sanction, but must do so in accordance with the articulated purpose of the rule: 'to deter repetition of the harm, and to remedy the harm caused.'" *Id.* (quoting *Pleasant Management, LLC v. Carrasco*, 918 A.2d 213, 217 (R.I. 2007)). The Rhode Island Supreme Court "will not reverse a trial justice's imposition of sanctions for a litigant's misconduct unless 'the trial court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.*

**Rule 11 sanctions may even be imposed even in "closed cases" or after judgment, because "the imposition of sanctions is a 'collateral issue' that may be determined independently from 'the merits of an action**.'" *See Wells v. Blanchard*, 140 A.3d 151, 152 (Mem.) (R.I. 2006) (quoting *Burns v. Moorland Farm Condominium Association*, 86 A.3d 354, 360 (R.I. 2014)) (emphasis added).

## IV.    Legal Argument

### A. The Court cannot consider the relief requested in the Town's Motion because the Town's "redevelopment" use of the Condemned Property is clearly beyond the scope of R.I. Gen. Laws §§ 24-1-1 *et seq.*.

Critical to the Court's review of this matter is the fact that this case does not present a typical civil action. Rather, **the Town filed this Petition under an incredibly narrow statutory procedure for highway condemnations as set forth in R.I. Gen. Laws § 24-1-3**. *See* Petition

15

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 17 of 210
PageID #: 2406

¶ 2 ("The within statement of estimated just compensation for property take is submitted in accordance with R.I. Gen. Laws § 24-1-3 . . ..").

Section 24-1-3 delineates "a unique procedure created by statute for a limited purpose" and is considered "jurisdictional" in nature (*i.e.*, it prescribes the Court's power to act in a proceeding filed under the statute). *See, e.g.*, *Pratt v. Wooley*, 365 A.2d 424, 426-27 (R.I. 1976) (citing *Petrovics v. King Holdings, Inc.*, 56 R.I. 498, 188 A.514 (1936) (which involved a statutory receivership petition)) ("We said that the petitioner, having elected to proceed under his limited statutory remedy, could not superimpose on this remedy an additional equitable one."). In other words, because this "statutory proceeding [is] not an ordinary civil action, the jurisdiction of the Superior Court is sharply circumscribed" by the statute that the Petition was filed under. *See Rafaelian v. Perfecto Iron Works, Inc.*, 68 A.3d 57, 59-60 (R.I. 2013) (quoting *ABAR Associates v. Luna*, 870 A.2d 990, 994 (R.I. 2005) and citing *Pratt*, 365 A.2d at 426). Thus, the Town must satisfy the Court that § 24-1-3 applies to its use of the Condemned Property and provides an adequate basis for the Court to take any action on its Motion. *See Bradford Associates v. Rhode Island Division of Purchases*, 772 A.2d 489-90 (R.I. 2001) (analyzing the request for relief in relation to the applicability of the statutory scheme relied upon).

The only relief requested by the Town in the Petition—and thus, the only relief potentially available to the Town under R.I. Gen. Laws §§ 24-1-1 *et seq.*—**is a request for "the Court [to] issue an Order in accordance with R.I. Gen. Laws § 24-1-3 approving the deposit by the Town of $157,000 into the Court's registry as the sum of estimated just compensation for the property taken**." *Id.* at 6 (emphasis added). However, §§ 24-1-1 *et seq.* patently does not apply to "the Town of Coventry's acquisition by eminent domain of the property, rights, and interests

16

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 18 of 210
PageID #: 2407

commonly known as Johnson's Pond, its dam structures, and a parcel of undeveloped land immediately downstream of the Pond and dam." *See* Petition ¶ 2.

The impropriety of the Town's use of R.I. Gen. Laws §§ 24-1-1 *et seq*. for redeveloping the Condemned Property may be established by looking to the plain text of the statutory scheme invoked by the Town. *See Sosa v. City of Woonsocket*, 297 A.3d 120, 124 (R.I. 2023) (quoting *In re Brown*, 903 A.2d 147, 149 (R.I. 2006)) ("When performing our duty of statutory interpretation, this Court 'consider[s] the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.'").

R.I. Gen. Laws § 24-1-1 provides a condemnation procedure for the following scenario:

> Whenever the city council of any city or the town council of any town shall determine that the public interest and convenience makes necessary or advantageous the acquisition of land or other real property, or any interest, estate, or right therein **for the establishing, laying out, widening, extending or relocating, regrading, straightening, or improving any public highway, street, parkway, or driftway, or to secure more suitable lines, grades or safety**, it may proceed to acquire the same by the exercise of eminent domain in the manner prescribed in this chapter[.]

R.I. Gen. Laws § 24-1-1 (emphasis added).

Clearly, the Town has not taken the Condemned Property to create a highway or any of the apparatus described in § 24-1-1, and the Town admits that it is relying upon a separate condemnation statute and its Home Rule Charter to reach the procedures set forth in §§ 24-1-1 *et seq*. *See* Petition ¶¶ 4-5 (citing its Home Rule Charter and R.I. Gen. Laws § 32-4-8 as its basis for invoking R.I. Gen. Laws §§ 24-1-1 *et seq.*).

Looking to the Town's Home Rule Charter, § 1.04 of the Charter permits the Town to acquire property within the Town through condemnation for public use. *See* Home Rule Charter,

17

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Town of Coventry, § 1.04. However, the Charter also states that "[a]ll powers of the town shall be exercised **in the manner prescribed by this Charter and by state law** or, if the manner is not prescribed, then in such manner as may be prescribed by rule, resolution, or ordinance." *Id.* § 1.03 (emphasis added). Thus, the language of the Charter itself requires the Town to comply with State law where prescribed. *Id.*

Moreover, the General Assembly has indeed set forth comprehensive procedures governing the exercise of eminent domain by municipalities for redevelopment purposes, so it is fundamental under State law that the Town must follow these State procedures when conducting a condemnation. The Court need look no further than *O'Neill v. City of East Providence*, 480 A.2d 1375, 1380 (R.I. 1984) for this proposition, where in considering R.I. Gen. Laws §§ 45-32-1 *et seq*. (which contains the procedures for redevelopment condemnations), our Supreme Court held that "**a city or town, in following the provisions of its charter, is constrained to abide by those statutes of general application that relate to the subject matter regulated in the charter**." *O'Neill*, 480 A.2d at 1380 (emphasis added).

As a result, under *O'Neill* and the Charter itself, there is no independent authority for the Town to exercise eminent domain authority, as there are prescribed procedures. *Id.* As explained by *O'Neill*, §§ 1.03 and 1.04 of the Charter serve merely as an authorization for the Town to proceed in accordance with the procedures that are prescribed by State law. *See* Home Rule Charter §§ 1.03-1.04; *see also O'Neill*, 480 A.2d at 1380 (explaining that "the city charter appears to guarantee the right while chapter 32 of title 45 prescribes the precise manner by which that authority is to be exercised").

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 20 of 210
PageID #: 2409

Seeming to recognize this dilemma, the Town turns to R.I. Gen. Laws § 32-4-8 as its gateway into R.I. Gen. Laws §§ 24-1-1 *et seq.*. *See* Petition ¶-5. Section 32-4-8 states the following, in full:

> Local units[8] are hereby authorized and empowered to acquire lands for the **conservation and recreation purposes** of this chapter. If the director approves the acquisition of lands by a local unit with state assistance,[9] the lands may be acquired in the name of the local unit in any manner the local unit is authorized by law to acquire real property; provided, however, that if the acquisition is by eminent domain, it shall conform with the provisions of chapter 1 of title 24, insofar as they are consistent with the provisions of this chapter. In acquiring land for the conservation and recreation purposes of this chapter, the local unit may deal directly with the federal government or any department or agency thereof.

R.I. Gen. Laws § 32-4-8 (emphasis added).

Thus, § 32-4-8 only permits the Town to utilize the procedures in §§ 24-1-1 *et seq.* if the condemnation is for "conservation and recreation purposes" as defined in Chapter 32-4. Satisfying this definition is clearly a prerequisite for invoking the Court's power to act on the Town's Motion under §§ 24-1-1 *et seq.*. *See Rafaelian*, 68 A.3d at 59-60 (providing that because a "statutory proceeding [is] not an ordinary civil action, the jurisdiction of the Superior Court is sharply circumscribed" by the statute that the Petition was filed under").

First, as set forth *supra* Section II, and through the publicly available Exhibits attached hereto, the Town's use of the Condemned Property is not merely for "conservation and recreation purposes." *See* § 32-4-3(4) ("'Recreation and conservation purposes' means and includes use of lands for agriculture, parks, natural areas, forests, camping, fishing, wetlands and marsh lands

---

[8] "'Local unit' means a city or town or any agency thereof." R.I. Gen. Laws § 32-4-3.

[9] While not necessary for the Court to determine because of all the other arguments set forth herein, there is no indication there was an approval of this condemnation from the Director of Administration or that State assistance was provided.

19

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

preservation, wildlife habitat, hunting, golfing, boating, winter sports, scenic preservation, and similar **uses for public outdoor recreation and conservation of natural resources**.") (emphasis added).

For a brief instant around the filing of the Petition, the Town facially claimed through Resolution No. 2024-42 (which lacked a quorum) that it was taking the Condemned Property for "environmental protection and conservation, public safety, and public access to and recreational use of Johnson's Pond." *See* Petition, <u>Attachment A</u> (Resolution No. 2024-42) (adopted June 20, 2024) ¶ 1.

However, the Town's public actions—both before and after the Petition was filed—are exactly the opposite of this pretextual purpose. *See supra* Section II.



In fact, Solicitor Angell previously stated that the Town is in "**uncharted territory**," that this condemnation is "**unprecedented**," and that there is "**no state statute that allows the Town**" to take Johnson's Pond for its desired purposes—*i.e.*, redevelopment. *See* **<u>Ex. I</u>** (Recording of Town Council Meeting on June 20, 2024), at 01:18:20-01:18:50. But the Town nonetheless continues to seek relief under R.I. Gen. Laws §§ 24-1-1 *et seq*. through its Motion. *See* Town's Motion. This effort is entirely improper and lacks a statutory basis. *Rafaelian*, 68 A.3d at 59-60;

20

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 22 of 210
PageID #: 2411

*see also Bradford Associates*, 772 A.2d at 489-90 (holding statutory provisions need to be applicable for any relief to be sought thereunder).

The Town cannot possibly claim that the condemnation is for "conservation and recreation" purposes under § 32-4-8, and then turn around and use the Condemned Property for "redevelopment" purposes. *See, e.g.*, **Ex. N** (Resolution No. 2024-98) ("transferring to the Coventry Redevelopment Agency the redevelopment rights to the Pond[.]").

This is especially the case where there exists a separate statutory scheme for redevelopment condemnations that is *in pari materia* with § 32-4-8. *See* R.I. Gen. Laws §§ 45-32-1 *et seq*. (providing procedures for redevelopment condemnations). The doctrine of *in pari materia* has been well established by our Supreme Court:

> **It is an equally well-settled principle that "statutes relating to the same subject matter should be considered together so that they will harmonize with each other and be consistent" with their general objective scope**. *State ex rel. Webb v. Cianci*, 591 A.2d 1193, 1203 (R.I. 1991); *see also Horn v. Southern Union Co.*, 927 A.2d 292, 295 (R.I. 2007). **Such statutes are considered to be *in pari materia*, which stands for the simple proposition that "statutes on the same subject . . . are, when enacted by the same jurisdiction, to be read in relation to each other**." *Horn*, 927 A.2d at 294 n. 5 (quoting Reed Dickerson, The Interpretation and Application of Statutes 233 (1975)).

*Such v. State*, 950 A.2d 1150, 1156 (R.I. 2008).

A quick reading of the respective condemnation schemes in §§ 45-32-1 *et seq*. and §§ 32-4-1 *et seq*. reveals that §§ 45-32-1 *et seq*. is for "redevelopment" condemnations, and §§ 32-4-1 *et seq*. is for "conservation and recreation" condemnations—each containing different procedures. *Compare, e.g.*, § 45-32-4 (providing that in a redevelopment condemnation, the Town "must designate by resolution or ordinance one or more areas within the community as a redevelopment area or area" and then hold public hearings for interested persons), *with* § 32-4-8 (merely

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

authorizing a municipality to condemn property under §§ 24-1-1 *et seq*. for "conservation and recreation purposes"). Because these are "statutes on the same subject" (*i.e.*, eminent domain procedures for municipalities) they must be read *in pari materia*. *Such*, 950 A.2d at 1156.

In doing so, the Court must conclude that it cannot afford the Town any of the relief it is requesting under R.I. Gen. Laws §§ 24-1-1 *et seq*. (by way of an alleged "conservation and recreation" use subject to § 32-4-8), where the Town's actions with respect to the Condemned Property reveal a "redevelopment" use that—if at all prescribed by State law—would be subject to R.I. Gen. Laws §§ 45-32-1 *et seq.*. This is indisputable under *O'Neill*—requiring State procedures to be followed—and further aided by *Such*, requiring these statutes to be read *in pari materia*. *O'Neill*, 480 A.2d at 1380; *Such*, 950 A.2d at 1156. Thus, with no statutory basis for the Town to proceed under §§ 24-1-1 *et seq.*, the Court is unable to even consider the action requested in the Town's Motion. *Rafaelian*, 68 A.3d at 59-60 (holding that because a "statutory proceeding [is] not an ordinary civil action, the jurisdiction of the Superior Court is sharply circumscribed").

Because the Court lacks the power to act on the Town's Motion whatsoever under §§ 24-1-1 *et seq.*, the Town certainly has no ability to request a "final judgment determining that $157,000 is the value of the condemned property to be paid to Soscia and discharging the Town from all liability in connection with the taking." *See* Petition at 3.

### B. Similarly, the Town is not entitled to an entry of "judgment" under Rhode Island law and established procedures on judgments and final orders.

Turning to a threshold procedural issue with the Motion for Entry of Judgment, the Condemnation Order, if at all valid, is already in the form of a "judgment." Super. R. Civ. P. 54. This issue has been addressed squarely by our Supreme Court, which held that a condemnation order in a "quick take" case is considered a "judgment," except for the issue of just compensation potentially available through the statutory scheme. *See Rhode Island Economic Development*

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 24 of 210
PageID #: 2413

*Corp. v. The Parking Co., L.P.*, 892 A.2d 87, 95 (R.I. 2006) (explaining that "the Superior Court's order of condemnation as drafted by EDC, contained sufficient elements of finality").

Here, the Town has (1) exercised full control over the Condemned Property, (2) executed on the Condemnation Order by recording it in the Land Evidence Records and transferring the redevelopment rights to the Condemned Property to the Redevelopment Agency, and (3) planned and announced the economic redevelopment of Johnson's Pond publicly on the Town's website. *See* **Ex. N** (Resolution No. 2024-98); **Ex. Q** (Website for Johnson's Pond Redevelopment Project) (available at https://www.johnsonpondrp.org/). The Town cannot simultaneously claim that the Condemnation Order lacks finality and that it needs a "judgment," and at the same time act in full reliance on the Condemnation Order and with complete control over the Condemned Property. *See Hogan v. McAndrew*, 131 A.3d 717, 722 n.6 (R.I. 2016) (citing *McAuslan v. McAuslan*, 83 A. 837, 841 (R.I. 1912) (noting that where an "order possesses obvious elements of finality, we consider it a final order"). Therefore, not only is a subsequent "judgment" improper based upon the same legal defects explained *supra* Section IV.A, it is also at odds with the Town's own actions and duplicitous for the Town to request such. *Id.*

Notwithstanding, this does not mean that the Condemnation Order has any preclusive effect on any issue relating to this condemnation in Federal Court. *See Matsushita Electric Industries Co., Ltd. v. Epstein*, 516 U.S. 367, 375-76 (1996) (noting that the preclusive effect of a state court judgment in federal court is determined by looking to state law); *Goodrow v. Bank of America, N.A.*, 184 A.3d 1121, 1126-27 (R.I. 2018) (explaining that for res judicata or preclusion to apply, there needs to be "identity of the parties," and "identity of the issues," including the requirement that "the issue must actually [have been] litigated"). Importantly, the Property Owners were not a party to the proceedings that generated the Condemnation Order. *Lance v. Dennis*, 546 U.S. 459,

23

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 25 of 210
PageID #: 2414

464 (2006) (noting the United States Supreme Court has "held *Rooker-Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding").

Rather, the Condemnation Order is assailable through the Property Owners obtaining separate and independent relief in Federal Court through an adjudication of the claims in the Federal Complaint. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280, 293 (2005) (quoting *GASH Associates v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) ("If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'").

On a similar chord, the Town never even requested the "judgment" it is now claiming should enter on the Petition, which purports to encompass the entirety of the constitutional dispute between the Town and the Property Owners. *Compare* Town's Mot. at 2 (requesting a "final judgment determining that the value of the condemned property is $157,000 and discharging the Town from all liability in connection with the taking"), *with* Petition, Request for Relief, at 6 (requesting "the Court issue an Order in accordance with R.I. Gen. Laws § 24-1-3 approving the deposit by the Town of $157,000 into the Court's registry as the sum of the estimated just compensation for the property taken").

Given the limited scope of the Petition and the jurisdictional statute it was filed under, it strains credulity for the Town to ask for an Order "determining the value of the condemned property is $157,000," or, more extreme, "discharging the Town from all liability in connection with the taking." *Compare id.*, *with*  R.I. Gen. Laws § 24-1-3 (which merely allows the Town to deposit the estimated amount of just compensation in the Court registry upon satisfaction to the

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 26 of 210
PageID #: 2415

Court "that the amount so deposited with the court is sufficient to satisfy the just claims of all persons having an estate or interest in the real property"). This relief is not called for by the Petition or permitted under the statutes invoked by the Town. *See generally* Petition; §§ 24-1-1 *et seq*. In fact, the Town's request is an "end-run" around the Property Owners' right to seek relief in Federal Court under the United States Constitution. *See infra* Section IV.E.

Accordingly, these requests by the Town find no basis in law, fact, or even the procedural rules for obtaining final judgments themselves, because the Town has not demanded this relief in its Petition (which demand itself, even if made, would lack a factual and legal basis). *See North Farm Home Owners Association, Inc.*, 315 A.3d at 946 ("However, Rule 54(c) does not permit a plaintiff to "obtain relief not demanded where, although he may be entitled to it, the propriety of such relief has not been litigated").

Moreover, because the Petition was an *in rem* proceeding, such a judgment "discharging the Town from all liability in connection with the taking" could not possibly be entered against the Property Owners, as the proceedings lacked *in personam* jurisdiction over them. *See Providence Redevelopment Agency v. Falcone*, 168 A.2d 466, 467 (R.I. 1961) (evincing that in statutory eminent domain proceedings, "the Superior Court is vested with **jurisdiction in the premises**[,]" not over the condemnee) (emphasis added).

Clearly, there is no procedural vehicle for the "final judgment" that the Town requests under Rule 58(c) or Rhode Island law. Super. R. Civ. P. 58(c); *see also* Super. R. Civ. P. 54 (and cited caselaw interpreting); Kent, *Rhode Island Civil Procedure with Commentaries* § 54:2 ("Rules 54 to 62, all pertaining to judgments, must be viewed as a package.").

Put bluntly, this proceeding is over. There is no other relief necessary or allowed by statute. The Town recorded the Condemnation Order and took the Condemned Property. The relief

25

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

requested is the only relief allowed by the statute. The Town has even transferred the redevelopment rights to the Coventry Redevelopment Agency that was created for this purpose.

**C. The plain text of R.I. Gen. Laws §§ 24-1-1 *et seq.* does not permit the Town to request a trial on damages, which may only be requested by the Property Owners.**

Turning to the Town's Motion to Assign to Trial filed under Rule 40(a), which invokes R.I. Gen. Laws § 24-1-9 relating to the conduct of a trial on damages under R.I. Gen. Laws §§ 24-1-1 *et seq.*, this Motion also finds no basis in Rhode Island procedure or a plain reading of the statutory scheme.[10] Notably, R.I. Gen. Laws § 24-1-8 states as follows with respect to requesting an assessment of damages and proceeding to trial:

> Any **owner of, or person entitled to any estate or right in, or interested in any part of the real property so taken, who cannot agree with the city or town council** upon the price to be paid for his or her estate, right or interest in such real property so taken and the appurtenant damage to the remainder, **may**, within one year from the time the sum of money estimated to be just compensation is deposited in the superior court to the use of the persons entitled thereto, **apply by petition to the superior court** for the county in which the real property is situated, setting forth the taking of his or her land or estate or interest therein and **praying for an assessment of damages by the court or by a jury**. Upon the filing of a petition the court shall cause twenty (20) days' **notice of the pendency thereof to be given to the city or town by serving the city or town clerk** with a certified copy of the petition.

R.I. Gen. Laws § 24-1-8 (emphasis added).

A plain reading of § 24-1-8 does not reveal that the Town itself can file a petition for an assessment of damages. *Id.* Rather, it must be read to mean that only the property owner or another

---

[10] While R.I. Gen. Laws § 24-1-9 explains the conduct of a trial under § 24-1-1 *et seq.*, the Court must look to § 24-1-8 to ascertain who may trigger a trial on damages under § 24-1-9. *Freepoint Solar LLC v. Richmond Zoning Board of Review*, 274 A.3d 1, 8 (R.I. 2022) (explaining that in construing a statute, the "plain meaning approach is not the equivalent of myopic literalism," and the Court "'consider[s] the entire statute as a whole[,]' and examines individual provisions 'in the context of the entire statutory scheme[.]'").

26

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 28 of 210
PageID #: 2417

person interested in the Condemned Property is entitled to invoke § 24-1-8 (and in turn, § 24-1-9) for a trial. *Id.*

Through the lens of our familiar doctrines of statutory interpretation, by excluding the condemning party from this list of eligible petitioners, it is evident that the General Assembly **did not** intend to confer a right to a trial on damages on the Town. *Id. See also Shepard v. Harleysville Worcester Insurance Co., Inc.*, 944 A.2d 167, 170 (R.I. 2008) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)) (explaining that "[i]t is well settled that when the language of a statute is clear and unambiguous, [our Supreme] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings"); *Ryan v. City of Providence*, 11 A.3d 68, 75 (R.I. 2011) (deploying the "oft-quoted maxim '*expressio unius est exclusio alterius*,' ('the expression of one thing is the exclusion of another')," in interpreting an ordinance including specific items, to conclude that those items not listed must be considered excluded).

**This reading of § 24-1-8 finds direct and controlling support in our Supreme Court's interpretation of identical language in a sister condemnation statute**. In *Providence Redevelopment Agency v. Falcone*, 168 A.2d 466 (R.I. 1961), the Rhode Island Supreme Court vacated a decree entered by the Superior Court on a petition for assessment of damages that was initiated by the condemning authority. *Falcone*, 168 A.2d at 469. In that case, the *Falcone* court considered the exact issue of whether the condemning authority—not the condemnee-property owner—may bring a petition for an assessment of damages under R.I. Gen. Laws § 45-32-34. *Id.*

Section 45-32-34, which was at issue in *Falcone*, uses identical language to § 24-1-8 with respect to who may file the petition: "Any owner of or persons entitled to any estate or interest in any part of the real property . . . may . . . apply by petition . . . praying for an assessment of

27

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

damages." *Id.* (citing § 45-32-34). **<u>Realizing that the agency that brought the petition did not have authority to do so under § 45-32-34, the Supreme Court held that "the instant petition was improvidently brought and the superior court was without jurisdiction to hear it</u>**." *Id.* (emphasis added). Clearly, *Falcone* is on all fours with the present case, and the Town cannot petition the Court for an assessment of damages under §§ 24-1-8 or 24-1-9.

*Falcone* is not the only case where our Supreme Court has held that only the property owner can petition the court for a trial on the assessment of damages in condemnation cases. In *Ronci Manufacturing Co. v. Director of Public Works*, 210 A.2d 585, 588 (R.I. 1965), the Rhode Island Supreme Court held the same, using the same reasoning as *Falcone*, but this time deciphering the legislative intent behind R.I. Gen. Laws § 37-6-18. *See Ronci Manufacturing Co.*, 210 A.2d at 588. There, the Court explained that the condemnation statutes were drafted by the General Assembly to codify the constitutional right to just compensation—**<u>which belongs to the Property Owner alone</u>**. *See Ronci Manufacturing Co.*, 210 A.2d at 588 (looking to the doctrine of *inclusio unius est exclusio alterius* and also the Court's prior holding in *In re Condemnation of Certain Land for New State House*, 33 A. 448, 450 (R.I. 1895), and determining that R.I. Gen. Laws § 37-6-18 providing for a jury trial on just compensation, "by its explicit terms is clearly limited to a claim by one whose property has been taken and . . . is a legislative declaration of a right secured to a property owner by art. I, sec. 15, of the Rhode Island constitution").

Thus, the Town's Motion to Assign to Trial under Rule 40(a) and § 24-1-9 must be denied by the Court. In doing so, the Court should note that these attempts at procedural sleights of hand by the Town elicit our Supreme Court's wise concerns with allowing unchecked deviations from legal procedures:

> Irregular practices get their first footing by silent approaches and slight deviations from lawful procedure, and, if not checked, the

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 30 of 210
PageID #: 2419

> landmarks of the law will be obliterated, and the protection which the law is intended to extend to all classes by affording them an opportunity to defend or assert their rights according to established rules of procedure would be rendered nugatory.

*Petrovics v. The King Holdings*, 56 R.I. 498, 188 A.514, 516 (1936) (quoting *People ex rel. Graves v. District Court*, 37 Colo. 443, 463, 86 P. 87, 93 (1906)).

Accordingly, the Court must prevent the Town from contorting the language of these inapplicable condemnation procedures established by the General Assembly to suit its own means. *Id.* If the Court requires further assurances that it should hold in favor of the Property Owners based on this unassailable argument, it may also consult a lengthy history of petitions for damages filed by condemned property owners in Rhode Island, where in every case the condemnee—not the condemner—was the petitioner. *See East Shore Land Co. v. Peckham*, 33 R.I. 541 (R.I. 1912); *Greene v. State Board of Public Roads*, 50 R.I. 489 (R.I. 1930); *Ronci Mfg. Co. v. Director P.W. for State*, 99 R.I. 723 (R.I. 1965); *Smith v. R.I. Dept. Public Works*, 103 R.I. 268 (R.I. 1968), *Corrado v. Providence Redevelopment Agency*, 110 R.I. 549 (R.I. 1972); *Merritt Land Corp. v. Marcello*, 110 R.I. 166 (R.I. 1972), *Miller Enterprises v. Narragansett Redevelopment*, 113 R.I. 618 (R.I. 1974); *Gorham v. Public Bldg. Auth*, 612 A.2d 708 (R.I. 1992); *Root v. Providence Water Supply Board*, 850 A.2d 94, 103 (R.I. 2004).

**D. If the Court entertains the Town's Motion a step further, the Town's request belies the supplemental jurisdiction of the Federal Court under 28 U.S.C. § 1367 and the Supremacy Clause of the United States Constitution.**

If the Court has continued on to this point, it may consider the ramifications of the filing of the Federal Complaint in Federal Court on the instant proceedings. *See generally* **Ex. R** (Federal Complaint).

The Town puts forth the following argument—which is apparently the crux of its 3-page Memorandum lacking any citations to supporting precedent: (1) "Soscia did not petition for an

29

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 31 of 210
PageID #: 2420

assessment of damages within the one-year limit provided by § 24-1-8[;]" (2), "[i]nstead . . . Soscia attempted an end-run around this Court by filing a multipronged attack on the condemnation[,]" in Federal Court; so, therefore (3) Soscia's "failure to initiate proceedings in the Superior Court . . . likely forfeits and forever forecloses any right, claim, or action that it had to file a petition in the Superior Court challenging the taking and the compensation paid by the Town." *See* Town's Mem. at 2. This contention is so devoid of merit that it veers into the realm of the frivolous.

As a safeguard, the Property Owners alleged its cause of action under R.I. Gen. Laws § 24-1-8 as Count VI in the Federal Complaint to cover a scenario where the Federal Court determined there was actually a valid taking of the Condemned Property. *See id.* ¶¶ 401-409. In doing so, they properly invoked the supplemental jurisdiction of the Federal Court under 28 U.S.C. § 1367 through the filing of the Complaint. *See Id.* ¶¶ 20, 407; 28 U.S.C. § 1367(a) ("Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts **shall** have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.") (emphasis added). *Cf. Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34-35 (2025) (noting that the supplemental jurisdiction of the Federal Court "follows from (and only from) the operative pleading").

Whereas jurisdiction in the Federal Court exists under 28 U.S.C. § 1367(a), the Federal Court has jurisdiction over the Property Owners' claim brought under § 24-1-8 **unless** it is dismissed by the Federal Court. *See Roche v. John Hancock Mutual Life Insurance Co.*, 81 F.3d 249, 256 (1st Cir. 1996) (holding that a "federal court exercising jurisdiction over an asserted federal-question claim **must** also exercise supplemental jurisdiction over asserted state-law claims

30

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

that arise from the same nucleus of operative facts[,]" and concluding jurisdiction vested in the federal court upon removal," which is the treated the same as an original filing for jurisdictional purposes) (emphasis added).

The Federal Court may only dismiss Count VI and decline supplemental jurisdiction under the narrow exceptions set forth in 28 U.S.C. § 1367(c), none of which are readily applicable here. *See Royal Canin U.S.A., Inc.*, 604 U.S. at 27 (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (noting that supplemental jurisdiction under § 1367(a) is only made "to some extent discretionary" under § 1367(c), and that § 1367(a) overall reflects the Supreme Court's holding in *Gibbs* that "when the two claims are so closely related, they make up 'but one constitutional 'case'; and the Court presumed that Congress wanted in that situation to confer jurisdiction up to the Constitution's limit").

Thus, even if it is presumed that the condemnation was constitutional and lawful, and the Property Owners should indeed have filed a petition for an assessment of damages under R.I. Gen. Laws § 24-1-8, there was no requirement for them to file their claim in the Superior Court due to supplemental jurisdiction under 28 U.S.C. § 1367(a).

Despite the language in § 24-1-8 instructing the petitioner to "apply by petition to the superior court for the county in which the real property is situated," this clause must be read to merely apportion jurisdiction between the several Rhode Island courts. R.I. Gen. Laws § 24-1-8. The First Circuit has explained this principle unequivocally in two recent decisions analyzing Rhode Island and Massachusetts statutes purporting to select a jurisdiction or forum for claims brought under those respective statutes. *See 289 Kilvert, LLC v. SBC Tower Holdings LLC*, 133 F.4th 1, 6-7 (1st Cir. 2025) (holding that Rhode Island Landlord-Tenant Act statute placing "exclusive jurisdiction" in the Rhode Island District Courts cannot be read to divest federal

31

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM   Document 51-12   Filed 02/05/26   Page 33 of 210
PageID #: 2422

jurisdiction, as the Rhode Island statute would "directly conflict" with federal jurisdictional statute); *Emigrant Mortgage Co. v. Bourke*, 127 F.4th 385, 389-90 (1st Cir. 2025) (same and explaining Massachusetts Land Court statute could not be given "extraterritorial operation" because federal jurisdiction "is determined 'by the law of the court's creation'"). These holdings cite to and are founded in the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

Therefore, the Property Owners appropriately filed the Federal Complaint including Count VI under R.I. Gen. Laws § 24-1-8 in the District of Rhode Island on June 13, 2025, invoking supplemental jurisdiction under 28 U.S.C. § 1367(a). *See* **Ex. R** (Federal Complaint). When they did so, they gained the benefit of 28 U.S.C. § 1367(d) to the extent that any time limitations under R.I. Gen. Laws § 24-1-8 continued to run. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), **shall be tolled while the claim is pending and for a period of 30 days after it is dismissed** unless State law provides for a longer tolling period.") (emphasis added).

Applying § 1367(d) to the present travel, the Federal Complaint was filed on June 13, 2025. *See* **Ex. R** (Federal Complaint). The estimated sum of just compensation was deposited by the Town in Superior Court on June 28, 2024. *See* Petition, at 4 (showing Official Receipt by the Superior Court of $157,000 on June 28, 2024). Under R.I. Gen. Laws § 24-1-8, the condemnee may file its petition "one year from the time the sum of money estimated to be just compensation is deposited in the superior court to the use of the persons entitled thereto period for a property

32

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

owner to file its petition for an assessment of damages runs from the date that the estimated sum of just compensation was deposited." *See* § 24-1-8. This date would have been June 28, 2025.[11]

The Property Owners filed their Federal Complaint on June 13, 2025, which is no less than 15 days before the limitations period ran on June 28, 2025 (which includes the "extraordinary assumption" that the condemnation will be determined constitutional and valid by the Federal Court). 28 U.S.C. § 1367(d).

Based upon these facts, even if, *arguendo*, the United States District Court for the District of Rhode Island dismisses Count VI for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a)—which is unlikely—based on § 1367(d), the Property Owners would have another 30 days from the dismissal of that claim, plus the time remaining under the original limitations period (*i.e.*, 15 days) to refile their claim under R.I. Gen. Laws § 24-1-8 in Superior Court. *Id.* In other words, the filing of the Federal Complaint claiming supplemental jurisdiction under 28 U.S.C. § 1367 "stops the clock" on any state limitations period.

This application of 28 U.S.C. § 1367(d) has been crystalized by the United States Supreme Court in *Artis v. District of Columbia*, 583 U.S. 71 (2018), where it held that "1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock." *Artis*, 583 U.S. at 75. In *Artis*, the Supreme Court reversed the D.C. Court of Appeals' holding based upon its reading of § 1367(d) as merely providing a "grace period" to refile a dismissed state claim, but not "freezing" the period of limitations. *Id.* at 85 (recognizing that "the District's reading could yield an absurdity: It could permit a plaintiff to refile in state court even if the limitations period on her claim had expired before she filed in federal court"). Rejecting this reasoning, the *Artis*

---

[11] Which is a Saturday, so likely Monday, June 30, 2025 to be precise. This Memorandum will refer to the applicable date as June 28, 2025 for mathematical simplicity, with all rights reserved to claiming a later date.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 35 of 210
PageID #: 2424

Court explained that "[i]ncluding the 30 days within § 1367(d)'s tolling period accounts for cases in which a federal action is commenced close to the expiration date of the relevant state statute of limitations. In such a case, the added days give the plaintiff breathing space to refile in state court." *Id.* at 87.

Accordingly, the circumstances at issue, where the Property Owners filed in Federal Court **15 days before the period of limitations ran**, are exactly the type of circumstances that are intended to be afforded tolling relief under § 1367(d) and *Artis*. *Id.* at 91. Namely, "[t]he defendant [has] notice of the plaintiff's claims within the state-prescribed limitations period[,]" "the plaintiff [has] not . . . slept on [its] rights[,]" and it has "timely asserted those rights, endeavoring to pursue them in one litigation." *Id.*

For the Town to suggest that the Property Owners missed the period of limitations and are forever barred from bringing a claim under § 24-1-8, so that therefore, they are entitled to a "final judgment" "determining the value of the condemned property is $157,000" and "discharging the Town from all liability in connection with the taking," simply cannot be reconciled with any intelligible principle of law. *See* Super. R. Civ. P. 11 (authorizing Rule 11 sanctions against attorneys and/or parties who make an argument that is not "well grounded in fact and is warranted by existing law.").

**E. Finally, if the Court somehow determines there is a basis for continued jurisdiction in this Court, and it also decides to exercise that jurisdiction within the confines of R.I. Gen. Laws §§ 24-1-1 *et seq*., that limited jurisdiction is far from exclusive under *Knick* and 28 U.S.C. § 1983.**

Briefly, and without overburdening this Court with constitutional arguments that will be litigated in the United States District Court for the District of Rhode Island, the Property Owners conclude by rebutting any suggestion made by the Town of exclusive jurisdiction in Superior Court over the claims raised in the Federal Complaint.

34

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 36 of 210
PageID #: 2425

In its landmark decision in *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), the United States Supreme Court overruled the state-litigation requirement for takings established by *Williamson County* and "restor[ed] takings claims to the full-fledged constitutional status the Framers envisioned when they included the Clause among the other protections in the Bill of Rights." *Knick*, 588 U.S. at 189. Accordingly, there is no doubt that the Property Owners have independent takings claims under the United State Constitution through 28 U.S.C. § 1983, "without regard to subsequent state court proceedings." *Id.* at 190.

Moreover, "[t]he fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right. *Id.* at 191. "And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983." *Id.* In fact, the Supreme Court has emphasized post-*Knick* that this right is "guaranteed," without any requirement for exhaustion of state remedies. *See Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 479 (2021) ("Petitioners brought their takings claim under § 1983, which 'guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials.'' *Knick*, 588 U. S., at ——, 139 S.Ct., at 2167. That guarantee includes 'the settled rule' that 'exhaustion of state remedies is not a prerequisite to an action under . . . § 1983.'").

This principle of a guaranteed remedy under the Federal Constitution in the takings context is also generally applicable to the Property Owners' other Due Process Clause claims brought under § 1983. *See Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 177 (2023) (citing *Owens v. Okure*, 488 U.S. 235, 248, (1989) and *Knick*, 588 U.S. at 189) ("We have adhered to this understanding of § 1983's operation. To guarantee the protection of federal

35

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 37 of 210
PageID #: 2426

rights, 'the § 1983 remedy . . . is, in all events, supplementary to any remedy any State might have.'").

Therefore, even if a remedy is available under R.I. Gen. Laws § 24-1-8, there is no Rhode Island law or precedent that could deprive the Property Owners of their constitutional remedies in Federal Court under § 1983. *Knick*, 588 U.S. at 189. To the contrary, the Rhode Island Supreme Court itself has acknowledged the bedrock principles underlying § 1983 claims and their inability to be constrained by State law. *See L.A. Ray Realty v. Town Council of Town of Cumberland*, 698 A.2d 202, 213-14 (R.I. 1997) (holding State cap of $100,000 on torts claims and limitations on prejudgment interest inapplicable to claims brought against Town of Cumberland under § 1983, and explaining "that because the statutory limitation on damages under the Governmental Tort Liability Act clearly rendered inadequate the post-deprivation relief available to remedy the due process violations in this case, plaintiffs may recover the full amount of their damages under 42 U.S.C. § 1983").

## V.    Conclusion

With painstaking detail and reliance on binding legal precedent, the Property Owners have established the following: (1) the Town's Motion is unable to rely upon the statutory procedures set forth in R.I. Gen. Laws §§ 24-1-1 *et seq.* because of the "redevelopment" use of the Condemned Property by the Town; (2) the Condemnation Order is already in the form of a "judgment" and there is no basis for a subsequent judgment to enter; (3) the Town cannot force a trial on damages under R.I. Gen. Laws § 24-1-9; (4) due to supplemental jurisdiction in the Federal Court over Count VI in the Federal Complaint, any remedy under R.I. Gen. Laws § 24-1-8 held by the Property Owners is not time barred; and (5) if the Court has any continuing jurisdiction whatsoever

36

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 38 of 210
PageID #: 2427

over the Petition or the Motion filed by the Town, it is not exclusive of any remedies held by the Property Owners under the United States Constitution.

The Property Owners respectfully submit that the Court cannot take any action on the Town's Motion. There is nothing left for the Court to do in this limited statutory proceeding. *Rafaelian*, 68 A.3d at 59-60. The Town's Motion should not even be heard by the Court, and it should simply be allowed to pass without any order entering thereon. Undoubtedly, based upon the filing of this Motion as seemingly nothing but a delay tactic and to avoid the jurisdiction of the Federal Court, the Town will surely try to appeal any order that the Court issues. The Court should decline to facilitate such an abuse of judicial resources by the Town.

This being a closed case, the only Motion that is properly before the Court is the Property Owners' Rule 11 Motion for Sanctions. *Wells*, 140 A.3d at 152 (holding that Rule 11 sanctions may be imposed even in "closed cases" or after judgment, because "the imposition of sanctions is a 'collateral issue' that may be determined independently from 'the merits of an action'"). For the reasons stated in this Memorandum, and with due consideration to the misrepresentations made by the Town's attorneys to this Court, the Court should **GRANT** the Property Owners' Rule 11 Motion for Sanctions and the relief requested therein, and **AWARD** the Property Owners reasonable attorney's fees and costs incurred as a result of being forced to protect their legal rights and defend the Town's baseless Motion.

*[SIGNATURE BLOCK AND CERTIFICATE OF SERVICE TO FOLLOW]*

37

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

*Respectfully submitted,*

**SOSCIA HOLDINGS, LLC;**
**STRUCTURES AT JOHNSON'S POND, LLC;**
**BOATING AT JOHNSON'S POND, LLC;**
**WATERFRONT AT JOHNSON'S POND, LLC;**
**COMMON AREA AT JOHNSON'S POND,**
**LLC; and LAND AT JOHNSON'S POND, LLC**

*By and through their attorneys*,

/s/ *Michael A. Kelly*_____
Michael A. Kelly, Esq. (#2116)
Scott D. Levesque, Esq. (#5654)
Gregory S. Estabrooks, Esq. (#10713)
**KSPR LAW, P.C.**
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel. (401) 490-7334
mkelly@ksprlaw.com

Dated: August 8, 2025

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 8, 2025, I filed and served the within *Memorandum* through the Rhode Island Judiciary's Electronic Filing System on all counsel of record.

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Rachel Magers*_____
Paralegal
**KSPR LAW, P.C.**

38

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT A

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 41 of 210
PageID #: 2430

INST: 00002810
Bk: 2302 Pg: 871

## THE TOWN OF COVENTRY

# RESOLUTION OF THE TOWN COUNCIL

**"The acquisition, by eminent domain and condemnation, of the pond, dam and dam structures of Flat River Reservoir ("Johnson's Pond"), as well as certain land necessary to effectuate the protection of the environment, to ensure public safety, and to provide recreational access to the public"**

## Resolution No. 2024-42

*Passed:* 3-0

_____
Hillary V. Lima, *Council President*

**WHEREAS,** in the Town of Coventry,

- On May 2, 2024, the Town Council passed Resolution No. 2024-37 (attached hereto as Exhibit 4) making plain the Town Council's intentions and commitment to acquire, maintain, and redevelop Flat River Reservoir ("Johnson's Pond"), its dam, dam structures, and land to protect the environment, to ensure public safety, and to provide public recreational use of access to Johnson's Pond;

- The Town Council resolved by Resolution No. 2024-37 that "[t]he Town Council shall consider the approval and adoption of an Ordinance to acquire, for public use, by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by [Soscia Holdings, LLC] from the Quidnick Reservoir Company;"

- On May 14, 2024 and in furtherance of Resolution No. 2024-37, the Town Council passed Ordinance No. 2024-03 (attached hereto as Exhibit 5), which, among other things, ordained that the "Town shall acquire by purchase or condemnation the dam, dam structures, pond, and associated property at Johnson's Pond, including and all property, rights, and interests acquired by Soscia Holdings, LLC from the Quidnick Reservoir Company;"

- Ordinance No 2024-03 provides that "[i]f the Town's efforts to purchase the Pond are of no avail, then the Solicitor is directed to take all necessary action to take the acquisition by a condemnation;"

- The Town, by and through its Solicitor, made an effort to purchase the dam, pond, and associated property at Johnson's Pond from Soscia Holdings, LLC for $1,527,000.00, which

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 000002810
Bk: 2302 Pg: 872

amount the Town, in good faith, believed was the fair market value of the property and just compensation for it to Soscia Holdings, LLC;

- Soscia Holdings, LLC, rejected the Town's effort to purchase the dam, pond, and associated property at Johnson's Pond for $1,527,000.00;

- The dam, pond, and associated property, interests, and rights at Johnson's Pond acquired by Soscia Holdings, LLC from Quidnick Reservoir Company are described in the Quitclaim Deed from Quidnick Reservoir Company to Soscia Holdings, LLC recorded on or about March 3, 2020 in the Town of Coventry Recorded Land Records, Deed Book 2155, Pages 847 to 855 (attached hereto as Exhibit 6);

- The dam, pond, and associated property, interests, and rights at Johnson's Pond acquired by Soscia Holdings, LLC from Quidnick Reservoir Company as referenced and described in the Quitclaim Deed from Quidnick Reservoir Company to Soscia Holdings, LLC recorded in the Town of Coventry Recorded Land Records, Deed Book 2155, Pages 847 to 855 consist of:

    "Parcel I," referenced as Assessor's Plat 59, Lot 5, and described in the deed as containing 100 acres more or less, which acreage principally consists of undeveloped property downstream Dam and Pond; and, "Parcel II," referenced as Land and Water rights Commonly known as Johnson's Pond, Assessor's Plat 999, Lot 999, and further described in the deed as the submerged land and water rights commonly known as Johnson's Pond, including all flowage rights, dams, flumes, raceways and other apparatus or equipment used in connection therewith;

- In furtherance of the findings, purpose, and intent of Ordinance No. 2024-03 and Resolution No. 2024-37, the Town Council considers and concludes that, while, in order to protect and conserve the environment, to ensure public safety, and to provide recreational access to the public, it is necessary or advantageous for the Town to acquire by exercise of eminent domain and condemnation all Parcel II property, rights, and interests deeded by Quidnick Reservoir Company to Soscia Holdings, LLC, but that it is not necessary or advantageous for the Town to acquire by exercise of eminent domain and condemnation the entirety of the Parcel I property, rights, and interests deeded by Quidnick Reservoir Company to Soscia Holdings, LLC;

- The Town Council considers and concludes that a certain portion of Parcel I identified and depicted on the attached Plan by DiPrete Engineering (attached hereto as Exhibit 1) as "Parcel A" (consisting of 47.75 acres) *is necessary and advantageous* to acquire by exercise of eminent domain and condemnation consistent with Resolution No. 2024-37 and Ordinance No. 2024-03;

- The Town Council considers and concludes that a certain portion of Parcel I identified and depicted on the attached Plan by DiPrete Engineering (attached hereto as Exhibit 1) as "Parcel B" (consisting of 68.98 acres) is *not necessary or advantageous* to acquire by condemnation consistent with Resolution No. 2024-37 and Ordinance No. 2024-03;

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 43 of 210
PageID #: 2432

INST: 00002810
Bk: 2302 Pg: 873

• The Town Council, in good faith, based on appraisal by Thomas S. Andolfo, MAI, SRA, AI-GRS, RI-Licensed, Certified General Real Estate Appraiser, considers and believes that just compensation for taking by eminent domain and condemnation of Parcel II and that part of Parcel I identified and depicted on the attached Plan by DiPrete Engineering (attached hereto as Exhibit 1) as "Parcel A" is $157,000.00 (One Hundred-Fifty Seven Thousand Dollars);

**NOW THEREFORE, BE IT RESOLVED THAT** the Honorable Town Council:

1. Public interest and convenience make necessary or advantageous for environmental protection and conservation, public safety, and public access to and recreational use of Johnson's Pond, for the Town to acquire in fee simple absolute by exercise of eminent domain and condemnation of all right, title, and interest in: "Parcel II" of the property conveyed by Quitclaim Deed by Quidnick Reservoir Company to Soscia Holdings, LLC (Book 2155; Pages 847-855); *and*, in that part of "Parcel I" of the property conveyed by Quitclaim Deed by Quidnick Reservoir Company to Soscia Holdings, LLC (Book 2155; Pages 847-855) that is identified and depicted on the attached Plan by DiPrete Engineering (Exhibit 1) as "Parcel A" ("Acquired Property").

2. The Acquired Property, as described above, is further identified in the Descriptions attached hereto as Exhibit 3.

3. The Acquired Property, as described above, is depicted on the Plan attached hereto as Exhibit 2.

4. The Acquired Property is subject to all rights, easements, restrictions, and reservation of record, in so far as such rights, easements, restrictions, and reservation of record may be in force and applicable.

5. Just compensation for taking of the Acquired Property is estimated in good faith to be $157,000.00 (One Hundred-Fifty Seven Thousand Dollars).

6. The Town Solicitor, shall forthwith take all necessary or reasonable action, including certifications, recordings, court filings and proceedings, estimates and deposits of just compensation, service and publication of notices, and any and all other necessary or reasonable action to complete the taking and condemnation of the Acquired Property and to vest title to the Acquired Property in the Town of Coventry.

Sponsored by:  Council President Hillary V. Lima and Council Vice-President James LeBlanc

Resolution approved to as to form and substance:

Stephen J. Angell, Esq. – Town Solicitor
June 20, 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 44 of 210
PageID #: 2433

INST: 00002810
Bk: 2302 Pg: 874

# Exhibit 1

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

CASE 1:25-cv-00274-MRD-AEM   Document 51-12   Filed 02/05/26   Page 45 of 210   PageID #: 2484

# MINOR SUBDIVISION PLAN

**1600 FLAT RIVER ROAD**

ASSESSORS PLAT 59 LOT 5
COVENTRY, RHODE ISLAND

PREPARED FOR:
ANGELL LAW, LLC
1062 RESERVOIR AVENUE,
CRANSTON, RHODE ISLAND 02910

SHEET 1 OF 2

DiPrete Engineering

Two Stafford Court, Cranston, RI 02920
tel 401-943-1000 fax 401-464-6006 www.diprete-eng.com

Boston • Providence • Newport

SCALE 1"=150'

PARCEL A

PARCEL B

PARCEL C
ALL REMAINING AREA OF
FLAT RIVER RESERVOIR
(JOHNSON'S POND)
SEE SHEET 2

WASHINGTON SECONDARY BIKE PATH

TALLWOODS DRIVE

RESERVOIR ROAD

INDUSTRIAL DRIVE

FORMER PROPERTY LINE
APPROXIMATE EDGE OF WATER

LEGEND

AREA TABLE

GENERAL NOTES

LOCUS MAP
NOT TO SCALE

SITE

INST# 0000210
BK: 2302 Pg: 875

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 876

# Exhibit 2



PROPERTY AREA TAKEN BY
EMINENT DOMAIN/CONDEMNATION
PARCEL A AND ALL REMAINING
AREA OF FLAT RIVER
RESERVOIR (JOHNSON'S POND)

PROPERTY AREA NOT TAKEN BY
EMINENT DOMAIN/CONDEMNATION
69± AC

PARCEL B

SCALE 1"=500

MINOR SUBDIVISION PLAN

1600 FLAT RIVER ROAD
ASSESSORS PLAT 59 LOT 5
COVENTRY, RHODE ISLAND

PREPARED FOR:
ANGELL LAW, LLC
1062 RESERVOIR AVENUE,
CRANSTON, RHODE ISLAND 02910

SHEET 2 OF 2

| NO | DATE | DESCRIPTION | REV | BY |
|----|------|-------------|-----|-----|
| | 5-30-24 | MINOR SUBDIVISION | | R.G. |

DiPrete Engineering

Two Stafford Court, Cranston, RI 02920
tel 401-943-1000 fax 401-464-6006 www.diprete-eng.com

Boston • Providence • Newport

INST# 00002810
BK: 2302 Pg: 877

PageID #: 2436

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255714
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 47 of 210

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST= 00002810
Bk= 2302 Pg= 878

# Exhibit 3

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Page 1 of 1

 **DiPrete Engineering**

6/13/2024

**Metes and Bounds Description**

INST: 00002810
Bk: 2302 Pg: 879

**PARCEL A**

**Coventry, Rhode Island**

That certain parcel of land, situated southerly of Flat River Road in the Town of Coventry, Washington County, the State of Rhode Island and shown as **Parcel A** on that plan entitled *Minor Subdivision Plan, 1600 Flat River Road, Coventry, Rhode Island, Scale 1"=150', Plan by DiPrete Engineering* and being more particularly described as follows:

Beginning at a point on the southerly right of way of the Washington Secondary Bike Path as shown on the above referenced plan, said point also being the northeasterly corner of herein described parcel;

thence the following 2 courses bounded easterly by Parcel B on above referenced plan;

1.  North 21°45' East, a distance of 939 feet ±;

2.  North 02°38' 29" East, a distance of 1,455 feet ±;

thence North 85°30' West, bounded southerly by land now or formerly Charles Agwunobi (AP 51 Lot 3, a distance of 325 feet ± to the northerly right of way of Reservoir Road;

thence North 81°00' West along said northerly right of way of Reservoir Road, a distance of 247 feet ±;

thence North 00°45' East, bounded westerly in part by land now or formerly M & I Homes, LLC. (AP 50 Lot 35) and Stephen C. & Susan H. Markham (AP 50 Lot 36), a distance of 343 feet ± to the southerly mean high-water line of the Flat River Reservoir (Johnson's Pond);

thence North 01°15' East, bounded westerly by Parcel C on above referenced plan, a distance of 2170 feet ± to the southerly right of way of the Washington Secondary Bike Path;

thence South 74°45' East, along said southerly right of way of the Washington Secondary Bike Path, a distance of 964 feet ± to the to the point of beginning.

The above-described parcel contains 48± acres, more or less.

The above-described parcel being the same premises conveyed to Socia Holdings, LLC. by deed of Quidnick Reservoir Company dated March 2nd, 2020, recorded in Book 2155, page 847.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Page 1 of 2

 **DiPrete Engineering**

6/13/2024

**Metes and Bounds Description**

INST= 00002810
Bk= 2302 Pg= 880

**PARCEL B**

**Coventry, Rhode Island**

That certain parcel of land, situated southerly of Flat River Road in the Town of Coventry, Washington County, the State of Rhode Island and shown as **Parcel B** on that plan entitled *Minor Subdivision Plan, 1600 Flat River Road, Coventry, Rhode Island, Scale 1"=150', Plan by DiPrete Engineering* and being more particularly described as follows:

Beginning at a point on the southerly right of way of the Washington Secondary Bike Path as shown on the above referenced plan, said point also being the northwesterly corner of herein described parcel;

thence the following 3 courses along said southerly right of way of the Washington Secondary Bike Path

1. South 74°45' East, a distance of 396 feet ±;

2. South 74°45' East, a distance of 215feet ±;

3. South 75°15' East, a distance of 436 feet ±;

Thence the following 2 courses bounded easterly by land now or formerly Seaside Casual Holdings, LLC. (AP 51 Lot 8);

1. South 05°15' East, a distance of 142 feet ±;

2. South 05°45' East, a distance of 313 feet ±;

thence South 17°30' East, bounded in part by land now or formerly Seaside Casual Holdings, LLC. (AP 51 Lot 8), the westerly terminus of Industrial Drive, and by land now or formerly Audubon Society of RI (AP 51 Lot 7), a distance of 1,080 feet ±;

thence South 03°45' East, bounded easterly by land now or formerly Airport Holdings, LLC., a distance of 658 feet ±;

thence North 87°45' West, bounded southerly in part by land now or formerly Charles D. Anthony (AP 43 Lot 34), and Barry R. Holt (AP 43 Lot 25), a distance of 1,361 feet ±;

thence North 87°45' West, bounded southerly by land now or formerly John H Potvin & Keri A Reilly-Potvin (AP 43 Lot 24), a distance of 209 feet ±;

Z:\DEMAIN\Projects\2272-001 Reservoir Road\Reports & Calculations\Survey\2272-001-MBTN-PARCEL B-20240613.docx

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 51 of 210
PageID #: 2440

Page 2 of 2

 DiPrete Engineering

6/13/2024

thence North 85°30' West, bounded southerly in part by land now or formerly Corey & Amy Suffoletto (AP 43 Lot 23) and Dennis J. & Brittany Lafleur (AP 43 Lot 22), a distance of 272 feet ±;

thence the following 2 courses bounded westerly by Parcel A on above referenced plan;

1.  North 21°45' East, a distance of 939 feet ±;

2.  North 02°38' 29" East, a distance of 1,455 feet ± to the point of beginning.

The above-described parcel contains 69± acres, more or less.

The above-described parcel being the same premises conveyed to Socia Holdings, LLC. by deed of Quidnick Reservoir Company dated March 2nd, 2020, recorded in Book 2155, page 847.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



# DiPrete Engineering

## Metes and Bounds Description

## PARCEL C

## Coventry, Rhode Island

That certain parcel of land, situated southerly of Flat River Road in the Town of Coventry, Washington County, the State of Rhode Island and shown as **Parcel C** on that plan entitled *Minor Subdivision Plan, 1600 Flat River Road, Coventry, Rhode Island, Scale 1"=150', Plan by DiPrete Engineering* and being more particularly described as follows:

PARCEL C:

All right, title, and interest of Soscia Holdings, LLC in the property conveyed to Soscia Holdings, LLC identified and described as "PARCEL II" in "EXHIBIT A" in the QUITCLAIM DEED from Quidnick Reservoir Company to Soscia Holdings, LLC dated March 2, 2020, recorded in the Town of Coventry Recorded Land Records in Book 2155, pages 847-855.

The above-described parcel being the same premises conveyed to Socia Holdings, LLC. by deed of Quidnick Reservoir Company dated March 2nd, 2020, recorded in Book 2155, page 847.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 883

# Exhibit 4

INST: 00002810
Bk: 2302 Pg: 883

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST# 00002810
Bk: 2302 Pg: 884

## THE TOWN OF COVENTRY

# RESOLUTION OF THE TOWN COUNCIL

**"Making plain the Town Council's intentions and commitment to acquire, maintain and redevelop Flat River Reservoir ("Johnson's Pond"), its dam, dam structures and land to protect the environment, to ensure public safety, and to provide recreational access to the public"**

## Resolution No. 2024-37

*Passed:* 5-0

Hillary V. Lima, *Council President*

**WHEREAS,** in the Town of Coventry,

- In the late 1800's, the Quidnick Reservoir Company ("Quidnick") constructed a dam on the south branch of the Pawtuxet River in Coventry;

- The original purpose of the dam – known as the Flat River Reservoir Dam ("Dam") – was to create a reservoir of water for reliable power generation and downstream use by Quidnick's industrial members;

- The water impounded by the Dam – which normally covers an area of about 950 acres – is commonly referred to as Johnson's Pond ("Pond");

- The mills of Quidnick's members having been shuttered long ago, in recent times the Pond has been used for recreational purposes and the impoundment and the release of its waters support wetlands as well as wetland-dependent plant and animal species;

- Beginning in April 1974, Quidnick and the Town entered into a series of agreements concerning the repair and maintenance of the Dam and the maintenance of the water levels in the Pond to maximize the Pond's recreational use during the months of May through September of each year;

- In January 2009, Quidnick and the Town entered into the last agreement between them;

- Pursuant to the January 2009 Agreement, the Town leased the Pond and a vacant 80-acre parcel of land for public recreational use through March 31, 2024 ("Lease");

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
BK: 2302 Pg: 885

- Among its provisions, the Lease obligated Quidnick to maintain the water level in the Pond at specifically delineated elevations ("water level" requirements);

- During the prime recreational season of May through September, the Lease required Quidnick to use its best efforts to regulate the Dam's outlet gates to maintain the water level in the Pond at the Dam's spillway level;

- When the water in the Pond is maintained at the Dam's spillway level the Pond is full, which is to say that it is at a "normal pool;"

- The State of Rhode Island Department of Environmental Management ("RIDEM") has determined that the streamflow and water level requirements specified in the Lease correspond to the Dam and Pond's historic water releases and levels;

- In March 2020, Soscia Holdings, LLC ("Soscia") acquired Quidnick's interests in the Dam and Pond and Quidnick assigned its rights and interests in the Lease with the Town to Soscia;

- Since Soscia's acquisition of the Dam and Pond in March 2020, the Town, RIDEM, and the public have been involved in numerous disputes with Soscia, some of which resulted in litigation in state and federal courts, over Soscia's operation and management of the Dam and Pond as well as numerous legal disputes over the laws and regulations applicable to Dam safety and the maintenance of the Pond's water levels and streamflows;

- Soscia's conduct, action, and positions on its interests and rights in connection with the ownership of the Dam and Pond (1) have departed from the historical operation and management of the Dam and Pond (2) have no relationship to conscientious environmental stewardship; (3) bear no relationship to best practices dam and dam structure management; and (4) have resulted in or threatened public interests protected by laws and regulations concerning dam safety, dam and pond regulation, wetlands and environmental protection, and local ordinances;

- Soscia's conduct, action, and positions on its interests and rights in connection with the ownership of the Dam and Pond have departed from the historical operation and management of the Dam and Pond and have caused or threatened to limit or deprive the public of access to and use of the Pond;

- Soscia's conduct and actions on or after April 1, 2024, has caused the dam to be deemed "unsafe" by RIDEM causing RIDEM to issue a Cease and Desist to Soscia as well as a subsequent Immediate Compliance Order dated April 3, 2024;

- Pursuant to its Home Rule Charter, which charter was authorized and approved by the General Assembly by P.L. 1973, Ch. 4, Sec. 2 on November 7, 1972, the Town may acquire property within or without its corporate limits for town purposes, in fee or any lesser interest or estate, by

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 56 of 210
PageID #: 2445

INST: 00002810
Bk: 2302 Pg: 886

purchase, lease, gift, devise, and by condemnation within the town, for public use and may hold, manage and control, and may sell, lease, and convey such property as its interests may require;

- Pursuant to the Town's Home Rule Charter, the Town Council is vested with the power to adopt, amend, and repeal ordinances for the preservation of the public peace, health, safety, welfare, and for the protection of persons and property;

- Pursuant to the Town's Home Rule Charter, the Town Council is vested with the power to enact, reenact, amend or repeal ordinances and resolutions for the condemnation of land located within the town as permitted by the laws of this state;

- For public use of the Pond (including, but not limited to public access, boat ramps, parking, facilities, and the like for public recreation and use), the Town Council intends and desires to acquire by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by Soscia from the Quidnick Reservoir Company;

- The Town Council intends and desires for public use of the Pond (including, but not limited to public access, boat ramps, parking, facilities, and the like for public recreation and use) to acquire by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, in order to put the Pond in the public domain for public use, where it belongs;

**NOW THEREFORE, BE IT RESOLVED THAT** the Honorable Town Council:

1. The Town Council shall consider the approval and adoption of an Ordinance to acquire, for public use, by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by Soscia from the Quidnick Reservoir Company.

Sponsored by: Council Vice-President James LeBlanc

Resolution approved to as to form and substance:

Stephen J. Angell, Esq. – Town Solicitor

PASSED AND ADOPTED THIS 2nd day of May 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 887

# Exhibit 5

INST: 00002810
Bk: 2302 Pg: 887

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**THE TOWN OF COVENTRY**

INST: 00002810
Bk: 2302 Pg: 888

# ORDINANCE OF THE TOWN COUNCIL

## IN AMENDMENT OF THE TOWN OF COVENTRY CODE OF ORDINANCES, PART II – GENERAL LEGISLATION, 2005

### Ordinance No. 2024-03

*Passed:* 4-0

_____
Hillary V. Lima, *Council President*

*Approved:*

_____
Daniel O. Parrillo, *Town Manager*

*It is ordained by the Town of Coventry, Town Council as follows:*

**Section 1.** The Town of Coventry Code of Ordinance, Part II General Legislation is hereby amended by adding the following Chapter and Sections:

### Chapter 187 – PONDS, DAMS, DAM STRUCTURES, AND RECREATIONAL USE

### Article I – Flat River Reservoir a/k/a Johnson's Pond

### Sec. 187-1 Findings, Purpose and Intent

The Town Council finds that private ownership of the dam and pond at Flat River Reservoir (collectively, "Johnson's Pond" or "Pond") is untenable. Recent events have demonstrated that such ownership is inconsistent with and does not promote the preservation of public use, peace, health, safety and welfare. The Town Council finds further that such private ownership has been detrimental to the best interests of the environment, public safety, and public use of and benefit from recreational access to the Pond and the quality of life in the Town of Coventry. Accordingly, the purpose of this Ordinance is to acquire, maintain and redevelop Johnson's Pond, its dam, dam structures and associated property to protect the environment, ensure public safety, and provide recreational facilities for and access to and public use of the Pond.

### Sec. 187-2 Acquisition

The Town shall acquire by purchase or condemnation the dam, dam structures, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by Soscia Holdings, LLC from the Quidnick Reservoir Company. Condemnation, if necessary, is authorized by the Town's Home Rule Charter, which was authorized and approved by the Rhode Island General Assembly on November 7, 1972 (P.L. 1973, Ch. 4, Sec. 2).

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 59 of 210
PageID #: 2448

If the Town's efforts to purchase the Pond are of no avail, then the Solicitor is directed to take all necessary action to make the acquisition by a condemnation of the Pond, dam, dam structures and associated property at Johnson's Pond, in order to put the Pond and its associated property in the public domain for public use and redevelopment.

## Sec. 187-3 Ownership, Operation and Maintenance

Upon acquisition, the Town shall take immediate action to:

- Register with the Rhode Island Department of Environmental Management ("RIDEM") as the owner of the dam;

- Extend its insurance coverage with respect to the dam, dam structures, Pond;

- Maintain the Pond's water level, dam and dam structures in accordance with Rhode Island General Laws as well as all regulations promulgated by RIDEM;

- Bring the dam and its structures into compliance as set forth in *OCI-DAMS-23-28* issued by RIDEM on April 3, 2024;

- Perform any other necessary and appropriate acts in connection with the ownership, operation, and maintenance of the Pond, dam, dam structures and associated property at Johnson's Pond.

## Sec. 187-4 Redevelopment

The Town shall create a public benefit for Town residents by redeveloping the Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation and use.

## Sec. 187-5 Transfer

The Town may transfer any or all of its rights to own, operate, maintain and redevelop the Pond, property, dam and dam structures to any agency of the Town whose membership is appointed by the Town Council.

**Section 2.** This ordinance shall take effect upon its passage and final adoption.

Positive Endorsement:                          Negative Endorsement: (Attach reasons)

_____ 5/9/24                _____
Town Solicitor              Date               Town Solicitor              Date

Introduced by/Pursuant to:    Council Vice-President James LeBlanc

Referred to/for:              Public Hearing on May 14, 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 890

# Exhibit 6

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 891

INST: 00001308
Bk: 2155 Pg: 847

# QUITCLAIM DEED

QUIDNICK RESERVOIR COMPANY, a Rhode Island corporation ("Grantor"), having a principal mailing address of 55 Arrowhead Trail, East Greenwich, RI 02818, for consideration paid, and in full consideration of One Million Seven Hundred Thousand and 00/100 Dollars ($1,700,000.00), grants to SOSCIA HOLDINGS LLC, a Rhode Island limited liability company with an address at 6 Silver Maple Drive, Coventry, Rhode Island 02816, WITH QUITCLAIM COVENANTS.

The two parcels of land, with all improvements thereon described in Exhibit A attached hereto and incorporated herein.

Subject to and with the benefit of all rights, easements, restrictions and reservations of record, in so far as in force and applicable.

This conveyance is made subject to real estate taxes assessed as of December 31, 2019.

The undersigned Grantor hereby covenants that this transfer is such that no R.I.G.L. § 44-30-71.3 withholding is required, as the Grantor is a Rhode Island corporation as evidenced by certificate of legal existence.

[SIGNATURE APPEARS ON FOLLOWING PAGE]



022241

RHODE ISLAND
REAL ESTATE CONVEYANCE TAX

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 62 of 210
PageID #: 2451

INST: 00002810
Bk: 2302 Pg: 892

INST: 00001308
Bk: 2155 Pg: 848

*Witness* my hand and seal this 2ⁿᵈ day of March , 2020.

Quidnick Reservoir Company
a Rhode Island corporation

By: _____
Name: Joel Westerman
Title: President

State of Rhode Island

Kent _____ County

On this _2ⁿᵈ_ day of March , 2020, before me, the undersigned notary public, personally appeared Joel Westerman, proved to me through satisfactory evidence of identification, which consisted of Rhode Island driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he has signed it as President of Quidnick Reservoir Company, and he acknowledged said instrument by him executed to be his free act and deed and the free act and deed of Quidnick Reservoir Company.

_____
Notary Public:
Name: Steven Rosenbaum
My commission expires: 7/12/21

For reference purposes only:
Property Address:

Parcel 1
1660 Flat River Road
Coventry, Rhode Island
AP 59 Lot 5

Parcel 2
Land and Water rights
Commonly known as Johnson's Pond
Coventry. Rhode Island
AP 999 Lot 999

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 893

INST: 00001308
Bk: 2155 Pg: 849

## EXHIBIT A

PARCEL I:

That certain parcel of land with all improvements thereon located on the northerly side of Reservoir Road in the Town of Coventry, County of Kent, State of Rhode Island, bounded and described as follows:

Beginning at a point in the northerly line of Reservoir Road, so-called, said point being the southeasterly corner of land n/f belonging to Gilbert Dion and the southwesterly corner of the herein described parcel;

Thence running in a general northerly direction bounded westerly in part by said Dion land and in part by land n/f belonging to Stephen C. Markham Life Estate a distance of three hundred-fifty-nine feet, more or less (359'+/-) to the edge of Flat River Reservoir;

Thence turning and running in an irregular line along the bank of said Flat River Reservoir in a general easterly, northeasterly, northerly, northwesterly, northerly, northeasterly, northerly, easterly, northerly, westerly, and northwesterly direction a distance of two thousand forty-five feet, more or less (2045'+/-) to a point in the southerly line of land n/f owned by the Town of Coventry;

Thence turning and running in a general easterly direction a distance of one thousand two hundred ninety feet, more or less (1290'+/-) to a point;

Thence turning an interior angle of 177° 38'16" and continuing in a general easterly direction a distance of two hundred and 17/100 (200.17) feet to a point;

Thence turning an interior angle of 182° 21'44" and continuing in a general easterly direction a distance of four hundred eighty-five and 33/100 (485.33) feet to a granite bound, said granite bound being the northwesterly corner of land n/f belonging to Seaside Casual Holdings LP and the northeasterly corner of the herein described parcel, said last three courses being bounded northerly, respectively, by said Town of Coventry land;

Thence turning an interior angle of 110° 29'00" and running in a general southerly direction bounded easterly by said Seaside Casual Holdings LP a distance of four hundred forty-four and 40/100 (444.40) feet to a point;

Thence turning an interior angle of 193° 37'00" and continuing in a general southerly direction bounded easterly in part by said Seaside Casual Holdings LP land, in part by said Town of Coventry land and in part by land n/f belonging to The Audubon Society of Rhode Island a distance of seven hundred twenty-four and 70/100 (724.70) feet to a point;

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 894

INST: 00001308
Bk: 2155 Pg: 850

Thence turning an interior angle of 176° 22'00" and continuing in a general southerly direction bounded easterly by said Audubon Society of Rhode Island land a distance of six hundred twenty feet, more or less (620' +/-) to a point on the northerly bank of the South Branch of the Pawtuxet River;

Thence turning and running in an irregular line along the northerly bank of the South Branch of the Pawtuxet River in a general westerly, southerly, westerly, northerly, westerly, southwesterly, southeasterly, easterly, southerly, southwesterly, southerly and westerly direction a distance of four thousand seven hundred ninety feet, more or less (4790'+/-) to the easterly bank of the Flat River Dam,
so-called;

Thence turning and running in a general southerly direction along the bank of said dam a distance of seventy-five feet, more or less (75'+/-) to a point;

Thence turning and running in an irregular line along the southerly bank of the South Branch of the Pawtuxet River in a general southeasterly, northeasterly, southeasterly, southwesterly, northeasterly, northerly, northeasterly, southerly, southwesterly, easterly, southerly, easterly, northeasterly, northerly, easterly, northeasterly, southerly, southeasterly and easterly direction a distance of four thousand three hundred and fifteen feet, more or less (4315'+/-) to a point;

Thence turning and running in a general southerly direction bounded easterly by land n/f belonging to Airsand Realty. LLC, a distance of four hundred two feet, more or less (402'+/-) feet to a point;

Thence turning an interior angle of 82°30'00" and running in a general westerly direction bounded southerly in part by land n/f belonging to Charles D. Anthony, in part by land n/f belonging to Barry R. & Michele M. Holt, in part by land n/f belonging to John H. Potvin & Keri A. Reilly-Potvin a distance of one thousand six hundred seventy and 78/100 (1670.78) feet to a field stone bound;

Thence turning an interior angle of 176°15'41" and continuing in a general westerly direction bounded southerly in part by land n/f belonging to Amy I. & Corey H. Suffoletto, in part by land n/f belonging to Dennis Lafleur & Brittany A. Newton and in part by land n/f belonging to Charles Agwynobi a distance of six hundred two and 66/100 (602.66) feet to a point in the northerly line of said Reservoir Road, so-called;

Thence turning an interior angle of 178°36'23" and continuing in a general westerly direction along the northerly line of said Reservoir Road, so-called, a distance of two hundred ninety-two and 78/100 (292.78) feet to the point and place of beginning.

Said last described line forms an interior angle of 92°13'10" with said first described line.

Said parcel contains 100 acres, more or less.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 895

INST: 00001308
Bk: 2155 Pg: 851

For a more particular description see that plan entitled "Comprehensive Boundary Survey A. P. 59, Lot 5 prepared for Soscia Holdings LLC location: Quidnick Reservoir Property Coventry, Rhode Island scale: 1"-150' date: Feb. 25. 2020 by Boyer Associates".

PARCEL II:

All right, title and interest of Quidnick Reservoir Company in the properties conveyed to Quidnick Reservoir Company by the deeds listed on Exhibit B attached hereto. excepting any interest in any of said properties that has prior hereto been conveyed out to another party by Quidnick Reservoir Company.

Also specifically including in this conveyance any and all right held by Quidnick Reservoir Company to cover and flow with water all or so much of any such lands as shall be consequent upon and caused by the erection and maintenance of any dam on the Flat River within the Town of Coventry, and including and hereby conveying any and all rights that Quidnick Reservoir Company has or has any claim to in any waters within the Town of Coventry, including but not limited to Flat River Reservoir or Johnson's Pond so-called

It is the purpose and intent of this Deed to convey. and Quidnick Reservoir Company hereby does convey, to Soscia Holdings LLC all the right. title, claim and interest that Quidnick Reservoir Company has in and to any and all land in the Town of Coventry, and any and all rights, title, claims and interest that Quidnick Reservoir Company has in the waters or submerged lands within the Town of Coventry. including but not limited to the Flat River Reservoir and Johnson's Pond, and all flowage rights, dams, flumes, raceways and other apparatus or equipment used in connection therewith.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



(113 / 4)

TOWN OF COVENTRY, R. I.
FROM 1743 TO DECEMBER 31, 1925

INST: 00001308
Bk: 2302 Pg: 894
852

EXHIBIT B

| GRANTEE | GRANTOR | | KIND | VOL. | PAGE | YEAR |
|---|---|---|---|---|---|---|
| Quidnick Greenhouses Inc | Joseph H Cushing | | | 39 | 59 | 1916 |
| Quidnick Greenhouses Inc | Francis J Flanagan | al | | 41 | 132 | 1920 |
| Quidnick Greenhouses Inc | Mary E Cushing | | | 41 | 138 | 1920 |
| Quidnick Greenhouses Inc (Bankrupt) | (William E Reddy) | | Appt | 39 | 390 | 1925 |
| Quidnick Greenhouses | (Helen A Lamont) | | Cert | 39 | 402 | 1925 |
| | | | | | | |
| Quidnick Mfg Co | Union Company | | | 30 | 570 | 1884 |
| Quidnick Mfg Co | Rhode Island Baptist State Convention Tr | | | 30 | 680 | 1886 |
| | | | | | | |
| Quidnick Reservoir Co | Job Harkness | Lse | | 21 | 660 | 1847 |
| Quidnick Reservoir Co | John W Johnson | Lse | | 21 | 660 | 1847 |
| Quidnick Reservoir Co | James G Anthony Tr | | | 21 | 663 | 1847 |
| Quidnick Reservoir Co | Alfred O Matteson ux | Lse | | 23 | 43 | 1848 |
| Quidnick Reservoir Co | Job Harkness | | | 24 | 322 | 1857 |
| Quidnick Reservoir Co | Henry B Colvin | | | 25 | 140 | 1857 |
| Quidnick Reservoir Co | John J Kilton | | | 25 | 150 | 1857 |
| Quidnick Reservoir Co | Asa Sisson | al | | 25 | 169 | 1857 |
| Quidnick Reservoir Co | Abby Watson | | | 25 | 226 | 1858 |
| Quidnick Reservoir Co | Amelia Manchester | | | 25 | 233 | 1858 |
| Quidnick Reservoir Co | Caleb Carr | | | 25 | 234 | 1858 |
| Quidnick Reservoir Co | Daniel Nason | al | | 25 | 239 | 1858 |
| Quidnick Reservoir Co | Freeman Baker | | | 25 | 240 | 1858 |
| Quidnick Reservoir Co | Henry W Tiffany | al | | 25 | 242 | 1858 |
| Quidnick Reservoir Co | Burrill Shippee | al | | 25 | 244 | 1858 |
| Quidnick Reservoir Co | Thomas Tiffany | al | | 25 | 274 | 1859 |
| Quidnick Reservoir Co | Samuel Tarbox | | | 25 | 281 | 1859 |
| Quidnick Reservoir Co | William Rice | | | 25 | 383 | 1859 |
| Quidnick Reservoir Co | Emanuel Rice | | | 24 | 566 | 1860 |
| Quidnick Reservoir Co | Benjamin A Wightman | | | 25 | 315 | 1860 |
| Quidnick Reservoir Co | Ann Arnold | al | | 26 | 14 | 1860 |
| Quidnick Reservoir Co | Christopher W Arnold | | | 25 | 320 | 1861 |
| Quidnick Reservoir Co | Amelia Manchester | | | 25 | 326 | 1861 |
| Quidnick Reservoir Co | John J Kilton | | | 26 | 164 | 1862 |
| Quidnick Reservoir Co | Ebben W Sweet admr | | | 26 | 327 | 1863 |

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 67 of 210
PageID #: 2456

INST: 00002810
Bk: 2302 Pg: 897

INST: 00001308
Bk: 2155 Pg: 853

113
5

# GENERAL  INDEX

### TOWN OF COVENTRY, R. I.
#### FROM 1743 TO DECEMBER 31, 1925

| GRANTEE | GRANTOR | | VOL | PAGE | YEAR |
|---|---|---|---|---|---|
| Quidnick Reservoir Company | Lowry A Stone | ux | 26 | 573 | 1867 |
| Quidnick Reservoir Co | Frederick Burgess Admr | | 26 | 586 | 1867 |
| Quidnick Reservoir Co | Pardon S Peckham | | 26 | 591 | 1867 |
| Quidnick Reservoir Co | Patrick Fitzpatrick | ux | 26 | 592 | 1867 |
| Quidnick Reservoir Company | Stephen Andrew Jr | | 26 | 614 | 1867 |
| Quidnick Reservoir Co | Philip Johnson Gdn | al | 26 | 635 | 1867 |
| Quidnick Reservoir Co | Curnel O Havens | | 27 | 61 | 1867 |
| Quidnick Reservoir Co | Pardon S Peckham | | 27 | 62 | 1867 |
| Quidnick Reservoir Co | Sheldon Read | | 27 | 63 | 1867 |
| Quidnick Reservoir Co | Gilbert P Salsbury | | 27 | 73 | 1867 |
| Quidnick Reservoir Co | Jenkins J Johnson | | 27 | 148 | 1867 |
| Quidnick Reservoir Co | Philip Johnson | | 27 | 157 | 1867 |
| Quidnick Reservoir Co | Welcome R Arnold | | 26 | 665 | 1868 |
| Quidnick Reservoir Co | Benjamin B Congdon | ux | 27 | 206 | 1868 |
| Quidnick Reservoir Co | Benjamin B Congdon | ux | 27 | 207 | 1868 |
| Quidnick Reservoir Co | Jesse Matteson | al | 27 | 363 | 1868 |
| Quidnick Reservoir Co | Richard T Mitchell | | 27 | 267 | 1868 |
| Quidnick Reservoir Co | Lillis Goodspeed | | 27 | 280 | 1868 |
| Quidnick Reservoir Company | Town of Coventry | | 28 | 35 | 1869 |
| Quidnick Reservoir Co | Hannah Ralph | | 28 | 128 | 1870 |
| Quidnick Reservoir Co | Philip Sweet | | 28 | 159 | 1870 |
| Quidnick Reservoir Co | Philip A Sweet | | 28 | 160 | 1870 |
| Quidnick Reservoir Co | Perry Andrew | al | 27 | 743 | 1872 |
| Quidnick Reservoir Co | Joseph Read | | 27 | 749 | 1872 |
| Quidnick Reservoir Co | Willard Himes | | 27 | 750 | 1872 |
| Quidnick Reservoir Co | Benedict Lapham | | 28 | 306 | 1872 |
| Quidnick Reservoir Co | Benedict Lapham | | 28 | 307 | 1872 |
| Quidnick Reservoir Co | Cyrus Harris | al | 28 | 308 | 1872 |
| Quidnick Reservoir Co | Coventry Co | | 28 | 309 | 1872 |
| Quidnick Reservoir Co | Cyrus Harris | al | 28 | 390 | 1873 |
| Quidnick Reservoir Co | Coventry Co | | 28 | 391 | 1873 |
| Quidnick Reservoir Co | James Hill | | 28 | 404 | 1873 |
| Quidnick Reservoir Co | Benjamin Mitchell | | 28 | 416 | 1873 |
| Quidnick Reservoir Co | Benjamin S Briggs | | 29 | 36 | 1873 |

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002810
Bk: 2302 Pg: 898



INST: 00001308
BK: 2155 Ps: 854

113
6

GENERAL l-m-n-r-t INDEX

TOWN OF COVENTRY. R. I.
FROM 1743 TO DECEMBER 31, 1925

| GRANTEE | GRANTOR | | KIND | VOL | PAGE | YEAR |
|---|---|---|---|---|---|---|
| Quidnick Reservoir Co | Curnel O Havens | al | | 29 | 192 | 1874 |
| Quidnick Reservoir Co | Wanton J Matteson | | | 29 | 193 | 1874 |
| Quidnick Reservoir Co | Raymond P Goff | | | 29 | 202 | 1874 |
| Quidnick Reservoir Co | William H Slocum | | | 29 | 236 | 1875 |
| Quidnick Reservoir Co | Bartholomew Johnson | al | | 29 | 237 | 1875 |
| Quidnick Reservoir Co | Horatio N Cooke | al | | 29 | 252 | 1875 |
| Quidnick Reservoir Co | Daniel H Freeman | al | | 29 | 483 | 1877 |
| Quidnick Reservoir Co | Oliver O Colvin | | | 29 | 487 | 1877 |
| Quidnick Reservoir Co | Thomas G Arnold Widow of | al | | 30 | 45 | 1877 |
| Quidnick Reservoir Co | William A Stone | | Rel | 30 | 48 | 1877 |
| Quidnick Reservoir Co | Joseph Vaughn | al | | 29 | 611 | 1880 |
| Quidnick Reservoir Co | Allason Franklin | | | 29 | 614 | 1880 |
| Quidnick Reservoir Co | Allason Franklin | al | | 29 | 615 | 1880 |
| Quidnick Reservoir Co | Amos F Franklin | | | 29 | 616 | 1880 |
| Quidnick Reservoir Co | Allason Franklin | | | 29 | 617 | 1880 |
| Quidnick Reservoir Co | Mary A Bowen | al | | 29 | 618 | 1880 |
| Quidnick Reservoir Co | Richard Spencer | | | 29 | 624 | 1880 |
| Quidnick Reservoir Co | James Abbott | | | 29 | 625 | 1880 |
| Quidnick Reservoir Co | James M Wood | | | 29 | 635 | 1880 |
| Quidnick Reservoir Co | Henry C Whipple | | | 29 | 636 | 1880 |
| Quidnick Reservoir Co | William R Colvin | al | | 30 | 176 | 1880 |
| Quidnick Reservoir Co | Jeremiah Potter | al | | 30 | 180 | 1880 |
| Quidnick Reservoir Co | Mary Whitford | | | 30 | 193 | 1880 |
| Quidnick Reservoir Co | Charles N Matteson Gdn | | | 30 | 217 | 1880 |
| Quidnick Reservoir Co | John A Chace | al | | 29 | 670 | 1881 |
| Quidnick Reservoir Co | Oliver S Matteson | ux | | 29 | 672 | 1881 |
| Quidnick Reservoir Co | Henry Burlingame | al | | 30 | 298 | 1881 |
| Quidnick Reservoir Co | Jabez Relph | al | | 30 | 342 | 1882 |
| Quidnick Reservoir Co | Charles H Whitman | al | | 30 | 346 | 1882 |
| Quidnick Reservoir Co | James F Gavitt | | | 30 | 358 | 1882 |
| Quidnick Reservoir Co | William A N Matteson | | | 30 | 413 | 1882 |
| Quidnick Reservoir Co | Sheffield Wait | | | 32 | 217 | 1891 |
| Quidnick Reservoir Co | Stephen W Griffin | | | 34 | 561 | 1896 |
| Quidnick Reservoir Co | Henry C Whipple | | | 36 | 474 | 1908 |

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 69 of 210
PageID #: 2458

INST: 00002810
Bk: 2302 Pg: 899

INST: 00001308
Bk: 2155 Pg: 855

# GENERAL  INDEX

## TOWN OF COVENTRY, R. I.
### FROM 1743 TO DECEMBER 31, 1925

| GRANTEE | GRANTOR | KIND | VOL. | PAGE | YEAR |
|---|---|---|---|---|---|
| Quidnick Reservoir Co | John Hanson | ux | 36 | 475 | 1908 |
| Quidnick Reservoir Co | George H Wilcox | al Agnt | 39 | 56 | 1916 |
| Quidnick Reservoir Co | George B Wilcox | al Agnt | 39 | 57 | 1916 |
| | | | | | |
| Quidnic Baptist Society | Whipple A Arnold | al | 23 | 617 | 1853 |
| Quidnick Baptist Society Tr of | William R Warner | ux | 30 | 679 | 1886 |
| Quidnick Baptist Society | Eliza Essex | | 31 | 259 | 1886 |
| Quidnick Baptist Society | Oliver R Matteson | al | 31 | 260 | 1886 |
| Quidnick Baptist Society | Amy A Howard | al | 31 | 566 | 1889 |

TOWN OF COVENTRY, R.I.
Mar 03,2020 08:35A
JOANNE P AMITRANO, TOWN CLERK

TOWN OF COVENTRY, R.I.
Jun 21,2024 10:03A
JOANNE P AMITRANO, TOWN CLERK

TOWN OF COVENTRY, R.I.
Jun 21,2024 10:03A
JOANNE P AMITRANO, TOWN CLERK

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT B

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST:    00000321
Bk:    2293    Pg:    160

## EASEMENT BARGAIN AND SALE DEED

Soscia Holdings, LLC, a Rhode Island limited liability company, hereinafter called the GRANTOR, does hereby give, grant, bargain, sell, transfer, and convey WITHOUT COVENANTS AND WITHOUT CONSIDERATION unto Waterfront at Johnson's Pond, LLC, a Rhode Island limited liability company, hereinafter called the GRANTEE, the following right, title, and interest in the real property described below:

A perpetual and exclusive easement to exclude and/or to permit access and egress, by any means, to and from the "Private Flowage Access Area" and the "Common Area" when entering from "Private Pond-Adjacent" properties, all as described in "Exhibit A" and depicted as a "Land Condominium Unit" and "Common Area" in "Exhibit B", attached hereto and incorporated herein. This right, title, and interest was transferred and conveyed to GRANTOR as a portion of the entire right, title, and interest transferred and conveyed to GRANTOR from Quidnick Reservoir Company, as set forth in a deed recorded in the land evidence records of the Town of Coventry in the State of Rhode Island in Book 2155 at page 847 on March 3, 2020, at 8:33 a.m. This right, title, and interest constituted a portion of the real property was leased to the Town of Coventry pursuant to a lease agreement dated January 1, 2009, which lease is recorded in the foregoing land evidence records in Book 1847 at Page 471 and described therein as a certain parcel of land commonly referred to as "Johnson's Pond", as more fully delineated in "Schedule A" attached thereto. Said real property consists of and is comprised of flowage easements owned or possessed by Quidnick Reservoir Company and subsequently transferred to GRANTOR by the above-referenced deed recorded in land evidence records in Book 2155 at Page 847 on March 3, 2020, at 8:33 a.m., and also consists of fee simple land acquired by GRANTOR by virtue of the same deed, which fee simple land is herein described as the "Submerged Land".

GRANTOR hereby reserves unto itself, its successors and assigns, the exclusive and perpetual right to extract minerals and cultivate and remove aquatic plants from the Submerged Land described above.

Excepting and excluding herefrom any and all right, title, or interest owned by GRANTOR, its successors or assigns, in and to the "Common Area" and "Government Owned Flowage Access Area" of the "Pond". All as defined in "Exhibit A" and depicted in "Exhibit B".

Excepting and excluding herefrom are any and all right, title, or interest which GRANTOR owns or possesses to operate the Dam, which Dam is described in "Exhibit A", including but not limited to the right to control water levels in any portion of the Pond without approval of the GRANTEE or any other party.

Excepting and excluding herefrom any and all right, title, or interest which GRANTOR owns or possesses to construct, modify, maintain, or demolish the Dam, without approval of the GRANTEE or any other party, and the right to maintain the Dam in any condition satisfactory to GRANTOR.

Excepting and excluding herefrom all other rights, title, and interests in and to the flowage easements and Submerged Land transferred by Quidnick Reservoir Company to GRANTOR by the above referenced deed recorded in land evidence records in Book 2155 at page 847 on March 3, 2020 at 8:33 a.m.

Excepting and excluding herefrom those certain rights previously bargained, sold, transferred, and conveyed by instruments recorded in the land evidence records in the Town of Coventry, State of Rhode Island in Book 2293 at Page 108 AND in Book 2293 at Page 120.

Excepting and excluding herefrom those certain rights previously bargained, sold, transferred, and conveyed by instruments recorded in the land evidence records in the Town of Coventry, State of Rhode Island in Book 2293 at Page 134 AND in Book 2293 at Page 146.

Excepting and excluding herefrom any and all right, title, and interest in any claims asserted by GRANTOR in that certain Civil Action commenced in the United States District Court for the District of Rhode Island and referenced as Case # 1:22-cv-00266-LM-AKJ, including, but not limited to, any claims made against the State of Rhode Island and any other party for inverse condemnation together with any remedies to which GRANTOR is entitled.

Excepting and excluding herefrom any and all right, title, and interest in any claims asserted by GRANTOR in that certain Civil Action commenced in the Rhode Island Superior Court referenced as Case # KC-2020-0769, together with any remedies to which GRANTOR is entitled.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 72 of 210
PageID #: 2461

INST: 00000321
Bk: 2293 Pg: 161

Excepting and excluding herefrom any and all right, title, and interest in any claims asserted by GRANTOR in that certain Civil Action commenced in the Rhode Island Superior Court referenced as Case #KC-2021-0960, together with any remedies to which GRANTOR is entitled.

This conveyance is subject to that certain "Mortgage, Security Agreement and Assignment of Rents and Leases" as recorded in the land evidence records of the Town of Coventry in the State of Rhode Island in Book 2155 at page 856 from GRANTOR as "mortgagor" to Quidnick Reservoir Company as "mortgagee".

NO STAMPS ARE REQUIRED.

WITNESS my hand and seal this 22nd day of January, 2024

Soscia Holdings, LLC

BY: _____
Douglas Soscia, Member

Grantee Address:
6 Silver Maple Dr.
Coventry, RI 02816

STATE of RHODE ISLAND
COUNTY of KENT

In Warwick on the 22nd day of January, 2024, before me personally appeared Douglas Soscia as a duly authorized Member of Soscia Holdings, LLC, to me known and known by me to be the person executing the forgoing instrument and he acknowledged said instrument by him executed to be his free act in deed and the free act in deed of Soscia Holdings, LLC.

_____
NOTARY PUBLIC

RICHARD E. FLEURY #50635
Notary Public, State of Rhode Island
My Commission Expires November 13, 2026

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 73 of 210
PageID #: 2462

INST: 00000321
Bk: 2293 Pg: 162

## "EXHIBIT A"

## DEFINITIONS

"Common Area"- The area that begins at the end of the "twenty foot" area designated as "Private Flowage Access Area" and "Government Owned Adjacent Access Area". All as more fully depicted as the "Common Area" in "Exhibit B" attached hereto and incorporated herein.

"Dam"- The Flat River Reservoir dam #167

"Government Owned Adjacent Access Area"- The first twenty feet, measured parallel from the high water mark of the pond toward the center of the Pond. The "Government Owned Adjacent Access Area" abuts any right, title, or interest in property that is owned by any Government or public entity. All as more fully delineated in "Exhibit B" attached hereto and incorporated herein.

"Government Owned Pond-Adjacent"- Property that is owned by the Government or the public that directly abuts the Shoreline, or property that abuts the Shoreline that is Government or publicly owned and encumbered by a flowage easement.

"Government Owned Pond-Adjacent Shoreline"- The high water mark adjacent to Government or publicly owned land. All as more fully delineated in "Exhibit B", attached hereto and incorporated herein.

"Pond"- That certain pond of water that was leased to the Town of Coventry pursuant to a lease agreement dated January 1, 2009, and which lease is recorded in land evidence records in Book 1847 at page 471 and described therein as a certain parcel of land commonly referred to as "Johnson's Pond" as more fully delineated in "Schedule A" attached thereto. all as more fully delineated in "Exhibit B" attached hereto and incorporated herein.

"Private Flowage Access Area"- The first twenty feet, measured parallel from the high water mark of the Pond toward the center of the Pond. The "Private Flowage Access Area" abuts any right, title, or interest in property that is owned by any individuals or other entity other than Government or publicly owned property. All as more fully delineated in "Exhibit B" attached hereto and incorporated herein.

"Private Pond-Adjacent"- Private property that directly abuts the submerged land or property that is encumbered by a flowage easement.

"Recreational Purposes"- Includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, boat storage apparatus, wharfage, boat launching apparatus, mooring, camping, picnicking, hiking, horseback riding, nature study, water skiing, water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, and all other recreational purposes. "Recreational Purposes" DOES NOT INCLUDE the right to exclude or permit motorized boats or personal watercraft or any variation thereof, or the right to construct, maintain, or use and structures.

"Shoreline"- The high water mark which is measured at 16' above the "Washington Dam" or 217' 8" above sea level. All as more fully delineated in "Exhibit B", attached hereto and incorporated herein.

"Structures"- Structures encompass a variety of built elements designed to enhance enjoyment and accessibility of the Pond. These structures can vary widely in form and function, catering to different recreational activities. Some common examples include:

> Docks and Piers: Used for boating, fishing, and swimming. Docks are typically smaller and attached to the shore, while piers extend further into the water.

> Marinas: Complexes with docks and moorings for boats, often providing services like fuel, repairs, and storage.

> Jetties and Breakwaters: Structures extending into the water to protect shorelines from erosion, also used for fishing and sightseeing.

> Boat Ramps/Launches: Designed for putting boats into the water and retrieving them.

> Boat Lifts: Designed for elevating watercraft over the water.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Floating Platforms: Used for swimming, diving, or as a rest point for water sports like kayaking or paddleboarding.

Seawalls and Promenades: Built along the edge of the Pond, providing a walking path and protecting against erosion.

Swimming Pools: Artificial pools designed for recreational swimming, diving, and other water sports.

INST: 00000321
Bk: 2293 Pg: 163

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

NOTE
BASEMAP IS TAKEN FROM THE TOWN OF COVENTRY GIS AND PROVIDED BY THE CLIENT

Coventry

Location Map
Not To Scale

Sheet 5
Sheet 6

## JOHNSON'S POND CONDOMINIUM ASSOCIATION

Proposed Land Condominium Layout
Sheet Index

Sheet 7

Sheet 8

### Legend

| | |
|---|---|
| 100.29 | PROPERTY LINE BY TOWN GIS MAP |
| | SHEET MATCH LINES |
| | APPROXIMATE FLOWAGE LINE AT PROPOSED LAND CONDOMINIUM UNIT |
| | LIMIT OF PROPOSED LAND CONDOMINIUM UNIT |
| | GIS WATERBODY |
| (A-1) | PROPOSED CONDOMINIUM UNIT IDENTIFIER SEE CHART FOR COLOR SCHEME |

Flowage Line-Limit Of Private Ownership
Limit Of Proposed Land Condominium Unit

### CERTIFICATION

THIS SURVEY HAS BEEN CONDUCTED AND THE PLAN HAS BEEN PREPARED PURSUANT TO 435-RICR-00-00-1.9 OF THE RULES AND REGULATIONS ADOPTED BY THE RHODE ISLAND STATE BOARD OF REGISTRATION FOR PROFESSIONAL LAND SURVEYORS ON NOVEMBER 25, 2015 AS FOLLOWS

TYPE OF BOUNDARY SURVEY
NOT A BOUNDARY SURVEY

MEASUREMENT SPECIFICATION
N/A

OTHER TYPE OF SURVEY
COMPILATION PLAN                                IV

THIS COMPILATION PLAN HAS BEEN PREPARED FROM SOURCES OF INFORMATION AND DATA WHOSE POSITIONAL ACCURACY AND RELIABILITY HAS NOT BEEN VERIFIED  THE PROPERTY LINES DEPICTED HEREON DO NOT REPRESENT A BOUNDARY OPINION  AND OTHER INFORMATION DEPICTED IS SUBJECT TO SUCH CHANGES AS AN AUTHORITATIVE FIELD SURVEY MAY DISCLOSE

THE PURPOSE FOR THE CONDUCT OF THIS SURVEY AND FOR THE PREPARATION OF THIS PLAN IS TO DELINEATE A PROPOSAL FOR CREATING LAND CONDOMINIUM UNITS ALONG THE FLOWAGE LINES OF JOHNSON'S POND  THIS PLAN IS A COMPILATION PLAN ONLY AND DOES NOT PURPORT TO SHOW ANY CHANGE IN BOUNDARIES OR LAND OWNERSHIP

BY
MARK D. BOYER PLS #1388
BOYER ASSOCIATES CGAA-317

### INDEX

| COLOR REFERENCE | ASSESSOR'S PLAT # | CONDOMINIUM PLAT | CONDOMINIUM UNITS |
|---|---|---|---|
| | 323 | "A" | (A1-A47) 47 Units |
| | 324 | "B" | (B1-B49) 49 Units |
| | 316 | "C" | (C1-C92) 92 Units |
| | 57 | "D" | (D1-D29) 29 Units |
| | 58 | "E" | (E1-E13) 13 Units |
| | 59 | "F" | (F1-F1) 1 Unit |
| | 49 | "G" | (G1-G42) 42 Units |
| | 50 | "H" | (H1-H21) 21 Units |
| | 41 | "I" | (I1-I5) 5 Units |
| | 42 | "J" | (J1-J25) 25 Units |
| | 33 | "K" | (K1-K4) 4 Units |
| | 34 | "L" | (L1-L48) 48 Units |
| | 25 | "M" | (M1-M14) 14 Units |
| | 26 | "N" | (N1-N45) 45 Units |
| | 17 | "O" | (O1-O34) 34 Units |
| | 18 | "P" | (P1-P8) 8 Units |
| | 9 | "Q" | (Q1-Q32) 32 Units |
| | 10 | "R" | (R1-R3) 13 Units |
| | 376 | "S" | (S1-S15) 15 Units |
| | 1 | "T" | (T1-T1) 1 Unit |
| | 2 | "U" | (U1-U1) 1 Unit |
| | 312 | "V" | (V1-V1) 1 Unit |

BEING PORTIONS OF ASSESSOR'S PLAT NUMBERS
1 2 9 10 17 18 25 26 33 34 41 42 49 50 57 58 59 316 323 324 376
PROPOSED LAND CONDOMINIUM LAYOUT
Johnson's Pond
Condominium Association
6 Silver Maple Drive
Coventry, Rhode Island

Drawn By: WDB     Date: May 25, 2020     BY   DATE
Checked By: WDB
Scale: 1" = N/A     REVISIONS
REVISION

© COPYRIGHT 2020

BOYER ASSOCIATES
1071 MAIN STREET
WEST WARWICK, RI 02893
TEL (401)821-8872  FAX (401)826-1993

Sheet 1
of 8 sheets

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 76 of 210
PageID #: 2465



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 77 of 210
PageID #: 2466

INST: 00000321
Bk: 2293 Pg: 166

PROPOSED LAND CONDOMINIUM LAYOUT
*Johnson's Pond Condominium Association*
6 Silver Maple Drive
Coventry, Rhode Island

BOYER ASSOCIATES
1071 MAIN STREET
WEST WARWICK, RI 02893
TEL (401)821-8872 FAX (401)826-1993

Sheet 3 of 8 sheets

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

NOTE
BASEMAP IS TAKEN FROM THE TOWN OF COVENTRY GIS AND PROVIDED BY THE CLIENT

ACRES OF
PINE ROAD

ROUTE 167

JOHNSON'S POND
CONDOMINIUM ASSOCIATION
~COMMON AREA~

JOHNSON'S POND
CONDOMINIUM ASSOCIATION
~COMMON AREA~

JOHNSON'S POND
CONDOMINIUM ASSOCIATION
~COMMON AREA~

## Legend

| | |
|---|---|
| | PROPERTY LINE BY TOWN GIS MAP |
| | SHEET MATCH LINES |
| | APPROXIMATE FLOWAGE LINE AT PROPOSED LAND CONDOMINIUM UNIT |
| | LIMIT OF PROPOSED LAND CONDOMINIUM UNIT |
| C-1 | PROPOSED CONDOMINIUM UNIT IDENTIFIER SEE CHART FOR COLOR SCHEME |

SHIPPEE HILL PLAT ROAD

RACOON RUN RACOON FARM

### INDEX

See Color Chart Below

Flowage Line–Limit Of Private Ownership
Limit Of Proposed Land Condominium Unit

| COLOR REFERENCE | ASSESSOR'S PLAT # | CONDOMINIUM PLAT | CONDOMINIUM UNITS |
|---|---|---|---|
| | 323 | "A" | (A1-A47) 47 Units |
| | 32A | "B" | (B1-B49) 49 Units |
| | 38 | "C" | (C1-C92) 92 Units |
| | 57 | "D" | (D1-D29) 29 Units |
| | 58 | "E" | (E1-E13) 13 Units |
| | 59 | "F" | (F1-F7) 7 Units |
| | 49 | "G" | (G1-G42) 42 Units |
| | 58 | "H" | (H1-H21) 21 Units |
| | 41 | "I" | (I1-I5) 5 Units |
| | 48 | "J" | (J1-J25) 25 Units |
| | 39 | "K" | (K1-K4) 4 Units |
| | 34 | "L" | (L1-L48) 48 Units |
| | 25 | "M" | (M1-M14) 14 Units |
| | 26 | "N" | (N1-N45) 45 Units |
| | 17 | "O" | (O1-O34) 34 Units |
| | 9 | "P" | (P1-P8) 8 Units |
| | 10 | "Q" | (Q1-Q32) 32 Units |
| | 30B | "R" | (R1-R13) 13 Units |
| | | "S" | (S1-S15) 15 Units |
| | | "T" | (T1-T3) 1 Unit |
| | 2 | "U" | (U1-U1) 1 Unit |
| | 38 | "V" | (V1-V1) 1 Unit |

## CERTIFICATION

THIS SURVEY HAS BEEN CONDUCTED AND THE PLAN HAS BEEN PREPARED PURSUANT TO
436-RICR-00-1 9 OF THE RULES AND REGULATIONS ADOPTED BY THE RHODE ISLAND STATE
BOARD OF REGISTRATION FOR PROFESSIONAL LAND SURVEYORS ON NOVEMBER 15, 2011 AS
FOLLOWS

TYPE OF BOUNDARY SURVEY
NOT A BOUNDARY SURVEY

MEASUREMENT SPECIFICATION
N A

OTHER TYPE OF SURVEY
COMPILATION PLAN

IV

THIS COMPILATION PLAN HAS BEEN PREPARED FROM SOURCES OF INFORMATION AND DATA WHOSE
POSITIONAL ACCURACY AND RELIABILITY HAS NOT BEEN VERIFIED  THE PROPERTY LINES DEPICTED
HEREON DO NOT REPRESENT A BOUNDARY OPINION AND OTHER INFORMATION DEPICTED IS SUBJECT
TO SUCH CHANGES AS AN AUTHORITATIVE FIELD SURVEY MAY DISCLOSE

THE PURPOSE FOR THE CONDUCT OF THIS SURVEY AND FOR THE PREPARATION OF THIS
PLAN IS TO DELINEATE A PROPOSAL FOR CREATING LAND CONDOMINIUM UNITS ALONG
THE FLOWAGE LINES OF JOHNSON'S POND  THIS PLAN IS A COMPILATION PLAN ONLY AND
DOES NOT PURPORT TO SHOW ANY CHANGE IN BOUNDARIES OR LAND OWNERSHIP

BY
MARK D. BOYER PLS #1895
BOYER ASSOCIATES COAA 317

RACOON RUN ROAD

Graphic Scale
0   200   400   600
1" = 200'

## BOYER ASSOCIATES

1071 MAIN STREET
WEST WARWICK, RI 02893
TEL (401)821-8872 FAX (401)826-1993

© COPYRIGHT 2020
THIS DRAWING IS THE PROPERTY
OF BOYER ASSOCIATES ITS USE
OR REPRODUCTION WITHOUT
THE EXPRESS WRITTEN CONSENT
FROM BOYER ASSOCIATES
IS PROHIBITED

PROPOSED LAND CONDOMINIUM LAYOUT

Johnson's Pond
Condominium Association

6 Silver Maple Drive
Coventry, Rhode Island

| | |
|---|---|
| Drawn By: MDB | Date: May 25, 2020 |
| Checked By: MHB | Scale: 1" = 200' |

REVISIONS

Sheet 4 of 8 sheets



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



PROPOSED LAND CONDOMINIUM LAYOUT

*Johnson's Pond*
*Condominium Association*

6 Silver Maple Drive
Coventry, Rhode Island

BOYER ASSOCIATES

1071 MAIN STREET
WEST WARWICK, RI 02893

TEL (401)821-8872 FAX (401)826-1993

© COPYRIGHT 2020
THIS DRAWING IS THE PROPERTY
OF BOYER ASSOCIATES, ANY USE
OF REPRODUCTION WITHOUT THE
EXPRESSED WRITTEN CONSENT
FROM BOYER ASSOCIATES
IS PROHIBITED

Sheet 7 of 8 sheets

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 81 of 210
PageID #: 2470

INST# 00000321
BK# 2293 Pg: 170



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:25 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM   Document 51-12   Filed 02/05/26   Page 82 of 210   PageID #: 2471

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT C

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

## EXECUTIVE SESSION



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

https://coventryri.civicweb.net/filepro/document/177077/12-19-23%2...

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 86 of 210
PageID #: 2475

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

https://coventryri.civicweb.net/filepro/document/177077/12-19-23%2...

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 87 of 210
PageID #: 2476

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

https://coventryri.civicweb.net/filepro/document/177077/12-19-23%2...

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 88 of 210
PageID #: 2477

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



pg. 1

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT D

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 91 of 210
PageID #: 2480

**THE TOWN OF COVENTRY**

# RESOLUTION OF THE TOWN COUNCIL

**"Affirming the need for a Coventry Redevelopment Agency
and Appointing Members to the Coventry Redevelopment Agency"**

## Resolution No. 2024-4

*Passed:*  4-0

_____

**Hillary V. Lima,** *Council President*

**WHEREAS,** in the Town of Coventry,

- Pursuant to R.I. Gen. Laws § 45-31-9, there is created in each community a redevelopment agency to be known as the redevelopment agency of the community; and

- In accordance with R.I. Gen. Laws § 45-31-10, the agency of any community shall not transact any business or exercise any powers under chapters 31 through 33, inclusive, of title 45 of the General Laws unless and until the legislative body of the community shall, by resolution, declare that there is a need for a redevelopment agency to function in that community; and

- On or about September 10, 2007, the Coventry Town Council passed and adopted Resolution No. 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 declaring the need for a Coventry Redevelopment Agency; and

- The Coventry Town Council declares and affirms that there is a current and continuing need for a Coventry Redevelopment Agency pursuant to R.I. Gen. Laws § 45-31-10; and

- On or about October 22, 2007, the Coventry Town Council passed and adopted Resolution 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 appointing five (5) resident electors of the Town as members of the Coventry Redevelopment Agency, with five (5) year staggered terms of office; and

- The terms of office of the members of the Coventry Redevelopment Agency have subsequently expired; and

- R.I. Gen. Laws § 45-31-12 requires that the mayor or president of the Town Council shall appoint five (5) resident electors of the community as members of the redevelopment agency, subject to approval of the Town Council; and

- Pursuant to R.I. Gen. Laws § 45-31-12, no member of the agency may be an elected officer or an employee of the community; and

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

- Pursuant to R.I. Gen. Laws § 36-1-1 et seq., all resident electors appointed as members of the Coventry Redevelopment Authority as well as any employee of the authority must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable, responsive, avoid the appearance of impropriety, and not use their position for private gain or advantage; and such members are otherwise subject to the requirements of R.I. Gen. Laws § 36-1-1 et seq., as amended.

- The Town of Coventry expects to undertake redevelopment projects pursuant to chapters 31 through 33, inclusive, of Title 45 of the Rhode Island General Laws, which requires appointment of new members to a redevelopment agency;

**NOW THEREFORE, BE IT RESOLVED THAT** the Honorable Town Council:

1. Recognizes a continuing need for a redevelopment agency to function in the Town of Coventry; and

2. This resolution shall take effect upon passage.

3. The Town Clerk is directed to certify the vote on this resolution, to certify that it was adopted by the Town Council at the Town Council Meeting held on January 23, 2023, to transmit such certifications at the direction of the Council President to the Resident Elector Members/Appointees, and to transmit such certification any third party in order to effectuate the business of the Coventry Redevelopment Agency.

Sponsored by:  Council President Hillary V. Lima and Council vice-President James LeBlanc

Resolution approved to as to form and substance:

_____

Stephen J. Angell, Esq. – Town Solicitor

Passed and adopted this 23rd day of January

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT E

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

## THE TOWN OF COVENTRY

# RESOLUTION OF THE TOWN COUNCIL

**Appointing Members to the Coventry Redevelopment Agency**

## Resolution No. 2024-07

*Passed:* 4-0

_____

**Hillary V. Lima, *Council President***

**WHEREAS,** in the Town of Coventry,

- Pursuant to R.I. Gen. Laws § 45-31-9, there is created in each community a redevelopment agency to be known as the redevelopment agency of the community; and

- In accordance with R.I. Gen. Laws § 45-31-10, the agency of any community shall not transact any business or exercise any powers under chapters 31 through 33, inclusive, of title 45 of the General Laws unless and until the legislative body of the community shall, by resolution, declare that there is a need for a redevelopment agency to function in that community; and

- On or about September 10, 2007, the Coventry Town Council passed and adopted Resolution No. 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 declaring the need for a Coventry Redevelopment Agency; and

- The Coventry Town Council declares and affirms that there is a current and continuing need for a Coventry Redevelopment Agency pursuant to R.I. Gen. Laws § 45-31-10; and

- On or about October 22, 2007, the Coventry Town Council passed and adopted Resolution 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 appointing five (5) resident electors of the Town as members of the Coventry Redevelopment Agency, with five (5) year staggered terms of office; and

- The terms of office of the members of the Coventry Redevelopment Agency have subsequently expired; and

- R.I. Gen. Laws § 45-31-12 requires that the mayor or president of the Town Council shall appoint five (5) resident electors of the community as members of the redevelopment agency, subject to approval of the Town Council; and

- Pursuant to R.I. Gen. Laws § 45-31-12, no member of the agency may be an elected officer or an employee of the community; and

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

- Pursuant to R.I. Gen. Laws § 36-1-1 et seq., all resident electors appointed as members of the Coventry Redevelopment Authority as well as any employee of the authority must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable, responsive, avoid the appearance of impropriety, and not use their position for private gain or advantage; and such members are otherwise subject to the requirements of R.I. Gen. Laws § 36-1-1 et seq., as amended.

- The Town of Coventry expects to undertake redevelopment projects pursuant to chapters 31 through 33, inclusive, of Title 45 of the Rhode Island General Laws, which requires appointment of new members to a redevelopment agency;

**NOW THEREFORE, BE IT RESOLVED THAT** the Honorable Town Council:

1. Approves the following resident electors of the Town appointed by the President of the Town Council, as members of the Coventry Redevelopment Agency, with five (5) year terms of office:

| Resident Elector Members | Term |
| --- | --- |
| Appointee 1 – Robert Brennan | 5 Year |
| Appointee 2 – Harold B. Larson | 5 Year |
| Appointee 3 – Chris Schuler | 5 Year |
| Appointee 4 – Jim Tarro | 5 Year |
| Appointee 5 – Caitlin Grenier | 5 Year |

2. This resolution shall take effect upon passage.

3. The Town Clerk is directed to certify the vote on this resolution, to certify that it was adopted by the Town Council at the Town Council Meeting held on January 23, 2023, to transmit such certifications at the direction of the Council President to the Resident Elector Members/Appointees, and to transmit such certification any third party in order to effectuate the business of the Coventry Redevelopment Agency.

PASSESD and ADOPTED THIS 15th day of February 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT F

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**THE TOWN OF COVENTRY**

# RESOLUTION OF THE TOWN COUNCIL

**"Making plain the Town Council's intentions and commitment to acquire, maintain and redevelop Flat River Reservoir ("Johnson's Pond"), its dam, dam structures and land to protect the environment, to ensure public safety, and to provide recreational access to the public"**

## Resolution No. 2024-37

*Passed:* 5—0

*Hillary V. Lima, Council President*

**WHEREAS,** in the Town of Coventry,

- In the late 1800's, the Quidnick Reservoir Company ("Quidnick") constructed a dam on the south branch of the Pawtuxet River in Coventry;

- The original purpose of the dam – known as the Flat River Reservoir Dam ("Dam") – was to create a reservoir of water for reliable power generation and downstream use by Quidnick's industrial members;

- The water impounded by the Dam – which normally covers an area of about 950 acres – is commonly referred to as Johnson's Pond ("Pond");

- The mills of Quidnick's members having been shuttered long ago, in recent times the Pond has been used for recreational purposes and the impoundment and the release of its waters support wetlands as well as wetland-dependent plant and animal species;

- Beginning in April 1974, Quidnick and the Town entered into a series of agreements concerning the repair and maintenance of the Dam and the maintenance of the water levels in the Pond to maximize the Pond's recreational use during the months of May through September of each year;

- In January 2009, Quidnick and the Town entered into the last agreement between them;

- Pursuant to the January 2009 Agreement, the Town leased the Pond and a vacant 80-acre parcel of land for public recreational use through March 31, 2024 ("Lease");

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

- Among its provisions, the Lease obligated Quidnick to maintain the water level in the Pond at specifically delineated elevations ("water level" requirements);

- During the prime recreational season of May through September, the Lease required Quidnick to use its best efforts to regulate the Dam's outlet gates to maintain the water level in the Pond at the Dam's spillway level;

- When the water in the Pond is maintained at the Dam's spillway level the Pond is full, which is to say that it is at a "normal pool;"

- The State of Rhode Island Department of Environmental Management ("RIDEM") has determined that the streamflow and water level requirements specified in the Lease correspond to the Dam and Pond's historic water releases and levels;

- In March 2020, Soscia Holdings, LLC ("Soscia") acquired Quidnick's interests in the Dam and Pond and Quidnick assigned its rights and interests in the Lease with the Town to Soscia;

- Since Soscia's acquisition of the Dam and Pond in March 2020, the Town, RIDEM, and the public have been involved in numerous disputes with Soscia, some of which resulted in litigation in state and federal courts, over Soscia's operation and management of the Dam and Pond as well as numerous legal disputes over the laws and regulations applicable to Dam safety and the maintenance of the Pond's water levels and streamflows;

- Soscia's conduct, action, and positions on its interests and rights in connection with the ownership of the Dam and Pond (1) have departed from the historical operation and management of the Dam and Pond (2) have no relationship to conscientious environmental stewardship; (3) bear no relationship to best practices dam and dam structure management; and (4) have resulted in or threatened public interests protected by laws and regulations concerning dam safety, dam and pond regulation, wetlands and environmental protection, and local ordinances;

- Soscia's conduct, action, and positions on its interests and rights in connection with the ownership of the Dam and Pond have departed from the historical operation and management of the Dam and Pond and have caused or threatened to limit or deprive the public of access to and use of the Pond;

- Soscia's conduct and actions on or after April 1, 2024, has caused the dam to be deemed "unsafe" by RIDEM causing RIDEM to issue a Cease and Desist to Soscia as well as a subsequent Immediate Compliance Order dated April 3, 2024;

- Pursuant to its Home Rule Charter, which charter was authorized and approved by the General Assembly by P.L. 1973, Ch. 4, Sec. 2 on November 7, 1972, the Town may acquire property within or without its corporate limits for town purposes, in fee or any lesser interest or estate, by

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

purchase, lease, gift, devise, and by condemnation within the town, for public use and may hold, manage and control, and may sell, lease, and convey such property as its interests may require;

- Pursuant to the Town's Home Rule Charter, the Town Council is vested with the power to adopt, amend, and repeal ordinances for the preservation of the public peace, health, safety, welfare, and for the protection of persons and property;

- Pursuant to the Town's Home Rule Charter, the Town Council is vested with the power to enact, reenact, amend or repeal ordinances and resolutions for the condemnation of land located within the town as permitted by the laws of this state;

- For public use of the Pond (including, but not limited to public access, boat ramps, parking, facilities, and the like for public recreation and use), the Town Council intends and desires to acquire by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by Soscia from the Quidnick Reservoir Company;

- The Town Council intends and desires for public use of the Pond (including, but not limited to public access, boat ramps, parking, facilities, and the like for public recreation and use) to acquire by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, in order to put the Pond in the public domain for public use, where it belongs;

**NOW THEREFORE, BE IT RESOLVED THAT** the Honorable Town Council:

1. The Town Council shall consider the approval and adoption of an Ordinance to acquire, for public use, by purchase or condemnation the Dam, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by Soscia from the Quidnick Reservoir Company.

Sponsored by: Council Vice-President James LeBlanc

Resolution approved to as to form and substance:

Stephen J. Angell, Esq. – Town Solicitor

PASSED AND ADOPTED THIS 2nd day of May 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT G

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**THE TOWN OF COVENTRY**

---

# ORDINANCE OF THE TOWN COUNCIL

## IN AMENDMENT OF THE TOWN OF COVENTRY CODE OF ORDINANCES, PART II – GENERAL LEGISLATION, 2005

# Ordinance No. 2024-03

*Passed:* 4-0

_____
Hillary V. Lima, *Council President*

*Approved:*

_____
Daniel O. Parrillo, *Town Manager*

*It is ordained by the Town of Coventry, Town Council as follows:*

**Section 1.** The Town of Coventry Code of Ordinance, Part II General Legislation is hereby amended by adding the following Chapter and Sections:

### Chapter 187 – PONDS, DAMS, DAM STRUCTURES, AND RECREATIONAL USE

### Article I – Flat River Reservoir a/k/a Johnson's Pond

### Sec. 187-1 Findings, Purpose and Intent

The Town Council finds that private ownership of the dam and pond at Flat River Reservoir (collectively, "Johnson's Pond" or "Pond") is untenable. Recent events have demonstrated that such ownership is inconsistent with and does not promote the preservation of public use, peace, health, safety and welfare. The Town Council finds further that such private ownership has been detrimental to the best interests of the environment, public safety, and public use of and benefit from recreational access to the Pond and the quality of life in the Town of Coventry. Accordingly, the purpose of this Ordinance is to acquire, maintain and redevelop Johnson's Pond, its dam, dam structures and associated property to protect the environment, ensure public safety, and provide recreational facilities for and access to and public use of the Pond.

### Sec. 187-2 Acquisition

The Town shall acquire by purchase or condemnation the dam, dam structures, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interests acquired by Soscia Holdings, LLC from the Quidnick Reservoir Company. Condemnation, if necessary, is authorized by the Town's Home Rule Charter, which was authorized and approved by the Rhode Island General Assembly on November 7, 1972 (P.L. 1973, Ch. 4, Sec. 2).

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

If the Town's efforts to purchase the Pond are of no avail, then the Solicitor is directed to take all necessary action to make the acquisition by a condemnation of the Pond, dam, dam structures and associated property at Johnson's Pond, in order to put the Pond and its associated property in the public domain for public use and redevelopment.

### Sec. 187-3 Ownership, Operation and Maintenance

Upon acquisition, the Town shall take immediate action to:

- Register with the Rhode Island Department of Environmental Management ("RIDEM") as the owner of the dam;

- Extend its insurance coverage with respect to the dam, dam structures, Pond;

- Maintain the Pond's water level, dam and dam structures in accordance with Rhode Island General Laws as well as all regulations promulgated by RIDEM;

- Bring the dam and its structures into compliance as set forth in *OCI-DAMS-23-28* issued by RIDEM on April 3, 2024;

- Perform any other necessary and appropriate acts in connection with the ownership, operation, and maintenance of the Pond, dam, dam structures and associated property at Johnson's Pond.

### Sec. 187-4 Redevelopment

The Town shall create a public benefit for Town residents by redeveloping the Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation and use.

### Sec. 187-5 Transfer

The Town may transfer any or all of its rights to own, operate, maintain and redevelop the Pond, property, dam and dam structures to any agency of the Town whose membership is appointed by the Town Council.

**Section 2.** This ordinance shall take effect upon its passage and final adoption.

Positive Endorsement:                    Negative Endorsement: (Attach reasons)

_____ 5/9/24          _____
Town Solicitor          Date             Town Solicitor          Date

Introduced by/Pursuant to:    Council Vice-President James LeBlanc

Referred to/for:              Public Hearing on May 14, 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT H

Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**Town Council Meeting**
**June 20, 2024**

**TOWN COUNCIL – 6:31 p.m.**

**Present**:  Hillary Lima, James LeBlanc, Kimberly Shockley, Town Manager Daniel Parrillo, Town Solicitor Stephen Angell and Town Clerk Joanne Amitrano.

**Absent:**  Jonathan Pascua and Alisa Capaldi

Town Council Roll Call
Pledge of Allegiance
Emergency Evacuation Plan

**MEETING MINUTES FROM PRIOR MEETINGS (VOTE(S) MAY BE TAKEN)**

**April 09, 2024 Open Session**
**April 09, 2024 Executive Session**
**April 23, 2024 Open Session**
**April 23, 2024 Executive Session**

*A MOTION WAS MADE BY Vice President LeBlanc to table the meeting minutes of April 09, 2024 Executive Session. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
*President Lima                              Aye*
*Vice President LeBlanc                 Aye*
*Councilmember Shockley            Aye*
*All voted aye. Motion Passes*

President Lima asked that LeBlanc be spelled as one word instead of two in the April 09, 2024 minutes. She also noted the wording resolution and amendments should be transposed in the April 09, 2024 minutes. She commented on punctuation error, and an incorrect name spelling in the April 23, 2024 Open Session minutes.

*A MOTION WAS MADE BY President Lima to make suggested amendments to the minutes of April 09, 2024 Open Session and April 23, 2024 Open Session and Executive Session. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:

6-30-2024-TCM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

> *President Lima*            *Aye*
> *Vice President LeBlanc*      *Aye*
> *Councilmember Shockley*     *Aye*
> *All voted aye. Motion Passes*

*A MOTION WAS MADE BY* *Vice President LeBlanc to approve the amended meeting minutes of April 09, 2024 Open Session, April 23, 2024 Open Session, and meeting minutes of April 23, 2024 Executive Session. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
> *President Lima*            *Aye*
> *Vice President LeBlanc*      *Aye*
> *Councilmember Shockley*     *Aye*
> *All voted aye. Motion Passes*

## PUBLIC COMMENT ON DOCKETED ITEMS ONLY

No public comment was made.

## LICENSES (VOTE(S) MAY BE TAKEN)

## New Victualling License – Twin Coast Tropicals, Inc. dba Tropical Smoothie Café
## 2370 New London Turnpike, Coventry, RI
## Per RIGL 5-24-1

*A MOTION WAS MADE BY* *Vice President LeBlanc to approve the New Victualling License – Twin Coast Tropicals, Inc. dba Tropical Smoothie Café. The motion was seconded by Councilmember Shockley.*

Christopher Baker of Twin Coast Tropicals, Inc. commented on their business. Town Clerk Amitrano commented they need sewer approval and proof that the bill is in the owner's name before approval.

*A MOTION WAS MADE BY* *Vice President LeBlanc to approve the New Victualling License – Twin Coast Tropicals, Inc. dba Tropical Smoothie Café, subject to proof of the sewer bill being transferred to the applicant. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
> *President Lima*            *Aye*
> *Vice President LeBlanc*      *Aye*
> *Councilmember Shockley*     *Aye*
> *All voted aye. Motion Passes*

## New 60 Day Hawker License – American Promotional Events Inc., dba TNT Fireworks
## To be located at Walmart parking lot, 650 Centre of New England, Coventry, RI

6-20-2024 TC Minutes-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

https://coventryri.civicweb.net/filepro/document/183960/TC062024.docx

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 106 of 210
PageID #: 2495

**June 20, 2024 through July 5, 2024**
**Per Coventry Code 183-4**

*A MOTION WAS MADE BY* Vice President LeBlanc to approve the New 60 Day Hawker License – American Promotional Events Inc., dba TNT Fireworks. The motion was seconded by Councilmember Shockley.

Ms. Amitrano commented that the tent was to be erected once the fire marshal gave approval on June 17, 2024, but she has not heard back yet.

*A MOTION WAS MADE BY* Vice President LeBlanc to amend the motion subject to fire marshal approval. The motion was seconded by Councilmember Shockley.

Roll Call Vote by Clerk:
> *President Lima*        *Aye*
> *Vice President LeBlanc*        *Aye*
> *Councilmember Shockley*        *Aye*
> *All voted aye. Motion Passes*

**Renewal of Body Works License – Massage Cosmo**
**6 Coventry Shopper's Park Coventry, RI**

Joseph Perry, 18 Myra Road, commented on the license.

*A MOTION WAS MADE BY* Vice President LeBlanc to approve the Renewal of Body Works License – Massage Cosmo. The motion was seconded by Councilmember Shockley.

Roll Call Vote by Clerk:
> *President Lima*        *Aye*
> *Vice President LeBlanc*        *Aye*
> *Councilmember Shockley*        *Aye*
> *All voted aye. Motion Passes*

**Application for Fireworks License on June 22, 2024 by Pyrotecnico Fireworks, Inc. (Richard Vallante)**
**To be located at 40 Reservoir Road, June 22, 2024 9:00 pm to 9:30 pm**
**Rain date June 27, 2024**
**Per Coventry Code 169-5(G)**

Manager Parrillo commented on the possibility of a rain date being utilized.

*A MOTION WAS MADE BY* Vice President LeBlanc to approve the Application for Fireworks License on June 22, 2024 by Pyrotecnico Fireworks, Inc. (Richard Vallante). The motion was seconded by Councilmember Shockley.

Roll Call Vote by Clerk:
> *President Lima*        *Aye*
> *Vice President LeBlanc*        *Aye*

6-30-2024-TCKM2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

https://coventryri.civicweb.net/filepro/document/183960/TC062024.docx

Case 1:25-cv-00274-MRD-AEM    Document 51-12    Filed 02/05/26    Page 107 of 210
PageID #: 2496

*Councilmember Shockley        Aye*
*All voted aye. Motion Passes*

***A MOTION WAS MADE BY*** *Vice President LeBlanc to take the agenda out of order. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
*President Lima            Aye*
*Vice President LeBlanc        Aye*
*Councilmember Shockley        Aye*
*All voted aye. Motion Passes*

## EXECUTIVE OR CLOSED SESSION ITEMS

***A MOTION WAS MADE BY*** *Vice President LeBlanc to open Executive Session. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
*President Lima            Aye*
*Vice President LeBlanc        Aye*
*Councilmember Shockley        Aye*
*All voted aye. Motion Passes*

**The Council met in Executive Session pursuant to RIGL § 42-46-5 (a)(2) for litigation matters re Soscia Holdings, LLC v. Town of Coventry (KC-2020-0769) and Town of Coventry v. Soscia Holdings, LLC (KC-2024-0219).**

**The Council met in Executive Session pursuant to RIGL § 42-46-5 (a)(2) for litigation matters re Nicholas E. Cambio, Trustee et al. v. Commerce Park Realty, LLC (PM No.13-0350); and Mathew J. McGowan as receiver for Commerce Park Realty, LLC et al. v. Commerce Park Management, LLC (PB No. 13-5001).**

**The Council met in Executive Session pursuant to RIGL § 42-46-5 (a)(2) for litigation matters re Licciardi v. Town of Coventry (KC-2019-1223).**

**The Council met in Executive Session pursuant to RIGL § 42-46-5 (a)(2) for litigation matters re Mathew Jester et al. v. The Zoning Board of Review of the Town of Coventry (KC-2023-0705).**

President Lima commented no votes were taken.

***A MOTION WAS MADE BY*** *Vice President LeBlanc to adjourn from Executive Session. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
*President Lima            Aye*
*Vice President LeBlanc        Aye*
*Councilmember Shockley        Aye*

Case Number TCM 2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

*All voted aye. Motion Passes*

*A MOTION WAS MADE BY Vice President LeBlanc to seal the minutes of Executive Session.  The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
> *President Lima                        Aye*
> *Vice President LeBlanc              Aye*
> *Councilmember Shockley        Aye*
> *All voted aye. Motion Passes*

## REPORT OF OTHER TOWN OFFICERS AND OFFICIALS

### Stephen J. Angell, Esquire-Solicitor
> a. **Flat River Reservoir ("Johnson's Pond") – presentation and recommendation to the Town Council concerning the maintenance and redevelopment of the Pond, its dam, dam structures and land to protect the environment, to ensure public safety, and to provide recreational access to the public (votes may be taken)**

Solicitor Angell commented on his recommendation to table the resolution the agenda and accept, as a substitute, Resolution 2024-42.

*A MOTION WAS MADE BY Vice President LeBlanc to table the resolution in the agenda. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
> *President Lima                        Aye*
> *Vice President LeBlanc              Aye*
> *Councilmember Shockley        Aye*
> *All voted aye. Motion Passes*

Solicitor Angell presented the substitute Resolution 2024-42 which included exhibits.  The title changed slightly as there was a typo and exhibits 4, 5 and 6 were added.  He walked the public through the resolution and talked about having a public Q&A session to provide a full understanding of what took place.

President Lima asked about the North Basin on the property. Solicitor Angell commented that it is listed as part of the footprint.

Solicitor Angell continued to review the process that his team has taken and the plan they have put into place to take over the pond and what will happen once the pond is taken over to make the necessary repairs to the dam.  He went on to say that this resolution condemns the pond and directs him to take immediate action to have title in the pond.

Vice President LeBlanc confirmed with Solicitor Angell on the clarity of Public Access usage. Solicitor Angell confirmed.

6-30-2024-TCM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

President Lima commented the Solicitor and Town Manager will set up a date for a public Q&A session.

## RESOLUTIONS OF THE COUNCIL (VOTE(S) MAY BE TAKEN)

## Resolution 2024-42 – Re condemnation of Flat River Reservoir ("Johnson's Pond"), its dam, dam structures and land. (votes to be taken)

*A MOTION WAS MADE BY Vice President LeBlanc to approve Resolution 2024-42 - Re condemnation of Flat River Reservoir ("Johnson's Pond"), its dam, dam structures and land. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
*President Lima                    Aye*
*Vice President LeBlanc          Aye*
*Councilmember Shockley         Aye*
*All voted aye. Motion Passes*

## REPORT OF OTHER TOWN OFFICERS AND OFFICIALS

## Stephen J. Angell, Esquire-Solicitor
    b. **Centre of New England – presentation as to those elements of the litigation status that can be discussed in public (no votes taken)**

Solicitor Angell commented on the litigation status of the Centre of New England.

President Lima asked when the road was originally laid. Solicitor Angell commented 1997.

Solicitor Angell and President Lima made closing comments on the reports given by the Solicitor

## PUBLIC COMMENT ON UN-DOCKETED ITEMS ONLY

Gerry Narkiewicz had questions on the document by Mr. Parrillo regarding a gate attendant for a beach access on Lake Tiogue. He commented on potential fees, as well as concerns on policing, sound management, and the qualifications of the gate attendant.

## ADJOURNMENT (VOTE WILL BE TAKEN)

The Town Council's next regular monthly meeting will be held on June 27, 2024.

*A MOTION WAS MADE BY Vice President LeBlanc to adjourn at 8:15 PM. The motion was seconded by Councilmember Shockley.*

Roll Call Vote by Clerk:
*President Lima                    Aye*
*Vice President LeBlanc          Aye*
*Councilmember Shockley         Aye*

6-30-2024 TCKM2024-0578

Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

*All voted aye. Motion Passes*

The meeting was adjourned at 8:15 PM.

The minutes were prepared and submitted by Jessica Haughton.

_____
Joanne P. Amitrano, Town Clerk

Town Council Meeting Minutes June 20, 2024                                    pg. 1

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT I

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Recording of Town Council Meeting on June 20, 2024

https://www.youtube.com/

watch?v=60rMkGocZps&list=PLyqD7ZZ7yy3k49iJKceeTHEJ0ICzMMVzV&index=33

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT J

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

## Hearing Search Results

Hearings for Courtroom **Kent Courtroom 4D** between **6/28/2024** and **6/28/2024**

| Case Number | Style / Defendant | Case Type | Date / Time | Hearing Type | Judge | Courtroom | Case Catego |
|---|---|---|---|---|---|---|---|
| KC-2024-0408 | Terrence Gray, in his capacity as Director et al. v. Soscia Holdings LLC | Civil Action | 6/28/2024 10:00 AM | Hearing on Motion to Dismiss | Licht, Associate Justice Richard | Kent Courtroom 4D | Civil |
| KM-2024-0578 | In Re: Town of Coventry | Other Miscellanous Petition | 6/28/2024 10:00 AM | Hearing on Motion | Licht, Associate Justice Richard | Kent Courtroom 4D | Civil |

1 - 2 of 2 items

https://publicportal.courts.ri.gov/PublicPortal/Home/WorkspaceMode?p=0

1/1

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT K

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**Kent County Superior Court**

## Case Summary

### Case No. KC-2024-0408

| | | | |
|---|---|---|---|
| **Terrence Gray, in his capacity as Director et al. v. Soscia Holdings LLC** | § | Location: | **Kent County Superior Court** |
| | § | Filed on: | **05/02/2024** |

---

### Case Information

| | |
|---|---|
| Case Type: | Civil Action |
| Case Status: | **05/02/2024 Unassigned** |

---

### Party Information

| | | |
|---|---|---|
| **Plaintiff** | **Gray, in his capacity as Director, Terrence** | **QUEST, TRICIA A** *Retained* |
| | | **VAZ, NICHOLAS MICHAEL** *Retained* |
| | **Rhode Island Department of Environmental Management** | **QUEST, TRICIA A** *Retained* |
| **Defendant** | **Soscia Holdings LLC** | **DOUGHERTY, PATRICK J** *Retained* |

---

### Case Events

| | |
|---|---|
| 05/02/2024 | Complaint Filed |
| 05/03/2024 | Summons |
| 05/03/2024 | Entry of Appearance |
| 05/06/2024 | Proof of Service Filed |
| 05/28/2024 | Motion to Dismiss |
| 06/19/2024 | Objection to Motion |
| 07/15/2024 | Consent Order Entered     (Judicial Officer: Licht, Associate Justice Richard) |
| 09/09/2024 | Consent Order Entered     (Judicial Officer: Licht, Associate Justice Richard) |
| 09/11/2024 | Entry of Appearance |
| 09/19/2024 | Consent Order Entered     (Judicial Officer: Licht, Associate Justice Richard) |

Party:   Attorney of Record QUEST, TRICIA A;
Plaintiff Gray, in his capacity as Director, Terrence;
Plaintiff Rhode Island Department of Environmental Management;
Prosecutor VAZ, NICHOLAS MICHAEL

---

### Hearings

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**Kent County Superior Court**

**Case Summary**

**Case No. KC-2024-0408**

05/06/2024   **Petition to Enforce**   (2:00 PM)   (Judicial Officer: Licht, Associate Justice Richard)
　　　　　　　*Continued*

06/11/2024   **Conference**   (2:30 PM)   (Judicial Officer: Licht, Associate Justice Richard)
　　　　　　　*Conference Completed*

06/28/2024　　

**Hearing on Motion to Dismiss**   (10:00 AM)   (Judicial Officer: Licht, Associate Justice Richard)
　　　　　　　08/05/2024 Continued to 06/28/2024 - Judge Request
　　　　　　　*Heard*

Printed on 08/04/2025 at 4:37 PM

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT L

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

STATE OF RHODE ISLAND

KENT, SC.                                    SUPERIOR COURT

IN RE:  TOWN OF COVENTRY          NO. KM-2024-0578

**HEARD BEFORE THE HONORABLE**

**ASSOCIATE JUSTICE RICHARD A. LICHT**

**JUNE 28, 2024**

**APPEARANCES:**

TIMOTHY M. ESKEY, ESQUIRE, FOR THE TOWN OF COVENTRY

STEPHEN J. ANGELL, ESQUIRE, FOR THE TOWN OF COVENTRY

**PAULA CAMPAGNA**
**OFFICIAL COURT REPORTER**

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

## C-E-R-T-I-F-I-C-A-T-I-O-N

I, *Paula J. Campagna*, hereby certify that the succeeding pages 1 through 11 inclusive, are a true and accurate transcript of my stenographic notes.


PAULA CAMPAGNA, CCR
OFFICIAL COURT REPORTER

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

1

**JUNE 28, 2024**

**MORNING SESSION**

THE COURT:  Will you the clerk please call the first case.

THE CLERK:  Yes.  The matter before the Court is KM-2024-0578, In Re:  The Town of Coventry. Counsel identify themselves for the record, please.

MR. ESKEY:  Good morning, Your Honor, Tim Eskey on behalf of the Town of Coventry.

MR. ANGELL:  Good morning, Your Honor, Stephen Angell, Town Solicitor, on behalf of the Town of Coventry.

THE CLERK:  Thank you.

MR. ESKEY:  Your Honor, we're here seeking an order of the Court to deposit in the court's registry, the Town of Coventry's estimated sum for just compensation of $157,000 for the Town's taking by eminent domain of the property commonly known as Johnson's Pond, the dam at Johnson's Pond and a 48-acre parcel immediately down the stream of the dam.

Now, while I can be fairly certain that we will be back before the Court at a later date contesting what the worth of the property is when it's only use is for a pass of recreational use and it takes

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

about $5 million to make it safe for that use.  But that's not why we're here today.  It's a much more narrow and limited reason, and that's to deposit the estimated sum in the registry of the court and obtain an order for the Court for that purpose.  We have filed a statement as required by the statute. We followed the process by the Town's adoption of a acquisition resolution, a plan, and a description of the property taken.  We filed a statement before the Court.  We have, in seeking the order, complied with the process.  And on the deposit of the estimated sum in the Court's registry --

THE COURT:  Can I interrupt you?

MR. ESKEY:  Please, Your Honor.

THE COURT:  So I've read the town charter.  And it says that the town may acquire a property within or without its corporate limits for town purposes and fee or any lesser interest or estate by purchase, lease, gift, devise and by condemnation within the town for public use.  Can you describe what the proposed public use is?

MR. ESKEY:  Yes, Your Honor.  In the acquisition resolution which is part of the papers we filed for the court, the purposes are stated as for the purpose of environmental protection and

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

conservation, for public safety, and for public access to and recreational use of Johnson's Pond.

THE COURT: I've had the benefit of hearing Mr. Angell on the radio by accident, to be honest. I don't know why my radio was tuned into that station that day, but he was on with Mr. York. Because normally I don't listen to talk shows because once you're out of politics, you don't have to listen to talk shows anymore. But Mr. Angell was on very articulately explaining this, but it's not on the record. He was talking about uses by the public what is beyond the residence of Johnson Pond. So if you could just tell me for the record what those are because it goes to the public use. And if Mr. Angell wants to --

MR. ESKEY: I don't think there's anyone better who could say this.

MR. ANGELL: Good morning, Your Honor. Your Honor, the council has passed a series of resolutions which are part of the Court's appendix for application here this morning. The council is resolute in making sure, Your Honor, that there is public access for the broader public other than just those residents of Johnson's Pond. They're looking to make sure that the public has access and

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

they intend to have a public beach, they intend to have public parking, they intend to have a cabana, boat ramps that presently are not usable boat ramps in that area, for broader public recreational use and to provide that benefit to the public as a whole, not just for the citizens of Coventry, Your Honor, but also on a fee basis for those who may not live in Coventry as a nonresident.

THE COURT:  Okay, thank you.

MR. ANGELL:  Thank you, Your Honor.

THE COURT:  I just wanted that on the record.

MR. ESKEY:  So, Your Honor, to the extent there are further questions, obviously, we're prepared to answer those questions, but otherwise we would rest on the papers and be fine.

THE COURT:  I have looked at Mr. Andolfo's statement.  I just want the most recent affidavit which you were kind enough to provide me yesterday. Could you just walk me through the math?

MR. ESKEY:  Yes, Your Honor.  So Mr. Andolfo is an appraiser --

THE COURT:  If he were here I would accept him as an expert.  So the record reflects, when I was practicing law I used Mr. Andolfo as an expert, as I did many other appraisers.  So I just want to

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

know how you got to the 157.  I think he says it all, but I'd like you to explain it to me.

MR. ESKEY:  So in his reports Mr. Andolfo appraised the market value of the property and he essentially divided the property into two segments. There's the pond and the dam which is one segment, and there's a piece of property that's downstream of the dam that has development potential.  And as far as the dam and pond property are concerned, Mr. Andolfo found that hypothetically it has a value of almost $3 million.

The upland property, the downstream property, with the developmental potential, again he concluded that it has a hypothetical value of $3.5 million.  And that's assuming that the appropriate approvals and permits can be obtained.  So in gross terms --

THE COURT:  But he's divided that into two parcels?

MR. ESKEY:  That is net of cost, site development cost.

THE COURT:  No.  But didn't he divide the development into two parcels, one of which you're taking and one of which you're not taking?

MR. ESKEY:  Yes, I'm getting to that.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

THE COURT:  Oh, I'm sorry.

MR. ESKEY:  No, it's a good question.  Because originally the town was going to take the entire upland parcel which is just over a hundred acres.  Ultimately, the town determined that it wasn't necessary to take all of that, so we've taken a 48-acre portion that's immediately adjacent to the dam for access to the dam, for maintainance and repair and improvement of the dam, leaving to the present owner the remainder of that upland parcel for development purposes.

So initially though when Mr. Andolfo did his appraisal, he considered the entire parcel.  And that's where the $3.5 million initial figure came from.  And the value of the pond space was about $3 million.  So combined it had a value of $6.4 million.  However, what needed to be subtracted from that was the cost of improving and preparing the dam which costs are approximately $5 million overall.  So when you take from the $6.4 million of that amount, that was the initial thing.

But when the property was divided, Mr. Andolfo went back and he put a value on the piece of property that was being taken, and that was $790,000.  So what he did then finally was the

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

value of the pond and open space was about $2 million, $2.5 million.

THE COURT:  It was $2.952.

MR. ESKEY:  Yes.  Added to that is the value of the parcel being taken, a 48-acre parcel which is $790,000.  Combined that has a value of $3,742,000, according to Mr. Andolfo.  Subtracted from that is the cost of the dam repair and improvements that are necessary.  That's $3,585,000.  When you do that math then you end up with the as his market value, according to Mr. Andolfo, $157,000.  So that's where the figure of the estimated just compensation comes from, Your Honor.

THE COURT:  Thank you.

MR. ESKEY:  Thank you, Your Honor.

THE COURT:  Anything further?

MR. ESKEY:  We have submitted a proposed order to the Court.  And obviously, vesting as soon as possible is in the interest of the town --

THE COURT:  The statute requires vesting.  In order to vest, when I approve this you have to deposit the money, assuming I approve it.

MR. ANGELL:  We're prepared to pay this morning, Your Honor.

THE COURT:  Okay.  The Court has reviewed the

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

papers that have been submitted and the Court is prepared to enter the order that has been proposed and the Court accepts for purposes only of this hearing and this procedure, the estimate value given by Mr. Andolfo. It was subject to the statutory right of the condemnee to petition for an assessment of damages. And after hearing, at some point, if they choose to do that, I would be very surprised if they didn't, but that's for another day.

If they choose to do that, the Court will ultimately make a decision on the value based upon, I assume Mr. Andolfo's testimony where he's subject to, I think it was cross-examination and the experts that the condemnee will undoubtedly present to the Court and that person or persons will also be subject to vigorous cross-examination.

And when I say cross-examination, I also add questioning because it's a bench trial that I may ask some questions of all the experts who end up testifying. But for purposes of today, this order is appropriate. I think the town council acted pursuant to the authority, granted by the Home Rule Charter which I'll point out was approved by the General Assembly of the State of Rhode Island. So,

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

as such, I will sign this order and it will be entered and we'll go from here.

MR. ANGELL:  Thank you, Your Honor.

MR. ESKEY:  Thank you, Your Honor.

THE COURT:  The clerk will sign and enter it.

**A D J O U R N E D**

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT M

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 000002920
BK: 2303 Pg: 506

**STATE OF RHODE ISLAND**                         **SUPERIOR COURT**
**KENT, SC.**


**IN RE TOWN OF COVENTRY**         :              **Case No.: KM-2024-0578**
*Petitioner*                       :

## CONDEMNATION ORDER

On June 28, 2024, the above-captioned matter came before the Court (Licht, J., presiding)

on Petitioner's Statement of Sum of Estimated Just Compensation for Property Taken and

Request for an Order Approving Deposit in the Court's Registry ("Statement"). After hearing

thereon, it is hereby,

### ORDERED ADJUDGED AND DECREED:

1. By exercise of eminent domain, the Town of Coventry acquired in fee simple absolute all

   right, title, and interest in property in the Town of Coventry commonly known as Johnson's

   Pond, the dam at Johnson's Pond, and a parcel of open space land immediately downstream

   of the pond and dam.

2. More particularly, the property taken by exercise of the Town's power of eminent domain

   ("Acquired Property") is identified and described in Resolution No. 2024-42 adopted by the

   Town Council for the Town of Coventry on June 20, 2024 ("Acquisition Resolution"), which

   Acquisition Resolution together with plan and description of the Acquired Property was

   certified by the Town Clerk and recorded in the Town's Recorded Land Records on June 21,

   2024, in Book 2302, Pages 871-899.

3. Based on Petitioner's Statement, including its exhibits, and on evidence submitted to the

   Court in support thereof, in particular the Affidavit of Thomas S. Andolfo MAI, SRA, AI-

   GRS, the Court finds for purposes of the deposit of compensation for property taken in the

1

TRUE COPY ATTEST

DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST: 00002920
Bk: 2303 Pg: 507

Court's registry in accordance with R.I. GEN. LAWS §§ 32-4-8 and 24-1-3 that Petitioner's sum of estimated just compensation of $157,000 is sufficient.

4. Without prejudice to the rights of all persons having an interest in the Acquired Property, Petitioner shall deposit the Petitioner's sum of estimated just compensation of $157,000 in the Court's registry, whereupon, without further order, and by operation of law in accordance with R.I. GEN. LAWS §§ 32-4-8 and 24-1-3, title to the Acquired Property in fee simple absolute shall vest in the Town of Coventry, and the Acquired Property shall be deemed to be condemned and taken for the use of the Town of Coventry, and the right to just compensation for the Acquired Property shall vest in the persons entitled thereto.

ENTER:                          PER ORDER:

_____        _____
Licht, J.          6/28/2024   Clerk          6/28/2024

2

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

INST:    00002920
Bk:    2303  Pg:    508

*Order presented by:*

PETITIONER,

TOWN OF COVENTRY,

**By its attorneys,**

/s/*Michael T. Eskey*

Michael T. Eskey (#3035)
**Moses Ryan Ltd.**
40 Westminster Street, 9th Floor
Providence, Rhode Island 02903
Tel: (401) 453-3600
        (401) 433-7834 (direct line)
**teskey@marlawri.com**



Stephen J. Angell, Esq. #6132
**Angell Law, LLC**
1062 Reservoir Avenue
Cranston, Rhode Island 02910
Direct Dial:    401.258.3440
Email: stephen@angell.law
*Town Solicitor*

**Date: June 28, 2024**

3

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# OFFICIAL RECEIPT

**State of Rhode Island**
**Superior Court**
**Noel Judicial Complex**
**222 Quaker Lane**
**Warwick, RI 02886**
**(401) 822-6900(phone)**
**(401) 822-6905(fax)**

INST: 00002920
Bk: 2303 Pg: 509

Payor
Town of Coventry

Receipt No.
**SCK-2024-001149**

Transaction Date
06/28/2024

| Description | Amount Paid |
|---|---|
| On Behalf Of  Registry of Court Beneficiary_KM-2024-0578 | |
| KM-2024-0578 | |
| In Re: Town of Coventry | |
| KM-2024-0578 | |
| Registry of the Court SC | 157,000.00 |
| **SUBTOTAL** | **157,000.00** |

PAYMENT TOTAL | **157,000.00**

| Check (Ref #8690) Tendered | 157,000.00 |
|---|---|
| Total Tendered | **157,000.00** |
| Change | 0.00 |

| 06/28/2024 | Cashier | Audit |
|---|---|---|
| 10.57 AM | Station DanielleK | 18806146 |

## OFFICIAL RECEIPT

TOWN OF COVENTRY, R.I.
Jun 28,2024 11:50A
JOANNE P AMITRANO, TOWN CLERK

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT N

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# THE TOWN OF COVENTRY

# RESOLUTION OF THE TOWN COUNCIL

### "Transferring to the Coventry Redevelopment Agency the redevelopment rights to the pond, property, dam and dam structures of Flat River Reservoir to create a public benefit for Town residents in accordance with the Town of Coventry Code of Ordinances, Part II, Section 187-4"

## Resolution No. 2024-98

*Passed:* 4-0

_____
Hillary V. Lima, *Council President*

**WHEREAS,** in the Town of Coventry

- On or about May 14, 2024, the Town Council enacted Ordinance No. 2024-03 adding Chapter 187 (Ponds, Dams, Dam Structures, and Recreational Use), Article 1 (Flat River Reservoir a/k/a Johnson's Pond) to its Code of Ordinances; and

- Section 187-4 (Redevelopment) of the Ordinance requires that the Town of Coventry create a public benefit for Town residents by redeveloping Johnson's Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation and use; and

- Pursuant to R.I. Gen. Laws § 45-31-9, there is created in each community a redevelopment agency to be known as the redevelopment agency of the community; and

- The Coventry Redevelopment Agency ("Agency") is the redevelopment agency for the Town whose members are appointed by the Town Council; and

- Section 185-5 (Transfer) of the Ordinance permits the Town of Coventry to transfer a portion of its rights in the pond and its property for the redevelopment of Johnson's Pond, its property, dam and dam structures to any agency of the Town whose membership is appointed by the Town Council; and

- The Town Council is desirous of transferring the redevelopment rights of Johnson's Pond, its property, dam and dam structures to the Agency for purpose of forming a redevelopment plan that satisfies the requirements of Section 187-4 of the Ordinance.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**NOW THEREFORE, BE IT RESOLVED THAT** the Honorable Town Council:

1. In order to fulfill Section 187-4 (Redevelopment) of the Ordinance requiring the Town of Coventry to create a public benefit for Town residents by redeveloping Johnson's Pond for public use that shall include, but not be limited to expanded public access, boat ramps, parking, facilities, and the like for public recreation, the Town Council transfers the redevelopment rights related to Johnson's Pond, its property, dam and dam structures to the Agency ("Agency") to evaluate, develop, commission and oversee a redevelopment plan.

2. The Agency shall report its progress to the Town Council every thirty (30) days via email and/or at the next available Town Council meeting.

Sponsored by:  Council vice President James LeBlanc

Resolution approved to as to form and substance:

_____

Stephen J. Angell, Esq. – Town Solicitor

PASSED AND ADOPTED THIS 12TH DAY OF NOVEMBER 2024

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT O

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



# COVENTRY TOWN COUNCIL - DOCKET
## Council President Hillary V. Lima, Presiding
Council Vice President John-Paul A. Verducci, Town Wide

| Jonathan J. Pascua | Alisa M. Capaldi | James E. LeBlanc |
|---|---|---|
| District 1 | District 2 | District 3 |

| Scott R. Copley | Frank M. Brown, Jr. |
|---|---|
| District 5 | Town Wide |

### Thursday, April 3, 2025 @ 6:00 PM

Meeting of the Town Council will be held **in the Town of Coventry Council Chambers, Coventry Town Hall located at 1670 Flat River Road in Coventry, Rhode Island**, for the purpose of considering the agenda items so stated on this Docket.

Remote participation is also available by using the logon information provided below as posted on the Town's website at www.coventryri.gov and Secretary of State's website at www.sos.ri.gov:

### *Zoom Webinar – Remote Meeting Participation*

You are invited to a Zoom webinar.
When: Apr 3, 2025 06:00 PM Eastern Time (US and Canada)
Topic:  Town of Coventry Town Council Meeting - April 3, 2025

Join from PC, Mac, iPad, or Android:
https://us02web.zoom.us/j/89585508482?pwd=dPMlkxaRCKbbeTQOtaGKmriJ04xJQK.1
Passcode:393649

Phone one-tap:
+16465588656,,89585508482#,,,,*393649# US (New York)
+16469313860,,89585508482#,,,,*393649# US

Join via audio:
+1 646 558 8656 US (New York) +1 646 931 3860 US +1 301 715 8592 US (Washington DC) +1 305 224 1968 US +1 309 205 3325 US +1 312 626 6799 US (Chicago)
+1 360 209 5623 US +1 386 347 5053 US +1 507 473 4847 US
+1 564 217 2000 US +1 669 444 9171 US +1 669 900 9128 US (San Jose)
+1 689 278 1000 US +1 719 359 4580 US +1 253 205 0468 US
+1 253 215 8782 US (Tacoma) +1 346 248 7799 US (Houston)
Webinar ID: 895 8550 8482

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Passcode: 393649
International numbers available: https://us02web.zoom.us/u/keGRsqdXbi

### *YouTube Livestream – Viewing ONLY*

The meeting will be live streamed on YouTube. Click the link below to view the meeting.
You will only be able to watch the proceedings.
https://www.youtube.com/playlist?list=PLyqD7ZZ7yy3k49iJKceeTHEJ0ICzMMVzV

---

# Agenda and Docketed Matters before the Council

- **Call to Order** by the Council President or presiding officer of the Council
- Council member attendance taken via **Roll Call** *(No votes taken)*
- **Pledge of Allegiance** *(No votes taken)*
- **Emergency Evacuation Plan** stated for those attending in person *(No votes taken)*

| | |
|---|---|
| **I.** | **MEETING MINUTES FROM PRIOR MEETINGS (VOTE(S) MAY BE TAKEN)** |

| | |
|---|---|
| **II.** | **PUBLIC ACKNOWLEDGEMENTS AND COMMENDATIONS** |

| | |
|---|---|
| **III.** | **PUBLIC HEARINGS AND PUBLIC COMMENT ON DOCKETED ITEMS ONLY(VOTE(S) MAY BE TAKEN)** |

This public hearing agenda item is limited to the subject matter of docketed matters only. Public comment may be permitted and will be subject to time limitations. Such hearings and comment may not include the introduction of new matters before the Council as some new matters are not up for immediate consideration.

Written public comment is accepted and may be submitted via email to the Council in care of its clerk, Joanne Amitrano, before the meeting to jamitrano@coventryri.gov no later than 4:30 p.m. on the Monday before the Council meeting.  All such written comments will be identified by name, address, date, shall be provided to council members before the meeting and the record shall be so noted. (*Vote will be taken to accept written comment and to place it on record*)

For meetings occurring via a collaboration platform (i.e., Zoom), those members of the public then present in the audience may be allowed to comment by calling in to the meeting at 1-888-788-0099 or by appearing on screen.

**Matters for Public Hearing:**

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**IV.    LICENSES (VOTE(S) MAY BE TAKEN**

**V.    ELECTION AND/OR APPOINTMENT OF TOWN OFFICIALS (VOTE(S) MAY BE TAKEN)**

**VI.    REPORT OF THE TOWN MANAGER**

*(Informational and Votes may be taken on any an all items)*

**VII.    REPORT OF OTHER TOWN OFFICERS AND OFFICIALS**

*(Informational and Votes may be taken on any and all items)*

**VIII.    RESOLUTIONS OF THE COUNCIL (VOTE(S) MAY BE TAKEN)**

**IX.    ORDINANCES (VOTE(S) MAY BE TAKEN)**

**X.    COUNCIL PRESIDENT COMMUNICATIONS**

**XI.    COUNCIL MEMBER COMMUNICATIONS**

**XII.    COUNCIL BUSINESS MATTERS CARRIED OVER (VOTE(S) MAY BE TAKEN)**

**XIII.    PUBLIC COMMENT FOR UN-DOCKETED ITEMS**

**XIV.    INTRODUCTION OF NEW MATTERS BEFORE THE COUNCIL (VOTE(S) MAY BE TAKEN)**

A.    Workshop meeting with the Coventry Redevelopment Agency to discuss the particulars of GZA engagement by the Agency for purpose of composing a redevelopment plan for the Johnson's Pond property. The component parts and concepts involved of a redevelopment plan will be discussed as well as those particular to a plan concerning the Pond

**XV.    EXECUTIVE OR CLOSED SESSION ITEMS**

Vote to be taken to go into Executive Session.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Vote to be taken to Come out of Executive Session.
Any votes taken in Executive Session to be reported out in public session.
Vote to be taken to seal the minutes of Executive Session.

### ADJOURNMENT (VOTE WILL BE TAKEN)

The Town Council's next regular monthly meeting will be held on April 8, 2025.

**Joanne Amitrano, Town Clerk**

*Agenda posted April 1, 2025*

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT P

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Recording of Town Workshop on April 3, 2025

https://www.youtube.com/live/0DhZWFAojbs?t=2390s

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT Q

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



# Coventry
Rhode Island

Search this Site

Menu

# Coventry Launches Online Hub for Johnson's Pond Redevelopment Information and Public Engagement

The Town of Coventry and the Coventry Redevelopment Agency are proud to announce the launch of a new online resource to keep residents informed and engaged in the future of Johnson's Pond. The newly created landing page, www.johnsonpondrp.org, serves as the central location for updates, documents, meeting notices, and public input opportunities surrounding the redevelopment process for this critical piece of Coventry's natural landscape.

Since the Town moved to condemn the Johnson's Pond property in 2024 to preserve public safety and community use, there has been strong interest—and in some cases, concern—about how the site will be utilized in the future. The Town and Redevelopment Agency want to make clear: **public access to Johnson's Pond exists today**, and expanding that access is the top priority of the redevelopment project.

To make this process as transparent and collaborative as possible, the Town has partnered with GZA GeoEnvironmental, Inc., a well-respected firm specializing in environmental and community-based redevelopment planning. Over the coming months, GZA will be working closely with Town officials and local stakeholders to gather input on what the future of the Johnson's Pond property should look like. This may include walking trails, fishing access, kayaking opportunities, and passive recreation areas that reflect the public's vision and needs.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

The new website outlines:

- **A timeline of next steps,** including upcoming community meetings
- **Details on how residents can submit feedback**
- **Clear documentation of existing public access points**
- **Frequently asked questions and background on the redevelopment plan process**

We encourage residents to visit the site regularly and sign up for Coventry Redevelopment Agency meeting email notifications as the planning process moves forward. Public input will be essential in shaping a long-term vision for Johnson's Pond that balances environmental sustainability, water management, and equitable access.

You can navigate to www.johnsonpondrp.org directly, or access the site from the Town of Coventry's official website by clicking **"Information & Services"** in the main navigation bar and then choosing **"Johnson's Pond Redevelopment Project"** from the menu.

As stewards of this important community resource, the Town of Coventry is committed to transparency, inclusion, and protecting the long-term recreational and environmental value of Johnson's Pond for all residents.

For questions, please contact the Coventry Redevelopment Agency at CRA1@coventryri.gov



Town of Coventry, RI. Town Hall – 1670 Flat River Road, Coventry, RI 02816

Phone: (401) 821-6400 | Fax: (401) 822-9132 | coventry@coventryri.gov | Site Designed by EpbRI | Main Photo

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



**JOHNSON'S POND**
Redevelopment Project

About    Timeline    Maps    Events    Public Input

"Discover the rich history of Johnson's Pond, where every ripple tells a story for our residents to cherish."

EXPLORE THE POND



**Current Utilization**



**Redevelopment Process**



**Public Access**

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

The Town of Coventry is developing a Redevelopment Plan for Johnson's Pond (a/k/a Flat River Reservoir) to enhance recreational access and support infrastructure that would reinvigorate recreational use of the Pond, foster the ecological stability of the reservoir environment, promote tourism, and restore the use and quality of residential waterfront homes abutting the reservoir. The purpose of this Redevelopment Plan is to define the area of the Reservoir and surroundings ("Redevelopment Area Boundary") that are impacted by conditions at the Johnson's Pond Dam, and in response, develop plans that support a state of good repair of the Dam and its long-term maintenance.



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# Get in touch

*Johnson's Pond*
*Redevelopment*

———

Town of Coventry, RI. Town Hall
1670 Flat River Road, Coventry, RI 02816
Phone: (401) 821-6400
Fax: (401) 822-9132

coventry@coventryri.gov

www.coventryri.gov



First name *

Last name

Email *

Phone

Write a message

Submit

© 2025 by The Town of Coventry. Site by GZA.



Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**JOHNSON'S POND**
**Redevelopment Project**

About          Timeline          Maps          Events          Public Input

Johnson's Pond Redevelopment
—

# Redevelopment Plan

## What is a Redevelopment Plan?

A Redevelopment Plan in Rhode Island is a strategy for improving a specific area through coordinated actions per Title 45, Chapter 32 of the Rhode Island General Law. Such a Plan is a guiding document, and a legal requirement for the productive development of an area, providing a roadmap of improvement plans and projects, acquisition of land(s), change in land use regulations, and identification processes, costs for improvements and potential uses and sources of funds needed to effectuate implementation of the Plan. These plans are created within the context of a broader community master plan and aim to improve the area's overall condition, promote economic development, and enhance public facilities.

### Generally, the goals of Redevelopment Plans are as follows:

- Improve quality of life: Redevelopment plans help residents improve their quality of life and environment.
- Promote growth: Redevelopment plans promote orderly growth and development consistent with community need
- Protect the environment: Redevelopment plans consider the natural characteristics of the land and the need to protect public health and the environment

This is a long-term effort supported by community input, technical planning, and collaboration with town officials and stakeholders. This planning effort is a community-driven process and involves defining a boundary for the district, gathering public input, and developing actionable strategies for access, recreation, and environmental protection. The Town of Coventry is creating a Redevelopment Area around Johnson's Pond (Flat River Reservoir) to:

- Develop strategies for long-term maintenance/ state of good repair of the Dam
- Enhance recreational access for residents and visitors
- Support infrastructure improvements that enhance recreational use of the Pond
- Foster the ecological stability of the reservoir and its surrounding environment
- Promote tourism and public enjoyment of natural resources
- Restore the use and quality of residential waterfront properties

← Resource for the Community

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# EXHIBIT R

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SOSCIA HOLDINGS, LLC; : <br> STRUCTURES AT JOHNSON'S POND, LLC; : <br> BOATING AT JOHNSON'S POND, LLC; : <br> WATERFRONT AT JOHNSON'S POND, LLC; : <br> COMMON AREA AT JOHNSON'S POND, : <br> LLC; and LAND AT JOHNSON'S POND, LLC, : <br> *Plaintiffs,* : <br> : <br> **v.** : <br> : <br> TOWN OF COVENTRY; : <br> TOWN OF COVENTRY, *by and through its* : <br> *Finance Director Robert J. Civetti, in his Official* : <br> *Capacity*; : <br> HILLARY V. LIMA, *in her Official* : <br> *Capacity as Council President and Individually*; : <br> JAMES E. LEBLANC, *in his Official Capacity* : <br> *as Council Vice President and Individually*; : <br> JONATHAN J. PASCUA, *in his Official* : <br> *Capacity as Councilmember and Individually*; : <br> ALISA M. CAPALDI, *in her Official Capacity as* : <br> *Councilmember and Individually*; : <br> KIMBERLY A. SHOCKLEY, *in her Official* : <br> *Capacity as Councilmember and Individually*; : <br> JENNIFER M. LUDWIG, *in her Official* : <br> *Capacity as Councilmember and Individually*; : <br> DANIEL O. PARILLO, JR., *in his Official* : <br> *Capacity as Town Manager and Individually*; : <br> STEPHEN J. ANGELL, ESQ., *in his Official* : <br> *Capacity as Town Solicitor and Individually*, : <br> *Defendants.* : | Case No. _____ |

## PLAINTIFFS' COMPLAINT

### *Introduction*

"[N]or shall private property be taken for public use, without just compensation." U.S.

Const. amend. V. This constitutional provision known as the "Takings Clause" was "designed to

bar Government from forcing some people alone to bear public burdens which, in all fairness and

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-PAS   Document 1   Filed 06/13/25   Page 52 of 56   PageID #: 2543
PageID #: 2543

justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

In *Kelo v. City of New London*, 545 U.S. 469 (2005), a 5-4 decision of the United States Supreme Court cautiously expanded the definition of "public use," which it equated to "public purpose," to enable governmental bodies to acquire private property for economic redevelopment purposes. *Kelo*, 545 U.S. at 483-84. However, the *Kelo* Court stressed the importance of the "carefully formulated . . . economic development plan" used by the City of New London, which was specifically authorized by a State statute allowing municipalities to use eminent domain to promote economic redevelopment. *Id.* In addition, *Kelo* held that the States may limit economic redevelopment takings beyond the federal baseline. *Id.* at 489.

In fact, the State of Rhode Island—through the Rhode Island Supreme Court and the Rhode Island General Assembly—has limited economic redevelopment takings since *Kelo*. *See generally Rhode Island Economic Development Corp. v. The Parking Co., L.P.*, 892 A.2d 87 (R.I. 2006); R.I. Gen. Laws §§ 45-32-1 *et seq.*; R.I. Gen. Laws §§ 42-64.12-1 *et seq.* State law limits economic redevelopment takings to statutory parameters, and there are robust procedural safeguards to protect private property owners from unlawful takings.

In the present case, the Town of Coventry and its employees sought to acquire Johnson's Pond (the "Pond"), a renowned 938-acre freshwater reservoir used for recreational purposes, by condemning the Pond and paying the Plaintiffs a nominal sum. The Town publicly claimed that it was taking the Pond for recreational purposes and public safety, and it then used a "quick take" procedure under State law designed for public highway takings. However, behind the scenes, the Town schemed to take the Pond for economic redevelopment purposes and to turn the Pond into a "profit machine." Moreover, the Town, based upon guidance from their Solicitor Stephen J.

2

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Angell, Esq., planned to fund the Taking using a tax increment financing (TIF) district comprised of private property owners who live around the Pond.

Realizing that the actual "public purpose" of redevelopment did not qualify for an economic redevelopment taking under applicable State law, the Town created a pretextual "public purpose" of safety and recreation, and it shoehorned the condemnation into the inapplicable "quick take" statute. Thus, not only was the Taking not for a "public use" or "public purpose," but the Town also violated the Due Process Clause of the Fifth and Fourteenth Amendment. Further, aside from the impropriety of the Taking, the "just compensation" proffered by the Town of $157,000.00 for the Taking is a blatant violation of the Just Compensation Clause, particularly since the Town offered over $1.5 million to settle prior to the Taking.

The Plaintiffs bring their claims in the United States District Court for the District of Rhode Island to vindicate their rights under the United States Constitution. In doing so, they rely upon *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180 (2019), which overruled the state-litigation requirement for takings established by *Williamson County* and "restor[ed] takings claims to the full-fledged constitutional status the Framers envisioned when they included the Clause among the other protections in the Bill of Rights." *Knick*, 588 U.S. at 189. As set forth below, the Plaintiffs also allege claims under the Due Process Clause, 42 U.S.C. § 1983, and the Declaratory Judgment Act. And finally, the Plaintiffs request this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over their pendent State law claims.

### *Parties*

1.  Soscia Holdings, LLC ("Soscia") is a Rhode Island limited liability company with its principal office located in Coventry, Rhode Island.

3

2. Structures at Johnson's Pond, LLC is a Rhode Island limited liability company with its principal office located in Coventry, Rhode Island.

3. Boating at Johnson's Pond, LLC is a Rhode Island limited liability company with its principal office located in Coventry, Rhode Island.

4. Waterfront at Johnson's Pond, LLC is a Rhode Island limited liability company with its principal office located in Coventry, Rhode Island.

5. Common Area at Johnson's Pond, LLC is a Rhode Island limited liability company with its principal office located in Coventry, Rhode Island.

6. Land at Johnson's Pond, LLC is a Rhode Island limited liability company with its principal office located in Coventry, Rhode Island.

7. When Soscia is referred to collectively **with** Structures at Johnson's Pond, LLC, Boating at Johnson's Pond, LLC, Waterfront at Johnson's Pond, LLC, Common Area at Johnson's Pond, LLC, and Land at Johnson's Pond, LLC, all of the entities are referred to as "the Plaintiffs."

8. When Structures at Johnson's Pond, LLC, Boating at Johnson's Pond, LLC, Waterfront at Johnson's Pond, LLC, Common Area at Johnson's Pond, LLC, and Land at Johnson's Pond, LLC are referred to **without** Soscia, they shall be collectively referred to as "the Holding Companies."

9. The Town of Coventry (the "Town") is a municipal corporation located in the State of Rhode Island. The Town is sued directly and also by and through its Finance Director, Robert J. Civetti in his official capacity.

10. Hillary V. Lima ("Lima") is domiciled in Rhode Island and is the Council President of the Coventry Town Council. Lima is sued in both her official and individual capacities.

4

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-PAS   Document 10-13   Filed 06/13/25   Page 52 of 56   PageID #: 5210
PageID #: 2546

11. James E. LeBlanc ("LeBlanc") is domiciled in Rhode Island, and at all relevant times, was the Vice Council President of the Coventry Town Council. LeBlanc is sued in both his official and individual capacities.

12. Jonathan J. Pascua ("Pascua") is domiciled in Rhode Island and is a Councilmember of the Coventry Town Council. Pascua is sued in both his official and individual capacities.

13. Alisa M. Capaldi ("Capaldi") is domiciled in Rhode Island and is a Councilmember of the Coventry Town Council. Capaldi is sued in both her official and individual capacities.

14. Kimberly A. Shockley ("Shockley") is domiciled in Rhode Island, and at all relevant times, was a Councilmember of the Coventry Town Council. Shockley is sued in both her official and individual capacities.

15. Jennifer M. Ludwig ("Ludwig") is domiciled in Connecticut, and at all relevant times, was a Councilmember of the Coventry Town Council. Ludwig is sued in both her official and individual capacities.

16. Daniel O. Parillo, Jr. ("Parillo") is domiciled in Rhode Island and is the Town Manager for the Town of Coventry. Parillo is sued in both his official and individual capacities.

17. Stephen J. Angell, Esq. ("Angell") is domiciled in Rhode Island and is the Town Solicitor for the Town of Coventry. Angell is sued in both his official and individual capacities.

18. When all of the Defendants are referred to collectively in this Complaint, they are referred to as "the Defendants." Otherwise, they are referred to by their names, or sometimes as the "Official Defendants" or "Individual Defendants" as may be appropriate.

### *Jurisdiction*

19. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 *et seq*. (the "Declaratory Judgment Act"), and 42 U.S.C. § 1983.

5

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 10-1 Filed 06/13/25 Page 52 of 56 PageID #: 6210
PageID #: 2547

20. This Court has supplemental jurisdiction over the State law claims set forth in this Complaint under 28 U.S.C. § 1367, as they are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

21. This Court has general personal jurisdiction over the Defendants who, upon information and belief, are all domiciled in Rhode Island, except Ludwig. The Court also has specific personal jurisdiction over the Defendants to the extent general personal jurisdiction is lacking.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants, except Ludwig, are residents of Rhode Island, a substantial part of the events giving rise to the claims in this Complaint occurred in this judicial district, the property subject to this action is located in this judicial district, and/or the Defendants are generally subject to personal jurisdiction in the State of Rhode Island.

### *Facts*

### *General Background*

23. In 1846, the Rhode Island General Assembly incorporated the Quidnick Reservoir Company ("Quidnick") for the purpose of erecting, establishing, maintaining, and keeping in order dams and reservoirs on the waters of the Pawtuxet River and its branches (the "Quidnick Charter"). *See* **Exhibit 1** (Quidnick Charter).

24. Quidnick was authorized to assess and tax mill estates along the river to support the maintenance and operation of the dams and reservoirs.

25. Under the Quidnick Charter, Quidnick and its successors and assigns were authorized to build and maintain dams and reservoirs and to use such for the benefit of the corporation and its members, who were originally mill owners.

6

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

26. To effectuate the Quidnick Charter and its purpose, Quidnick acquired rights in over 100 lots and constructed several reservoirs and dams, creating an integrated water system, portions of which are part of the Flat River Reservoir, known colloquially as "Johnson's Pond." *See, e.g.,* **Exhibit 2** (1904 Survey); **Exhibit 3** (Integrated Water System Map).

27. After building the dams, Quidnick sold surplus upland and reserved flowage easements over lands below the high water mark of the reservoirs, retaining fee-simple ownership of completely submerged lands.

28. The General Assembly amended its legislation at Quidnick's request in 1867, 1972, and 1975, affirming Quidnick's status and powers as a public corporation.

29. In January of 1982, Quidnick petitioned to become a private corporation, which the General Assembly approved in May of 1982.

30. This amendment allowed Quidnick to retain title to the reservoirs and granted it additional permission to create and sell hydroelectric power, along with any other lawful purpose.

31. Later that year, Quidnick and the Town of Coventry agreed that the Town would maintain the dams to facilitate recreational use and access for residents.

32. This agreement was renegotiated in 1994, resulting in a 15-year lease where Quidnick aimed to maintain superior water levels for recreational purposes.

33. A similar lease was signed in 2009, allowing the Town to regulate and profit from recreational activities. *See* **Exhibit 4** (Lease).

34. The Lease also allowed the Town to permit the residents living around the Pond to have access rights to the Pond, whereby they would otherwise have none, as these access rights were owned by Quidnick (and ultimately assigned to Soscia).

7

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-PAS Document 10-2 Filed 06/13/25 Page 58 of 56 PageID #: 210
PageID #: 2549

35. In March of 2020, Soscia Holdings, LLC ("Soscia") purchased all of Quidnick's rights in Coventry, including land and water rights, flowage easements, and submerged lands in Flat River Reservoir ("Johnson's Pond" or the "Pond") and other waters. *See, e.g.* **Exhibit 5A** (Soscia Deed); **Exhibit 5B** (Water Rights Agreement).

36. The rights of flowage and to submerged lands are described in the Soscia Deed as Parcel II. The rights to approximately 100 acres of upland purchased in connection therewith by Soscia from Quidnick are described as Parcel I in the Soscia Deed.

37. The 2009 Quidnick Lease was also assigned to Soscia in 2020.

***Property Details***

*The Integrated Water System*

38. By virtue of its purchase, Soscia, along with its successors and assignees, hold the authority to control, utilize, and profit from the waters within its reservoirs and the Pawtuxet River in the Town of Coventry, which create an Integrated Water System. *See* **Ex. 3** (Integrated Water System Map).

39. These rights encompass the ability to build and maintain dams and reservoirs, produce, and sell hydroelectric power, and engage in any other lawful activities.

40. The Integrated Water System is comprised of Stump Pond, the Flat River Reservoir, the South Branch of the Pawtuxet River, Mapleroot Pond, and Tiogue Lake.

41. Stump Pond serves as a recharge reservoir for the Flat River Reservoir.

42. The Flat River Reservoir Dam impounds the waters of the Flat River, Mapleroot Pond, and the Big River Management Area.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

43. The discharge from the Flat River Reservoir Dam regulates the South Branch of the Pawtuxet River, which includes 10 dams and merges with the North Branch of the Pawtuxet in West Warwick, Rhode Island.

44. Ultimately, the Pawtuxet River discharges into the Narragansett Bay.

45. See below for a map of the Integrated Water System, which is also found in **Exhibit 3**:



*Stump Pond*

46. The Coventry Reservoir, commonly referred to as "Stump Pond," and referred to as Map 0318, Lot 204.004 on the Town of Coventry Tax Assessor's Map, spans approximately 175 acres of surface area.

9

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

47. The reservoir serves as a crucial recharge source for the Flat River Reservoir, contributing to its replenishment and overall water balance.

48. Positioned strategically, Stump Pond discharges directly into the Flat River Reservoir, enhancing its water supply and supporting its ecological stability.

*The Flat River Reservoir (or "Johnson's Pond")*

49. The Flat River Reservoir (referred to in this Complaint as "Johnson's Pond" or "the Pond"), encompassing approximately 938 surface acres and holding 6,000 acre-feet at "normal pool," is the largest, privately owned, freshwater recreational reservoir in Rhode Island.

50. The Pond is ideal for boating, swimming, fishing, and other forms of water recreation.

51. Johnson's Pond is known as one of the best largemouth bass fisheries in the State and holds trophy size northern pike.

52. Renowned as the home of the State record largemouth bass (11 lbs., 3.2 oz., caught in Johnson's Pond in 2016), Johnson's Pond is estimated to provide at least 10,000 user-days of fishing per year.

53. The Pond is surrounded by over 700 homes and 2 campgrounds, with an additional 20 homes currently under construction.

54. More than 400 additional homes have secondary access to the Flat River Reservoir.

55. The 2 campgrounds collectively feature approximately 268 boat slips and 2 boat ramps, and the Pond hosts over 900 docks.

56. Annually, an estimated 2,500 boats and personal watercraft utilize the Pond for recreational activities.

10

57. Private waterfront access significantly enhances waterfront property values, adding approximately $158,136.16 per house lot, according to the 2023 Coventry Tax Assessor records.

58. Historically, the Pond was used to store water for industrial use and power generation by the downstream industries that comprised the Quidnick Reservoir Company.

59. Most abutters do not own land under Johnson's Pond, though some do, with Soscia maintaining a flowage easement over such lands.

60. As Johnson's Pond is artificial, manmade, and non-navigable, there are no natural riparian rights to the water granted to abutters of the Pond.

61. By virtue of the Soscia Deed and Water Rights Agreement, Soscia holds exclusive control over the water levels, recreational uses, and access to Johnson's Pond.

*The Flat River Dam*

62. The Flat River Dam ("the Dam") sits towards the eastern end of Johnson's Pond where the Pond drains into the South Branch of the Pawtuxet River.

63. The Dam was constructed in 1873 after a previous dam was breached during a storm.

64. The reconstruction of the Dam involved raising the Dam's height by 3 feet, replacing the former mill with the current outlet pipes and gatehouses, and expanding the spillway from 2 to 5 bays.

65. The Dam's maximum spillway capacity is 12,000 cubic feet per second (CFS), and its discharge is measured approximately 2.3 miles downstream at a United States Geological Survey Station.

66. The original purpose of the Dam was to impound water for power generation and process use by Quidnick's members.

11

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 05 of 56 PageID #: 1210
PageID #: 2553

67. Today, the water impounded by the Dam is used for recreation, although the water released by the Dam into the Pawtuxet River is still used by some downstream industries.

68. Operation of the Dam was subject to the Lease between Soscia and the Town until the Lease terminated on March 31, 2024.

*The Upland Parcel*

69. By way of its Deed, where it is referred to as Parcel II, Soscia also owned approximately 100 acres of prime, waterfront property (the "Upland Parcel").

70. The Upland Parcel is referred to as 1660 Flat River Road, Tax Assessor's Map 59, Lot 5.

71. The Upland Parcel, which includes the Dam, is uniquely zoned for both Industrial and Residential use.

72. This distinctive zoning makes it the only parcel adjacent to the Pond with an Industrial designation.

73. The Upland Parcel is divided by the South Branch of the Pawtuxet River, and it features "Industrial 1" zoning extending from the northwest lot line to the northeast lot line, encompassing the area up to the spillway discharge for the Dam.

74. This "Industrial 1" zone benefits from an 80-foot paved right of way through the Town's municipal complex.

75. There is also potential access from the east via a paper street called Industrial Drive. The unimproved paper street would require approximately 1,050 feet of roadway to develop.

76. Additionally, there is recreational access from the Upland Parcel to the Coventry Greenway, which is a popular bike path.

77. The remainder of the property is zoned R-20 (Residential), requiring a minimum lot size of 20,000 square feet with 292 feet of road frontage on its southern edge abutting Reservoir Road,

12

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 165 of 210 PageID #: 2554

and the Upland Parcel is suitable for development under a comprehensive permit pursuant to R.I. Gen. Laws § 45-53-1 *et seq*.

78. Collectively, the Upland Parcel features approximately 1,431 feet of prime water frontage along the Flat River Reservoir.

*Soscia's Development Plans*

79. Soscia is experienced in real estate development.

80. In 2019 and 2020, at considerable expense to Soscia, Soscia engaged professionals to survey the Upland Parcel and complete freshwater wetland delineations.

81. The survey and delineations revealed significant portions of buildable land around the Pond. *See* **Exhibit 6** (Boyer Survey).

82. The State of Rhode Island has a comprehensive low- and moderate-income housing scheme under the Rhode Island Low- and Moderate-Income Housing Act (the "LMIHA"). *See generally* R.I. Gen. Laws § 45-53-1 *et seq*.

83. As of 2024, the Town of Coventry only had 5.06% low- or moderate-income housing, which is significantly below the State's mandated threshold of 10%.

84. The LMIHA requires the Town to promote development to satisfy the 10% threshold, and developers are given incentives such as density bonuses and increased zoning flexibility.

85. Recent legislative changes have allowed mobile and manufactured home units to be applied towards a municipality's low- and moderate-income housing unit stock.

86. Considering the housing shortage and the long waiting list for low-or moderate-income housing throughout Rhode Island, Soscia planned to create a unique waterfront manufactured home development using a 100% low- and moderate-income housing model.

13

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

87. To further this plan, Soscia collaborated with professional engineers to develop plans for a community comprised of approximately 500 two-bedroom mobile homes.

88. This development would feature a beach, boat launch, and boat slip ownership for each mobile home, and the concept would offer low-or moderate-income buyers amenities that are unavailable elsewhere in Rhode Island.

89. Access to and use of the Pond would be included for the low- and moderate-income community for recreational activities.

90. While Soscia is confident in the viability of this mobile home community concept, Soscia has also explored other development concepts for the valuable Upland Parcel.

91. The northwest section of the "Industrial 1" zone, located behind the Town Hall, is the only area adjacent to the Pond where the permitted use includes the storage, repair, and sale of boats.

92. This prime location is particularly suited for establishing a marina and boat dealership.

93. The marina would feature essential facilities such as a boat launch, fuel dock, winter storage, ample parking, and dockominiums.

94. Johnson's Pond, as the largest, privately owned recreational pond in Rhode Island, has the capacity to accommodate over 2,500 watercraft during peak recreational seasons.

95. Soscia had received interest from several prominent boat dealers in this marina concept.

96. Upon information and belief, the Defendants were aware of Soscia's development plans.

### *Preparation for Lease End*

97. The Lease with the Town was due to terminate in 2024.

98. Before the Lease terminated, Soscia began planning a new structure for allocating waterfront rights around the Pond.

14

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 2:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 05 of 56 PageID #: 1310
PageID #: 2556

99. After acquiring the property, Soscia engaged Boyer Associates to develop a condominium plan for Johnson's Pond. *See* **Exhibit 7** (Condominium Plan).

100. This plan aimed to establish a "land only" condominium complex with water frontage units, similar to a dockominium, granting adjacent properties riparian rights.

101. Each condominium would confer upon purchasers all the rights Soscia owns between the flowage line of Johnson's Pond and the designated "Common Area" on the map.

102. Essentially, this plan would transform "waterview" homes adjacent to Johnson's Pond that have no natural rights to use the water into "waterfront" properties with rights to use the water.

103. The significance of a waterfront property on Johnson's Pond is reflected in the Town of Coventry's tax assessor land adjustment known as the "Lakefront Adjustment."

104. This factor is used to determine the market value differential between properties with "Lakefront" amenities and those without.

105. When assessing a "Lakefront" property, the tax assessor multiplies the typical neighborhood land value by the "Lakefront Adjustment" factor, which ranges from 1.5 to 3.35 times the baseline land value, depending on the location and use of Johnson's Pond.

106. **In 2023, the average additional assessment per "Lakefront" house lot was $158,136.15, resulting in a total added value of $94,565,415.12 to the tax rolls of Coventry**.

107. Simply stated, a home located adjacent to the Pond, with access and usage rights, is valued at $158,136.15 more than a home across the street, according to the Coventry Tax Assessor.

108. Moreover, in 2023, in anticipation of the Lease ending, Soscia created a comprehensive 27-page reference guide for property owners, builders, and contractors. *See* **Exhibit 8** (Permit Requirements).

15

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-PAS Document 1 Filed 06/13/25 Page 05626 56 Page 108 of 1010
PageID #: 2557

109.   This guide was designed to facilitate the process of seeking and receiving permits or licenses from Soscia to build or maintain structures within the reservoir and the fees for such permits and licenses, should a water-adjacent owner choose to rent access and usage of the Pond, rather than buy a waterfront condominium outright.

110.   It covers the requirements for obtaining permits for various projects, including:

   a.   Installation, modification, or transfer of boat docks;

   b.   Bank stabilization construction (*e.g.*, vegetation, riprap, and seawalls);

   c.   Boat ramps; and

   d.   Any other structures, including excavation and fill within the flowage boundary of the Pond (247.8' above sea level).

### *Sale of Rights*

111.   In January of 2024, anticipating the termination of the Lease with the Town, Soscia sold certain rights within the Flat River Reservoir to 5 companies (collectively the "Holding Companies").

112.   The right to build and maintain structures was sold to "Structures at Johnson's Pond, LLC," with exclusions for mineral extraction and aquatic plant removal. *See* **Exhibit 9** (Structures at Johnson's Pond, LLC Deed).

113.   The right to control boating was sold to "Boating at Johnson's Pond, LLC," with similar exclusions. *See* **Exhibit 10** (Boating at Johnson's Pond, LLC Deed).

114.    The right to control access to the Pond from private property was sold to "Waterfront at Johnson's Pond, LLC," allowing exclusion or permission to access the Pond directly from private property. This sale excludes the right to build and maintain structures and the right to control boating. *See* **Exhibit 11** (Waterfront at Johnson's Pond, LLC Deed).

16

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 105726f 56 Page 109 of 210
PageID #: 2558

115. The right to control access from public property was sold to "Common Area at Johnson's Pond, LLC," allowing control over public access and recreation. This sale excludes the right to build and maintain structures and the right to control boating as well as the right to control access from private property. *See* **Exhibit 12** (Common Area at Johnson's Pond, LLC Deed).

116. The submerged land under the Pond was sold to "Land at Johnson's Pond, LLC." This sale transferred the fee simple land under the Pond, with reserved rights for mineral extraction, aquatic plant removal, and a flowage easement. Further, this sale excludes the right to build and maintain structures and the right to control boating as well as the right to control access from private and public property. *See* **Exhibit 13** (Land at Johnson's Pond, LLC Deed).

117. Following these transfers, Soscia retained exclusive rights to mineral extraction, aquatic plant removal, dam operation and maintenance, water level control, and 938 acres of flowage easements within the boundaries of Johnson's Pond.

### *The Taking*

118. Upon information and belief, before the Lease ended, the Town decided that it desired to take the Pond and the Upland Parcel (collectively the "Property") for its own use.

119. On June 14, 2023, GZA GeoEnvironmental, Inc. at the direction of Solicitor Angell, inspected the Dam on behalf of the Town.

120. That same month, the Town engaged Andolfo Appraisal Associates, Inc. (the "Appraiser") to conduct an appraisal of the Property, and the Appraiser inspected the Property on October 26, 2023.

17

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



18

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



19

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.



20

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 16-13 Filed 06/13/25 Page 26 of 56 PageID #: 2562



*Town Resolutions, Ordinances, and Other Action Before the Taking*

152.    On January 23, 2024, the Town Council adopted Resolution No. 2024-4, which affirmed the "need for a Coventry Redevelopment Agency and Appointing Members to the Coventry Redevelopment Agency." *See* **Exhibit 15** (Resolution No. 2024-4).

153.    Resolution No. 2024-4 was sponsored by Lima and Leblanc, and was approved as to form and substance by Angell.

154.    On February 15, 2025, the Town Council adopted Resolution No. 2024-7, which appointed the following members to the Coventry Redevelopment Agency: Robert Brennan, Harold B. Larson, Chris Schuler, Jim Tarro, and Caitlin Grenier.

155.    On March 26, 2024, Angell held a press conference about Johnson's Pond with WPRI 12.

21

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

156. During this press conference, where members of the Town Council were present, he showed personal animus towards Soscia and its principals.

157. Angell stated, "**He wanted $100 million dollars, and when that didn't work, he wanted $61 million dollars. I want to be an Olympic athlete. Let's see who gets lucky first**."

158. Angell also proclaimed, "There's one reason and one reason only for someone to find themselves in an ownership position of this Dam, other than a governmental entity, and that is to put a gun to the head of this municipality to get them to pay some ransom price for it. **That's not going to happen that way**."

159. The Lease terminated on March 31, 2024.

160. A few days later on April 3, 2024, the Town Council hosted a workshop with the newly created Coventry Redevelopment Agency.

161. The goal of the meeting was "to discuss the particulars of GZA engagement by the Agency for purpose of composing a redevelopment plan for the Johnson's Pond property."

162. Before the passage of the Ordinance authorizing the condemnation, but requiring the Town to first attempt to purchase the Pond from Soscia, Angell presented Soscia with an offer to purchase the Property for $1,527,000.00 on April 29, 2024. *See* **Exhibit 16** (Offer to Purchase).

163. The Offer to Purchase would have also required the release and waiver of all other claims between Plaintiffs and the Town, which included the pending dispute about obligations under the Lease.

164. Plaintiffs did not respond to the Offer to Purchase.

165. On May 2, 2024, the Town Council adopted Resolution No. 2024-37, "[m]aking plain the Town Council's intentions and commitment to acquire, maintain, and **redevelop** Flat River Reservoir ("Johnson's Pond"), its Dam, dam structures, and land to protect the environment,

22

to ensure public safety, and to provide recreational access to the public." *See* **Exhibit 17** (Resolution No. 2024-37).

166. The Redevelopment Agency met on May 8, 2024 to discuss Resolution 2024-37 and its implementation ordinance set to go before the Town Council on May 9, 2024.

167. On May 9, 2024, the Town Council performed the first reading of Ordinance No. 2024-03. *See* **Exhibit 18** (Ordinance No. 2024-03).

168. Again, Ordinance No. 2024-03 stated that the purpose of the Ordinance was, *inter alia*, to "redevelop Johnson's Pond."

169. The Ordinance authorized the Town to acquire "the Dam, dam structures, Pond, and associated property at Johnson's Pond, including any and all property, rights, and interested acquired by Soscia Holdings, LLC from the Quidnick Reservoir Company."

170. The Ordinance was introduced by LeBlanc, endorsed by Angell, marked as passed by Lima, and approved by Parrillo.

171. A Public Hearing was held on May 14, 2024, and then on May 21, 2024, "the Town Council voted 3 to 0 to give the Town Solicitor the authority to proceed in accordance with Ordinance 2024-03 to acquire Johnson's Pond by condemnation in accordance with the Ordinance." This vote lacked a quorum, which is 4 under the Town's Home Rule Charter.

172. On June 20, 2024, the Town Council held a meeting and adopted Resolution No. 2024-42, allowing the condemnation of Johnson's Pond "to ensure public safety, and to provide recreational access to the public." *See* **Exhibit 19** (Resolution No. 2024-42).

173. The references to "redevelopment" were removed from Resolution No. 2024-42.

174. Resolution No. 2024-42 was sponsored by Lima and LeBlanc and approved as to form and substance by Angell.

23

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 176 of 210 PageID #: 2565

175. This Resolution sets forth: (i) the claimed purpose of the Taking (*i.e.*, "environmental protection and conservation, public safety, and public access to and recreational use of Johnson's Pond"); (ii) a description of the condemned property, which was all of Parcel II (the Pond), and only a portion of Parcel I (the Upland Parcel) as described in the Soscia Deed from 2020 (the "Condemned Property"); and (iii) the "just compensation" for the Taking, which was set at $157,000.00.

176. During the meeting on the Resolution, Angell sarcastically remarked, this "**only nets them about $157,000. They should have taken the $1.5 million.**"

177. Council President Lima laughed at this remark by Angell.

178. **Angell then admitted that this Taking was "unprecedented," and that "there is no state statute that allows the Town to do this**."

179. He claimed the taking would be under the Town's Home Rule Charter, but that they were also following "a state framework that does exist for other matters that are similar, but not identical."

180. Angell plainly stated that the Town was in "**uncharted territory**."

181. He also explained that DiPrete Engineering was chosen to do the land-use work because they had conducted prior surveys for the Property, and that if they did not go this route, they would have "needed a court order to do an entire survey, which would have taken months— and we don't have months."

182. Notably, Angell stated that there were "**wild inconsistencies as to the estimated acreage in this area**."

183. The Town filed a Miscellaneous Petition in Superior Court the next day on June 21, 2024, without naming or serving the Plaintiffs. *See* **Exhibit 20** (Miscellaneous Petition).

24

184. No redevelopment plans were included with the Miscellaneous Petition.

185. The Miscellaneous Petition instituted an *in rem* proceeding for the Town to conduct a "quick take" of the Condemned Property pursuant to a State law used for highway condemnations.

186. An *ex parte* hearing was held on June 28, 2024 before Associate Justice Richard A. Licht.

187. During the hearing, Angell represented the Town, and he stated the Taking was to benefit the public as a whole, and to allow others to use the Pond "on a **fee basis** for those who may not live in Coventry as a nonresident."

188. Angell's statements to Superior Court Associate Justice Licht were not truthful, and Angell misled the Judge into believing the Taking was actually for public purposes and redevelopment. His misrepresentations constitute fraud upon the Court.

189. The Superior Court approved a Condemnation Order, and it accepted a deposit of $157,000.00 into the Superior Court Registry as the estimated just compensation pursuant to the State highway statute (the "Taking"). *See* **Exhibit 21** (Condemnation Order) (authorizing the quick take and vesting title to the Condemned Property in the Town pursuant to R.I. Gen. Laws §§ 32-4-8 and 24-1-3).

190. The Town submitted an Affidavit and Report from the Appraiser to justify its $157,000.00 estimate of just compensation, which is beyond inadequate. *See* **Exhibit 22** (Andolfo Appraisal).

191. The Condemned Property and Soscia's planned development and sale of easements and condominiums (for water rights) and a low- and moderate-income housing development is worth significantly more than $157,000.00.

25

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 26 of 56 PageID #: 2567

192. By taking the Condemned Property, the Town bisected Parcel I and left the remainder of the Upland Parcel effectively landlocked without any means of practical access. This reduced the value of the remainder of Parcel I still owned by the Plaintiffs and caused substantial severance damages.

193. The rough effect of the Taking is illustrated in the annotated survey attached hereto as **Exhibit 23** (Annotated Survey). This Annotated Survey is included for illustration purposes only at this point.

194. As will be further elaborated *infra*, the facts of this case did not authorize the Town to utilize the State's recreational and highway statutes for this Taking, which was actually for redevelopment purposes.

195. The precedent facts did not trigger the operative language in R.I. Gen. Laws §§ 32-4-8 and 24-1-3 to allow for the Taking.

196. On June 28, 2024 and July 1, 2024, the Coventry Police Department issued "No Trespass Orders" to Plaintiffs and their principals despite the fact that the Town took the pond for "public purposes."

197. The Second "No Trespass Order" threatened arrest for any trespassing on the Condemned Property, which was supposedly "public property."

198. On July 1, 2024, Angell held a Q&A about the condemnation of Johnson's Pond.

199. Explaining part of the reason for the Taking and why only $157,000.00 was paid into the Court Registry, Angell stated it was to "**send a message**" that "**if you're going to come here and you're going to misbehave, we're not going to tolerate it. Just that simple.**"

200. Angell also described the vision for Johnson's Pond, which included a new "pavilion of some kind with restrooms with parking" and "an ability to have a contractor or someone else

26

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 179 of 210 PageID #: 2568

come in as a vendor and rent kayaks and other things that can be utilized for recreational purposes on the Pond."

201. He also explained that the Town took "what Soscia bought" from Quidnick in 2020.

202. Receiving questions about what exactly the Town owns now, Angell stated, "Now that we own it, I will be looking to have the Council approve the funds to do a survey to make sure we get it right."

203. The Plaintiffs are unaware of any subsequent survey that has been performed by the Town since the Taking.

204. As a result, the Plaintiffs have never been made aware of precisely what portion of their Property, or if all of their Property was taken. The Town did not and could not condemn the easement rights transferred by Soscia in January 2024 to the entities described in Paragraphs 111-115 herein, as they were no longer owned by Soscia. Those entities are not referred to in the Town's Petition or in the Condemnation Order. In fact, the Condemnation Order at Paragraph 4 states, "[w]ithout prejudice to the rights of all persons having an interest in the Acquired Property[.]"

205. Next, on November 12, 2024, the Town Council adopted Resolution No. 2024-98, "[t]transferring to the Coventry Redevelopment Agency the redevelopment rights to the Pond[.]" *See* **Exhibit 24** (Resolution No. 2024-98).

206. On February 26, 2025, at a meeting of the Redevelopment Agency, Angell made it clear that none of the abutting property owners have riparian rights to the Pond, which he claimed the Town now owns.

207. On April 3, 2025, the Redevelopment Agency had a workshop with the Town Council.

27

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00247-MRD-AEM Document 1 Filed 06/13/25 Page 26 of 56 PageID #: 2810
PageID #: 2569

208. During this workshop, Councilman Pascua, who lives on Johnson's Pond, described the ability for the Town to create a marina on the Pond and make profit off of renting slips. Pascua lives on the pond. *See* **Exhibit 25** (Picture of Pascua on Johnson's Pond).

209. Pascua stated that this would turn the Pond into a "**profit machine**" for the Town.

210. Upon information and belief, this statement by Pascua appropriately summarizes the Defendants' intent in the condemnation of Johnson's Pond, which at all times was for redevelopment purposes, and to benefit the Town, the Councilmembers, Angell, and their supporters living around the Pond.

211. Upon information and belief, Angell and Tim Eskey of Moses Ryan have received over $428,000 in legal fees from the Town, and they would receive hundreds of thousands of additional fees in the future working on the Town's redevelopment plans for the Pond and for condemnation litigation.

212. Nonetheless, the Town unlawfully took Johnson's Pond for pretextual reasons, utilizing procedures designed for highways.

214. The Defendants later changed the public narrative to focus on conservation and recreation, only to return to the original economic redevelopment agenda after the Taking was complete.

215. Aside from the unconstitutionality of this Taking, the $157,000.00 is insufficient compensation for the Property and was reached by deducting $3.585 million for alleged future repairs and future improvements to the Dam, representing a clear violation of the Just

28

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 02 of 56 Page 131 of 210
PageID #: 2570

Compensation Clause considering the Property is worth substantially more than that amount. The Town's reduction of the value based upon speculated future maintenance and improvements is improper and in of itself a clear violation of the Plaintiffs' right to Just Compensation.

216.    To date, the Town has not officially completed the subdivision of Parcel I and the Defendants do not even know what land they took from Plaintiffs.

### *Erroneous Valuation of the Property*

217.    In the unlikely event the Taking is upheld, the Plaintiffs have engaged an expert appraiser to conduct a valuation of the Property to assist the Court with determining the amount of just compensation due to Plaintiffs.

218.    While Plaintiffs will expound on these reasons when appropriate, the appraisal relied upon the Town in determining the amount of just compensation is erroneous for the following reasons.

219.    The Town and the Appraiser were unaware of what exactly they were taking.

220.    The Town admitted there were uncertainties in the estimated acreage.

221.    The Town failed to conduct a property survey in its rush to take the Pond.

222.    Instead, the Town used reports from DiPrete Engineering, which it knew were not complete as they concluded the acreage of the Pond was only 413 acres—less than half of its known size.

223.    Angell was fully aware that an incorrect acreage had been given to the Appraiser and intentionally led the Appraiser to arrive at the lowest value possible by engaging GZA and instructing them to generate a "dam study" which erroneously concluded that future repairs and future improvements for the Dam would total $3.585 million.

29

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 05 of 56 Page ID #: 010
PageID #: 2571

224. Nonetheless, Angell falsely claimed at the Q&A on July 1, 2024 that the acreage had been determined by reference to the Soscia Deed.

225. The Soscia Deed includes rights deriving from over 100 deeds.

226. The Town did not conduct a title search or survey to trace and confirm the rights in the Soscia Deed in order to determine what it was taking.

227. Upon information and belief, the Defendants all knew that there were issues with determining the bounds of the Condemned Property.

228. Angell publicly gloated about the fact that the Town acquired the Condemned Property for only $157,000.00.

229. Angell taunted the Plaintiffs in public and indicated that the Taking was meant to "send a message to them."

230. Accordingly, the Defendants bypassed using qualified experts, such as a surveyor or title expert, to determine what exactly they would be taking form Plaintiffs, as the Defendants deemed this unimportant.

231. Additionally, the Defendants knew that the Plaintiffs owned flowage easement rights around the Pond.

233. Nonetheless, the Appraiser did not value the flowage easements or even mention them in the Report submitted to the Court.

234. The Appraiser also failed to consider the value of the Pond or its associated water rights.

235. While the Appraiser acknowledged the recreational use of the Pond, he did not assess the Pond as a water resource.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 126 of 56 Page ID #: 210
PageID #: 2572

236. Instead, the Appraiser based his Report on the assumption that the Dam and the Pond were absent.

237. The Appraiser hypothesized a development of 66 condominium units.

238. Thereafter, the Appraiser proceeded to make a $3,585,000.00 deduction from the appraised value for certain repairs to the Dam based upon GZA's inflated report.

239. The deduction for the Dam repairs was improper, arbitrary, erroneous, and in bad faith because the Town itself failed to maintain the Dam during the Lease. Therefore, any repairs for the Dam should be borne by the Town and not Soscia.

240. DiPrete Engineering, who was relied upon by the Appraiser, failed to consider development potential for about half of the Condemned Property.

241. The Appraiser did not value severance damages for the approximately 69 acres remaining of Parcel I, which were negatively impacted by the Taking and essentially landlocked.

242. The Appraiser further reduced the value of the Condemned Property by $866,000.00 to improve an already improved road running behind the Town Hall to the Condemned Property.

243. These are only examples of some of the flaws of the Report used to justify the $157,000.00 "estimate of the Town."

244. Plaintiffs will elaborate and substantiate these allegations with expert evidence.

### *Additional Facts Surrounding the Unlawful Taking Supporting § 1983 Liability*

245. Beyond the unconstitutional Taking and insufficient estimation of just compensation, the Defendants engaged in a multi-year pattern of conduct that supports holding them liable under § 1983.

### *Inquiry with Planning and Zoning Office*

31

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

246. In March 2020, Greg Soscia and Doug Soscia visited the Coventry Planning and Zoning Office to inquire about permits required to grade land within the Industrial zone.

247. Present in the office were Kerri Karwoski from the Zoning Department and Russell Crossman ("Russell"), the Interim Director of Planning and Development, who has since passed away.

248. Upon entering, Kerri Karwoski ("Kerri") greeted Greg and Doug Soscia.

249. When Greg asked about the necessary permits, Kerri appeared uncertain.

250. The conversation proceeded from there as follows:

   a. Russell: (from his office) "Soil erosion and sediment control."

   b. Kerri: "Is that all they need?"

   c. Russell: "Yeah."

   d. Kerri: "It's Soscia."

   e. Russell: "Which Soscia?"

   f. Kerri: "Greg."

   g. Russell: "Denied."

   h. Greg: "What else is new, Russ?"

   i. Russell: "You better get used to it."

251. Russell then invited Greg and Doug Soscia into his office, where the conversation continued.

   a. Doug: "Better get used to what, denied?"

   b. Russell: "Yes."

   c. Russell: "How did the meeting go with Ed?" (Ed is Warzycha)

   d. Greg: "You tell us."

32

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

e. Russell: "I don't know, I just heard about it today. When did you meet?"

f. Greg: "Yesterday."

g. Russell: "Ok, I'm not that far behind."

h. Greg: "How did it go?"

i. Russell: Laughing.

252. Russell later admitted that although this was a routine zoning inquiry, because the Soscias were involved he would need to involve the Town Solicitor before making any decisions.

253. This clear act of personal bias was based upon the identity of the Soscias and animosity towards them and not upon any legal standard.

254. This was one of the first of many acts of the Town targeting Soscia for unequal and arbitrary treatment.

It is clear, the Town had decided to utilize its governmental authority to interfere with Soscia and its development plans immediately after buying the Property.

*The Zoning Certificate*

255. For example, just weeks later in April of 2020, the Town improperly embedded private Lease restrictions in a Zoning Certificate issued to Soscia by mail. *See* **Exhibit 26** (Zoning Certificate).

256. The Zoning Certificate attempted to embed private obligations between the Town and Soscia into a public land use document, which must be issued pursuant to R.I. Gen. Laws § 45-24-54 as a ministerial act by the Zoning Officer and limited to compliance with the generally applicable Zoning Ordinance.

257. Including provisions from the Lease in the Zoning Certificate was improper by the Town and furthered the Town's scheme to gain control of the Property by limiting its use.

33

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 05426 of 56 Page 136 of 210
PageID #: 2575

258. Additionally, the Zoning Certificate contradicted terms in the Lease.

259. By issuing the Zoning Certificate, the Town misrepresented the legal status of the Property to third parties such as lenders, insurers, and prospective buyers who rely upon zoning certificates to assess possible uses of the Property, its value and development possibilities.

260. The issuance of the Zoning Certificate with embedded restrictions from the Lease—which is now expired—furthered the Defendants' scheme to interfere with Plaintiffs' rights under the color of law.

*Town Conspiracy and Favoritism with Private Developer*

261. In February of 2021, a former Town Engineer, Bruce Hagerman, raised public concerns about a proposed 62-unit subdivision adjacent to the Pond.

262. The developer of the adjacent parcel, John Assalone (the "Developer"), sought to discharge stormwater into the Pond without Soscia's permission.

263. The Town's subdivision regulations prohibit stormwater discharge outside of a property's boundary.

264. The Developer had applied for a waiver of this provision.

265. In response to the waiver request, Hagerman opined that the Developer required permission from Soscia to support his waiver request to dump stormwater into the Pond.

266. On March 4, 2021, in an email chain between the Developer, his attorneys, and his engineer, the Developer's attorney described a Zoom meeting that the attorney had with the Town's solicitor that morning. *See* **Exhibit 27** (March 2021 Email).

267. The March 2021 Email explained that "[t]he Town will abide by the RI DEM approval on this project and not follow the 'suggestions' of Bruce Hagerman with regard to his

34

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-PAS Document 1 Filed 06/13/25 Page 205 of 56 Page 137 of 310
PageID #: 2576

interpretations of the lack of clarity in the RI Dem Regs or the necessity of obtaining approval of the abutting land owners."

268. Instead, the March 2021 Email explained that the Developer should have a "RI DEM approval in hand" before returning to the Town for approval.

269. This March 2021 Email represents a conspiracy between the Town and the Developer to interfere with Soscia's rights and pollute the Pond for their own gain at Soscia's expense, bypassing local laws surreptitiously all outside of the public forum.

*Tiogue Lake*

270. In 2005 Quidnick sold **some** rights to Tiogue Lake to the Town of Coventry. *See* **Exhibit 28** (2005 Tiogue Lake Deed).

271. In 2020, Soscia bought all rights to the Flat River Reservoir and Johnson's Pond, and "all flowage rights, dams, flumes, raceways, and other apparatus of equipment used in connection therewith." *See* **Ex. 5** (Soscia Deed).

272. The Soscia Deed included all rights to Tiogue Lake not already deeded to the Town in 2005, which included certain rights to the Tiogue Dam Gatehouse and underground pipes associated with such.

273. On July 22, 2021, Quidnick deeded these rights that it previously deeded to Soscia, to the Town of Coventry, at the direction of the Town, through a "Corrective Deed." *See* **Exhibit 29** (2021 Corrective Deed).

274. The Corrective Deed was intentionally fraudulent and attempted to convert and convey rights not owned by the Town, as they were owned by Soscia.

35

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 2:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 05/26 of 56 Page 138 of 210
PageID #: 2577

275. Since the gatehouse and associated rights were not included in the 2005 Tiogue Lake Deed and reserved by Quidnick, they were transferred to Soscia in 2020, and the Town had no ability to convey these rights in 2021.

276. Nonetheless, the Town purports to be the record owner of certain rights in Tiogue Lake and has used the 2021 Corrective Deed in public meetings and statements to interfere with Soscia's Property and constitutional rights, only to further their plan to take the Pond.

277. For example, during the Town Council Meeting on the 2021 Corrective Deed, former Vice President Ludwig "clarified for the Public that we do already own the Rights to the water on either side of Rt. 3, and the **motion is to accept a deed for pieces that were not specifically defined in what we consider the appropriate manner on the original deed**."

278. Ludwig saw the 2021 Corrective Deed "as an opportunity for lessons learned from Johnson's Pond and to have an opportunity to protect the residents."

279. The 2021 Corrective Deed is another part of the Defendants' scheme to interfere with the Plaintiffs' rights under the color of law.

*Discriminatory Treatment by Police and Fire Departments*

280. During an August 29, 2021 protest at a local plaza owned by a member of Soscia Holdings, Bruce Soscia, the Town Solicitor at the time directed the police not to remove protestors from the private property despite being asked to do so by Bruce Soscia.

281. The Fire Chief, Frank Brown ("Chief Brown") was one of the protestors.

282. Chief Brown is now on the Town Council, and he has previously spread false claims that low water levels in the Pond hindered his ability to fight a fire.

283. On May 30, 2023, the Police Department refused to trespass Chief Brown after he suggested that it was time to bring a Molotov cocktail to one of the Soscia's family homes.

36

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 57 of 56 Page ID #: 2578
PageID #: 2578

*Pascua and Angell Enter the Town Council Through a Quid Pro Quo*

284. On the day Pascua was sworn in, November 28, 2022, Councilors Leblanc, Lima, and Pascua violated the Open Meetings Act (OMA) by privately orchestrating the appointment of Stephen Angell as the new Town Solicitor without notice, public discussion, or the involvement of Councilmembers Shockley and Ludwig.

285. Neither Shockley nor Ludwig had heard of Angell prior to the meeting, his rates were not disclosed, and he was never interviewed by the full Council.

286. These discussions occurred before Pascua was formally sworn in but after his election, at which point he was already subject to the requirements of the OMA.

287. An anonymous complaint led to a formal finding by the Rhode Island Attorney General that the Council had violated the OMA. *See* **Exhibit 30** (OMA Decision).

288. The Attorney General rejected the Council's argument that Pascua's pre-swearing participation excused the violation, concluding that once elected, members-elect are subject to the OMA and cannot privately discuss public business.

289. The Attorney General found that the appointment of Angell was improperly pre-decided by a quorum outside of a noticed public meeting, and that minimal discussion took place during the public session where Angell's appointment was finalized.

290. The Attorney General further found that injunctive relief was appropriate, ordering the Council to revote on the appointment of the Town Solicitor and Interim Town Manager at properly noticed meetings.

291. Upon information and belief, Angell and Pascua entered the Town Council through a quid pro quo, self-dealing, and promises of favorable treatment for each other's interests and agendas.

37

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 26 of 56 PageID #: 2579
PageID #: 2579

292.    Through Angell and Pascua entering the Town Council, Lima obtained the position of Council President, Leblanc became Vice President, Angell profited through his appointment as Town Solicitor, and Pascua secured their support along with Angell's legal assistance to carry out his plan to take control of Johnson's Pond.

293.    Upon information and belief, Angell received at least $146,000 for his work on Johnson's Pond, and Moses Ryan, the firm that assisted Angell with the condemnation, received at least $282,000.

294.    Subsequently on January 23, 2023, Pascua appointed the President of the Johnson's Pond Civic Association, Marc Lemoi, to the Pawtuxet River Authority.

295.    Pascua lives on the pond and is financially benefitted by the condemnation.

296.    Since taking office, Pascua has maintained multiple non-permitted structures, specifically docks, extending from the edge of his property into the Pond.

297.    The placement of these structures unlawfully occupied a defined portion of what was, at the time, the Town's "Leasehold Estate" and is currently part of its "Freehold Estate."

298.    In addition to the structures themselves, Pascua personally stores various watercraft adjacent to them, effectively excluding the Town of Coventry and its residents from engaging in recreational activities such as fishing, boating, and ice skating in that area. Coventry's Zoning Official has refused to enforce these zoning violations by Pascua.

299.    Pascua derives a direct financial benefit from maintaining these illegal structures.

300.    He avoids the fuel, maintenance, and wear and tear expenses associated with transporting his boats, and he incurs no costs for public boat ramp access or private boat storage.

301.    By refusing to seek proper permitting, he also avoids the associated permitting and surveying fees.

38

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00247-MRD-AEM Document 1 Filed 06/13/25 Page 192 of 56 Page 191 of 210
PageID #: 2580

302. If Pascua were to apply for and be denied a permit, he would face both the loss of use and the financial burden of removing and disposing of the unauthorized structures.

303. On May 9, 2023, Pascua, the Council, and the Solicitor drafted and proposed through the State legislature a tailor made bill that "grandfathers" Pascua's docks.

304. The Council supported the bill through "Resolution No. 2023-30." Even though "Councilmember Ludwig asked if there could be a conflict of interest for a council member to vote on this resolution," Pascua proceeded to vote in support of this Bill despite the fact he would financially benefit from its passage.

305. Soscia has been silenced and prevented from participating in public discussions over Johnson's Pond, and in February of 2023 was denied the ability to speak by Lima and Angell at a Town Council Meeting about access to public records.

306. Upon information and belief, the Defendants have conspired with each other in their Individual and Official Capacities to violate the Plaintiffs' constitutional rights under the color of law.

## Count I

### *Takings Clause – Fifth and Fourteenth Amendments of the United States Constitution*

307. Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

308. Plaintiffs are the owners of the Property and all rights associated therewith by virtue of the Soscia Deed, Water Rights Agreement, and subsequent deeds to the Holding Companies in 2024.

309. Under the Fifth and Fourteenth Amendments of the United States Constitution, private property shall not be taken for public use without just compensation (the "Takings Clause").

39

310.     The Takings Clause is self-executing, and a violation of the Takings Clause requires either (i) return of the Property to the property owner for a taking that does not satisfy the public use provision of the Takings Clause, or (ii) payment of just compensation to the property owner.

311.     The Town's taking of Johnson's Pond violates the public use provision of the Takings Clause.

312.     While the Town may take property for redevelopment purposes under *Kelo v. New London*, 545 U.S. 469 (2005), the Town did not take this Property under the legal procedures and requirements for a redevelopment taking, as described by the United States Supreme Court and implemented by the State of Rhode Island.

313.     The Town officially declared in its Petition that the "public use" was for "environmental protection and conservation, public safety, and public access to and recreational use of Johnson's Pond."

314.     However, this declaration of "public use" was merely pretextual.

315.     The Town took the Condemned Property to turn the Pond into a "profit machine" for the Town and thereby violating the requirements set forth in *Kelo* that private property cannot be taken to give to another party. Here, the Town took the Property for the Town itself, not for third parties to develop to benefit the public interest.

316.     There was no redevelopment plan submitted by the Town.

317.     The Taking was in bad faith.

318.     The State of Rhode Island has legal procedures in place for an economic redevelopment taking in accordance with *Kelo*.

319.     Rhode Island's economic redevelopment taking procedures as set forth in R.I. Gen. Laws § 45-32-1 *et seq.* and § 45-64.12-1 *et seq.* limit economic redevelopment takings, provide

40

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 2:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 206 of 56 Page 193 of 210
PageID #: 2582

procedural safeguards for such, and mandate greater compensation (150% of fair market value) for property that is taken for economic redevelopment.

320. Because the Town realized that the proposed taking did not qualify for a redevelopment taking under Rhode Island law, which implements *Kelo* and affords assurances and rights to property owners, the Town conjured a pretextual "public use" to shoehorn the Taking into other State legal procedures for condemning property.

321. By taking the Condemned Property for a pretextual "public use" of public safety and recreational use, utilizing an inapplicable "quick take" statute for public highways, the Town violated the public use provision of the Takings Clause of the United States Constitution, and it has engaged in a redevelopment taking in violation of *Kelo* and the Takings Clause.

322. Further, the planned redevelopment use is not even a public use, as the Town intends to fund the Taking through a TIF District where the private property owners around the Pond pay for the Taking through increased tax revenue, and the private abutters are the ones who benefit from the Taking of the Condemned Property.

323. The effect of the Taking of the Pond from Plaintiffs is to directly transfer benefits to the Pond from Soscia to the abutters of Johnson's Pond, which is the type of taking that is prohibited by the United States Supreme Court and the Takings Clause.

324. Plaintiffs are unaware of any increase in public access to the Pond.

325. Because the Taking of the Condemned Property was not for a public use, the Taking violates the Fifth and Fourteenth Amendment and must be invalidated as unconstitutional.

326. Even if the Taking of the Condemned Property were upheld, the Town has failed to pay the Plaintiffs just compensation.

327. The $157,000.00 deposited into the Court Registry is insufficient.

41

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00247-MRD-AEM Document 1 Filed 06/13/25 Page 204 of 56 Page 194 of 210
PageID #: 2583

328.   Upon information and belief, the Property is worth substantially more than $157,000 and it is subject to a 150% compensation award under applicable State law.

329.   It is unclear what the Town has even taken from Plaintiffs, as the description of the Condemned Property was deficient, and the Plaintiffs have not been provided adequate notice of the condemnation.

330.   With respect to the portion of Parcel I still owned by Plaintiffs, Plaintiffs have suffered severance damages due to the fact that the remainder of Parcel I is considerably less valuable due to a loss of its access and appurtenances.

331.   The Town has failed to pay the *pro tanto* to the Plaintiffs as is required under the United States Constitution, and thus, the Plaintiffs have not received any compensation for the Taking of their Property.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter an order as follows:

a. An award of just compensation (subject to 150% multiplier), including attorney's and expert fees, costs, and interest;

b.  That Defendants have not satisfied the legal requirements of the Takings Clause, and that the Taking be invalidated, along with an award of damages to the Plaintiffs to compensate them for the unlawful Taking, including attorney's fees, expert fees, costs, and interest; and/or

**c.** That the Taking otherwise be invalidated, as the Town did not provide an adequate description of the property it took from Plaintiffs, and in fact, the Town Solicitor Angell admitted a survey should be done beforehand "but we don't have time."

42

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 25-cv-00274-MRD-AEM   Document 1   Filed 06/13/25   Page 196 of 56  PageID #: 195 of 210
PageID #: 2584

## Count II

### *42 U.S.C. § 1983 – Procedural Due Process –*
### *5th and 14th Amendments of the United States Constitution*

332.   Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

333.    At all relevant times, Plaintiffs had a protected property interest in the Property.

334.   The Defendants, acting under the color of law, deprived Plaintiffs of their Property without constitutionally adequate process.

335.   The deprivation of Plaintiffs' Property was significant, and Plaintiffs have been deprived of the value and enjoyment of the Property and ability to earn income therefrom.

336.   Defendants intentionally and with malice violated Plaintiffs' due process rights by taking the Condemned Property without exercising proper procedures, and at no time did Defendants offer Plaintiff an opportunity to be heard on the deprivation of their Property in a meaningful time or in a meaningful manner.

337.   The Defendants prejudged the decision to condemn the Pond.

338.   Several of the Defendants, including Angell, held personal animosity or bias or prejudice against Plaintiffs by reason of preconceived opinions of the individual principals of the Plaintiffs, and this personal animosity was the basis for the violation of Plaintiffs rights.

339.   Several of the Defendants were biased and held personal financial or pecuniary interests in the condemnation of the Pond.

340.   Pascua owns a house on the Pond.

341.   Pascua voted on Resolution No. 2024-37, which set the framework and goals for the condemnation of the Pond.

342.   Pascua later recused himself from voting by declaring a "disclosure of interest."

43

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 45 of 56 PageID #: 2585

343. The fact that Pascua, an admittedly biased decision-maker, voted on Resolution No. 2024-37 in violation of R.I. Gen. Laws §§ 36-14-5(a), 36-14-5(d), 36-14-6, and 36-14-7(a) also violated Plaintiffs' rights under the Due Process Clause.

344. Pascua is now under investigation by the Rhode Island Ethics Commission, which found that there was probable cause to proceed with a full investigation.

345. Angell and Moses Ryan received approximately $428,000 in legal fees, and Angell had an interest in the redevelopment plan, which would result in more fees paid to him, along with the condemnation litigation fees.

346. The Defendants failed to properly give Plaintiffs notice of what they were taking, and they failed to follow their own Ordinance authorizing the Taking at the local level.

347. For example, Ordinance No. 2024-03 stated that the Town "shall" acquire by condemnation "any and all property, rights, and interests acquired by Soscia Holdings, LLC from the Quidnick Reservoir Company."

348. When the Defendants later took the Condemned Property, they took only a portion of the rights owned by Plaintiffs, as they only acquired an indefinite portion of Parcel I.

349. Defendants also ignored the fact that Soscia had severed and transferred many of the rights allegedly subject to the taking to the Holding Companies.

350. The Defendants' haphazard, vague, and ambiguous description of the Condemned Property as that which was acquired by Soscia Holdings, LLC—in 2020, years before the Taking—was an imprecise and insufficient description of the Condemned Property, which should have been surveyed and described as it existed on the date of the Taking in an adequate manner to give the Plaintiffs' notice of what was taken. As a result, the Condemnation Order should be vacated.

44

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM  Document 1  Filed 06/13/25  Page 197 of 210
PageID #: 2586

351. The Defendants failed to satisfy conditions precedent to the Taking in Ordinance No. 2024-03.

352. The Defendants failed to properly take the easements and rights Soscia transferred to the entities set forth in Paragraphs 111 to 116, nor were they referred to whatsoever in the Condemnation Order. The Taking of all land and rights Soscia purchased from Quidnick in 2020 could not include rights it no longer owned.

353. While Ordinance No. 2024-03 only authorized the Taking "if the Town's efforts to purchase the Pond are of no avail," the Town did not make any offers to purchase the Condemned Property after Ordinance No. 2024-03 was passed.

354. The only offer made to purchase the Property was for $1,527,000.00 before Ordinance No. 2024-03 was passed, and this offer was illegitimate because it was conditioned upon unrelated waivers and releases of claims.

355. The Defendants' failure to follow its own Ordinance to effectuate the Taking violated Plaintiffs' rights under the Due Process Clause.

356. Pascua also intentionally voted on Ordinance No. 2024-03, clearly knowing it was a violation of the regulations of the Rhode Island Ethics Commission, and representing a clear conflict of interest and violation of the Due Process Clause's guarantee that decisions must be made by unbiased decision-makers.

357. Resolution No. 2024-42 was passed with a 3-0 vote, which is short of a quorum.

358. The Town's own Home Rule Charter requires 4 members for a quorum, and 4 affirmative votes to create binding action. As a result, the Ordinance was not approved, and it is invalid. Therefore, the condemnation is also invalid and illegal.

359. Resolution No. 2024-42 authorized the Taking for $157,000.00.

45

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

360. Resolution No. 2024-42 is invalid *ab initio* and also violates the Due Process Clause.

361. The Town officially represented to the Plaintiffs, the Court, and to the public that the Taking was for "environmental protection and conservation, public safety, and public access to and recreational use of Johnson's Pond," but behind closed doors the Town was meticulously planning to turn the Pond into a "profit machine," and it always intended to take the Pond for redevelopment purposes, funding such through taxes paid by abutters on the Pond.

362. This procedural sleight of hand by the Defendants violates the Due Process Clause.

363. The Defendants unlawfully used a "quick take" procedure to obtain the Condemned Property under R.I. Gen. Laws § 24-1-1 *et seq*. and R.I. Gen. Laws § 32-4-1 *et seq*.

364. There is no independent ability for the Town to utilize § 24-1-1 *et seq*. for the Taking, which is an expedited procedure utilized for public highway takings.

365. As a result, the Town invoked § 32-4-8 as authority for the Taking.

366. Section 32-4-8 only allows local units to acquire lands for conservation and recreation purposes where "the director [of administration] approves the acquisition of lands by a local unit with state assistance." § 32-4-8.

367. In this case, there was no approval from the Director of Administration of the condemnation or assistance from the State with such.

368. Because a condition precedent was not met under § 32-4-8, the Town had no legal authority to utilize the quick take procedure under § 24-1-1 *et seq*.

369. Further, the Town's Home Rule Charter requires that all eminent domain proceedings and other powers exercised by the Town be in the manner prescribed by State law.

370. Because the Taking of the Condemned Property unlawfully utilized a quick take procedure, the Taking violates the Due Process Clause and the Town's Charter.

46

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00247-MRD-AEM   Document 1   Filed 06/13/25   Page 47 of 56 PageID #: 199 of 210
PageID #: 2588

371.     Redevelopment takings in Rhode Island, to the extent permitted, are subject to significant procedural safeguards including pre-take notice, public hearings before the Town Council, an opportunity to contest the validity of the condemnation, and an adoption of a detailed redevelopment plan prior to the taking. *See, e.g.*, R.I. Gen. Laws § 45-32-1 *et seq.* and R.I. Gen. Laws § 42-64.12-1 *et seq*.

372.     Redevelopment takings also require a *pro tanto* disbursement, allowing immediate compensation for the taking.

373.     The State of Rhode Island and Rhode Island Supreme Court have limited economic redevelopment takings following *Kelo*.

374.     This Taking also does not qualify as a valid economic redevelopment taking, even if the Town had sought to follow appropriate procedures for such.

375.     The condemnation of Johnson's Pond by the Defendants was without due process of law, and the Individual Defendants knew, and particularly Angell, that the legal procedures by the Town implemented were improper and illegal.

376.     The Defendants knew they were in "uncharted territory."

377.     The Individual and Official Defendants were aware that reckless action would expose them to liability.

378.     Each of the Individual and Official Defendants, from an objective standpoint, should have known that their conduct was unlawful, and Plaintiffs' constitutional right not to be deprived of their Property without procedural due process was clearly established at the time of the violation.

47

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 45 of 56 PageID #: 810
PageID #: 2589

379.    Angell's statements pre-and-post taking show an animus to the Defendants and a reckless, callous, and outrageous indifference to the federal protected rights of Plaintiffs, with evil intent.

380.    The Individual and Official Defendants shared this reckless or callous indifference or evil intent.

381.    The Individual and Official Defendants voted and supported Resolutions and Ordinances that enabled the unlawful Taking.



383.    Plaintiffs have been injured as a result of the Defendants' actions and/or inactions.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter an order as follows:

a.    That the Defendants are jointly and severally liable (under § 1985) to Plaintiffs for conspiring and violating their rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b.    An award to Plaintiffs of damages in an amount to make Plaintiffs whole for Defendants' constitutional violations;

c.    An award of equitable or injunctive relief invalidating the condemnation and returning the Condemned Property to the Plaintiffs;

d.    An award to Plaintiffs of any and all attorneys' fees, expert fees, costs, and other expenses incurred by Plaintiffs under 28 U.S.C. § 1988;

48

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 49 of 56 PageID #: 910
PageID #: 2590

e.  A determination that the Taking by the Town was unlawful and defective in several ways as set forth above and should be vacated and returned to Soscia, and that Soscia be awarded damages, attorneys fees, and costs for same;

f.  An award of punitive damages against Defendants; and/or

g.  Any other relief that the Court deems fair, equitable, and just.

## Count III

### *42 U.S.C. § 1983 – Substantive Due Process –*
### *5th and 14th Amendments of the United States Constitution*

384.  Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

385.  For the reasons as set forth above, the Defendants' aforementioned actions and/or inactions violated Plaintiffs' substantive due process rights under the United States Constitution.

386.  Defendants unlawfully deprived Plaintiffs of their Property, in which they had a protected property interest.

387.  Defendants' actions and/or inactions were so egregious as to shock the conscious.

388.  Defendants' abused their governmental power when they decided to take the Condemned Property to create a "profit machine" for the Town and their benefit.

389.  The actual purpose of the Taking had no rational connection to the official purpose of the Taking.

390.  Defendants' actions and/or inactions were arbitrary, capricious, and outrageous and motivated by animosity, bias, and self-interest.

391.  Plaintiff has been injured as a result of Defendants' actions and/or inactions.

49

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter an order as follows:

a.  That the Defendants are jointly and severally liable as members of the Town Council and individually liable (under § 1985) to Plaintiffs for conspiring and violating their rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b.  An award to Plaintiffs of damages in an amount to make Plaintiffs whole for Defendants' constitutional violations;

c.  An award of equitable or injunctive relief invalidating the condemnation and returning the Condemned Property to the Plaintiffs;

d.  An award to Plaintiffs of any and all attorneys' fees, expert fees, costs, and other expenses incurred by Plaintiffs under 28 U.S.C. § 1988;

e.  A determination that the Taking by the Town was unlawful and defective in several ways as set forth above and should be vacated and returned to Soscia, and that Soscia be awarded damages, attorneys fees, and costs for same;

f.  An award of punitive damages against Defendants; and/or

g.  Any other relief that the Court deems fair, equitable, and just.

## Count IV

### 42 U.S.C. § 1983 – Takings Clause –
### 5th and 14th Amendments of the United States Constitution

392.  Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

393.  For the same reasons as set forth above, Plaintiffs' claim pursuant to the Takings Clause is also actionable under 42 U.S.C. § 1983.

394.  By taking the Condemned Property in violation of the public use provision of the Takings Clause and without providing just compensation to Plaintiffs, Defendants have deprived the

50

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 126 of 56 Page 203 of 210
PageID #: 2592

Plaintiffs of their constitutional rights under color of law, and as a result, are liable for damages sustained by the Plaintiffs.

395. The Defendants conspired to violate the constitutional rights of the Plaintiffs and are jointly and severally liable both as members of the Town Council and individually for the Takings Clause violation under 42 U.S.C. § 1985.

396. The Defendants are also liable for Plaintiffs' attorneys' and expert fees & costs incurred to vindicate their constitutional rights under 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter an order as follows:

a. That the Defendants are jointly and severally liable as Town Council members and individually (under § 1985) to Plaintiffs for conspiring and violating their rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b. An award to Plaintiffs of just compensation and damages in an amount to make Plaintiffs whole for Defendants' constitutional violations;

c. Alternatively, an award of equitable or injunctive relief invalidating the condemnation and returning the Condemned Property to the Plaintiffs;

d. An award to Plaintiffs of any and all attorneys' fees, expert fees, costs, and other expenses incurred by Plaintiffs under 28 U.S.C. § 1988;

e. A determination that the Taking by the Town was unlawful and defective in several ways as set forth above and should be vacated and returned to Soscia, and that Soscia be awarded damages, attorneys fees, and costs for same;

f. An award of punitive damages against Defendants; and/or

g. Any other relief that the Court deems fair, equitable, and just.

51

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 2:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 205 of 56 Page 204 of 210
PageID #: 2593

## Count V

### *Declaratory Judgment Act – 28 U.S.C. § 2201 and 28 U.S.C. § 2202*

397.  Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

398.  The Federal Declaratory Judgment Act allows the Court to declare the rights and other legal relations of the Plaintiffs and Defendants in a case of actual controversy.

399.  This is a case of actual controversy.

400.  Based upon the foregoing allegations, Plaintiffs respectfully request a declaratory judgment as follows:

   a.  That the Taking violates the Fifth and Fourteenth Amendment of the United States Constitution;

   b.  That the Defendants unlawfully used a quick take procedure to obtain the Condemned Property under R.I. Gen. Laws § 24-1-1 *et seq*. and R.I. Gen. Laws § 32-4-1 *et seq*., and that the Condemnation Order and all rights flowing therefrom are *ultra vires* and invalid;

   c.  That if the Taking was valid, the Town took the Property for economic redevelopment purposes and therefore owes Soscia 150% of the fair market value of the Property;

   d.  That any and all action taken by the Town based upon Resolution No. 2024-37 and Ordinance No. 2024-03, which were voted on by Pascua who has a direct, financial conflict of interest, are *ultra vires* and invalid;

   e.  That because Resolution No. 2024-42 was passed without a quorum and in violation of the Town's Home Rule Charter and is *ultra vires* and invalid, along with any subsequent action stemming therefrom;

52

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 205 of 210 PageID #: 2594

    f.   That Plaintiffs are entitled to a *pro tanto* distribution without any prejudice to their rights; and

    g.   That Resolution No. 2024-42 recorded at Book 2302, Page 871 of the Land Evidence Records on June 20, 2024, Order recorded at Book 2303, Page 506 in the Land Evidence on June 28, 2024, and 2021 Corrective Deed recorded at Book 2222, Page 442 on August 23, 2021, are *ultra vires* and invalid and must be purged from the Land Evidence Records through a recorded Order of this Court.

### Count VI

### *Assessment of Damages – R.I. Gen. Laws § 24-1-8*

401.   Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

402.   In the event the Taking of the Pond and Condemnation Order is upheld as valid, Plaintiffs bring this claim under R.I. Gen. Laws § 24-1-8 for an assessment of damages by this Court.

403.   Plaintiffs are entitled to an award of just compensation for the Taking of the Condemned Property, which is set forth in the Condemnation Order and Resolution, both of which were recorded in the Land Evidence Record by the Town.

404.   The $157,000.00 sum estimated to be just compensation was deposited into the Court Registry on June 28, 2024.

405.   Plaintiffs do not agree to the $157,000.00 estimation of just compensation and submit that the Condemned Property and severance damages to the remainder of Parcel I are worth significantly more than $157,000.00.

406.   This Complaint is brought within 1 year under R.I. Gen. Laws § 24-1-8.

407.   This Court has supplemental jurisdiction over Count VI under 28 U.S.C. § 1367.

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 54 of 56 PageID #: 2595

408. Any statute of limitations under R.I. Gen. Laws § 24-1-8 is tolled under 28 U.S.C. § 1367.

**WHEREFORE**, Plaintiffs pray for an assessment of damages pursuant to R.I. Gen. Laws § 24-1-8 by the Court, demand a bench trial pursuant to R.I. Gen. Laws § 24-1-9, and request judgment to enter against the Defendants for damages.

## Count VII

### *Tortious Interference with Prospective Economic Relations*

409. Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

410. The Defendants knew of the Plaintiffs' business plans for the Pond after the Lease expired.

411. In fact, the Plaintiffs notified dock owners they would have to purchase easement rights from Plaintiffs or remove their docks. There were over 900 docks existing on the Pond at that time.

412. The Defendants intentionally interfered with the Plaintiffs' prospective economic relations relating to the Property and their development thereof.

413. The Plaintiffs' business is centered around the Property.

414. Plaintiffs had concrete development plans for the Property.

415. Defendants knew of Plaintiffs' development plans and business relations.

416. After the Lease expired and before the condemnation, the Town instructed residents not to remove their docks or boats and provided them assurances. The Town then took the Condemned Property, intentionally interfering with Plaintiffs' development plans.

417. This interference was improper, unlawful, malicious, and used improper procedures.

54

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM Document 1 Filed 06/13/25 Page 55 of 56 PageID #: 210
PageID #: 2596

418.   Defendants have caused Plaintiffs injuries, as but for Defendants' interference, Plaintiffs would have established its prospective business relations and executed on its development plans, which were already in motion.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in its favor on Count VII against the Defendants and hold Defendants jointly and severally liable as Town Council members and individually for tortious interference with prospective economic relations, including all damages, costs, interest, and attorney's fees associated therewith.

### Count VIII

### *Civil Conspiracy*

419.   Plaintiffs repeat the foregoing allegations in this Complaint as if they were each expressly set forth herein.

420.   As set forth above, the Defendants and others collectively formed an unlawful enterprise and conspired to intentionally violate the Plaintiffs' constitutional rights and cause tortious harm.

421.   Each of the Defendants is jointly and severally liable because of their role in the civil conspiracy.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in its favor on Count VIII against the Defendants and hold Defendants jointly and severally liable as Town Council members and individually for conspiring to violate the Plaintiffs' constitutional rights and tortious interference with prospective economic relations, including all damages, costs, interest, and attorney's fees associated therewith.

*[SIGNATURE BLOCK TO FOLLOW]*

55

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Respectfully submitted,

**SOSCIA HOLDINGS, LLC;**
**STRUCTURES AT JOHNSON'S POND, LLC;**
**BOATING AT JOHNSON'S POND, LLC;**
**WATERFRONT AT JOHNSON'S POND, LLC;**
**COMMON AREA AT JOHNSON'S POND,**
**LLC; and LAND AT JOHNSON'S POND, LLC**

By their attorneys,

/s/ *Michael A. Kelly*_____
Michael A. Kelly, Esq. (#2116)
Scott D. Levesque, Esq. (#5654)
Gregory S. Estabrooks, Esq. (#10713)
**KSPR LAW, P.C.**
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel. (401) 490-7334
mkelly@ksprlaw.com

Dated: June 13, 2025

56

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

Case 1:25-cv-00274-MRD-AEM     Document 51-12     Filed 02/05/26     Page 209 of 210
PageID #: 2598

# EXHIBIT S

Case Number: KM-2024-0578
Filed in Kent County Superior Court
Submitted: 8/8/2025 1:23 PM
Envelope: 5255774
Reviewer: Lindsay Z.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SOSCIA HOLDINGS, LLC, et al
    *Plaintiffs,*

   vs.            C.A. No. 25-cv-00274-MRD-AEM

TOWN OF COVENTRY, et al
    *Defendants*

## **ANSWER EXTENSION STIPULATION**

It is hereby agreed that all Defendants shall have up to and including August 11, 2025

within which to answer or otherwise respond to Plaintiffs' Complaint

| Plaintiffs | Defendants |
|---|---|
| By their Attorneys, | By their Attorney, |
| | |
| */s/ Michael A. Kelly* | */s/ Marc DeSisto* |
| Michael A. Kelly (#2116) | Marc DeSisto  (#2757) |
| Scott D. Levesque (#5654) | DeSisto Law LLC |
| Gregory S. Estabrooks (#10713) | 4 Richmond Square, Suite 500 |
| KSPR Law, P.C. | Providence, RI 02906 |
| 128 Dorrance Street, Suite 300 | (401) 272-4442 |
| Providence, RI 02903 | marc@desistolaw.com |
| (401) 490-7334 | |
| mkelly@ksprlaw.com | |
| slevesque@ksprlaw.com | |
| mkelly@ksprlaw.com | |

## CERTIFICATION

I hereby certify that on this 3rd day of July 2025, I electronically served this document through the electronic filing system upon the following parties:

| | |
|---|---|
| Michael A. Kelly, Esq. (#2116) | Scott D. Levesque, Esq. (#5654) |
| mkelly@ksprlaw.com | slevesque@ksprlaw.com |
| | |
| Gregory S. Estabrooks, Esq. (#10713) | C. Russell Bengtson, Esq. (#1233) |
| gestabrooks@ksprlaw.com | rbengtson@benjestlaw.com |

*/s/ Marc DeSisto*