# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| SOSCIA HOLDINGS LLC, et al.,<br>　　　Plaintiffs, | ） | |
| | ） | |
| v. | ） | C.A. No. 25-cv-274-MRD-AEM |
| | ） | |
| TOWN OF COVENTRY, et al.,<br>　　　Defendants. | ） | |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Johnson's Pond is a 938-acre fresh-water reservoir in Coventry, Rhode Island with waterfront homes scattered across miles of shoreline. ECF No. 34 at 2. It is home to popular fish species and is frequently used by individuals who enjoy canoeing, kayaking, and boating. In 2024, the Town of Coventry made a big splash when it took Johnson's Pond from Soscia Holdings by eminent domain. While the issues between the Town and Soscia Holdings go back several years,[1] the controversy before this Court is limited to the condemnation and what has occurred since. The parties here do not agree on much, but one thing they do agree on is that the issue of "just compensation" for the taking must be decided by a court. The Plaintiffs[2] seek

---

[1] Readers who are curious about past issues should consult *Soscia Holdings, LLC v. Rhode Island*, 167 F.4th 14 (Mem) (1st Cir. 2026).

[2] The Plaintiffs in this case are Soscia Holdings, LLC; Structures at Johnson's Pond, LLC; Boating at Johnson's Pond, LLC; Waterfront at Johnson's Pond, LLC; Common Area at Johnson's Pond, LLC; and Land at Johnson's Pond, LLC. Throughout this Order, the Court may use Plaintiffs and Soscia interchangeably.

to have that issue decided by this Court and claim an absolute right to proceed here under *Knick v. Township. of Scott, Pa.*, 588 U.S. 180 (2019). Meanwhile, the Defendants[3] ask this Court to let the Rhode Island State Superior Court handle the issue, which it seems prepared to do.  If the State Court proceeds as planned, then the Plaintiffs' claims here may be precluded based on the holding in *San Remo Hotel, L.P. v. City & Cnty. of S.F., Cal.*, 545 U.S. 323 (2005).

And so, the Plaintiffs seek an injunction to preserve this Court's ability to proceed on the just compensation claim—and other claims—despite a Superior Court decision finding that it has and is prepared to exercise jurisdiction over the just compensation issue.  The Defendants object to the issuance of an injunction and argue that this Court should dismiss Plaintiffs' First Amended Complaint or abstain from ruling on any issues until the Superior Court proceeding is complete.  Currently pending before this Court, therefore, are Plaintiffs' motion for preliminary injunction (ECF No. 45) and Defendants' motion to dismiss or abstain (ECF No. 51).   For the reasons discussed below, the Court GRANTS Plaintiffs' Motion for Preliminary Injunction and DENIES Defendants' Motion to Abstain.

---

[3] The Defendants (collectively, the "Town") in this case are the Town of Coventry; Town of Coventry by and through its Finance Director Robert J. Civetti in his Official Capacity; Hillary V. Lima, in her Official Capacity as Council President and Individually; James E. LeBlanc in his Official Capacity as Council Vice President and Individually; Jonathan J. Pascua in his Official Capacity as Councilmember and Individually; Alisa M. Capaldi in her Official Capacity in her Official Capacity as Councilmember and Individually; Kimberly A. Shockley in her Official Capacity as Councilmember and Individually; Jennifer M. Ludwig in her Official Capacity as Councilmember and Individually; Daniel O. Parillo Jr. in his Official Capacity as Town Manager and Individually; and Stephen J. Angell Esq. in his Official Capacity as Town Solicitor and Individually.

I.    TRAVEL

A. State Court

On June 21, 2024, the Defendants initiated an action in the Kent County Superior Court seeking to have the Court accept $157,000 into its registry as "estimated just compensation" based on the "Town of Coventry's acquisition by eminent domain of the property, rights, and interest commonly known as Johnson's Pond, its dam structures, and a parcel of undeveloped land immediately downstream of the Pond and dam."  Petition at 1, 6, *In Re: Town of Coventry*, KM-2024-0578 (June 21, 2024).  One week later, on June 28, 2024, an Associate Justice of the Superior Court entered a Condemnation Order for the property and accepted $157,000 into the Superior Court registry.  Order on Motion to Deposit Funds, *In Re: Town of Coventry*, KM- 2024-0578 (June 28, 2024).

There was no further activity in the Superior Court until July 28, 2025 when the Town filed a Motion for Entry of Judgment or, Alternatively, Assignment for Trial.  Motion for Entry of Judgment or, Alternatively, Assignment for Trial, *In Re: Town of Coventry*, KM- 2024-0578 (July 28, 2025).  At that point, Soscia Holdings, who was not a party in the condemnation action, filed a limited scope entry of appearance and objected to the Town's motion, essentially arguing that the Supreme Court's decision in *Knick* (more to come on this soon) allowed the former property owners to pursue their claims in federal district court.  Objection to Motion, *In Re: Town of Coventry*, KM- 2024-0578 (August 8, 2025).  On November 25, 2025, the Superior Court entered an Order finding that the Superior Court had jurisdiction "to

3

hear the Town's Motion for Entry of Judgment, or in the Alternative, Assignment for Trial." Order ¶ 1, *In Re: Town of Coventry*, KM-2024-0578 (November 25, 2025).  The Superior Court scheduled a hearing on the Town's motion for December 17, 2025, but then continued the hearing date to March 16, 2026.

### B.  Federal Court

On June 13, 2025, the Plaintiffs filed a Complaint in this Court against the Defendants, alleging the following counts: (1) Takings Clause violation under the Fifth and Fourteenth Amendments of the United States Constitution, (2) 42 U.S.C. § 1983, violation of procedural due process under the Fifth and Fourteenth Amendments, (3) § 1983, violation of substantive due process under the Fifth and Fourteenth Amendments, (4) § 1983, violation of the Takings Clause of the Fifth and Fourteenth Amendments, (5) Declaratory Judgment Act under 28 U.S.C. §§ 2201, 2202, (6) Assessment of Damages under R.I. Gen. Laws § 24-1-8, (7) Tortious Interference with Prospective Economic Relations, and (8) Civil Conspiracy.  ECF No. 1 at 39–55.  After the Town moved to dismiss that Complaint, the Plaintiffs filed their First Amended Complaint ("FAC") which included the same counts minus the Declaratory Judgment count.  ECF No. 34 at 48–67.  The FAC no longer contests the condemnation itself and instead seeks just compensation and other damages based on the Defendants' decision to take the Johnson's Pond property by eminent domain and the execution thereof.  ECF No. 45 at 5–6.

The Plaintiffs filed the instant Motion for Injunctive and Declaratory relief following the Superior Court's November 25, 2025 Order finding it had jurisdiction to

hear the Town's Motion for Entry of Judgment, or in the Alternative, Assignment for Trial, and scheduling a hearing on that motion. The Court heard arguments from the parties on this and the other pending motions on February 18, 2026.[4]

## II.    STANDARD OF REVIEW

### A. Motion for Preliminary Injunction

There are two authorities under which this Court could issue a preliminary injunction: The All Writs Act and pursuant to Rule 65 of the Federal Rules of Civil Procedure. The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "[The Supreme Court] has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained[.]" *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). That said, an injunction issued pursuant to the All Writs Act must not run afoul of the so-called Anti-Injunction Act. The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a

---

[4] At the February 18, 2026 hearing, the parties argued Plaintiffs' Motion for Injunctive and Declaratory Relief and the Defendants' Motion to Dismiss or Abstain. At that same hearing, the Court heard argument on the Town's Motion to Remand in *Lima, et al. v. Soscia Holdings, LLC, et al.*, 25-cv-676, where it is the Plaintiff and Soscia is the Defendant (opposite from this proceeding). This Court will issue a separate Order on the Motion to Remand.

State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

### B.  Motion to Dismiss or Abstain

Defendants' motion to dismiss or abstain invokes both Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  Defendants assert that they succeed regardless of the rule applied because the Court should abstain from exercising jurisdiction over this case.  *See* ECF No. 51 at 11–13.  Plaintiffs urge the Court to view the motion to dismiss or abstain as a motion for judgment on the pleadings under Rule 12(c) because the Defendants filed the motion after they filed their Answer to the First Complaint (ECF No. 50).  ECF No. 56 at 10.  Ultimately, whether examined under Rule 12(b)(6) or 12(c), the standard for dismissal is the same.  *See Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007) (explaining "[t]he standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)")

Regardless, Defendants' motion to dismiss or abstain is premised entirely on the abstention principles and doctrines they contend should apply in this case.  *See generally* ECF No. 51 at 13–55.  Each abstention doctrine they raise will be addressed below.

## III.    DISCUSSION

### A.  The *Knick/San Remo* Dilemma

Underlying the Motion for Injunctive and Declaratory relief is Plaintiffs' concerns that a state court decision on the "just compensation" issue would force this

Court to give preclusive effect to that decision.  Plaintiffs' concerns stem from statements made by Defendants during the Superior Court proceedings and the Supreme Court's holding in *San Remo Hotel, L.P.*, 545 U.S. at 323 (2005).  According to Plaintiffs, Defendants argue that "[o]nce [the State] Court enters final judgment of just compensation for the taking—whether after a trial or not—that final adjudication, that judgment will have full preclusive effect and relitigation of that issue will be barred by *res judicata*."  ECF No. 45 at 11 (quoting Petitioner the Town of Coventry's Supplemental Memorandum in Support of the Town's Motion for Entry of Judgment or Alternatively, Assignment for Trial at 13–15, *In Re: Town of Coventry*, KM- 2024-0578 (December 1, 2025).  In making this statement, the Town Defendant relies on *San Remo*, which held that federal courts "are not free to disregard the full faith and credit statute solely to preserve the availability of a federal forum."  545 U.S. at 347–48.

The dilemma forms when a plaintiff, based on *Knick*, elects to file their ripe "just compensation" claim in federal district court rather pursuing its claim in state court.  The plaintiff in *Knick* brought a § 1983 claim directly in federal court against a town based on an ordinance she contended effectuated a taking of her property.  588 U.S. at 185–87.  When she filed her inverse condemnation claim, *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* governed, requiring litigants to seek "just compensation" in state court before coming to federal court.  *See* 473 U.S. 172, 194–95, 200 (1985) (holding that a property owner whose property has been taken by a local government has not suffered a violation of his Fifth

Amendment rights—and thus cannot bring a federal takings claim in federal court—until a state court has denied his claim for just compensation under state law). In *Knick*, the Supreme Court acknowledged a "Catch-22" created by *Williamson County* and *San Remo*. 588 U.S. at 184–85. The "Catch-22" or "*San Remo* preclusion trap," is that "[the litigant] cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court. The federal claim dies aborning." *Id*. To rectify this Catch-22, the Supreme Court expressly overruled *Williamson County* and explained the following:

> We conclude that a government violates the Takings Clause when it takes property without compensation, and that the property owner may bring a Fifth Amendment claim under § 1983 at that time ... because the violation is complete at the time of the taking, *pursuit of a remedy in federal court need not await any subsequent state action*.
>
> …
>
> The state-litigation requirement of *Williamson County* is overruled. A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government.

*Id*. at 202, 206 (emphasis added).

Here, the Plaintiffs rely on *Knick* for the proposition that their "just compensation" claim against the Town became ripe on June 28, 2024, the same day the Town completed the taking. The Defendants created a jurisdictional conundrum when they commenced a claim for assessment of damages under R.I. Gen Laws § 24-1-8 in the Superior Court after Plaintiffs filed their federal Complaint. If allowed to proceed in state court, Plaintiffs contend that "this Court would be hard-pressed not to honor a preclusive ruling by the Superior Court on the 'just compensation' due for

the Taking." ECF No. 45 at 22. Given all this, the Court must choose between two options: (1) allow the Town to proceed in Superior Court on March 16, which would require ignoring the clear holding of *Knick*, or (2) enjoin the Superior Court from proceeding as scheduled because Plaintiffs have established this Court may issue the requested injunction and none of the abstention principles argued by the Defendants require this Court to abstain.

Defendants contend that Plaintiffs' arguments premised on *Knick* are misplaced and argue that it does not apply here for two reasons. First, Defendants argue that *Knick* merely held that property owners did not have to exhaust state remedies before bringing a Fifth Amendment takings claim in federal court. ECF No. 46 at 24. This is true, but Plaintiffs' claim was brought here *because* there is no need to exhaust state remedies. Second, they attempt to distinguish *Knick* based on the fact that it dealt with an inverse condemnation claim, not a direct condemnation. *Id.* at 25–29. In support, Defendants urge this Court to adopt the reasoning in *Providence City v. Thompson*, No. 1:19-cv-88, 2019 WL 4932759 (D. Utah Oct. 7, 2019). *Providence City* addressed a direct condemnation proceeding initiated by the government in state court. *Id.* at *1. After being served with the state court complaint, defendant Thompson, relying on *Knick*, attempted to remove the condemnation to federal court. *Id.* at *3. The district court explained that Thompson "misinterprets the *Knick* decision in a number of ways." *Id.* at *4. The court explained that *Knick* (1) "overruled the state-exhaustion requirement, but it did not convert state eminent domain actions into federal claims," (2) "did not grant

9

defendants in state eminent domain actions the power to remove to federal court," and (3) "unlike *Knick*, there is no takings plaintiff in this action." *Id.* This Court concludes this reasoning is unpersuasive. The issue before both courts in this case is one of "just compensation" *for the taking that has already occurred.* Further, this is not a case where Plaintiffs seek to remove the state court "just compensation" determination to federal court after engaging in the state court case. Rather, the situation presented before this Court is a ripe Fifth Amendment claim filed before Defendants initiated the just compensation determination in state court pursuant to Rhode Island law.

Ultimately, the Court finds persuasive the following language from *Knick*:

> In sum, because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time. Just as someone whose property has been taken by the Federal Government has a claim founded … upon the Constitution that he may bring under the Tucker Act, someone whose property has been taken by a local government has a claim under § 1983 for a deprivation of a right secured by the Constitution that he may bring upon the taking in federal court. The general rule is that plaintiffs may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available … This is as true for takings claims as for any other claim grounded in the bill of rights.

588 U.S. at 194 (cleaned up).

Lastly, while *Knick* was decided in the context of an inverse condemnation, nothing in the Supreme Court's opinion limits its holding to only that specific kind of taking action. For example, the Court explained "[t]he availability of *any particular compensation remedy, such as an inverse condemnation claim under state law,*

cannot infringe or restrict the property owner's federal constitutional claim." *Id.* at 191 (emphasis added). This Court reads the use of "such as" to mean that the Supreme Court used "indirect condemnation claim" as an example of "any particular compensation remedy" available to a property owner. Moreover, that language does not support the argument that *Knick*'s principles apply only to inverse condemnations suits. While the Supreme Court mentioned that the holding "will simply allow into federal court takings claims that otherwise would have been brought as inverse condemnation suits," it went on to broadly hold that "[a] property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation." *Id.* at 205–06. That comment was in response to concerns raised by the dissenting Justices that overruling *Williamson County* could expose government officials to new liability. *Id.* at 218 (Kagan J., dissenting). Whether pursued in state court or this Court, the Town is exposed to no new liability because it is constitutionally obligated to provide just compensation for the taking under both state and federal law.

Ultimately, this Court finds Plaintiffs' "just compensation" claim ripened before Defendants' claim. *Knick* expressly overruled the *Williamson* state litigation requirement and found "that a property owner may bring a Fifth Amendment claim under § 1983" when a government takes property without just compensation. *Id.* at 202. That is what happened here. Thus, the Plaintiffs' claim for "just compensation" under the Fifth Amendment, and the related federal and state law claims, are properly before this Court.

### B. All Writs Act & Anti-Injunction Act

Plaintiffs' Motion for Injunctive and Declaratory relief suggests this Court has the authority to issue a writ under the All Writs Act that does the following: (1) exercises subject-matter, personal, federal question, and supplemental jurisdiction, (ECF No. 45 ¶¶ 1–4 (starting on p. 50)); (2) declares various principles of law, (*id.* ¶¶ 5–7); (3) declares that Plaintiffs have a right to just compensation under the federal constitution in federal district court, (*id.* ¶¶ 8–10); (4) prohibits Defendants from engaging in various action in the state court cases, (*id.* ¶¶ 11–13); and (5) requests other various forms of relief (¶¶ 14–18). *Id.* at 50–53. Plaintiffs also contend that this broad relief does not run afoul of the Anti-Injunction Act because two exceptions to the Act apply: (1) the relief is expressly authorized; and (2) the relief is necessary in aid of its jurisdiction. ECF No. 45 at 15–16.

Defendants disagree, arguing that Plaintiffs' requests for declaratory and injunctive relief are not properly before the Court, and that any writ issued by this Court would violate the Anti-Injunction Act. ECF No. 46 at 7–17. Before moving on to the Anti-Injunction Act, the Court will address Defendants' argument that Plaintiffs are not entitled to injunctive or declaratory relief. To support their argument that the requested relief is not properly before the Court, Defendants cite to district court orders from within this Circuit that support the legal principle that injunctive relief must relate to the claims pled in the complaint. *Id.* at 8–9. But those cases are easily distinguishable. *Cf. Beers v. Warden, N.H. State Prison*, No. 20-cv-968-LM, 2021 WL 6883209, at *1 (D.N.H. Dec. 15, 2021) (denying request for

injunctive relief—more time in the law library—because no claim pending related to lack of law library time); *P.R. Soccer League NFP, Corp. v. Federación Puertorriqueña de Futbol, et al.*, Civil No. 23-1203 (RAM), 2024 WL 149618, at *1–2 (D.P.R. Jan. 12, 2024) (denying injunctive relief—that defendants not interfere with attendance at soccer games—because it was unrelated to the RICO or Sherman Act claims asserted in the third amended complaint); *Kosilek v. Misi*, 630 F. Supp. 3d 328, 334–35 (D. Mass. 2022) (denying injunctive relief—housing a transgender prisoner in a single cell—when the original action was to access gender-affirming surgery and be housed in a women's prison facility).  Here, Plaintiffs' FAC asserts various federal constitutional and state statutory claims for just compensation and damages related to the taking of Johnson's Pond.  The instant request for injunctive and declaratory relief, while broad, is directly related to those claims and requests for monetary relief.

The Court turns now to the Anti-Injunction Act, which usually prevents a federal court from staying or enjoining a state court proceeding unless certain conditions are present.  28 U.S.C. § 2283.

### i.    *Expressly Authorized*

Plaintiffs contend that "Congress has 'expressly authorized' injunctive relief against state court proceedings under 42 U.S.C. § 1983," relying on *Mitchum v. Foster*, 407 U.S. 225 (1972).  ECF No. 45 at 15.  In that case, the Supreme Court examined "whether [§ 1983] comes within the 'expressly authorized' exception of the anti-injunction statute so as to permit a federal court in a § 1983 suit to grant an

injunction to stay a proceeding pending in a state court." *Mitchum*, 407 U.S. at 226. Defendants argue that *Mitchum* does not apply because, unlike that plaintiff, Plaintiff here is not pursuing any § 1983 claim in equity.  ECF No. 46 at 13.

In *Mitchum*, a city attorney obtained a preliminary injunction in a state court against a bookstore because it was a public nuisance under Florida law.  407 U.S. at 227.  After some further proceedings in the state court, the bookstore, relying on § 1983, filed a case in federal court alleging violations of the First and Fourteenth Amendments.  A three-judge panel denied the bookstore owner's request for injunctive and declaratory relief against the state court proceedings.  *Id.* at 227–28. After an in-depth review of the case law along with the history and purpose behind § 1983, the Supreme Court explained the following:

> Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress. And this Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights.

*Id.* at 242 (citing *Ex parte Young*, 209 U.S. 123 (1908)).  The Court also explained that "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of law, 'whether that action be executive, legislative, or judicial.'"  *Id.* (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879)). The Supreme Court held "only that the District Court … was in error in holding that, because of the anti-injunction statute, it was absolutely without power in this § 1983

action to enjoin a proceeding pending in a state court under any circumstances whatsoever." *Id.* at 243.

To decide whether the Plaintiffs' § 1983 claim satisfies this "expressly authorized" exception, this Court must decide whether the FAC needed to establish a "suit in equity" or if that element is satisfied by "Plaintiffs['] invocation of this Court's federal question jurisdiction through their claims under 42 U.S.C. § 1983[.]" ECF No. 47 at 4–5. The Court agrees with Plaintiffs that a writ enjoining the state court proceedings would fall squarely under the "expressly authorized" exception because the FAC pleads a claim under § 1983, the relief requested includes "[a]ny other relief that the Court deems fair, equitable, and just," and they are seeking a similar form of relief as the plaintiff in *Mitchum*. *See* 407 U.S. at 227–29. The Court acknowledges that these Plaintiffs did not initiate a separate suit that sought injunctive relief, like in *Mitchum*, but that difference does not move this Court to decide differently because the Supreme Court is clear "that … § 1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law." *Id.* at 242–43; *see also, Casa Marie, Inc. v. Super. Ct. of P.R. for Dist. of Arecibo*, 988 F.2d 252, 261 (1st Cir. 1993) (citing *Mitchum* and stating "it is beyond dispute that the [] section 1983 claims come within an 'express' exception to section 2283[.]") Finally, like the Supreme Court explained, "[i]n so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum*, 407 U.S. at 243.

ii.    *Necessary in Aid of its Jurisdiction*

Another Anti-Injunction Act exception invoked by Plaintiffs is the "necessary in aid of its jurisdiction" exception.  ECF No. 45 at 16.  "On a general level, the in-aid-of-jurisdiction exception under the Anti-Injunction Act permits federal injunctive relief to stay a state court proceeding where 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *State Farm Mutual Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 225 (E.D.N.Y. 2018) (quoting *Atl. Coast Line Railroad Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970)).

Both parties cite to *James v. Bellotti*, in which the First Circuit explained that "[t]he 'necessary in aid of' language in the Anti-Injunction Act has been read as incorporating a historical exception for cases in which a federal court obtains in rem jurisdiction prior to a state-court suit."  733 F.2d 989, 993 (1st Cir. 1984) (citing *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641 (1977)).  Defendants cling to the phrase "in rem jurisdiction" and argue that the Superior Court obtained in rem jurisdiction in June 2024, before the Plaintiffs invoked jurisdiction in this Court.  True, but *James* goes on to explain that "[the necessary in aid of jurisdiction language] *is not necessarily limited to in rem actions*, however, and is meant to 'give sufficient flexibility that a federal court, as a court of equity, may, when it has jurisdiction deal adequately with the situation at hand.'"  *Id.* (emphasis added) (quoting 1A Moore's Federal Practice ¶ 0.208a[2] at 2336).

16

While the Town initiated the condemnation and taking of Johnson's Pond in state court, Plaintiffs invoked this Court's jurisdiction over the "just compensation" issue when they filed their Complaint on June 13, 2025. This was approximately six weeks before the Defendants asked the state court to exercise jurisdiction over the "just compensation" issue on July 28, 2025. *See Knick*, 588 U.S. at 202; R.I. Gen. Laws § 24-1-8. To remind, the Supreme Court says "that a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time." *Knick*, 588 U.S. at 202. This indicates that the Plaintiffs—now the former property owners—had a ripe § 1983 claim immediately once the taking was complete on June 28, 2024. Compare this with the Town's cause of action in state court, which under Rhode Island law could not have become ripe until June 28, 2025 at the earliest. *See* R.I. Gen. Laws § 24-1-8 (stating that "[a]ny owner of … real property so taken, who cannot agree with the city or town council upon the price to be paid for his or her estate … may, within one year from the time the sum of money is deposited in the superior court … apply by petition to the superior court … setting forth the taking of his or her land or estate or interest therein and praying for an assessment of damages by the court or by a jury.") Because the Town was statutorily required to wait one year before acting on the just compensation part of the exercise of eminent domain, Plaintiffs' § 1983 claim became ripe before the Town's claim.

Therefore, here, like in *James*, "some federal injunctive relief may be necessary to prevent [the] state court from interfering with [the] federal court's consideration

or disposition of [the] case as to seriously impair the federal court's flexibility and authority to decide [the] case." 733 F.2d at 993 (citing *Atl. Coast Line Railroad Co.*, 398 U.S. at 295). This Court finds that the "necessary in aid of jurisdiction" exception applies and the Court may issue a writ enjoining the state court proceedings, as it is not prevented from doing so by the Anti-Injunction Act. [5]

## C. Abstention

Just because this Court could issue an injunction under the All Writs Act and move forward on hearing Plaintiffs' claims does not mean it should or will. Defendants raise various abstention doctrines and suggest this case presents the "discrete set of 'exceptional circumstances' in which the exercise of jurisdiction may be declined." *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). As the First Circuit noted in *Chico*, "[a]bstention occupies an uneasy position in the jurisprudence of federal court jurisdiction" because "federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given them.'" 633 F.3d at 28–29 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). The Court will examine each doctrine the Defendants raise, including *Younger*, *Wilton Brillhart*, *Pullman*, *Rooker-Feldman*, *Burford*, and *Colorado River*, to determine whether any requires this Court to abstain from proceeding with the adjudication of this case.

### i.    *Younger Abstention*

---

[5] After concluding that two Anti-Injunction Act exceptions are applicable, the Court will not address Plaintiffs other arguments, namely the "relitigation" and "strangers" exceptions. *See* ECF No. 45 at 16–17.

"The *Younger* doctrine reflects a longstanding public policy against federal court interference with state court proceedings." *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 (1st Cir. 2012) (cleaned up).  In *Sprint Communications v. Jacobs*, the Supreme Court explained that "circumstances fitting within the *Younger* doctrine are 'exceptional' [and] [] include 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state court's ability to perform their judicial functions.'"  571 U.S. 69, 72–73 (2013).  After the *Sprint* decision and relying on the Supreme Court's opinion, the First Circuit distilled and explained a three-step approach to *Younger* abstention:

> To begin, a federal court must ascertain whether a particular state proceeding falls within the *Younger* taxonomy.  If so, the court must then take the second step and consider whether the *Middlesex* factors support abstention.  And if these two steps leave the case on track for abstention, the court must take the third step and determine whether any of the isthmian exceptions to the *Younger* doctrine apply.

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192–93 (1st Cir. 2015).  The *Middlesex* factors cited in step two of the analysis and pulled from Supreme Court case *Middlesex County Ethics Committee v. Garden State Bar Association*, require the Court to consider the following: "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) … provide[s] an adequate opportunity to raise [federal] challenges." *Sprint Commc'n*, 571 U.S. at 80 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (cleaned up)).

This considered, the Court here must first decide whether the Superior Court proceeding falls within the *Younger* taxonomy.[6]  Defendants briefly assert that *Younger* abstention is warranted "[w]hen noncriminal judicial proceedings involve important state interests," and then they jump into the *Middlesex* analysis.  ECF No. 46 at 20.  Plaintiffs argue that this case is akin to "judicial review of executive action" so *Younger* abstention does not apply.  *See* ECF No. 56 at 50–52.

In presenting their position, Plaintiffs discuss the First Circuit's decision in *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 70 (1st Cir. 2005).  In that case, a federally qualified health center sued the Secretary of Health in Puerto Rico, seeking an injunction to require payment of certain Medicaid funds when due.  *Id.* at 60.  The plaintiff also sued in state court where it sought damages and other relief. *Id.*  In holding *Younger* did not apply, the First Circuit explained the following:

> Neither of the two core rationales that the Supreme Court has used in extending *Younger* to certain civil proceedings applies here. This is not an enforcement proceeding brought by the state or an agency against [the town] … *Nor are the fundamental workings of the state's judicial system* (like its contempt process or method of enforcing judgments) put at risk by the relief asked of the federal court. As well, the Supreme Court has made it clear that it has never remotely suggested that every pending state proceeding between a state and a private plaintiff justifies abstention if that private plaintiff then sues the state in federal court.

*Id.* at 70 (emphasis added) (cleaned up).  As the Court explained, "[n]ormal res judicata effects of federal actions on state actions—which are possible here—are of course not enough to trigger *Younger*."  *Id.* at 71.

---

[6] Neither party contends that the State Court action is a criminal prosecution or a civil enforcement proceeding, so the Court will only address the third type of cases where *Younger* may apply.

The Circuit likened *Rio Grande* to *New Orleans Pub. Service, Inc. v. Council of City of New Orleans et al.*, 491 U.S. 350 (1989) ("*NOPSI*"), a case in which the Supreme Court held that *Younger* abstention did not apply.

> NOPSI, a public utility, sought a rate increase from the New Orleans City Council due to increased costs. When such an increase was denied, NOPSI filed suit both in federal district court and in state court, in both instances seeking to have the Council order set aside and the Council enjoined to approve a rate increase.

*Rio Grande Cmty. Health Ctr.*, 397 F.3d at 70 (citing *NOPSI*, 491 U.S. at 355–58). The Supreme Court explained that *Younger* abstention did not apply to this type of state proceeding, "which was a mere 'state judicial proceeding reviewing legislative or executive action,' because '[s]uch a broad abstention requirement would make a mockery of the rule that only exceptional circumstances' justify abstention." *Id.* (quoting *NOPSI*, 491 U.S. at 368).

Defendants, for their part, point the Court to an Eighth Circuit case that concluded the *Middlesex* factors weighed in favor of applying *Younger* abstention, *Aaron v. Target Corp.*, 357 F.3d 768, 779–780 (8th Cir. 2004). That case is different from this one because no condemnation process occurred in the state court before the plaintiffs filed in federal court. *Id.* at 772. The issues before that court involved the state's eminent domain process, and the Plaintiff challenged the taking itself. In addition, the Eighth Circuit decided *Target* before the Supreme Court issued its opinions in *Knick*—which reaffirmed the right to seek just compensation in federal court, 588 U.S. at 194—and *Sirva*—which directed district courts to first determine whether the "state proceeding falls within the *Younger* taxonomy," 794 F.3d at 192–

93.  This Court concludes that this case falls out of the taxonomy because this case does not involve any risk to the "the fundamental workings of the state's judicial system (like its contempt process or method of enforcing judgments)." *Rio Grande*, 397 F.3d at 70.

Defendants argue that "[c]ourts have continued to apply [the] *Younger* abstention in takings cases even after the Supreme Court decided *Knick*," and cite *Serna v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, C.A. No. 22-cv-02998-DDD-MDB, 2024 WL 1715014, at *12–14 (D. Colo. Feb. 28, 2024).  ECF No. 46 at 19.  The District Court in Colorado found *Knick* "inconsequential to th[e] case" because those "[p]laintiffs ha[d] already been awarded … just compensation for their property." *Serna*, 2024 WL 1715014, at *6 (focusing on the fact that the just compensation trial occurred before the complaint was filed in federal court).  Here, the facts differ because Plaintiffs had not been awarded just compensation for the taking before filing the instant case.

Finally, the Superior Court proceedings only involve the Town, not any of the town council defendants named in this case, and none of Plaintiffs have any pending claims in the Superior Court.  Based on the above, the state proceedings here fall outside of the *Younger* taxonomy and do not trigger *Younger* abstention.

### ii.    *Wilton/Brillhart Abstention*

"'Under what is known as the *Wilton/Brillhart* abstention doctrine, district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims.'" *OHI*

*Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n ex rel. Shine*, 687 F. Supp. 2d 12, 19 (D.R.I. 2010) (quoting *R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th Cir. 2009)).  The *Wilton/Brillhart* factors require the court to consider the following:

> The scope of the pending state court proceedings, the available state court defenses, and whether the claims of all parties in interest can be settled in the state court proceeding.  Specifically, where parallel proceedings presenting an opportunity for ventilation of the same state law issues are underway in state court, these considerations clearly support a district court's decision to stay or dismiss a declaratory judgment action.

*Id.* at 20–21 (internal citation and quotation omitted).

Beginning with the parallel proceedings consideration, in *OHI Asset* the court found "that there [were] not parallel state and federal court proceedings because OHI was not a party to the [defendants' action] in state court when th[e] [federal] action was filed." *Id.* at 24.  When it comes to the time of determining whether parallel proceedings are in fact underway, the court explained "that the determination should be made as of the time the federal action was filed." *Id.* at 22.  In the instant case, the Court finds the same reasoning applicable and arrives at the same result.  As previously mentioned, Plaintiffs filed the federal action (asserting various constitutional and state-law claims) on June 13, 2025 against all named Defendants. Thereafter, the Town filed a petition for entry of judgment on the just compensation issue several weeks later on July 28, 2025.  None of the Plaintiffs or Defendants (except the Town of Coventry) in this case are named in any action or petition pending in the Superior Court, and neither are any constitutional claims.  Thus, here it is

clear that the relevant federal and state court proceedings are not parallel proceedings.

Moving on, the Court looks to the remaining factors, including source of law, scope of the state court proceedings, and the state court's familiarity with the issues. As to the source of law, the Plaintiffs here raise issues of federal constitutional law and state law. However, as was the case in *OHI Asset*, none of the state law claims at issue, are "novel, unsettled, difficult, complex, or otherwise problematic." 687 F. Supp. 2d at 24, 24–26 (quoting *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 695 (S.D.W. Va. 2001)). Therefore, none of these factors apply to this Court hearing the claim for just compensation in conjunction with Plaintiffs' other federal constitutional and state statutory claims. Furthermore, the scope of the state court proceedings are much narrower than the proceedings in this Court.

The last factor—the Superior Court's familiarity with the issues—may tip in favor of Defendants given the state court handled the initial June 2024 petition. Still, the Superior Court has not made any determination on "just compensation," nor is it presented with any other claims. Therefore, while this factor slightly leans in favor of Defendants, it fails to overcome the other factors and leads this Court to conclude that *Wilton/Brillhart* abstention does not apply here.

### iii.    *Pullman Abstention*

The First Circuit has explained that "[t]he purpose of Pullman abstention is to enable courts 'to avoid resolving … federal question[s] by encouraging state-law determination that may moot the federal controversy.'" *29 Greenwood, LLC v. City*

*of Newton*, 128 F.4th 1, 4 (1st Cir. 2025) (quoting *San Remo Hotel*, 545 U.S. at 339). In deciding whether to apply *Pullman*, courts are to consider whether "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." *Batterman v. Leahy*, 544 F.3d 370, 373 (1st Cir. 2008) (citing *Ford Motor Co. v. Meredith Motor Co.*, 257 F.3d 67, 71 (1st Cir. 2001)). If those questions are answered affirmatively, then "declining to exercise jurisdiction is warranted." *Id.*

Defendants argue abstention pursuant to *Pullman* is warranted because "there are at least four state law questions that should be resolved by the state courts and resolution of those state law questions will or may obviate the need to resolve the federal constitutional questions presented here." ECF No. 51 at 15. The four state-law questions the Defendants articulate are whether: (1) Rhode Island law precludes the Former Property Owners from challenging the taking and seeking an assessment of damages based on their failure to comply with an explicit condition precedent; (2) the Town's state court eminent domain action should be reduced to a final judgment; (3) the Speech in Debate clause of the Rhode Island Constitution bars the former Property owners from basing their claims on the statements of individual council members purportedly made during executive session and recorded in minutes that were erroneously and inadvertently made public; and (4) the Superior Court must determine fair market value and any additional compensation that may be granted. *Id.*

The Court finds that none of these questions meet both prongs of the *Pullman* inquiry. Turning initially to the first state law question, the Defendants contend "substantial uncertainty" exists over whether state law precludes the Plaintiffs from "challenging the taking and seeking an assessment of damages" for failing to comply with R.I. Gen. Laws § 24-1-8. ECF No. 51 at 15. Yet, Plaintiffs are not challenging the taking and are seeking an assessment of damages for the taking and monetary relief for their other claims. Their claims for assessment of damages are brought under the Federal Constitution and § 24-1-8. Whether looking at the claims through the *Knick* lens or the plain text of the state statute, it seems clear to this Court that Plaintiffs sufficiently preserved their claims for an assessment of damages. Again, *Knick* holds that the federal claim became ripe as soon as the taking occurred, and § 24-1-8 requires an interested party apply by petition for just compensation within one year of the taking. Both appear to be satisfied at this point, and there is no "substantial uncertainty" around the state law question.

Next, the Defendants contend "[t]he state court has determined that the Town properly exercised its power of eminent domain pursuant to R.I. Gen. Laws § 24-1-1 *et seq.* and that determination should be reduced to a final judgment." ECF No. 51 at 26. Specifically, they contend that Plaintiffs' counterarguments about the property taken for economic redevelopment mandating greater compensation is an issue of state law that precedes the federal constitutional issues presented in this case. *Id.* at 26–28. But as Defendants point out, "the application of this 150% state remedy is not even before the Superior Court, nor did the Superior Court's Decision of

November 7, 2025 address that remedy or have any impact on Plaintiffs' claims in this Court whatsoever." ECF No. 56 at 45. Because of this, it seems unlikely that the State Court will encounter this question of state law.

The third state law question Defendants raise relates to the executive session meeting minutes that were the subject of a prior order from this Court. *See* ECF No. 40 (denying Defendants' motion to seal and for a protective order). When this Court issued its Memorandum and Order denying Defendants' motion to seal and for a protective order, the Speech in Debate clause issue was pending before the Superior Court, which is why this Court decided not to rule on that issue. *Id.* at 16–18. Thereafter, the Defendants withdrew this issue from the state court action and initiated a declaratory action related to those minutes, which the Plaintiffs then removed to this Court.[7] *See Lima et al. v. Soscia Holdings LLC, et al.*, 25-cv-676-MRD-JJM. Ironically, Defendants had asked this Court for a ruling on the Speech in Debate clause issue when the issue was also pending before the State Court. Now they argue it must be heard and decided there because substantial uncertainty exists over the Clause's application to the executive session minutes. *See* ECF No. 51 at 28. The Court agrees that the Superior Court may decide that issue, however "settling th[at] question of state law will [not] … obviate the need to resolve [the] significant federal constitutional question" presented to this Court in Plaintiffs' FAC. *See*

---

[7] The Defendants (plaintiffs in the *Lima* case) moved to remand to state court, a now ripe motion which is currently under advisement. Plaintiffs point out that this declaratory action is no longer pending before the Superior Court, which, while true, could change after this Court decides the motion to remand.

*Batterman*, 544 F.3d at 373.  Ultimately, this Court will face two questions regarding the executive session minutes: 1) whether to provide comity to the Superior Court decision on the Speech in Debate clause (if it is that court which decides that issue) and 2) whether the federal rules of evidence allow or bar admissibility of the minutes in this Court.  Those questions will not be answered by a potential State Court decision on whether the Speech in Debate clause applies to the executive session minutes.  Therefore, *Pullman* abstention is not warranted based on this question of state law.

Defendants' fourth argument is that "[t]he state court should determine the fair market value and any additional compensation that may be granted for the alleged taking."  ECF No. 51 at 32.  This does not establish any substantial uncertainty over the meaning of the state laws that govern fair market value and just compensation and this question therefore fails on prong one.  *See Batterman*, 544 F.3d at 373.

For the reasons stated above, the Court finds that *Pullman* abstention is not warranted in this case.

### iv.    *Rooker-Feldman Abstention*

"For the *Rooker-Feldman* doctrine to apply, the case must: (1) be brought by a state-court losing party, (2) who is 'complaining of injuries caused by state-court judgments,' (3) that is 'rendered before the district court proceedings commenced,' and (4) 'inviting district court review and rejection of those judgments.'"  *Thompson v. Lakeview Loan Servicing, LLC,* No. 24-cv-365-MRD-LDA, 2025 WL 990162, at *2

(D.R.I. April 2, 2025) (quoting *Silva v. Massachusetts*, 351 F. App'x. 450, 454 (1st Cir. 2009)).  Based solely on the language of the test, Defendants lose this argument on the second factor.  They argue that Plaintiffs are complaining of injuries caused by the state-court judgment because "[Plaintiffs' FAC] implicitly seeks review of the Superior Court's determination that the condemnation was proper."  ECF No. 51 at 44.  The Court rejects this argument because Plaintiffs are not asking this Court to review the Condemnation Order.  In fact, Plaintiffs admit "that the Taking of the Plaintiffs' Property *has been completed*, and therefore, the Plaintiffs are entitled to Just Compensation."  ECF No. 56 at 5 (emphasis added).  Defendants have similarly acknowledged that Plaintiffs' FAC merely seeks just compensation.  *See* ECF No. 46 at 2 (stating Plaintiffs are seeking to complicate "a straightforward federal damages action").  Since Defendants cannot establish the second element, the Court need not examine any of the other elements and rejects the invitation to apply *Rooker-Feldman* abstention.

> v.    *Burford Abstention*

In evaluating *Burford* abstention, courts consider three factors: (1) the availability of timely and adequate state-court review; (2) the potential that federal court jurisdiction over the suit will interfere with state administrative policymaking; and (3) whether conflict with state proceedings can be avoided by careful management of the federal case.  *Chico Serv. Station, Inc.*, 633 F.3d at 32.  As the Supreme Court has noted, *Burford* abstention "is concerned with protecting complex state administrative processes from undue federal interference."  *NOPSI*, 491 U.S. at

362.   In *Chico Service Station*, the First Circuit acknowledged this statement and explained that "[w]hile *Burford*'s principle of deference to state administrative bodies could be interpreted expansively, requiring that federal courts abstain from hearing any case involving important state regulatory policies, we have declined to give it so broad a reading." 633 F.3d at 29–30.   Neither of these reasons behind the application *Burford* abstention are present here.

As to the *Burford* abstention first prong, while R.I. Gen. Laws. § 24-1-8 was an option for Plaintiffs to request just compensation, so was the federal forum.   That said, Defendants are simultaneously asking this Court to abstain from deciding the issue while actively pursuing a final order in State Court that excludes the Plaintiffs. *See* ECF No. 51 at 23–26 (Defendants arguing the state court should determine whether R.I. law precludes Plaintiffs from challenging the assessment of damages). Thus, this Court has serious concerns about the availability of state-court review to Plaintiffs.

Similarly, the second *Burford* abstention prong supports not abstaining.   While the taking was initiated by the Coventry Town Council and completed in Superior Court in June 2024, those policymaking decisions are not under review here.   Instead, the issue is how much Plaintiff is entitled to for "just compensation" for the already completed taking.   Further, like in *Chico Service Station*, "[t]he questions of law at issue in this suit are therefore only marginally questions of [Rhode Island] law, with a strong federal cast.   Moreover they are of no particular difficulty." 633 F.3d at 33.

For these reasons, and the purposes behind *Burford* abstention, the Court will not abstain on this basis.

> vi.    *Colorado River Abstention*

"[T]he circumstances permitting abstention under *Colorado River* for reasons of 'wise judicial administration are quite 'limited' and indeed 'exceptional.'" *Rio Grande Cmty. Health Ctr., Inc.*, 397 F.3d at 71 (citing *Colo. River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 818 (1976)). In *Rio Grande*, the First Circuit delineated a list of factors for when *Colorado River* abstention might be appropriate. The factors are:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Id.* at 71–72. As that Court then explained, "[n]o one factor is meant to be determinative, but rather courts must make a 'carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Id.* at 72 (quoting *Colorado River*, 424 U.S. at 818).

Here, the first *Colorado River* abstention factor favors abstention because it is undisputed that the Superior Court assumed jurisdiction over a res when the Town deposited money into the court registry to complete the taking in June 2024.[8]

---

[8] Plaintiffs note they have no claim to that res as they have not filed a claim in the Superior Court.

Meanwhile, the second *Colorado River* abstention factor does not move the needle because both courts are in the same geographic area.

The third *Colorado River* abstention factor supports not abstaining because Plaintiffs raise many claims in the FAC that are not before the State Court for consideration. Further, Defendants seek an order in Superior Court that Plaintiffs are precluded from pursuing the "just compensation" claim in that Court. This Court can hear all Plaintiffs' claims, including their claim for just compensation. The same cannot be said for the Superior Court.

The order in which the judicial fora obtained jurisdiction is surely a closer call. This Court acknowledges that the Town initiated a condemnation proceeding in Superior Court in June 2024. But the condemnation is not the issue before either Court; the issue is determining the amount of money that will provide just compensation. Whether looking at the claims through the *Knick* lens or the plain text of the state statute, it seems clear to this Court that Plaintiffs' claim for just compensation/assessment of damages became ripe, and was filed, before the Defendants' claim. This weighs against abstention.

The remaining factors also counsel against abstention. The claims before this Court present a mix of federal and state law questions. The Plaintiffs' constitutional claims are not pending before the Superior Court, and Defendants are similarly trying to prevent that Court from allowing Plaintiffs to proceed there under § 24-1-8 (even though they asserted that claim here within the allotted time period). In all,

this is not the "exceptional circumstance" required for the Court to abstain under *Colorado River*.

All in all, for the reasons explained in the discussion above, none of the abstention principles and doctrines raised by the Defendant have persuaded this Court that it must or should abstain from adjudicating this case on the merits.

### D.  Scope of Relief

The Plaintiffs' requested relief is broad and encompasses various requests for declarations about this Court's jurisdiction over the parties and claims and seeks declaratory and injunctive relief on various other principles of law.  *See* ECF No. 45 at 50–54.  The requested relief is far too broad for this stage of the case.  This Court is mindful that it should not fashion relief that is greater than necessary.  *See DraftKings Inc v. Hermalyn*, 118 F.4th 416, 423 (1st Cir. 2024) ("Judges must closely tailor injunctive relief to the specific harm alleged.").  Accordingly, the Court declines to adopt Plaintiffs' requested relief and, instead, enjoins the Superior Court from proceeding with the scheduled adjudication of the just compensation issue pending before it in KM-2024-0578.

## IV.    CONCLUSION

To recap, the Court concludes that Plaintiffs' claims are properly before this Court and that none of the abstention doctrines argued by Defendants require this Court to abstain.  Therefore, Defendants' Motion to Dismiss or Abstain is DENIED. Further, pursuant to this Court's authority under the All Writs Act and consistent

with exceptions to the Anti-Injunction Act, the Superior Court proceedings are hereby

ENJOINED and Plaintiffs' request for injunctive relief is GRANTED.


IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge


03/12/2026